# EXHIBIT A

**(Exchange Agreement)**

© 2008 LandAmerica Financial Group, Inc. All Rights Reserved

LES File Number: NYE-08-001081-00

## EXCHANGE AGREEMENT

THIS EXCHANGE AGREEMENT ("Exchange Agreement") is made as of October 3, 2008, by and between LUBEXPRESS LAND COMPANY, INC. and LUBEXPRESS OPERATING COMPANY, INC., each a Delaware corporation (collectively Taxpayer"), and LANDAMERICA 1031 EXCHANGE SERVICES, INC., a Maryland corporation ("LES").

### RECITALS

A.    Taxpayer represents it owns for federal income tax purposes that certain real property located at the following locations: (i) 1503 Main Avenue, Clifton, New Jersey; (ii) 458 Paterson Avenue, East Rutherford, New Jersey; (iii) 300 Route 22 West, Green Brook, New Jersey; (iv) 106 Goffle Road, Hawthorne, New Jersey; (v) 457-465 9th Avenue, Paterson, New Jersey; (vi) 588 Memorial Highway, Phillipsburg, New Jersey; and (vii) 52227 Stelton Road, South Plainfield, New Jersey, each as more particularly described on Exhibit A-1 attached hereto (collectively, the "Real Properties").

B.    In addition to the Real Properties, Taxpayer represents it owns and holds for federal tax income purposes those certain leasehold interests in certain real property located at the following locations: (i) 20 New Bridge, Bergenfield, New Jersey; (ii) 84 Route 10, East Hanover, New Jersey; (iii) 1167 Route 23 South, Kinnelon, New Jersey; (iv) 378 W. Passaic Street, New Jersey; and (v) 30-37 Route 22 Center Island, Springfield, New Jersey, each as more particularly described on Exhibit A-2 attached hereto (collectively, the "Leases").

C.    The Real Properties and the Leases collectively are hereinafter referred to as the "Relinquished Property".

D.    Taxpayer desires to exchange the Relinquished Property for property or properties of like-kind (the "Replacement Property") in an exchange qualifying under Section 1031 and related sections of the Internal Revenue Code of 1986, as amended (the "Code"), and regulations promulgated thereunder.

E.    LES is willing and agrees to facilitate such like-kind exchange as provided in this Exchange Agreement.

F.    Taxpayer has entered into a Purchase and Sale Agreement with MEADOWBROOK REALTY LLC, a New Jersey limited liability company ("Recipient"), dated as of July 15, 2008 containing terms related to the purchase, assignment and transfer of the Relinquished Property (the "Purchase Agreement"), a copy of which is attached hereto as Exhibit B.

© 2008 LandAmerica Financial Group, Inc. All Rights Reserved

NOW, THEREFORE, for and in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, LES and Taxpayer agree as follows:

## AGREEMENT

1.     Exchange of Property.

(a)     LES agrees to acquire from Taxpayer, and Taxpayer agrees to convey to LES the Relinquished Property, and LES hereby agrees to convey to Taxpayer, in exchange for the Relinquished Property, the Replacement Property.  LES agrees to acquire the Replacement Property from its seller (the "Seller") in a purchase transaction for the purpose of effectuating a like kind exchange.

(b)     On or before the close of the Purchase Agreement for the Relinquished Property (the "Initial Closing Date"), Taxpayer shall assign its rights but not its obligations in and under the Purchase Agreement to LES, and LES agrees to accept an assignment in form and substance approved by LES.  Taxpayer shall give written notice of the assignment of the Purchase Agreement to LES to all parties to the Purchase Agreement on or before the Initial Closing Date.

(c)     In order to save duplicative recording fees, escrow costs and other similar charges, LES shall on and as of the Initial Closing Date direct Taxpayer, and Taxpayer directly, or via a disregarded entity(ies) or an agent, or via ownership of, or ownership of  an undivided fractional interest in, what is commonly referred to as a "grantor trust", shall convey on behalf of LES, the Relinquished Property to Recipient.  In addition, Taxpayer agrees to execute all bills of sale and assignment of leases, security deposits and trade names and other assets, which are necessary to close the transaction directly in favor of Recipient.  If closing on the Purchase Agreement does not occur on the Initial Closing Date, as that date may be extended by the parties thereto, LES shall assign all of its rights, title and interest in and to the Purchase Agreement to Taxpayer by an assignment agreement in form and substance acceptable to LES and Taxpayer shall accept such assignment.

(d)     The transfers described in this Section 1 are part of an integrated, interdependent, mutual and reciprocal plan intended to effectuate an exchange by Taxpayer of like-kind real properties pursuant to and in accordance with the provisions of Section 1031 of the Code, and to the extent possible, state tax statutes.

2.     Treatment of Exchange Funds.

(a)     LES agrees to hold and apply the Exchange Funds in accordance with the terms and conditions of this Exchange Agreement.  For purposes of this Agreement, Exchange Funds shall mean the total consideration received by LES from the closing of the sale of the Relinquished Property reduced by the remaining principal and interest balance of all debts secured by liens against the Relinquished Property, if any, as of the Initial Closing Date, taken subject to by LES, all real estate commissions, prorations of income and expenses, closing costs, title insurance premiums, escrow fees, and any other amounts chargeable to LES in the closing of the Purchase

2008 LandAmerica Financial Group, Inc. All Rights Reserved

Agreement for the Relinquished Property. Exchange Funds wired to LES and not received by LES by 1:00 p.m. Eastern Time will not begin to accrue interest pursuant to paragraph 3(a) below until the next business day on which they are received prior to 1:00 p.m. Eastern Time. Exchange Funds delivered to LES by check will not begin to accrue interest pursuant to paragraph 3(a) below until the second business day after receipt of the check by LES. If the Exchange Funds are to be held less than 48 hours, then no interest shall be paid to Taxpayer on the Exchange Funds.

