IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

_____
                                    )
IN RE:                              )
                                    )
LANDAMERICA FINANCIAL GROUP,        )   Chapter 11
   INC., et al.,                    )   Case No. 08-35994-KRH
                                    )   Jointly Administered
              Debtors.              )
_____ )


**MOTION TO ALLOW FRONTIER PEPPER'S FERRY, LLC'S PROFESSIONAL FEES
AND EXPENSES AS ADMINISTRATIVE EXPENSES
<u>PURSUANT TO SECTIONS 105, 503(b)(3) AND/OR 503(b)(4)</u>**

Frontier Pepper's Ferry, LLC ("<u>Frontier</u>"), by counsel, and pursuant to 11 U.S.C. §§ 105, 503(b)(3), and/or 503(b)(4), files this Motion to allow Frontier's professional fees and expenses against the estate as administrative expenses, and in support thereof respectfully states as follows:

1.  This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157(b)(2) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

Bruce E. Arkema (VSB No. 18625)
barkema@cantorarkema.com
Kevin J. Funk (VSB No. 65465)
kfunk@cantorarkema.com
Ronald A. Page, Jr. (VSB No. 71343)
rpage@cantorarkema.com
Cantor Arkema, P.C.
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
Telephone: (804) 644-1400
*Counsel to Frontier Pepper's Ferry, LLC*

2. In or about September of 2008, Frontier closed on the sale of a certain property and entered into an Exchange Agreement, dated September 2008 (the "Exchange Agreement"), with LandAmerica 1031 Exchange Services, Inc. ("LES") to effectuate a Section 1031 tax-deferred exchange on replacement properties. Under the Exchange Agreement, Frontier transferred approximately $1,200,000.00 to LES to be held in trust in LES's account maintained at SunTrust Bank in Richmond, Virginia. Incident to dispersals requested by Frontier, the amount held on behalf of Frontier has been reduced to approximately $802,065.89.

3. LES was in the business of serving as a qualified intermediary for exchanges of like-kind property under Section 1031 of the Internal Revenue Code, 26 U.S.C. § 1031 ("Section 1031").

4. On November 26, 2008 (the "Petition Date"), LES and its parent, LandAmerica Financial Group, Inc. ("LFG") filed voluntary petitions under Chapter 11 of the Bankruptcy Code.

5. On December 5, 2008, LES filed the Motion for an Order Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 Establishing Procedures to Settle Claims Involving Segregated Exchange Funds (the "9019 Motion") (Docket #111). The Court heard argument on the 9019 Motion on December 16, 2008. The Court granted the 9019 Motion subject to the approval of the Official Committee of Unsecured Creditors of LandAmerica 1031 Exchange Services, Inc. (the "LES Committee"). In doing so, the Court directed LES and the LES Committee to devise a system for bringing lead cases which would be representative of the various classes of exchangers.

6. On January 7, 2009, the Joint Motion of Debtor and LES Committee for Order Establishing Scheduling Protocol for Adversary Proceedings (Docket #574) was filed seeking

entry of a protocol for adjudicating the lead cases. The Court's Order Establishing Scheduling Protocol for Adversary Cases (Docket #689) was entered on January 16, 2009 (the "Protocol"). The Protocol selected five leads cases: *Millard Refrigerated Services, Inc. v. LandAmerica 1031 Exchange Services, Inc.*, Adv. Proc. No. 08-03147, *Frontier Pepper's Ferry LLC v. LandAmerica Exchange Services, Inc.*, Adv. Proc. No. 08-03148, *HealthCare REIT, Inc. v. LandAmerica 1031 Exchange Services, Inc.*, Adv. Proc. No. 08-03149, *Howard Finkelstein v. LandAmerica 1031 Exchange Services, Inc.*, Adv. Proc. No. 08-03171, and a fifth comingled case to be identified later (the "Lead Case(s)"). The comingled exchangers were divided into three Lead Cases: Type A, Type B, and a comingled exchanger who transferred both cash and non-cash proceeds to LES (the "Hybrid Exchanger(s)"). Frontier represents the Type B comingled exchangers, Howard Finkelstein represents the Hybrid Exchangers, and the Type A comingled exchangers' representative has yet to be identified.

