Bruce E. Arkema (VSB No. 18625)
barkema@cantorarkema.com
Kevin J. Funk (VSB No. 65465)
kfunk@cantorarkema.com
Ronald A. Page, Jr. (VSB No. 71343)
rpage@cantorarkema.com
Cantor Arkema, P.C.
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
Telephone: (804) 644-1400

       -and-
Yann Geron, *Admitted Pro Hac Vice*
ygeron@foxrothschild.com
Fred Stevens, *Admitted Pro Hac Vice*
fstevens@foxrothschild.com
Fox Rothschild LLP
100 Park Avenue, Suite 1500
New York, New York 10017
Telephone: (212) 878-7900

*Counsel to Howard Finkelstein*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| IN RE: | ) ) ) | |
| LANDAMERICA FINANCIAL GROUP, INC., et al., | ) ) ) ) | Chapter 11<br>Case No. 08-35994-KRH<br>Jointly Administered |
| Debtors. | ) ) | |

**MOTION TO ALLOW HOWARD FINKELSTEIN'S PROFESSIONAL FEES AND
EXPENSES AS ADMINISTRATIVE EXPENSES
PURSUANT TO SECTIONS 105, 503(b)(3) AND/OR 503(b)(4)**

Howard Finkelstein ("Finkelstein"), by counsel, and pursuant to 11 U.S.C. §§ 105, 503(b)(3), and/or 503(b)(4), files this Motion to allow Finkelstein's professional fees and expenses against the estate as administrative expenses, and in support thereof respectfully states as follows:

1.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157(b)(2) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     In or about July of 2008, Finkelstein closed on the sale of a certain property and entered into an Exchange Agreement, dated July 21, 2008 (the "Exchange Agreement"), with LandAmerica 1031 Exchange Services, Inc. ("LES") to effectuate a Section 1031 tax-deferred exchange on replacement properties. Under the Exchange Agreement, Finkelstein transferred approximately $1,482,316.00 to LES to be held in trust in LES's account maintained at SunTrust Bank in Richmond, Virginia, in addition to a Purchase Money Note and Mortgage in the face amount of $2,100,000.00, to be held in trust by LES as a Qualified Intermediary for Finkelstein.

3.     LES was in the business of serving as a qualified intermediary for exchanges of like-kind property under Section 1031 of the Internal Revenue Code, 26 U.S.C. § 1031 ("Section 1031").

4.     On November 26, 2008 (the "Petition Date"), LES and its parent, LandAmerica Financial Group, Inc. ("LFG") filed voluntary petitions under Chapter 11 of the Bankruptcy Code.

5.     On December 5, 2008, LES filed the Motion for an Order Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 Establishing Procedures to Settle Claims Involving Segregated Exchange Funds (the "9019 Motion") (Docket #111). The Court heard argument on the 9019 Motion on December 16, 2008. The Court approved the 9019 Motion subject to the approval of the Official Committee of Unsecured Creditors of LandAmerica 1031 Exchange Services, Inc. (the "LES Committee"). In doing so, the Court directed LES and the LES Committee to devise a system for bringing lead cases to enable certain

selected and approved plaintiffs to serve as lead cases, which would be representative of the various classes of exchangers.

6.  On January 7, 2009, the <u>Joint Motion of Debtor and LES Committee for Order Establishing Scheduling Protocol for Adversary Proceedings</u> (Docket #574) was filed seeking entry of a protocol for adjudicating the lead cases. The Court's <u>Order Establishing Scheduling Protocol for Adversary Cases</u> (Docket #689) was entered on January 16, 2009 (the "<u>Protocol</u>"). The Protocol selected five leads cases: *Millard Refrigerated Services, Inc. v. LandAmerica 1031 Exchange Services, Inc.*, Adv. Proc. No. 08-03147, *Frontier Pepper's Ferry LLC v. LandAmerica Exchange Services, Inc.*, Adv. Proc. No. 08-03148, *HealthCare REIT, Inc. v. LandAmerica 1031 Exchange Services, Inc.*, Adv. Proc. No. 08-03149, *Howard Finkelstein v. LandAmerica 1031 Exchange Services, Inc.*, Adv. Proc. No. 08-03171, and a fifth commingled case to be identified later (the "<u>Lead Case(s)</u>"). The commingled exchangers were divided into three Lead Cases: Type A, Type B, and a commingled exchanger who transferred both cash and non-cash proceeds to LES (the "<u>Hybrid Exchanger(s)</u>")[1]. Frontier Pepper's Ferry LLC represents the Type B commingled exchangers, Finkelstein represents the Hybrid Exchangers, and a representative of the Type A commingled exchangers' has yet to be identified.

