# EXHIBIT "A"

# EXCHANGE AGREEMENT

© 2002 LandAmerica Financial Group, Inc. All Rights Reserved

LES File Number: HOX-08-001943-00



# EXCHANGE AGREEMENT

**THIS EXCHANGE AGREEMENT** ("Exchange Agreement") is made September 3, 2008, by and between **LANDAMERICA 1031 EXCHANGE SERVICES, INC.**, with its principal office in Richmond, Virginia ("**LES**"), and Sessan Investments, Inc., a Texas corporation ("**TAXPAYER**").

## RECITALS

A.  **Taxpayer** owns that certain parcel or parcels of land, and all improvements thereon and appurtenances thereto located at 9432 Old Katy Rd., Houston, TX and which is more particularly described on Exhibit "A" hereto (the "Relinquished Property").

B.  **Taxpayer** desires to exchange the Relinquished Property for property or properties of like-kind (the "Replacement Property") in an exchange qualifying under Section 1031 and related sections of the Internal Revenue Code of 1986, as amended (the "Code"), and regulations promulgated thereunder.

C.  **LES** is willing and agrees to facilitate such like-kind exchange as provided in this Exchange Agreement.

D.  **Taxpayer** has entered into that certain real estate purchase contract of the Relinquished Property with Gregmont Investments, LLC ("Recipient") dated October 31, 2007 containing terms related to the purchase, assignment and transfer of the Relinquished Property (as the same may be amended, the "Sale Agreement"), a copy of which is attached hereto as Exhibit "B".

**NOW, THEREFORE**, for and in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, **LES** and **Taxpayer** agree as follows:

## AGREEMENT

1. **Exchange of Property.**

    (a)   **LES** agrees to acquire from **Taxpayer**, and **Taxpayer** agrees to convey to **LES** the Relinquished Property, and **LES** hereby agrees to convey to **Taxpayer**, in exchange for the Relinquished Property, the Replacement Property. **LES** agrees to acquire the Replacement Property from its seller (the "Seller") in a purchase transaction for the purpose of effectuating a like kind exchange.

FM 03                                    1

© 2002 LandAmerica Financial Group, Inc. All Rights Reserved

(b) On or before the close of the Sale Agreement for the Relinquished Property (the "Initial Closing Date"), **Taxpayer** shall assign its rights but not its obligations in and under the Sale Agreement to **LES**, and **LES** agrees to accept an assignment in form and substance approved by **LES**. **Taxpayer** shall give written notice of the assignment of the Sale Agreement to **LES** to all parties to the Sale Agreement on or before the Initial Closing Date.

(c) In order to save duplicative recording fees, escrow costs and other similar charges, **LES** shall on and as of the Initial Closing Date direct **Taxpayer**, and **Taxpayer** shall convey on behalf of **LES**, the Relinquished Property to Recipient. In addition, **Taxpayer** agrees to execute all bills of sale and assignment of leases, security deposits and trade names and other assets, which are necessary to close the transaction directly in favor of Recipient. If closing on the Sale Agreement does not occur on the Initial Closing Date, as that date may be extended by the parties thereto, **LES** shall assign all of its rights, title and interest in and to the Sale Agreement to **Taxpayer** by an assignment agreement in form and substance acceptable to **LES** and **Taxpayer** shall accept such assignment.

(d) The transfers described in this Section 1 are part of an integrated, interdependent, mutual and reciprocal plan intended to effectuate an exchange by **Taxpayer** of like-kind real properties pursuant to and in accordance with the provisions of Section 1031 of the Code, and to the extent possible, state tax statutes.

2. **Treatment of Exchange Funds**.