(b)    LES shall make payments from the Exchange Funds to acquire the Replacement Property or Properties identified in accordance with the Notice(s) of Identification to be completed by Taxpayer on or before midnight of the 45th day after the transfer of the Relinquished Property, and received from or on behalf of Taxpayer pursuant to Paragraph 4, including the payment of deposit or option fees provided in the purchase agreement for the purchase of the Replacement Property (the "Replacement Property Contract"). Further, but only to the extent consistent with paragraph (g)(6) of Treas. Reg. 1.1031(k)-1, LES in its sole discretion may i) release any items that a seller may receive as a consequence of the disposition of property that are not included in the amount realized from the disposition of property, ii) pay any transactional items that relate to the disposition of the Relinquished Property or the acquisition of the Replacement Property and appear under local standards in the typical closing statement as the responsibility of a Buyer or Seller. (Taxpayer acknowledges such transactional items may constitute taxable boot.)

(c)    Subject to the investment protocol described in Paragraph 3 below, LES shall have sole and exclusive possession, dominion, control and use of all Exchange Funds, including interest, if any, earned on the Exchange Funds until the first business day after the earliest of the following to occur: (i) the end of the Identification Period, as hereafter defined, if Taxpayer has not identified the Replacement Property or has properly revoked in writing any identifications of Replacement Property; (ii) after Taxpayer has received all the Replacement Property identified pursuant to Section 4 and which Taxpayer is entitled to under this Agreement; (iii) the earlier of midnight of the date which is 180 days after the transfer of the Relinquished Property to Recipient or the due date (including extension) of Taxpayer's return of the tax imposed by chapter 1 of subtitle A of the Internal Revenue Code of 1986, as amended, for the taxable year in which the transfer of the Relinquished Property occurs (the "Exchange Period"); (the dates described in (i)–(iii) each referred to as a "Termination Date"). This agreement i) expressly limits the Taxpayer's rights to receive, pledge, borrow or otherwise obtain the benefits of money or other property held by the qualified intermediary, and ii) expressly limits the Taxpayer's rights to receive interest or growth factor, all as provided in paragraph (g)(6) of Treas. Reg. 1.1031(k)-1. Taxpayer shall have no right, title, or interest in or to the Exchange Funds or any earnings thereon and Taxpayer shall have no right, power, or option to demand, call for, receive, pledge, borrow or otherwise obtain the benefits of any of Exchange Funds, including interest earned on the Exchange Funds except that the balance of Exchange Funds and interest held by LES after applying the same in accordance with this Exchange Agreement shall be paid to Taxpayer on the applicable Termination Date. Provided, however, in no event shall any of the foregoing be deemed a Termination Date prior to the expiration of the Identification Period or as otherwise provided under Treasury Regulation Section 1.1031(k)-1(g)(6).

2008 LandAmerica Financial Group, Inc. All Rights Reserved

3.      Investment of Exchange Funds.

(a)      LES will deposit the Exchange Funds in a Citibank Insured Money Market Account maintained at Citibank N.A., 244 Main Street, White Plains, New York, associated with the Taxpayer's name and Taxpayer's taxpayer identification number.   The funds will be available from the first business day following receipt of funds via wire transfer or from the third business day after receipt of the check if sent by check.   LES and Taxpayer agree that all of the earnings attributable to the Taxpayer's Exchange Funds shall be paid to Taxpayer.   Therefore earnings on Citibank Insured Money Market Account, if not applied to the acquisition of the Replacement Property identified by Taxpayer pursuant to Paragraph 4, shall be paid to Taxpayer after the Termination Date.   Citibank indicates earnings on the account, at an annualized rate currently equal to the Federal Funds Rate - 100 bps per annum, are based on an index of an internal Citibank, N.A. adjustable rate.   Citibank indicates the rate is anticipated to adjust up or down when and to the extent the target Federal Funds Rate set by the Federal Open Market Committee is adjusted, and Citibank also reserves the right to adjust the same up or down on the beginning of each calendar month in response to changes in other market factors, including without limitation 90 day LIBOR. The above account is a sub-account under an existing master account LES previously established with Citibank, N.A.  Citibank, N.A. may pay a fee and/or earnings on the master account to LandAmerica 1031 Exchange Services, Inc. as consideration for LandAmerica 1031 Exchange Services, Inc. depositing funds in Citibank Insured Money Market Account.  Taxpayer acknowledges and agrees that the amount of the Exchange Funds may be in excess of the maximum amount of deposit insurance carried by the depository institution indicated above; however, LES shall not be responsible for, and Taxpayer hereby agrees to and does hold harmless, indemnify, and defend LES from and against any loss, lack of liquidity, diminution in value, or failure to achieve a greater profit as a result of such investments.  Taxpayer acknowledges and agrees that the amount of the Exchange Funds may be in excess of the maximum amount of deposit insurance carried by the depository institution indicated above, and/or may be invested in uninsured obligations, and LES shall have no duty to invest the Exchange Funds, and interest earned thereon, in insured obligations or to obtain additional insurance.

(b)      Citibank N.A. shall file information returns reporting as taxable income to Taxpayer the earnings attributable to the account paid to Taxpayer during any calendar year on such returns, reports, and other filings as are required by applicable law.  Lubexpress Land Company, Inc. represents and warrants to Citibank N.A. that its taxpayer identification number is ████5977.  Lubexpress Operating Company, Inc. represents and warrants to Citibank N.A. that its taxpayer identification number is ████4656.  Taxpayer will recognize such earnings attributable to the account, if any, as taxable income to Taxpayer regardless of whether such interest or other earnings are used to acquire Replacement Property. Neither LES nor Citibank N.A. shall have any obligation to pay any income, gains or other taxes that may be imposed with respect to any of the transactions contemplated by this Exchange Agreement. Taxpayer further certifies under penalties of perjury that Taxpayer is not a "foreign person" as defined by Section 1445 of the Code and the regulations promulgated thereunder, and that the Taxpayer is not subject to backup withholding.