7.  On January 19, 2009, the Unofficial Ad Hoc Committee of Comingled Exchangers (the "Ad Hoc Committee") filed the Motion for Order to Appoint Official Committee of LandAmerica 1031 Exchange Services, Inc. Comingled Exchange Participants, or, in the Alternative, to Allow Comingled Test Case Plaintiffs' Professional Fees and Expenses as Administrative Expenses Pursuant to Sections 503(B)(3) and/or 503(B)(4) (the "Motion") (Docket #694). As the title of the Motion indicates, the Ad Hoc Committee sought the appointment of an official comingled exchanger committee or the alternative relief of allowing the professional fees and expenses of all comingled Lead Case plaintiffs. Despite objections from LES, the LES Committee, and the Official Committee of Unsecured Creditors of LandAmerica Financial Group, Inc. (the "LFG Committee"), the Court found that serving as a Lead Case plaintiff constituted a "substantial contribution" to LES's bankruptcy estate and

3

granted the alternative relief, allowing an application for professional fees and expenses for the unidentified Type A comingled Lead Case to be filed. As a clarification to its ruling, the Court held that upon motion of the other comingled lead case plaintiffs, the Court would rule on allowing an application for their professional fees and expenses.

### Frontier's Professional Fees and Expenses are Administrative Expenses as They Provide a Substantial Contribution to the Bankruptcy Estate of LES

8. 11 U.S.C. § 503(b)(3)(D) and § 503(b)(4) of the Bankruptcy Code allows for a debtor's bankruptcy estate to pay compensation and expenses for professional services when those services substantially contribute to the debtor's bankruptcy estate. Section 503(b) states:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by – . . .
> (D) a creditor . . . in making a substantial contribution in a case under chapter . . . 11 of this title; . . .
> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph… (D) … of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant…

9. Neither the Bankruptcy Code nor the Fourth Circuit provides guidance as to what constitutes "substantial contribution" under §503(b)(3). The factors most often considered in determining whether a substantial contribution is made by a party are: (1) whether the services were rendered solely to benefit the client or to benefit all the parties to the case; (2) whether the services provide a direct, significant, and demonstrable benefit to the estate; and (3) whether the services are duplicative of services rendered by attorneys for the committee, the committee itself, or the debtor and its attorneys. See, e.g., In re Consolidated Bancshares, Inc., 785 F.2d 1249 (5th

Cir. 1986); In re Buttes Gas & Oil Company, 112 B.R. 191, 193-94 (S.D. Tex. 1989). Most courts have held that a creditor's motive in taking actions that benefit the estate has little relevance in determining of whether the creditor has incurred actual and necessary expenses in making a substantial contribution to the case. See, e.g., In re Celotex Corp., 227 F.3d 1336, 1339 (2d Cir. 2000); In re DP Partners, Ltd., 106 F.3d 667, 673 (5th Cir. 1997).

10. Section 503(b)(4) requires that the compensation sought must be reasonable. Courts are directed to consider the time, nature, extent and value of such services – a standard similar to that applied to requests for compensation under § 11 U.S.C. § 330(a)(3) ("In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including [the time, rates, necessity of the services . . .]").

11. Frontier clearly meets the standard as it will obviate the necessity of potentially hundred of trials as to similarly situated comingled exchangers. The entry of the protocol changed the litigation landscape in this case. Instead of potentially hundreds of plaintiffs seeking an adjudication of their individual rights, five Lead Cases were identified to litigate their cases in the hopes of providing rulings which would then be applied across the class which that Lead Case represents.

12. Frontier is not just one plaintiff seeking a determination of the $802,065.89 it has held in trust by LES, it is the comingled exchanger representing the Type B exchange agreement. As the Type B comingled Lead Case, Frontier potentially represents hundreds of other similarly situated exchangers. The concentration of potentially hundreds of cases into one, promises a substantial saving to LES's bankruptcy in the form of drastically reduced litigation expenses.

Further, it represents a substantial savings to the similarly situated comingled exchangers who may not have to litigate their cases.

13. Further, Frontier seeks allowance of its fees and expenses as an administrative expense in order to place it on an even footing with respective counsel for LES, the LES Committee, and the LFG Committee who are going to be paid by the estate of LES. Currently, Frontier bears the burden of litigating a Lead Case which implicates the rights of potentially hundreds of other similarly situated Type B comingled exchangers. This places Frontier is the position of subsidizing the litigation of the rights of the Type B comingled exchangers in addition to the approximately $802,065.89 which LES is holding on its behalf. Given the expedited scheduling provided by the Protocol, litigation of a Lead Case promises to be time consuming and expensive.

14. In granting the Motion, this Court found that the services of the plaintiff which will serve as the Type A comingled Lead Case will provide a substantial contribution to the LES estate. Frontier, as the Type B comingled Lead Case, will provide no less a contribution to the LES estate. Indeed, the Type B comingled Lead Case will arguably provide more of a contribution to the estate as being the most representative of the Lead Cases. Based upon the adversary proceedings filed, the Type B exchange agreements greatly outnumber the Type A exchange agreements. In sheer terms of the number of exchangers, Frontier represents as least as many similarly situated exchangers as the Type A lead case, if not significantly more exchangers.