7.  On January 19, 2009, the Unofficial Ad Hoc Committee of Commingled Exchangers (the "<u>Ad Hoc Committee</u>") filed the <u>Motion for Order to Appoint Official Committee of LandAmerica 1031 Exchange Services, Inc. Commingled Exchange Participants, or, in the Alternative, to Allow Commingled Test Case Plaintiffs' Professional Fees and Expenses as Administrative Expenses Pursuant to Sections 503(B)(3) and/or 503(B)(4)</u> (the

---

[1] Finkelstein was added as a Lead Case by Order dated January 16, 2009 ("<u>Order Establishing Scheduling Protocol for Adversary Proceedings</u>" (Docket #689), to represent a unique group of exchangers who can be identified not only as a Type B commingled exchanger, but also represents those plaintiffs whose Exchange Funds were comprised of directly traceable, non-cash proceeds of the underlying real estate transaction.

3

"Motion") (Docket #694). The Ad Hoc Committee sought the appointment of an official commingled exchanger committee or the alternative relief of allowing the professional fees and expenses of all commingled Lead Case plaintiffs be taken against the estate as administrative expenses. Despite objections from LES, the LES Committee, and the Official Committee of Unsecured Creditors of LandAmerica Financial Group, Inc. (the "LFG Committee"), the Court found that serving as a Lead Case plaintiff constituted a "substantial contribution" to LES's bankruptcy estate and granted the alternative relief, allowing an application for professional fees and expenses for the unidentified Type A commingled Lead Case to be filed. As a clarification to its ruling, the Court held that upon motion of the other comingled lead case plaintiffs, the Court would rule on allowing an application for their professional fees and expenses.

**Finkelstein's Professional Fees and Expenses Are Administrative Expenses of the LES Bankruptcy Estate Because They Provide a Substantial Contribution**

8.      11 U.S.C. § 503(b)(3)(D), § 503(b)(4) of the Bankruptcy Code allows for a debtor's bankruptcy estate to pay compensation and expenses for professional services when those services substantially contribute to the bankruptcy estate. Section 503(b) states in relevant part:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by – . . .
> (D) a creditor . . . in making a substantial contribution in a case under chapter . . . 11 of this title; . . .
> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph . . . (D) . . . of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant. . .

4

9. Neither the Bankruptcy Code nor the Fourth Circuit provides guidance as to what constitutes "substantial contribution" under §503(b)(3). The factors most often considered in determining whether a substantial contribution is made by a party are: (1) whether the services were rendered solely to benefit the client or to benefit all the parties to the case; (2) whether the services provide a direct, significant, and demonstrable benefit to the estate; and (3) whether the services are duplicative of services rendered by attorneys for the committee, the committee itself, or the debtor and its attorneys. See, e.g., In re Consolidated Bancshares, Inc., 785 F.2d 1249 (5th Cir. 1986); In re Buttes Gas & Oil Company, 112 B.R. 191, 193-94 (S.D. Tex. 1989). Most courts have held that a creditor's motive in taking actions that benefit the estate has little relevance in determining whether the creditor has incurred actual and necessary expenses in making a substantial contribution to the case. See, e.g., In re Celotex Corp., 227 F.3d 1336, 1339 (2d Cir. 2000); In re DP Partners, Ltd., 106 F.3d 667, 673 (5th Cir. 1997).

10. Section 503(b)(4) requires that the compensation sought must be reasonable. Courts are directed to consider the time, nature, extent and value of such services – a standard similar to that applied to requests for compensation under § 330. 11 U.S.C. § 330(a)(3) ("In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including [the time, rates, necessity of the services . . .]").