(a) **LES** agrees to hold and apply the Exchange Funds in accordance with the terms and conditions of this Exchange Agreement. For purposes of this Agreement, Exchange Funds shall mean the total consideration received from the closing of the sale of the Relinquished Property reduced by the remaining principal and interest balance of all debts secured by liens against the Relinquished Property, if any, as of the Initial Closing Date, taken subject to by **LES**, all real estate commissions, prorations of income and expenses, closing costs, title insurance premiums, escrow fees, and any other amounts chargeable to **LES** in the closing of the Sale Agreement for the Relinquished Property. Exchange Funds wired to **LES** and not received by **LES** by 1:00 p.m. Eastern Time will not begin to accrue interest pursuant to paragraph 3(a) below until the next business day. Exchange Funds delivered to **LES** by check will not begin to accrue interest pursuant to paragraph 3(a) below until the second business day after receipt of the check by **LES**. **If the Exchange Funds are to be held less than 48 hours, then no interest shall be paid to Taxpayer on the Exchange Funds.**

(b) **LES** shall make payments from the Exchange Funds to acquire the Replacement Property or Properties identified in accordance with the Notice(s) of Identification to be completed by **Taxpayer** on or before 45 days from the transfer of the Relinquished Property, and received from or on behalf of **Taxpayer** pursuant to Paragraph 4, including the payment of deposit or option fees provided in the purchase agreement for the purchase of the Replacement Property (the "Replacement Property Contract").

© 2002 LandAmerica Financial Group, Inc. All Rights Reserved

(c)     **LES** shall have sole and exclusive possession, dominion, control and use of all Exchange Funds, including interest, if any, earned on the Exchange Funds until the first business day after the earliest of the following to occur: (i) the end of the Identification Period, as hereafter defined, if **Taxpayer** has not identified the Replacement Property or has properly revoked in writing any identifications of Replacement Property; (ii) after **Taxpayer** has received all the Replacement Property identified pursuant to Section 4 and which **Taxpayer** is entitled to under this Agreement; (iii) the earlier of the date which is 180 days after the transfer of the Relinquished Property to Recipient or the due date of **Taxpayer's** income tax return (including extension) for the taxable year in which the transfer of the Relinquished Property occurs (the "Exchange Period"); or (iv) the date after the occurrence of a material and substantial contingency that (x) specified in the written Notice of Identification, (y) relates to the exchange contemplated by this Exchange Agreement, and (z) is beyond the control of **Taxpayer** or any disqualified person as provided in Treasury Regulation Section 1.1031(k)-1(g)(6)(iii)(B)(3) (the dates described in (i)–(iv) each referred to as a "Termination Date"). **Taxpayer** shall have no right, title, or interest in or to the Exchange Funds or any earnings thereon and **Taxpayer** shall have no right, power, or option to demand, call for, receive, pledge, borrow or otherwise obtain the benefits of any of Exchange Funds, including interest, if any, earned on the Exchange Funds except that the balance of Exchange Funds, if any, held by **LES** after applying such Exchange Funds in accordance with this Exchange Agreement shall be paid to **Taxpayer** on the applicable Termination Date. Provided, however, in no event shall any of the foregoing be deemed the Termination Date prior to the expiration of the Identification Period or as otherwise provided under Treasury Regulation Section 1.1031(k)-1(g)(6).

Notwithstanding anything to the contrary herein, in the event of a Presidentially declared disaster or terroristic military action for which the IRS publishes a Notice and/or Service News Release and with regard to which the **Taxpayer** is an "affected taxpayer", the forty-five (45) day identification period and the Exchange Period shall be deemed to be, and shall be, extended as provided in Rev. Proc. 2007-56 (Section 17), to such later date as authorized by the Revenue Procedure in reference to the IRS News Release or similar authoritative guidance. In such event the restrictions on distribution set forth herein, including as provided for in paragraph (g)(6) of Treas. Reg. 1.1031(k)-(1), shall apply without interruption during the extensions. **LES** has no obligation to notify **Taxpayer** of such a determination.