© 2008 LandAmerica Financial Group, Inc. All Rights Reserved

4.    Identification of Replacement Property.

(a)    On or before midnight of the date that is forty-five (45) days after the date of the transfer of the Relinquished Property (in the event there is more than one Relinquished Property, forty-five (45) days after the transfer of the first Relinquished Property) to or on behalf of LES (the "Identification Period"), Taxpayer shall identify the Replacement Property to be received by Taxpayer in exchange for the Relinquished Property.  Such identification shall be effectuated by one or more Notices of Identification signed by Taxpayer.  Notices of Identification shall be in writing and shall be hand delivered, mailed (certified, return receipt requested), or sent by facsimile to LES or to any other party involved in the exchange other than Taxpayer or a disqualified person before the end of the Identification Period.  Taxpayer shall give LES prompt written notice of any changes, deletions, or additions and may revoke a Notice of Identification only by a written notice (a "Notice of Revocation") signed by the Taxpayer and hand delivered, mailed (certified, return receipt requested), or sent by facsimile to LES before the end of the Identification Period.  To be effective, a Notice of Identification sent to LES by facsimile must be sent to the facsimile number shown in Paragraph 9.  Any property for which the appropriate assignment of rights is received by LES and, as to such assignment, written notice to all parties is given by Exchangor, and which is acquired within the identification period, shall be deemed identified without more.

(b)    When LES receives the Notice of Identification, it will sign such Notice of Identification, indicating its proper receipt within the Identification Period.  Taxpayer agrees that the Replacement Property shall be identified on the Notice of Identification in accordance with the following principles:

(i)    Taxpayer shall unambiguously describe the Replacement Property using either its complete legal description, complete street address, Assessor's Parcel Number, or distinguishable name.

(ii)    Taxpayer shall identify only that number of Replacement Properties which meets one of the following "rules":  (x) three (3) properties without regard to the fair market value of the properties; (y) any number of properties so long as their aggregate fair market value as of the end of the Identification Period does not exceed two hundred percent (200%) of the aggregate fair market value of the Relinquished Property as of the date such Relinquished Property was transferred by Taxpayer; or (z) any number of properties without regard to their fair market value so long as Taxpayer receives identified Replacement Properties constituting at least ninety-five percent (95%) of the aggregate fair market value of all identified Replacement Properties before the end of the Exchange Period.

TAXPAYER HEREBY ACKNOWLEDGES THAT TAXPAYER HAS DISCUSSED THE REGULATION PROVISIONS RELATED TO IDENTIFICATION OF ONE OR MORE REPLACEMENT PROPERTIES WITH TAXPAYER'S TAX ADVISOR AND LES IS ACTING SOLELY AS THE INTERMEDIARY AND HAS NOT OFFERED OR PROVIDED ANY TAX ADVICE TO TAXPAYER.

5.    Acquisition of Replacement Property.

©2008 LandAmerica Financial Group, Inc. All Rights Reserved

(a)     Taxpayer shall have the sole duty and obligation to identify Replacement Property and enter into such contracts and agreements as may be necessary or proper to permit LES to acquire such Replacement Property. At or before the closing, Taxpayer directly or via a disregarded entity(ies) or agent, or via ownership of, or of an undivided fractional interest in, what is commonly referred to as a "grantor trust", shall assign its rights in but not its obligations under the Replacement Property Contract to LES. However, LES shall have no obligation to accept such an assignment unless (i) LES can terminate the Replacement Property Contract by the payment of liquidated damages in an amount not to exceed the Exchange Funds less any sum estimated in good faith by LES as being necessary to pay any fees then earned by LES for its services hereunder and to reimburse any expenses then or to be incurred by LES hereunder, (ii) the Seller of the Replacement Property agrees in writing to deed the Replacement Property as directed by LES, (iii) the Seller of the Replacement Property consents in writing to the assignment of Taxpayer's rights in the Replacement Property Contract to LES, and (iv) at the time of such assignment, the amount of the Exchange Funds and any additional funds paid by or on behalf of Taxpayer is sufficient to satisfy the total costs and expenses to be incurred by LES in acquiring the Replacement Property and conveying it to Taxpayer (the "Replacement Cost"), including, without limitation, the aggregate amount of all deposits and expenditures by LES in respect to the purchase price, real estate commissions, prorations of income and expenses, closing costs, title insurance premiums, escrow fees, and any other amounts otherwise chargeable to LES in connection with the acquisition and conveyance of the Replacement Property to Taxpayer, but excluding any existing mortgage, trust deed or other secured loans which may be assumed or taken subject to by Taxpayer. The assignment shall be made using the form of assignment approved in form and substance by LES. Taxpayer shall give written notice of the assignment provided for in this Paragraph 5(a) to all parties to the Replacement Property Contract being assigned on or before the closing of the subject Replacement Property and shall obtain written acknowledgment from all such parties that the notice of assignment was received prior to such closing by having such parties execute the acknowledgment at the bottom of said assignment. Taxpayer shall provide LES at least three (3) business days prior notice of any scheduled closing of a Replacement Property. In order to provide timely wiring of Exchange Funds, unconditional and proper wiring instructions must be provided by Taxpayer to LES in writing no later than three business days before the day the wire is to be initiated, with the same to be acknowledged in writing by the Taxpayer unless Taxpayer has made alternative arrangements with LES.

(b)     LES shall acquire and transfer, or cause to be transferred, to Taxpayer, and Taxpayer agrees to accept the Replacement Property(ies) identified by Taxpayer pursuant to Paragraph 4. In the event the Replacement Cost for any Replacement Property exceeds the Exchange Funds, Taxpayer shall deliver to LES just prior to any closing on a Replacement Property, the amount of the deficiency, as determined by LES in its sole discretion, in collected funds, or shall provide assurances acceptable to LES, in its sole discretion, that sufficient funds will be available at the Replacement Property closing to satisfy the deficiency. LES shall not be required in connection with the acquisition of any property or properties to (i) assume any loan, mortgage, liability or other obligation, or (ii) pay any cash in excess of the Exchange Funds; or (iii) take legal title to any property or properties. All such matters shall be the sole duty and obligation of Taxpayer, and Taxpayer shall indemnify, hold harmless, and defend LES from any and all actions, claims, liabilities, costs, and expenses including costs of investigation, court costs and

©2008 LandAmerica Financial Group, Inc. All Rights Reserved

attorneys' fees and disbursements in connection with the transactions contemplated by this Exchange Agreement.