15. Regardless of whether the Lead Case represents a Type A, Type B, or a Hybrid Exchanger Lead Case, the services rendered by that plaintiff will benefit all parties to the case, specifically by providing a direct, significant and demonstrable benefit to the estate.

16. Frontier requests that the Court allow its fees and costs associated with its litigation of a Lead Case, subject to application and review for reasonableness, and paid in the same manner as counsel and professionals for LES and the LES Committee.

**Waiver of Memorandum of Law**

Pursuant to Local Bankruptcy Rule 9013-1(B), Frontier requests that the requirement that this Motion be accompanied by a separate memorandum be waived.

WHEREFORE, for the reasons set forth herein, Frontier Pepper's Ferry, LLC respectfully requests that this Court enter an Order allowing it to submit an application for its professional fees and expenses to be considered as administrative expenses of the LES estate pursuant to §§ 105, 503(b)(3), and 503(b)(4), and for such other and further relief as the Court may deem just and proper.

Dated: January 23, 2009     Respectfully Submitted,

**FRONTIER PEPPER'S FERRY, LLC**

By     /s/ Ronald A. Page, Jr.

     Counsel

Bruce E. Arkema (VSB No. 18625)
barkema@cantorarkema.com
Kevin J. Funk (VSB No. 65465)
kfunk@cantorarkema.com
Ronald A. Page, Jr. (VSB No. 71343)
rpage@cantorarkema.com
Cantor Arkema, P.C.
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
Telephone: (804) 644-1400
*Counsel to Frontier Pepper's Ferry, LLC*

**CERTIFICATE OF SERVICE**

       I hereby certify that a true copy of the foregoing was served on January 23, 2009 by electronic means on all parties that receive CM/ECF pursuant to the terms of the Amended Case Management Order entered on December 23, 2008, including:

Robert Van Arsdale
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219
Robert.B.Van.Arsdale@usdoj.gov
*Assistant United States Trustee*

Dion W. Hayes
John H. Maddock III
MCGUIRE WOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
dhayes@mcguirewoods.com
jmaddock@mcguirewoods.com
*Counsel for Debtors*

Lawrence O. Kamin
Terence K. McLaughlin
Elizabeth J. Bower
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
lkamin@wilkie.com
tmclaughlin@wilkie.com
ebower@wilkie.com
*Counsel for Debtors*

Jeffrey S. Sabin
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, New York 10022
jeffrey.sabin@bingham.com
*Counsel for the Official Committee of
Unsecured Creditors of
LandAmerica Financial Group, Inc.*

Bruce H. Matson
Christopher L. Perkins
LeCLAIRRYAN
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
bruce.matson@leclairryan.com
christopher.perkins@leclairryan
*Counsel for the Official Committee of
Unsecured Creditors of
LandAmerica Financial Group, Inc.*

Charles R. Gibbs
Keefe M. Bernstein
Sarah Link Schultz
AKIN GUMP STRAUSS
HAUER & FELD LLP
1700 Pacific Ave., Suite 4100
Dallas, Texas 75201
cgibbs@AkinGump.com
kbernstein@AkinGump.com
sschultz@AkinGump.com
*Counsel for the Official Committee of
Unsecured Creditors of
LandAmerica 1031 Exchange Services, Inc.*

Lynn L. Tavenner
Paula S. Beran
Tavenner & Beran, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
ltavenner@tb-lawfirm.com
pberan@tb-lawfirm.com
*Counsel for the Official Committee of
Unsecured Creditors of
LandAmerica 1031 Exchange Services, Inc.*

Yann Geron
Frederick N. Stevens
Fox Rothschild LLP
100 Park Avenue, 15th Floor
New York, New York 10017
ygeron@foxrothschild.com
fstevens@foxrothschild.com
*Counsel for Howard Finkelstein*

Rosa J. Evergreen
Michael L. Bernstein
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004
Rosa.evergreen@aporter.com
Michael.bernstein@aporter.com
    -and-
Randall K. Miller
Nicholas M. DePalma
Arnold & Porter LLP
Suite 900
1600 Tysons Boulevard
McLean, Virginia 22101
Randall.miller@aporter.com
Nicholas.depalma@aporter.com
*Counsel for Health Care REIT, Inc.*

Craig A. Wolfe
Robert S. Friedman
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178
cwolfe@kelleydrye.com
rfriedman@kelleydrye.com
    -and-
David J. Ervin
Kelley Drye & Warren LLP
Washington Harbour, Suite 400
350 K Street N.W.
Washington, D.C. 20007-5108
dervin@kelleydrye.com
*Counsel for Millard Refrigerated Services, Inc.*

By   /s/ Ronald A. Page, Jr.

       Counsel