11. Finkelstein clearly satisfies this standard, as it will obviate the necessity of potentially hundreds of trials for similarly situated commingled exchangers and exchangers who invested non-cash proceeds. The entry of the protocol changed the litigation landscape in this case. Instead of hundreds of plaintiffs seeking an adjudication of their individual rights, five Lead Cases were identified to litigate their cases, the outcome of which would then be applied

5

across the class which that Lead Case represents. In fact, the structure under the Protocol actually serves to reduce the administrative burden on the estate because discovery and litigation of the claims for only Lead Cases are only being undertaken, and the results will translate to hundreds of actions.

12. Finkelstein is not just one plaintiff seeking a determination of their $3,500,000.00 investment, which is currently being held in trust by LES. Rather, Finkelstein is a Hybrid exchanger representing other exchangers with both a Type B exchange agreement, as well as those exchangers who hold a Purchase Money Note and Mortgage, or other non-cash investment. As the Hybrid Lead Case, Finkelstein potentially represents hundreds of other similarly situated exchangers. Not only is Finkelstein's case representative of other Type B Exchangers, likely subsuming hundreds of other plaintiffs, but his case is also representative of many others who contributed a Mortgage Note or some other non-cash proceed to complete the like-kind property exchange. The concentration of potentially hundreds of cases into one representative case, as envisioned by the Protocol, promises a substantial savings to the LES bankruptcy estate in the form of drastically reduced litigation expenses. Further, it represents a substantial savings to the similarly situated commingled exchangers who may not have to litigate their cases, but who will likely still benefit from this Court's advanced resolution of the adversary proceedings of similarly situated Lead Cases, who currently bear the substantial burden of litigating these claims.

13. Finkelstein seeks allowance of his fees and expenses as an administrative expense to place it on an even footing with respective counsel for LES, the LES Committee, and the LFG Committee whose administrative expenses will be paid by the LES estate. Under the current protocol, Finkelstein bears the burden of litigating a Lead Case, which implicates the rights of

6

potentially hundreds of other similarly situated Hybrid exchangers, including both Type B Exchangers, as well as those with other non-cash investments. This places Finkelstein in the position of subsidizing the litigation of the rights of the Hybrid exchangers, in addition to the approximately $3,500,000.00 which LES is holding on its behalf. Given the expedited scheduling provided by the Protocol, litigation of a Lead Case promises to be time consuming and expensive.

14. In granting the Motion, this Court found that the services of the plaintiff determined to be the Type A commingled Lead Case will provide a substantial contribution to the LES estate. Finkelstein, as the Hybrid Lead Case will provide no less a contribution to the LES estate. In fact, Finkelstein arguably provides a greater benefit to the estate, representing not only hundreds of other exchangers with a Type B agreement, but also multiple types of exchangers, such as those holding non-cash proceeds like a Note and Mortgage. Based upon the adversary proceedings filed, the Type B exchange agreements greatly outnumber the Type A exchange agreements. In sheer terms of the number of exchangers, Finkelstein represents as least as many similarly situated exchangers as the Type A lead case, if not significantly more exchangers, such as those who made non-cash investments.

15. Regardless of whether the Lead Case represents a Type A, Type B, or a Hybrid Exchanger Lead Case, the services rendered by a Lead Case plaintiff will benefit all parties to the case, specifically by providing a direct, significant and demonstrable benefit to the estate.

16. Finkelstein requests that the Court allow its fees and costs associated with its litigation of a Lead Case, subject to application and review for reasonableness, and paid in the same manner as counsel and professionals for LES and the LES Committee.

**Waiver of Memorandum of Law**

Pursuant to Local Bankruptcy Rule 9013-1(B), Finkelstein requests that the requirement that this Motion be accompanied by a separate memorandum be waived.

WHEREFORE, for the reasons set forth herein, Howard Finkelstein respectfully requests that this Court enter an Order allowing him to submit an application for its professional fees and expenses to be considered as administrative expenses of the LES estate pursuant to §§ 105, 503(b)(3), and 503(b)(4), and for such other and further relief as the Court may deem just and proper.