3.     **Investment of Exchange Funds.**

(a)     **LES** will deposit the Exchange Funds in an account maintained at SunTrust Bank in Richmond, Virginia, and guarantees **Taxpayer** will receive interest on the Exchange Funds at a rate equal to 100% of a one-month BBA LIBOR minus 100 Basis Points as reported on Bloomberg on the first business day of every month during the Exchange Period (the "Growth Factor") from the first business day following receipt of funds via wire transfer at Richmond, Virginia, or from three business days after receipt in Richmond, Virginia if sent by check, to the day of withdrawal. **LES** and **Taxpayer** agree that the Growth Factor, if not applied to the acquisition of the Replacement Property identified by **Taxpayer** pursuant to Paragraph 4, shall be paid to **Taxpayer** after the Termination Date. **Taxpayer** acknowledges and agrees that the amount of the Exchange Funds may be in excess of the maximum amount of deposit insurance carried by

© 2002 LandAmerica Financial Group, Inc. All Rights Reserved

the depository institution indicated above; however, **LES** unconditionally guarantees the return and availability of the Exchange Funds and the guaranteed interest stated above.

(b) **LES** shall file information returns reporting as taxable income to **Taxpayer** the interest and other earnings, if any, paid to **Taxpayer** during any calendar year on such returns, reports, and other filings as are required by applicable law. **Taxpayer** represents and warrants to **LES** that its **social security or taxpayer identification number is** _____. **Taxpayer** will recognize such interest and other earnings, if any, as taxable income to **Taxpayer** regardless of whether such interest or other earnings are used to acquire Replacement Property. **LES** shall have no obligation to pay any income, gains or other taxes that may be imposed with respect to any of the transactions contemplated by this Exchange Agreement. Taxpayer further certifies under penalties of perjury that Taxpayer is not a "foreign person" as defined by Section 1445 of the Code and the regulations promulgated thereunder, and that the Taxpayer is not subject to backup withholding.

4.   **Identification of Replacement Property.**

(a) On or before midnight of the date that is forty-five (45) days after the date of the transfer of the Relinquished Property (in the event there is more than one Relinquished Property, forty-five (45) days after the transfer of the <u>first</u> Relinquished Property) to or on behalf of **LES** (the "Identification Period"), **Taxpayer** shall identify the Replacement Property to be received by **Taxpayer** in exchange for the Relinquished Property. Such identification shall be effectuated by one or more Notices of Identification signed by **Taxpayer**. Notices of Identification shall be in writing and shall be hand delivered, mailed (certified, return receipt requested), or sent by facsimile to **LES** or to any other party involved in the exchange other than Taxpayer or a disqualified person before the end of the Identification Period. **Taxpayer** shall give **LES** prompt written notice of any changes, deletions, or additions and may revoke a Notice of Identification only by a written notice (a "Notice of Revocation") signed by the Taxpayer and hand delivered, mailed (certified, return receipt requested), or sent by facsimile to **LES** before the end of the Identification Period. To be effective, a Notice of Identification sent to **LES** by facsimile must be sent to the facsimile number shown in Paragraph 9.

(b) When **LES** receives the Notice of Identification, it will sign such Notice of Identification, indicating its proper receipt within the Identification Period. **Taxpayer** agrees that the Replacement Property shall be identified on the Notice of Identification in accordance with the following principles:

(i) **Taxpayer** shall unambiguously describe the Replacement Property using either its complete legal description, complete street address, Assessor's Parcel Number, or distinguishable name.

(ii) **Taxpayer** shall identify only that number of Replacement Properties which meets one of the following "rules": (x) three (3) properties without regard to the fair market value of the properties; (y) any number of properties so long as their aggregate fair market value as of the end of the Identification Period does not exceed two hundred percent (200%) of the aggregate fair market value of the Relinquished Property as of the date such Relinquished Property

© 2002 LandAmerica Financial Group, Inc. All Rights Reserved

was transferred by **Taxpayer**; or (z) any number of properties without regard to their fair market value so long as **Taxpayer** receives identified Replacement Properties constituting at least ninety-five percent (95%) of the aggregate fair market value of all identified Replacement Properties before the end of the Exchange Period.