6. <u>Duties of LES</u>. It is understood and agreed by the parties to this Exchange Agreement that:

(a) LES has entered into this Exchange Agreement with the intention of being a "qualified intermediary" within the meaning of Section 1.1031(k)-1(g)(4)(iii) of the Regulations on the date hereof and shall use its best efforts to retain that status until all of the Exchange Funds have been disbursed in accordance with this Exchange Agreement. LES and Taxpayer acknowledge and agree that this Exchange Agreement is intended to satisfy the "safe harbor" provisions of Section 1.1031(k)-1(g)(4) of the Regulations.

(b) LES IS ENTERING INTO THIS EXCHANGE AGREEMENT SOLELY FOR THE PURPOSE OF FACILITATING TAXPAYER'S EXCHANGE OF THE RELINQUISHED PROPERTY FOR THE REPLACEMENT PROPERTY. NONE OF LES' ACTIONS UNDER THIS EXCHANGE AGREEMENT SHALL CONSTITUTE LEGAL, TAX OR OTHER ADVICE OR REPRESENTATIONS TO TAXPAYER OR ANY OTHER PERSON OR ENTITY. LES MAKES NO REPRESENTATIONS REGARDING THE TAX CONSEQUENCES OF THE TRANSACTIONS CONTEMPLATED BY THIS EXCHANGE AGREEMENT, INCLUDING QUALIFICATION OF THE TRANSACTIONS SET FORTH HEREIN AS A LIKE-KIND EXCHANGE UNDER SECTION 1031 OF THE CODE OR ANY OTHER MATTER. TAXPAYER HEREBY REPRESENTS TO LES, AND ACKNOWLEDGES THAT LES IS RELYING ON SUCH REPRESENTATION IN EXECUTING THIS EXCHANGE AGREEMENT, THAT TAXPAYER HAS EXECUTED THIS EXCHANGE AGREEMENT BASED ON THE ADVICE OF TAXPAYER'S LEGAL AND TAX ADVISERS WITH RESPECT TO ALL ASPECTS OF THIS EXCHANGE AGREEMENT AND THE TRANSACTIONS CONTEMPLATED THEREBY, INCLUDING BY WAY OF ILLUSTRATION, AND NOT LIMITATION, FEDERAL, STATE, AND LOCAL TAX CONSEQUENCES, AND EXPRESSLY RELEASES LES FROM AND COVENANTS NOT TO SUE LES FOR ANY LIABILITY WITH RESPECT THERETO, EXCEPT FOR LES' WILLFUL MISCONDUCT, GROSS NEGLIGENCE OR FRAUD.

(c) LES shall only be obligated to act as an intermediary in accordance with the terms and conditions of this Exchange Agreement and shall not be bound by any other contract or agreement, whether or not LES has knowledge of any such contract or agreement or of its terms or conditions. LES has undertaken to perform only such duties as are expressly set forth herein, and no additional duties or obligations shall be implied hereunder or by operation of law or otherwise.

(d) LES shall not be liable to Taxpayer or any person or entity for any damages, losses, costs, expenses, or taxes that it or they may incur as a result of any act or omission of LES under this Exchange Agreement unless and then only to the extent such damages, losses, expenses, or taxes are caused by LES' willful misconduct, gross negligence or fraud. LES shall not incur any obligation or liability with respect to (i) any action taken or omitted in good faith upon the advice of its counsel or counsel for any other party hereto, given with respect to any questions relating to the duties and responsibilities of LES under this Exchange Agreement, or (ii) any action taken or

© 2008 LandAmerica Financial Group, Inc. All Rights Reserved

omitted in reliance upon any instrument, including due execution thereof or the identity or authority of any person executing such instrument, its validity and effectiveness, but also as to the truth and accuracy of any information contained therein that LES shall, in good faith, believe to be genuine, to have been signed by a proper person or persons and to conform to the provisions of this Exchange Agreement.

(e)    Except for damages, losses, or expenses caused by LES' willful misconduct, gross negligence or fraud, Taxpayer shall indemnify, hold harmless, and defend LES from and against any and all actions, suits, claims, charges, costs, losses, damages, liabilities, expenses, including costs of investigation, court costs, and attorneys' fees and disbursements that may be brought or imposed upon LES in connection with its actions hereunder, including any litigation arising in connection with this Exchange Agreement or involving the subject matter hereof as and when incurred. In no event shall LES be liable for special or consequential damages, whether or not apprised of the same. This obligation shall survive termination of this Exchange Agreement.

(f)    Should any dispute arise with respect to the delivery or ownership or right of possession of any of the Exchange Funds, LES is authorized and directed to retain in its possession without liability to any person or entity, all or any part of the Exchange Funds until such dispute is settled either by mutual written agreement of the parties concerned or by a final order, decree or judgment of a court of competent jurisdiction in the United States of America as to which time for appeal has expired and no appeal has been perfected, but LES shall be under no duty whatsoever to institute or defend any such proceedings.

(g)    LES shall not, by act, delay, omission or otherwise, be deemed to have waived any right or remedy it may have either under this Exchange Agreement or generally, unless such waiver be in writing and signed by LES, and such waiver shall constitute a waiver only to the extent expressly set forth therein. A waiver by LES under the terms of this Exchange Agreement shall not be construed as a bar to, or a waiver of, the same or any other such right or remedy that it would otherwise have on any other occasion.

7.    Facilitation Fee. Upon execution hereof, or as a separately stated expense paid off the Relinquished Property settlement statement, Taxpayer shall pay LES a nonrefundable set-up fee of $1,200. In addition, Taxpayer shall reimburse LES for any and all costs paid or incurred by LES in connection with acting as an exchange facilitator pursuant to this Exchange Agreement. There will be no additional closing fees due to be paid for any additional Replacement Property.

8.    Conditions Precedent. LES' obligations under this Exchange Agreement shall be subject, to the extent not waived by LES, to (i) the Taxpayer and all other parties to the transactions contemplated herein performing all obligations and complying with all conditions required by or otherwise set forth in this Exchange Agreement; (ii) all proceedings to be taken by the parties with respect to the transactions contemplated herein being taken pursuant to valid authority, being duly authorized and approved and being evidenced in a manner reasonably satisfactory in form and substance to LES; (iii) no statute, rule, regulation, court order, administrative order, or regulation being proposed, enacted, or in effect, which would or might

2008 LandAmerica Financial Group, Inc. All Rights Reserved

restrain or prohibit the transactions contemplated hereby or that would seek to prohibit, delay or challenge any such transactions.