Dated: January 23, 2009                              Respectfully Submitted,

**HOWARD FINKELSTEIN**

By     /s/ Ronald A. Page, Jr.
_____
Counsel

Bruce E. Arkema (VSB No. 18625)
barkema@cantorarkema.com
Kevin J. Funk (VSB No. 65465)
kfunk@cantorarkema.com
Ronald A. Page, Jr. (VSB No. 71343)
rpage@cantorarkema.com
Cantor Arkema, P.C.
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
Telephone: (804) 644-1400

        -and-

Yann Geron, *Admitted Pro Hac Vice*
ygeron@foxrothschild.com
Fred Stevens, *Admitted Pro Hac Vice*
fstevens@foxrothschild.com
Fox Rothschild LLP
100 Park Avenue, Suite 1500
New York, New York 10017
Telephone: (212) 878-7900

*Counsel to Howard Finkelstein*

**CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the foregoing was served on January 23, 2009 by electronic means on all parties that receive CM/ECF pursuant to the terms of the Amended Case Management Order entered on December 23, 2008, including:

Robert Van Arsdale
Office of the United States Trustee
701 East Broad Street, Suite 4304
Richmond, VA 23219
Robert.B.Van.Arsdale@usdoj.gov
*Assistant United States Trustee*

Dion W. Hayes
John H. Maddock III
MCGUIRE WOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
dhayes@mcguirewoods.com
jmaddock@mcguirewoods.com
*Counsel for Debtors*

Lawrence O. Kamin
Terence K. McLaughlin
Elizabeth J. Bower
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
lkamin@wilkie.com
tmclaughlin@wilkie.com
ebower@wilkie.com
*Counsel for Debtors*

Jeffrey S. Sabin
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, New York 10022
jeffrey.sabin@bingham.com
*Counsel for the Official Committee of
Unsecured Creditors of
LandAmerica Financial Group, Inc.*

Bruce H. Matson
Christopher L. Perkins
LeCLAIRRYAN
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
bruce.matson@leclairryan.com
christopher.perkins@leclairryan
*Counsel for the Official Committee of
Unsecured Creditors of
LandAmerica Financial Group, Inc.*

Charles R. Gibbs
Keefe M. Bernstein
Sarah Link Schultz
AKIN GUMP STRAUSS
HAUER & FELD LLP
1700 Pacific Ave., Suite 4100
Dallas, Texas 75201
cgibbs@AkinGump.com
kbernstein@AkinGump.com
sschultz@AkinGump.com
*Counsel for the Official Committee of
Unsecured Creditors of
LandAmerica 1031 Exchange Services, Inc.*

Lynn L. Tavenner
Paula S. Beran
Tavenner & Beran, PLC
20 North Eighth Street, 2nd Floor
Richmond, Virginia 23219
ltavenner@tb-lawfirm.com
pberan@tb-lawfirm.com
*Counsel for the Official Committee of
Unsecured Creditors of
LandAmerica 1031 Exchange Services, Inc.*

<p></p>


Yann Geron
Frederick N. Stevens
Fox Rothschild LLP
100 Park Avenue, 15th Floor
New York, New York 10017
ygeron@foxrothschild.com
fstevens@foxrothschild.com
*Counsel for Howard Finkelstein*

Rosa J. Evergreen
Michael L. Bernstein
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004
Rosa.evergreen@aporter.com
Michael.bernstein@aporter.com
    -and-
Randall K. Miller
Nicholas M. DePalma
Arnold & Porter LLP
Suite 900
1600 Tysons Boulevard
McLean, Virginia 22101
Randall.miller@aporter.com
Nicholas.depalma@aporter.com
*Counsel for Health Care REIT, Inc.*

Craig A. Wolfe
Robert S. Friedman
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178
cwolfe@kelleydrye.com
rfriedman@kelleydrye.com
    -and-
David J. Ervin
Kelley Drye & Warren LLP
Washington Harbour, Suite 400
350 K Street N.W.
Washington, D.C. 20007-5108
dervin@kelleydrye.com
*Counsel for Millard Refrigerated Services, Inc.*

By   /s/ Ronald A. Page, Jr.
           Counsel

Case 08-35994-KRH    Doc 747    Filed 01/23/09    Entered 01/23/09 19:17:23    Desc Main
                       Document      Page 11 of 11