**TAXPAYER HEREBY ACKNOWLEDGES THAT TAXPAYER HAS DISCUSSED THE REGULATION PROVISIONS RELATED TO IDENTIFICATION OF ONE OR MORE REPLACEMENT PROPERTIES WITH TAXPAYER'S TAX ADVISOR AND LES IS ACTING SOLELY AS THE INTERMEDIARY AND HAS NOT OFFERED OR PROVIDED ANY TAX ADVICE TO TAXPAYER.**

5.   **Acquisition of Replacement Property.**

(a)   **Taxpayer** shall have the sole duty and obligation to identify Replacement Property and enter into such contracts and agreements as may be necessary or proper to permit **LES** to acquire such Replacement Property. At or before the Exchange Closing, **Taxpayer** shall assign its rights in but not its obligations under the Replacement Property Contract to **LES**. However, **LES** shall have no obligation to accept such an assignment unless (i) **LES** can terminate the Replacement Property Contract by the payment of liquidated damages in an amount not to exceed the Exchange Funds less any sum estimated in good faith by **LES** as being necessary to pay any fees then earned by **LES** for its services hereunder and to reimburse any expenses then or to be incurred by **LES** hereunder, (ii) the Seller of the Replacement Property agrees in writing to deed the Replacement Property as directed by **LES**, (iii) the Seller of the Replacement Property consents in writing to the assignment of **Taxpayer's** rights in the Replacement Property Contract to **LES**, and (iv) at the time of such assignment, the amount of the Exchange Funds is sufficient to satisfy the total costs and expenses to be incurred by **LES** in acquiring the Replacement Property and conveying it to **Taxpayer** (the "Replacement Cost"), including, without limitation, the aggregate amount of all deposits and expenditures by **LES** in respect to the purchase price, real estate commissions, prorations of income and expenses, closing costs, title insurance premiums, escrow fees, and any other amounts otherwise chargeable to **LES** in connection with the acquisition and conveyance of the Replacement Property to **Taxpayer**, but excluding any existing mortgage, trust deed or other secured loans which may be assumed or taken subject to by **Taxpayer**. The assignment shall be made using the form of assignment approved in form and substance by **LES**. **Taxpayer** shall give written notice of assignment provided in this Paragraph 5(a) to all parties to the Replacement Property Contract being assigned on or before the closing of the Replacement Property and shall obtain written acknowledgment from all such parties that the notice of assignment was received prior to such closing by having such parties execute the acknowledgment at the bottom of said assignment. **Taxpayer** shall provide **LES** at least three (3) business days prior notice of any scheduled closing of a Replacement Property. In order to provide timely wiring of Exchange Funds, unconditional and proper wiring instructions must be provided by **Taxpayer** to **LES** in writing no later than three business days before the day the wire is to be initiated, unless **Taxpayer** has made alternative arrangements with **LES**.

(b)   **LES** shall acquire and transfer, or cause to be transferred, to **Taxpayer**, and **Taxpayer** agrees to accept the Replacement Property or properties identified by **Taxpayer** pursuant to Paragraph 4. In the event the Replacement Cost for any Replacement Property exceeds

FM 03                                          5

©2002 LandAmerica Financial Group, Inc. All Rights Reserved

the Exchange Funds, **Taxpayer** shall deliver to **LES** just prior to any closing on a Replacement Property, the amount of the deficiency, as determined by **LES** in its sole discretion, in collected funds, or shall provide assurances acceptable to **LES**, in its sole discretion, that sufficient funds will be available at the Exchange Closing to satisfy the deficiency. **LES** shall not be required in connection with the acquisition of any property or properties to (i) assume any loan, mortgage, liability or other obligation, or (ii) pay any cash in excess of the Exchange Funds; or (iii) take legal title to any property or properties. All such matters shall be the sole duty and obligation of **Taxpayer**, and **Taxpayer** shall indemnify, hold harmless, and defend **LES** from any and all actions, claims, liabilities, costs, and expenses including costs of investigation, court costs and attorneys' fees and disbursements in connection with the transactions contemplated by this Exchange Agreement.

6. **Duties of LES**. It is understood and agreed by the parties to this Exchange Agreement that:

(a) **LES** has entered into this Exchange Agreement with the intention of being a "qualified intermediary" within the meaning of Section 1.1031(k)-1(g)(4)(iii) of the Regulations on the date hereof and shall use its best efforts to retain that status until all of the Exchange Funds have been disbursed in accordance with this Exchange Agreement. **LES** and **Taxpayer** acknowledge and agree that this Exchange Agreement is intended to satisfy the "safe harbor" provisions of Section 1.1031(k)-1(g) of the Regulations.