9.    Notices.  Each notice, instruction or other certificate required or permitted by the terms hereof shall be in writing and shall be communicated by hand delivery, facsimile, Federal Express or another similar overnight document delivery service, or United States mail, postage prepaid (certified, return receipt requested), to the parties at the following addresses:

If to Taxpayer:    Lubexpress Operating Company, Inc.
409 North Avenue East
Cranford, New Jersey 07016
Attention: Robert Bridgeman
Facsimile: (908) 272-1172
Email: rbirdgeman@lubexpress.com

with a copy to:    Margulies Wind
Harborside Plaza 10
3 Second Street, Suite 1201
Jersey City, New Jersey 07311
Attention: Jack Jay Wind, Esq.
Facsimile: (201) 333-1110
Email: jjw@mwhlawfirm.com

If to LES:    LandAmerica 1031 Exchange Services, Inc.
140 East 45th Street
New York, New York 10017
Attention: Matthew Narby
Facsimile: (212) 697-5346
Email: mnarby@landam.com

Any such notice, request or consent shall be deemed to have been given or made when delivered in person to the party to whom the communication is addressed, or when sent by facsimile to such party at the address indicated, or on the next business day after being sent by Federal Express or similar overnight document delivery service or on the third day after the postmark date of mailing when sent by certified mail. Any party may change the address at which it is to receive notices by so advising the other parties in writing. To be effective, any such notice, request or consent sent by facsimile must be sent to the facsimile number shown above.

10.    Taxpayer's Representations.  Taxpayer hereby represents to LES as follows:

(a)    Taxpayer has held the Relinquished Property for the purposes of productive use in a trade or business or investment and has not held such property primarily for sale or personal use. Taxpayer intends to hold the Replacement Property for purposes of productive use in a trade or business or investment and will not hold such property primarily for sale or personal use.

©2008 LandAmerica Financial Group, Inc. All Rights Reserved

(b)    Taxpayer will not purchase any Replacement Property from a related person as such term is defined in Section 1031(f)(3) of the Code without having first consulted with a tax advisor familiar with the intent and application of 1031(f).

(c)    Taxpayer acknowledges that for complete tax deferment under Section 1031 of the Code, Taxpayer must trade up or trade even in value and equity. Any cash and/or other non like-kind property Taxpayer receives from the exchange transaction may be taxable.

(d)    The aggregate fair market value of any incidental property being transferred with the Replacement Property does not exceed fifteen percent (15%) of the aggregate fair market value of the Replacement Property and such incidental property is typically transferred with the Replacement Property, and such incidental property is typically transferred with the Replacement Property.

11.    Miscellaneous. This Exchange Agreement may be modified, altered, or amended only by the written agreement of all the parties. This Exchange Agreement shall be governed by and construed in accordance with the applicable laws of the Commonwealth of Virginia without regard to the conflict of laws provisions thereof, (except with respect to matters of corporation law in which case the law of the state of domestication shall apply), and shall be binding upon and shall inure to the benefit of the parties and their respective successors in interest and permitted assigns. Each of the parties hereby consents and submits to personal jurisdiction in the Commonwealth of Virginia for all matters that may arise with respect to this Exchange Agreement, and waives any and all rights to object to jurisdiction within the Commonwealth of Virginia. The parties consent to venue in the Circuit Court of the City of Richmond, Virginia and, to the extent there is subject matter jurisdiction, in the Richmond Division of the United States District Court for the Eastern District of Virginia. No party hereto shall make or raise any claim of forum non conveniens with respect to any court located in the Commonwealth of Virginia as to any litigation regarding this Exchange Agreement. The paragraph headings and subheadings contained in this Exchange Agreement are for convenience and reference only, and shall not in any way affect the meaning or interpretation of this Exchange Agreement. This Exchange Agreement may be executed in any number of counterparts and each shall be considered an original and together they shall constitute one agreement. Facsimile signatures on this Exchange Agreement or any other document called for or contemplated in this Exchange Agreement shall be deemed original signatures. This Exchange Agreement contains the entire understanding between and among the parties hereto. Taxpayer may not assign this Exchange Agreement. Should a court of competent jurisdiction find any portion of this Exchange Agreement to be invalid or unenforceable, the remaining terms and provisions hereof shall not be affected and shall remain in full force and effect. Each party hereto and their legal counsel have reviewed this Exchange Agreement and have had an opportunity to revise (or request revision of) this Exchange Agreement and, therefore, any usual rules of construction requiring that ambiguities are to be resolved against a particular party shall not be applicable in the construction and interpretation of this Exchange Agreement. Should the language of any provision herein be deemed to negate a like-kind exchange within the meaning of Section 1031 as to Taxpayer, it shall be interpreted and applied in order to comply with Section 1031 of the Code, Regulations, case law, and administrative pronouncements interpreting the Code and Regulations.

2008 LandAmerica Financial Group, Inc. All Rights Reserved

12.    Waiver of Jury Trial. THE PARTIES WAIVE TRIAL BY JURY OF ANY AND ALL DISPUTES ARISING HEREUNDER OR RELATED HERETO AND AGREE THAT ALL SUCH DISPUTES SHALL BE TRIED AND DECIDED SOLELY BY A JUDGE SITTING WITHOUT A JURY.

13    Presidential Declared Disasters and Terrorist Military Actions. Notwithstanding anything to the contrary herein, in the event of a Presidential declared disaster or terrorist military action for which the IRS publishes a Notice and/or Service News Release and with regard to which the Taxpayer is an "affected taxpayer", the forty-five (45) day identification period and the one hundred and eighty (180) day exchange period shall be deemed to be and shall be extended as provided in Rev. Proc. 2007-56 (Section 17), to such later date as authorized by the Revenue Procedure in reference to the IRS News Release or similar authoritative guidance. In such event the restrictions on distribution set forth herein, including as provided for in paragraph (g)(6) of Treas. Reg. 1.1031(k)-1, shall apply without interruption during the extensions.