(b) **LES IS ENTERING INTO THIS EXCHANGE AGREEMENT SOLELY FOR THE PURPOSE OF FACILITATING TAXPAYER'S EXCHANGE OF THE RELINQUISHED PROPERTY FOR THE REPLACEMENT PROPERTY. NONE OF LES' ACTIONS UNDER THIS EXCHANGE AGREEMENT SHALL CONSTITUTE LEGAL, TAX OR OTHER ADVICE OR REPRESENTATIONS TO TAXPAYER OR ANY OTHER PERSON OR ENTITY. LES MAKES NO REPRESENTATIONS REGARDING THE TAX CONSEQUENCES OF THE TRANSACTIONS CONTEMPLATED BY THIS EXCHANGE AGREEMENT, INCLUDING QUALIFICATION OF THE TRANSACTIONS SET FORTH HEREIN AS A LIKE-KIND EXCHANGE UNDER SECTION 1031 OF THE CODE OR ANY OTHER MATTER. TAXPAYER HEREBY REPRESENTS TO LES, AND ACKNOWLEDGES THAT LES IS RELYING ON SUCH REPRESENTATION IN EXECUTING THIS EXCHANGE AGREEMENT, THAT TAXPAYER HAS EXECUTED THIS EXCHANGE AGREEMENT BASED ON THE ADVICE OF TAXPAYER'S LEGAL AND TAX ADVISERS WITH RESPECT TO ALL ASPECTS OF THIS EXCHANGE AGREEMENT AND THE TRANSACTIONS CONTEMPLATED THEREBY, INCLUDING BY WAY OF ILLUSTRATION, AND NOT LIMITATION, FEDERAL, STATE, AND LOCAL TAX CONSEQUENCES, AND EXPRESSLY RELEASES LES FROM AND COVENANTS NOT TO SUE LES FOR ANY LIABILITY WITH RESPECT THERETO, EXCEPT FOR LES' WILLFUL MISCONDUCT, GROSS NEGLIGENCE OR FRAUD.**

(c) **LES** shall only be obligated to act as an intermediary in accordance with the terms and conditions of this Exchange Agreement and shall not be bound by any other contract or agreement, whether or not **LES** has knowledge of any such contract or agreement or of its terms or

© 2002 LandAmerica Financial Group, Inc. All Rights Reserved

conditions. **LES** has undertaken to perform only such duties as are expressly set forth herein, and no additional duties or obligations shall be implied hereunder or by operation of law or otherwise.

(d) **LES** shall not be liable to **Taxpayer** or any person or entity for any damages, losses, costs, expenses, or taxes that it or they may incur as a result of any act or omission of **LES** under this Exchange Agreement unless such damages, losses, expenses, or taxes are caused by **LES'** willful misconduct, gross negligence or fraud. **LES** shall not incur any obligation or liability with respect to (i) any action taken or omitted in good faith upon the advice of its counsel or counsel for any other party hereto, given with respect to any questions relating to the duties and responsibilities of **LES** under this Exchange Agreement, or (ii) any action taken or omitted in reliance upon any instrument, including due execution thereof or the identity or authority of any person executing such instrument, its validity and effectiveness, but also as to the truth and accuracy of any information contained therein that **LES** shall, in good faith, believe to be genuine, to have been signed by a proper person or persons and to conform to the provisions of this Exchange Agreement.

(e) Except for damages, losses, or expenses caused by **LES'** willful misconduct, gross negligence or fraud, **Taxpayer** shall indemnify, hold harmless, and defend **LES** from and against any and all actions, suits, claims, charges, costs, losses, damages, liabilities, expenses, including costs of investigation, court costs, and attorneys' fees and disbursements that may be brought or imposed upon **LES** in connection with its actions hereunder, including any litigation arising in connection with this Exchange Agreement or involving the subject matter hereof as and when incurred. This obligation shall survive termination of this Exchange Agreement.