[Remainder of page intentionally left blank]

© 2008 LandAmerica Financial Group, Inc. All Rights Reserved

IN WITNESS WHEREOF, the parties hereto have hereby executed this Agreement as of the day and year first set forth above.

LANDAMERICA 1031 EXCHANGE SERVICES, INC.

By:

Name:  Matthew Narby, CES
Title:  Vice President

TAXPAYER:

LUBEXPRESS LAND COMPANY, INC.

By:                                             ███████ 5977

Name:  Robert K. Bridgeman                Tax ID No.
Title:  President

LUBEXPRESS OPERATING COMPANY, INC.

By:                                             ██████ 4556

Name:  Robert K. Bridgeman                Tax ID No.
Title:  President


ROBERT K. BRIDGEMAN

         by Alan Margulies P&A

ROBERT E. MARGULIES


ALAN C. MARGULIES

© 2008 LandAmerica Financial Group, Inc. All Rights Reserved

LES File No. NYE-08-001081-00

## ACKNOWLEDGEMENT

It is hereby acknowledged that pursuant to Section 2(c) of the Exchange Agreement dated as of October 3, 2008 (the "Exchange Agreement"), by and between LANDAMERICA 1031 EXCHANGE SERVICES, INC. ("LES") and LUBEXPRESS LAND COMPANY, INC. and LUBEXPRESS OPERATING COMPANY, INC., each a Delaware corporation (collectively, the "Taxpayer") and in accordance with the restrictions set forth below, LES is required to hold the Exchange Funds including Taxpayer's earnings thereon, if any, until the Termination Date. The Exchange Funds including Taxpayer's earnings thereon, if any, shall be released to the Taxpayer only in accordance with the provisions of the Exchange Agreement, this Acknowledgement and Section 1.1031(k)-1(g)(6) of the Treasury Regulations.

All terms used herein shall have the same meaning as such terms are defined in the Exchange Agreement.

LES URGES TAXPAYER TO CONSULT WITH ITS TAX AND LEGAL ADVISORS REGARDING THESE RESTRICTIONS. TAXPAYER HAS READ AND UNDERSTANDS THE LIMITATIONS ON ACCESS TO EXCHANGE FUNDS AND ACKNOWLEDGES AND AGREES TO THE TERMS OF THIS ACKNOWLEDGEMENT.

TAXPAYER:

LUBEXPRESS LAND COMPANY, INC.

By: _____
    Name:  Robert K. Bridgeman
    Title:   President

LUBEXPRESS OPERATING COMPANY, INC.

By: _____
    Name:  Robert K. Bridgeman
    Title:   President

_____
ROBERT K. BRIDGEMAN

_____
ROBERT E. MARGULIES

_____
ALAN C. MARGULIES

FM 05                                           1

2008 LandAmerica Financial Group, Inc. All Rights Reserved

LES File No. NYE-08-001081-00

# ASSIGNMENT AND ACCEPTANCE
# PURCHASE AGREEMENT

THIS ASSIGNMENT AND ACCEPTANCE (this "Assignment") is made as of October 3, 2008, by and between LUBEXPRESS LAND COMPANY, INC. and LUBEXPRESS OPERATING COMPANY, INC., each a Delaware corporation (collectively "Assignor"), and LANDAMERICA 1031 EXCHANGE SERVICES, INC. ("Assignee").

## RECITALS

WHEREAS, Assignor and MEADOWBROOK REALTY LLC ("Recipient"), entered into that certain Purchase and Sale Agreement (the "Purchase Agreement"), dated as of July 15, 2008, between Assignor, as seller, and Recipient, as purchaser, for the purchase and sale of certain property more particularly described in the Purchase Agreement (the "Relinquished Property");

WHEREAS, Assignor and Assignee have entered into an Exchange Agreement dated as of October 3, 2008 (the "Exchange Agreement"), in order to effect the transfer of the Relinquished Property and acquisition of certain replacement property as part of an integrated, interdependent transaction between Assignor and Assignee which qualifies as a like-kind exchange in accordance with Section 1031 of the Internal Revenue Code of 1986, as amended;

WHEREAS, Assignor wishes to assign the Purchase Agreement to Assignee, and Assignee has agreed to accept such assignment, on the terms and conditions contained herein pursuant to the Exchange Agreement.

## AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.    Assignment.    Assignor assigns, transfers and conveys to Assignee all of Assignor's right, title and interest in and to, but not the obligations under the Purchase Agreement, including any security deposit paid in connection with the Purchase Agreement. Nothing herein shall be deemed to be a waiver or modification of the obligations of Assignor to Recipient under the Purchase Agreement.

2.    Requirements.    The assignment described in paragraph 1 entails the following requirements: (a) title to the Relinquished Property shall be conveyed to Recipient by deed from Assignor; (b) Assignor hereby releases and indemnifies Assignee from any and all claims or causes of action that any party may have against Assignee as a result of Assignee's accepting the assignment described in paragraph 1 above; (c) Recipient shall pay to Assignee the net proceeds due Assignor pursuant to the Purchase Agreement, in accordance with wiring instructions to be furnished prior to closing; (d) compliance by Assignor of the terms and conditions stated in the

FM 08 Citi SD

1

2008 LandAmerica Financial Group, Inc. All Rights Reserved

Exchange Agreement; and (e) Assignee's review and approval of Assignor's closing instructions and any of the documents related to the transaction.

      3.      <u>Miscellaneous</u>. Except as expressly provided in this Assignment, the terms of the Purchase Agreement shall remain in full force and effect. This Assignment shall be binding on, and inure to the benefit of, the parties hereto and their successors and assigns. This Assignment may be executed in any number of counterparts and each shall be considered an original and together they shall constitute one agreement. Facsimile signatures on this Assignment shall be deemed original signatures.

[Remainder of page intentionally left blank]

© 2008 LandAmerica Financial Group, Inc. All Rights Reserved

IN WITNESS WHEREOF, the parties hereto have hereby executed this Assignment as of the day and year first set forth above.