(f) Should any dispute arise with respect to the delivery or ownership or right of possession of any of the Exchange Funds, **LES** is authorized and directed to retain in its possession without liability to any person or entity, all or any part of the Exchange Funds until such dispute is settled either by mutual written agreement of the parties concerned or by a final order, decree or judgment of a court of competent jurisdiction in the United States of America as to which time for appeal has expired and no appeal has been perfected, but **LES** shall be under no duty whatsoever to institute or defend any such proceedings.

(g) **LES** shall not, by act, delay, omission or otherwise, be deemed to have waived any right or remedy it may have either under this Exchange Agreement or generally, unless such waiver be in writing and signed by **LES**, and such waiver shall constitute a waiver only to the extent expressly set forth therein. A waiver by **LES** under the terms of this Exchange Agreement shall not be construed as a bar to, or a waiver of, the same or any other such right or remedy that it would otherwise have on any other occasion.

7. **Facilitation Fee**. Upon execution hereof, **Taxpayer** shall pay **LES** a <u>nonrefundable</u> set-up fee of $1,000. In addition, **Taxpayer** shall reimburse **LES** for any and all costs paid or incurred by **LES** in connection with acting as an exchange facilitator pursuant to this Exchange Agreement. There will be closing fees of $0 to be paid for each additional Replacement Property to be due on the date of closing of such Replacement Property.

© 2002 LandAmerica Financial Group, Inc. All Rights Reserved

8.  **Conditions Precedent**. LES' obligations under this Exchange Agreement shall be subject, to the extent not waived by LES, to (i) the **Taxpayer** and all other parties to the transactions contemplated herein performing all obligations and complying with all conditions required by or otherwise set forth in this Exchange Agreement; (ii) all proceedings to be taken by the parties with respect to the transactions contemplated herein being taken pursuant to valid authority, being duly authorized and approved and being evidenced in a manner reasonably satisfactory in form and substance to **LES**; (iii) no statute, rule, regulation, court order, administrative order, or regulation being proposed, enacted, or in effect, which would or might restrain or prohibit the transactions contemplated hereby or that would seek to prohibit, delay or challenge any such transactions.

9.  **Notices**. Each notice, instruction or other certificate required or permitted by the terms hereof shall be in writing and shall be communicated by hand delivery, facsimile, Federal Express or another similar overnight document delivery service, or United States mail, postage prepaid (certified, return receipt requested), to the parties at the following addresses:

If to **Taxpayer**:    12121 Wickchester #110
                      attn Rick Widmark
                      Houston, TX  77079
                      Phone: (713) 467-5550
                      Fax: (713) 467-4343

With a copy to:       Mark C. Hodges
                      Andrews Kurth, LLP
                      600 Travis, Suite 4200
                      Houston, TX77002

If to **LES**:        **LandAmerica 1031 Exchange Services, Inc.**
                      Jill L. Snee
                      5847 San Felipe, Suite 4000
                      Houston, TX  77057
                      Phone: (866) 377-1031
                      Fax: (214) 855-8411

Any such notice, request or consent shall be deemed to have been given or made when delivered in person to the party to whom the communication is addressed, or when sent by facsimile to such party at the address indicated, or on the next business day after being sent by Federal Express or similar overnight document delivery service or on the third day after the postmark date of mailing when sent by certified mail. Any party may change the address at which it is to receive notices by so advising the other parties in writing. To be effective, any such notice, request or consent sent by facsimile must be sent to the facsimile number shown above.

10. **Taxpayer's Representations**. **Taxpayer** hereby represents to **LES** as follows:

2002 LandAmerica Financial Group, Inc. All Rights Reserved

(a)  **Taxpayer** has held the Relinquished Property for the purposes of productive use in a trade or business or investment and has not held such property primarily for sale. **Taxpayer** intends to hold the Replacement Property for purposes of productive use in a trade or business or investment and will not hold such property primarily for sale.

(b)  **Taxpayer** will not purchase any Replacement Property from a related person as such term is defined in Section 1031(f)(3) of the Code.

(c)  **Taxpayer** acknowledges that for complete tax deferment under Section 1031 of the Code, **Taxpayer** must trade up or trade even in value, debt and equity. Any cash Taxpayer receives from the exchange transaction may be taxable.