ASSIGNEE:

LANDAMERICA 1031 EXCHANGE SERVICES, INC.

By:

    Name:  Matthew Narby, CES
    Title:   Vice President

ASSIGNOR:

LUBEXPRESS LAND COMPANY, INC.

By:

    Name:  Robert K. Bridgeman
    Title:   President

LUBEXPRESS OPERATING COMPANY, INC.

By:

    Name:  Robert K. Bridgeman
    Title:   President

ROBERT K. BRIDGEMAN

ROBERT E. MARGULIES

ALAN C. MARGULIES

2008 LandAmerica Financial Group, Inc. All Rights Reserved

LES File No. NYE-08-001081-00

# NOTICE OF ASSIGNMENT OF
# PURCHASE AND SALE AGREEMENT

October 3, 2008

Meadowbrook Realty LLC
25 Main Street
Hartford, Connecticut 06108

      Re:    Assignment of Purchase and Sale Agreement

To Whom It May Concern:

      This letter is written to inform you that LUBEXPRESS LAND COMPANY, INC. and
LUBEXPRESS OPERATING COMPANY, INC. have assigned all of its right, title and interest in
and to, but not the obligations under the Purchase and Sale Agreement dated as of July 15, 2008,
relating to property to be relinquished by them pursuant thereto to LandAmerica 1031 Exchange
Services, Inc. in order to facilitate a like-kind exchange under Section 1031 of the Internal
Revenue Code of 1986, as amended.

Very truly yours,

LUBEXPRESS LAND COMPANY, INC.

By: _____
      Name:  Robert K. Bridgeman
      Title:   President

LUBEXPRESS OPERATING COMPANY, INC.

By: _____
      Name:  Robert K. Bridgeman
      Title:   President

Receipt Acknowledged:

MEADOWBROOK REALTY LLC,
a New Jersey limited liability company

By: _____      Date: 10\3\08
      Name:
      Title:

FM 09CitiSD                                    1

© 2008 LandAmerica Financial Group, Inc. All Rights Reserved

LES File No. NYE-08-001081-00

## DIRECT DEEDING INSTRUCTIONS
## RELINQUISHED PROPERTY

LUBEXPRESS LAND COMPANY, INC. and LUBEXPRESS OPERATING COMPANY, INC., each a Delaware corporation (collectively "Taxpayer"), and LANDAMERICA 1031 EXCHANGE SERVICES, INC. ("LES") have entered into an Exchange Agreement dated as of October 3, 2008 (the "Exchange Agreement") involving the exchange of that certain property more particularly described in the Exchange Agreement (the "Relinquished Property").

Upon or shortly after acquisition of the Relinquished Property, LES intends to transfer the Relinquished Property to MEADOWBROOK REALTY LLC ("Recipient").

Accordingly, in order to save duplicate recording fees, escrow costs and other like charges, LES hereby instructs Taxpayer and Taxpayer hereby agrees to execute a deed to the Relinquished Property in favor of Recipient. In addition, Taxpayer agrees to execute all bills of sale and assignments of leases, security deposits, trade names and other assets comprising the Relinquished Property, which are necessary to close the transaction described herein directly in favor of Recipient.

[Remainder of page intentionally left blank]

FM 10

1

2008 LandAmerica Financial Group, Inc. All Rights Reserved

The above transfers are part of an integrated, interdependent, mutual and reciprocal plan intended to effectuate an exchange by Taxpayer of like-kind real properties pursuant to and in accordance with the provisions of the Internal Revenue Code Section 1031 and to the extent applicable, state tax statutes.

LANDAMERICA 1031 EXCHANGE SERVICES, INC.

By: _____

Name:  Matthew Narby, CES
Title:   Vice President


TAXPAYER:

LUBEXPRESS LAND COMPANY, INC.

By: _____
Name:  Robert K. Bridgeman
Title:   President

LUBEXPRESS OPERATING COMPANY, INC.

By: _____
Name:  Robert K. Bridgeman
Title:   President

_____
ROBERT K. BRIDGEMAN

_____
ROBERT E. MARGULIES

_____
ALAN C. MARGULIES

2008 LandAmerica Financial Group, Inc. All Rights Reserved

LES File No.:NYE-08-001081-00

## CERTIFICATION OF NONFOREIGN STATUS BY
## CORPORATION, PARTNERSHIP, TRUST OR ESTATE

Section 1445 of the Internal Revenue Code provides that a transferee of a U.S. real property interest must withhold tax if the transferor is a foreign person. For U.S. tax purposes (including section 1445), the owner of a disregarded entity (which has legal title to a U.S. real property interest under local law) will be the transferor of the property and not the disregarded entity. To inform the transferee that withholding of tax is not required upon the disposition of a U.S. real property interest by LUBEXPRESS LAND COMPANY, INC. (hereinafter referred to as "Transferor"), the undersigned hereby certifies the following on behalf of Transferor:

1. Transferor is not a foreign corporation, foreign partnership, foreign trust, or foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations);

2. Transferor is not a disregarded entity as defined in §1.1445–2(b)(2)(iii);

3. Transferor's U.S. employer identification number is ███5977; and

4. Transferor's office address is:    409 North Avenue East
                                        Cranford, New Jersey 07016

Transferor understands that this certification may be disclosed to the Internal Revenue Service by transferee and that any false statement contained herein could be punished by fine, imprisonment, or both.

Under penalties of perjury I declare that I have examined this certification and to the best of my knowledge and belief it is true, correct, and complete, and I further declare that I have authority to sign this document on behalf of Transferor.

Date:    October 3, 2008

LUBEXPRESS LAND COMPANY, INC.