(d)  The aggregate fair market value of any incidental property being transferred with the Replacement Property does not exceed fifteen percent (15%) of the aggregate fair market value of the Replacement Property.

11.  **Miscellaneous**. This Exchange Agreement may be modified, altered, or amended only by the written agreement of all the parties. This Exchange Agreement shall be governed by and construed in accordance with the applicable laws of the Commonwealth of Virginia without regard to the conflict of laws provisions thereof, (except with respect to matters of corporation law in which case the law of the state of domestication shall apply), and shall be binding upon and shall inure to the benefit of the parties and their respective successors in interest and permitted assigns. Each of the parties hereby consents and submits to personal jurisdiction in the Commonwealth of Virginia for all matters that may arise with respect to this Exchange Agreement, and waives any and all rights to object to jurisdiction within the Commonwealth of Virginia. The parties consent to venue in the Circuit Court of the City of Richmond, Virginia and, to the extent there is subject matter jurisdiction, in the Richmond Division of the United States District Court for the Eastern District of Virginia. No party hereto shall make or raise any claim of forum non conveniens with respect to any court located in the Commonwealth of Virginia as to any litigation regarding this Exchange Agreement. The paragraph headings and subheadings contained in this Exchange Agreement are for convenience and reference only, and shall not in any way affect the meaning or interpretation of this Exchange Agreement. This Exchange Agreement may be executed in any number of counterparts and each shall be considered an original and together they shall constitute one agreement. Facsimile signatures on this Exchange Agreement or any other document called for or contemplated in this Exchange Agreement shall be deemed original signatures. This Exchange Agreement contains the entire understanding between and among the parties hereto. **Taxpayer** may not assign this Exchange Agreement. Should a court of competent jurisdiction find any portion of this Exchange Agreement to be invalid or unenforceable, the remaining terms and provisions hereof shall not be affected and shall remain in full force and effect. Each party hereto and their legal counsel have reviewed this Exchange Agreement and have had an opportunity to revise (or request revision of) this Exchange Agreement and, therefore, any usual rules of construction requiring that ambiguities are to be resolved against a particular party shall not be applicable in the construction and interpretation of this Exchange Agreement. Should the language of any provision herein be deemed to negate a like-kind exchange within the meaning of Section 1031 as to **Taxpayer**, it shall be interpreted and applied in order to comply with Section 1031 of

2002 LandAmerica Financial Group, Inc. All Rights Reserved

the Code, Regulations, case law, and administrative pronouncements interpreting the Code and Regulations.

12. **Waiver of Jury Trial**. THE PARTIES WAIVE TRIAL BY JURY OF ANY AND ALL DISPUTES ARISING HEREUNDER OR RELATED HERETO AND AGREE THAT ALL SUCH DISPUTES SHALL BE TRIED AND DECIDED SOLELY BY A JUDGE SITTING WITHOUT A JURY.

WITNESS the following signatures:

**LANDAMERICA 1031 EXCHANGE SERVICES, INC.**

By:   Jill L. Snee, Vice President

Signature: _____          Date: 9-3-08

**TAXPAYER:**   Sessan Investments, Inc., a Texas corporation

By:   Rick Widmark, President
Signature: _____          Date: 7/2/08

FM 03                                    10

2002 LandAmerica Financial Group, Inc. All Rights Reserved

the Code, Regulations, case law, and administrative pronouncements interpreting the Code and Regulations.

12. **Waiver of Jury Trial.** THE PARTIES WAIVE TRIAL BY JURY OF ANY AND ALL DISPUTES ARISING HEREUNDER OR RELATED HERETO AND AGREE THAT ALL SUCH DISPUTES SHALL BE TRIED AND DECIDED SOLELY BY A JUDGE SITTING WITHOUT A JURY.

**WITNESS** the following signatures:

**LANDAMERICA 1031 EXCHANGE SERVICES, INC.**

By:   Jill L. Snee, Vice President

Signature: _____    Date: _____

**TAXPAYER:**   Sessan Investments, Inc., a Texas corporation

By:   Rick Widmark, President
Signature: _____    Date: 7/2/08

FM 03                                    10