By: _____
        Name:  Robert K. Bridgeman
        Title:   President

2008 LandAmerica Financial Group, Inc. All Rights Reserved

LES File No.:NYE-08-001081-00

## CERTIFICATION OF NONFOREIGN STATUS BY
## CORPORATION, PARTNERSHIP, TRUST OR ESTATE

Section 1445 of the Internal Revenue Code provides that a transferee of a U.S. real property interest must withhold tax if the transferor is a foreign person. For U.S. tax purposes (including section 1445), the owner of a disregarded entity (which has legal title to a U.S. real property interest under local law) will be the transferor of the property and not the disregarded entity. To inform the transferee that withholding of tax is not required upon the disposition of a U.S. real property interest by LUBEXPRESS OPERATING COMPANY, INC. (hereinafter referred to as "Transferor"), the undersigned hereby certifies the following on behalf of Transferor:

1. Transferor is not a foreign corporation, foreign partnership, foreign trust, or foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations);

2. Transferor is not a disregarded entity as defined in §1.1445–2(b)(2)(iii);

3. Transferor's U.S. employer identification number is ████4656; and

4. Transferor's office address is:     409 North Avenue East
                                        Cranford, New Jersey 07016

Transferor understands that this certification may be disclosed to the Internal Revenue Service by transferee and that any false statement contained herein could be punished by fine, imprisonment, or both.

Under penalties of perjury I declare that I have examined this certification and to the best of my knowledge and belief it is true, correct, and complete, and I further declare that I have authority to sign this document on behalf of Transferor.

Date:   October 3, 2008

LUBEXPRESS OPERATING COMPANY, INC.

By: _____          _____
    Name:  Robert K. Bridgeman               ROBERT K. BRIDGEMAN
    Title:   President
                                             _____
                                             ROBERT E. MARGULIES

                                             _____
                                             ALAN C. MARGULIES

2008 LandAmerica Financial Group, Inc. All Rights Reserved

## NOTICE OF IDENTIFICATION

(You should consult with your tax advisor or attorney when completing this form)

LandAmerica 1031 Exchange Services, Inc.
140 East 45th Street
New York, New York 10017
Attention: Matthew Narby
Facsimile: (212) 697-5346

Relinquished Property Address:     That certain real property located at the following locations:
(i) 1503 Main Avenue, Clifton, New Jersey; (ii) 458 Paterson Avenue, East Rutherford, New
Jersey; (iii) 300 Route 22 West, Green Brook, New Jersey; (iv) 106 Goffle Road, Hawthorne,
New Jersey; (v) 457-465 9th Avenue, Paterson, New Jersey; (vi) 588 Memorial Highway,
Phillipsburg, New Jersey; and (vii) 52227 Stelton Road, South Plainfield, New Jersey. And, that
certain leasehold interests in certain real property located at the following locations: (i) 20 New
Bridge, Bergenfield, New Jersey; (ii) 84 Route 10, East Hanover, New Jersey; (iii) 24 Parsonage
Road, Edison (Menlo Park), New Jersey; (iv) 1167 Route 23 South, Kinnelon, New Jersey; (v)
378 W. Passaic Street, New Jersey; and (vi) 30-37 Route 22 Center Island, Springfield, New
Jersey.

File Number:  NYE-08-001081-00

In accordance with Section 4 of the Exchange Agreement, I/we hereby identify the following
properties. The properties identified comply with one of the following rules as indicated by the
appropriate check mark below.

( ) The 3 Property Rule

1. _____

2. _____

3. _____

Alternatively, if I/we have identified more than 3 properties, I/we acknowledge that the
aggregate fair market value of those properties cannot exceed 200% of the fair market value of
the relinquished property. The fair market value of the replacement property is listed next to the
location or description.

( ) The 200% Rule                                   Fair Market Value

1. _____            _____

2. _____            _____

3. _____            _____

4. _____            _____

5. _____            _____

FM 15                                       1

2008 LandAmerica Financial Group, Inc. All Rights Reserved

( ) <u>Ninety-Five Percent Rule</u>. Any number of properties without regard to their aggregate fair market value as long as I/we acquire(s) identified Replacement Properties constituting at least ninety-five percent (95%) of the aggregate fair market value of all identified Replacement Properties before the end of the Exchange Period. Please list the properties on a signed and dated attachment.

This Notice of Identification must be received by LES no later than the 45th day after the transfer of the Relinquished Property.

Replacement Property identified in any Notice of Identification must be of "like-kind" with the Property being exchanged. Generally, improved real estate is of "like-kind" with both improved and unimproved real estate and vice versa. Taxpayer is encouraged to consult with Taxpayer's tax adviser before identifying any Replacement Property to ascertain the tax consequences of such identification.

TAXPAYER:

LUBEXPRESS LAND COMPANY, INC.

By: _____          Date: _____
    Name:  Robert K. Bridgeman
    Title:   President

LUBEXPRESS OPERATING COMPANY, INC.

By: _____          Date: _____
    Name:  Robert K. Bridgeman
    Title:   President

_____          Date: _____
ROBERT K. BRIDGEMAN

_____          Date: _____
ROBERT E. MARGULIES

_____          Date: _____
ALAN C. MARGULIES


Receipt Acknowledged:

LANDAMERICA 1031 EXCHANGE SERVICES, INC.

By: _____          Date: _____
    Name:  Matthew Narby, CES
    Title:   Vice President

2008 LandAmerica Financial Group, Inc. All Rights Reserved

## WIRING INSTRUCTIONS FOR CITIBANK N.A.
## (NET PROCEEDS)

| | |
|---|---|
| BANK: | Citibank N.A. |
| BANK ADDRESS: | 244 Main Street |
| | White Plains, New York  10605 |
| ABA NO: | 021 000 089 |
| ACCOUNT NAME: | LandAmerica 1031 Exchange Services |
| ACCOUNT NO: | 99433 89307 |
| | |
| REFERENCE: | TAXPAYER NAME |
| REFERENCE: | File No.  NYE08-001081 |

## WIRING INSTRUCTIONS FOR CITIBANK N.A.
## (LANDAMERICA FEE)

| | |
|---|---|
| BANK: | Citibank N.A. |
| BANK ADDRESS: | 244 Main Street |
| | White Plains, New York  10605 |
| ABA NO: | 021 000 089 |
| ACCOUNT NAME: | LandAmerica 1031 Exchange Services |
| ACCOUNT NO: | 99433 89307 |
| | |
| REFERENCE: | 1031 Fee for NYE08-001081 |