Charles R. Gibbs (admitted *pro hac vice*)
Keefe Bernstein (admitted *pro hac vice*)
Sarah Link Schultz (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas  75201
Telephone: 214.969.2800
Facsimile: 214.969.4343

Mary A. House (Virginia Bar No. 66613)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone:  202.887.4000
Facsimile:  205.955.7827

Lynn Tavenner (Virginia Bar No. 30083)
Paula S. Beran (Virginia Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219
Telephone: 804.783.8300
Facsimile: 804.783.0178

*Attorneys for The Official Committee of Unsecured Creditors of LandAmerica 1031 Exchange Services, Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

--------------------------------------------------------------------x
:
In re:                                                              :       Chapter 11
                                                                    :
LandAmerica Financial Group, Inc., et al.,                          :       Case No. 08-35994 (KRH)
                                                                    :
                                   Debtors.                         :       Jointly Administered
--------------------------------------------------------------------x

## FIRST INTERIM APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP FOR ALLOWANCE OF COMPENSATION AND EXPENSE REIMBURSEMENT AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LANDAMERICA 1031 EXCHANGE SERVICES, INC.

Name of Applicant:    Akin Gump Strauss Hauer & Feld LLP

Authorized to Provide Professional Services to:  Official Committee of Unsecured Creditors of LandAmerica 1031 Exchange Services, Inc.

Date of Retention:  January 16, 2009 (*nunc pro tunc* to December 8, 2008)

Period for Which Compensation
and Reimbursement is Sought:  December 8, 2008 through February 28, 2009

Amount of Compensation Sought as
Actual, Reasonable, and Necessary: $1,471,879.25

Amount of Expense Reimbursement Sought
as Actual, Reasonable, and Necessary: $90,672.49

## Monthly Fee Statements During the Compensation Period

| Time Period | Fees | Expenses | Status |
|---|---|---|---|
| 12/08/08 – 12/31/08 | $444,244.50 | $16,245.99 | Pending.  Pursuant to the Interim Compensation Order, Akin Gump received 85% of the fees requested and 100% of the expenses requested. |
| 1/01/09 – 1/31/09 | $435,477.50 | $20,396.25 | Pending.  Pursuant to the Interim Compensation Order, Akin Gump received 85% of the fees requested and 100% of the expenses requested. |
| 2/01/09 – 2/28/09 | $592,157.25 | $54,030.25 | Pending.  Akin Gump has not currently received any payment for fees and expenses incurred in February. |

Charles R. Gibbs (admitted *pro hac vice*)
Keefe Bernstein (admitted *pro hac vice*)
Sarah Link Schultz (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: 214.969.2800
Facsimile: 214.969.4343

Mary A. House (Virginia Bar No. 66613)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: 202.887.4000
Facsimile: 205.955.7827

Lynn Tavenner (Virginia Bar No. 30083)
Paula S. Beran (Virginia Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219
Telephone: 804.783.8300
Facsimile: 804.783.0178

*Attorneys for The Official Committee of Unsecured Creditors of LandAmerica 1031 Exchange Services, Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

------------------------------------------------------------------x
|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| LandAmerica Financial Group, Inc., et al., | : | Case No. 08-35994 (KRH) |
|  | : |  |
| Debtors. | : | Jointly Administered |

------------------------------------------------------------------x

## FIRST INTERIM APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP FOR ALLOWANCE OF COMPENSATION AND EXPENSE REIMBURSEMENT AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LANDAMERICA 1031 EXCHANGE SERVICES, INC.

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump" or "Applicant"), counsel for the Official Committee of Unsecured Creditors (the "LES Committee") of LandAmerica 1031 Exchange Services, Inc. ("LES"), submits this First Interim Application for Allowance of Compensation and Expense Reimbursement as Counsel to the Official Committee of Unsecured Creditors of LandAmerica 1031 Exchange Services, Inc. (the "Application") pursuant to sections 330 and 331 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## I.    PRELIMINARY STATEMENT

1.    By this Application, Akin Gump seeks (i) an interim allowance and award of full compensation for the professional services rendered by Akin Gump as attorneys for the LES Committee for the period from December 8, 2008 through February 28, 2009 (the "Compensation Period") in the amount of $1,471,879.25, representing 3,379.65 hours of professional and paraprofessional services, and (ii) reimbursement of actual and necessary expenses of $90,672.49 incurred by Akin Gump during the Compensation Period in connection with the rendition of such professional and paraprofessional services. This Application is submitted pursuant to the terms of this Court's Order Under Sections 105(a) and 331 of the Bankruptcy Code Establishing Procedures for Interim Compensation, dated December 22, 2008 (the "Interim Compensation Order").

## II.    BACKGROUND

2.    On November 26, 2008 (the "Petition Date"), LES and LandAmerica Financial Group, Inc. ("LFG," and together with LES, the "Debtors") each filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued in possession of their property and have continued to operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. On November 28, 2008, this Court entered an order jointly administering the Debtors' chapter 11 cases for procedural purposes only.

3.    This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are Bankruptcy Code sections 330 and 331 and Bankruptcy Rule 2016.

4. On December 3, 2008, the Office of the United States Trustee for the Eastern District of Virginia duly appointed the LES Committee. The LES Committee currently consists of five members.[1] On December 8, 2008, pursuant to Bankruptcy Code section 1103(a), the LES Committee selected Akin Gump to serve as counsel to the LES Committee. On December 31, 2008, the LES Committee filed an application to employ Akin Gump as its counsel. On January 16, 2009, this Court entered an order authorizing Akin Gump's retention as counsel to the LES Committee *nunc pro tunc* to December 8, 2008. The Court subsequently authorized the LES Committee to retain and employ Protiviti, Inc. ("Protiviti") as its financial advisor, The Garden City Group, Inc. ("GCG") as its communications agent, and Tavenner & Beran, PLC ("Tavenner & Beran") as its local counsel.

5. Except with respect to payments made pursuant to the Interim Compensation Order, Applicant has received no payment and no promises for payment from any source for services rendered in connection with LES's chapter 11 case. There is no agreement or understanding between the Applicant and any other person (other than members of Akin Gump) for the sharing of compensation to be received for the services rendered in these chapter 11 cases.

6. As stated in the Affirmation of Charles R. Gibbs, Esq. annexed hereto as **Exhibit A**, all of the services for which interim compensation is sought herein were rendered for or on behalf of the LES Committee solely in connection with LES's chapter 11 case.

7. Pursuant to the Interim Compensation Order, Akin Gump sent to LES and the appropriate notice parties its: (i) Monthly Fee Statement, dated January 30, 2009, for

---

[1] The LES Committee is comprised of the following entities: Millmar Holdings, LLC; Endless Ocean, LLC; MB Venture, Ltd.; Amarillo Tower Limited; and Petaluma Southpoint, LLC.

compensation and for reimbursement of expenses for services rendered during the period of December 8, 2008 through December 31, 2008 in the amounts of $444,244.50 for fees and $16,245.99 for expenses (the "December Monthly Fee Statement"); (ii) Monthly Fee Statement, dated February 20, 2009, for compensation and for reimbursement of expenses for services rendered during the period of January 1, 2009 through January 31, 2009 in the amounts of $435,477.50 for fees and $20,396.25 for expenses (the "January Monthly Fee Statement"); and (iii) Monthly Fee Statement, dated March 12, 2009, for compensation and for reimbursement of expenses for services rendered during the period of February 1, 2009 through February 28, 2009 in the amounts of $592,157.25 for fees and $54,030.25 for expenses (the "February Monthly Fee Statement," and together with the December Monthly Fee Statement and the January Monthly Fee Statement, the "Monthly Fee Statements").

8.      Pursuant to the Interim Compensation Order, as of the date of this Application, Akin Gump has received payment of 85% of the fees requested and 100% of the expenses requested with respect to the December and January Monthly Fee Statements. Akin Gump has not yet received any payment for fees and expenses requested with respect to the February Monthly Fee Statement. Akin Gump does not anticipate any objections to be made to the Monthly Fee Statements.

### III.      SUMMARY OF SERVICES RENDERED

9.      Since December 8, 2008, Akin Gump has rendered professional services to the LES Committee as requested and as necessary and appropriate in furtherance of the interests of LES's unsecured creditors. The variety and complexity of the issues in LES's chapter 11 case and the need to act or respond to such issues on an expedited basis in furtherance of the LES Committee's needs have required the expenditure of substantial time by Akin Gump personnel from numerous legal disciplines, on an as-needed basis.

10.    Akin Gump maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services to the LES Committee. Such time records were made contemporaneously with the rendition of services by the person performing such services and in the ordinary course of Akin Gump's practice. A compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services for the LES Committee during the Compensation Period is attached hereto as **Exhibit B**.

11.    Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, which are also available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is contained in **Exhibit C** attached hereto.

12.    Akin Gump respectfully submits that the professional services that it rendered on behalf of the LES Committee were necessary and appropriate and have directly contributed to the effective administration of LES's chapter 11 case. The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in **Exhibit B**. Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the LES Committee, as well as to identify some of the problems and issues that Akin Gump was required to address during the Compensation Period.

A.    **Case Administration**

13.    A portion of the services rendered during the Compensation Period related to the initial organization of the LES Committee and matters related thereto. Specifically, in the initial days following the LES Committee's formation, in addition to immediately beginning to analyze and respond to issues related to LES's case, Akin Gump worked with the LES Committee to

develop appropriate bylaws to govern the LES Committee's conduct. Akin Gump also assisted the LES Committee with understanding its financial advisory and communications agent needs and selecting an appropriate advisor to meet those needs. Akin Gump's attention to the LES Committee's organizational needs during the Compensation Period enabled the LES Committee to immediately begin to function as a coordinated group and to acquit its fiduciary duties.

14.    Akin Gump reviewed and analyzed all motions filed by the Debtors and other parties in interest in this Court during the Compensation Period, including, but not limited to, the "first-day" motions filed by the Debtors for which interim relief was sought at the "first-day" hearing (the "First-day Motions"). The First-day Motions included: (i) motions relating to the Debtors' cash management system; (ii) administrative motions and case management procedures; (iii) motions to pay certain pre-petition obligations including wages, salaries, commissions, and employee benefits; (iv) motions for extensions of time in which to file schedules of assets and liabilities and statements of financial affairs; and (v) motions relating to the adequate assurance of payment to utility providers. Other motions and applications filed by the Debtors and other parties in interest that required Akin Gump's attention during the Compensation Period included: (a) motions with respect to the sale of LFG's stock in certain underwriting subsidiaries; (b) the Debtors' motion to establish procedures to settle all claims involving segregated exchange funds; (c) numerous applications for the retention of professionals; (d) the Debtors' motion to set a final date to file proofs of claim; (e) several motions by the Debtors to assume or reject executory contracts and unexpired real property leases; and (f) numerous adversary proceedings filed by exchange customers seeking various declaratory, injunctive, and monetary relief regarding exchange funds held by LES. In addition to the foregoing motions filed in this Court, Akin Gump also reviewed and analyzed the potential

impact on LES's bankruptcy case of several actions filed in jurisdictions outside the Eastern District of Virginia.

15.     In connection with all motions and applications filed by the Debtors and other parties in interest in these cases, Akin Gump, with the assistance of the LES Committee's other professionals, conducted extensive diligence on the subject matter of each motion and application to, among other things, ascertain the effect the relief requested in the pleading would have on the LES estate. Akin Gump's diligence efforts included reviewing all underlying documentation related to the applicable pleading, communicating with representatives of the Debtors and third parties to address issues related to the relief requested, and working with the LES Committee's other professionals to ensure that the LES Committee had a complete understanding of the effect the granting of the relief requested in a given pleading would have on the LES estate.

16.     Akin Gump kept the LES Committee members advised of all material motions, applications, and case developments during the Compensation Period through detailed memoranda and, as appropriate, conference calls or in-person meetings with individual LES Committee members and the entire LES Committee. During the Compensation Period, Akin Gump also had numerous telephonic conferences and electronic communications with the Debtors and their professionals to discuss and address pending issues and proposed actions.

17.     Akin Gump routinely held internal meetings with the professionals assigned to this matter to ensure that Akin Gump was representing the LES Committee in the most efficient manner at the least cost to the LES estate. As discussed in detail above, at the request of the LES Committee, Akin Gump assisted in or took the lead in analyzing all motions presented by the Debtors and other parties in interest and advised the LES Committee on its own initiatives and

directions for LES's chapter 11 case.  In addition, Akin Gump coordinated all LES Committee

activities, including attending to member issues and interacting with the LES Committee's chair

in setting agendas for the LES Committee's in-person meetings and conference calls.  Akin

Gump also regularly consulted with Protiviti, GCG, and Tavenner & Beran with respect to

documents and other information received from the Debtors, their representatives, and other

sources.

18.      Due to Akin Gump's experience in counseling creditors' committees, Akin Gump

believes it was able to efficiently address all issues relating to case administration that have

arisen during the pendency of the Debtors' chapter 11 cases.

**B.      LES Committee Meetings**

19.      The LES Committee played a very active role in LES's chapter 11 case during the

Compensation Period.  Akin Gump, together with the other LES Committee's professionals, held

no less than one in-person and seven (7) telephonic meetings with the LES Committee during the

Compensation Period.  In addition, Akin Gump had numerous telephonic conferences with

individual LES Committee members and the LES Committee chair.

20.      Prior to its meetings with the LES Committee, Akin Gump reviewed each

pending matter requiring the LES Committee's attention and all underlying documentation in

connection therewith.  Thereafter, Akin Gump discussed each of these matters with the LES

Committee's other professionals, the LES Committee, and individual LES Committee members.

During these discussions, Akin Gump assisted the LES Committee in formulating a position with

respect to each pending matter.  In addition, Akin Gump prepared and/or assisted the LES

Committee's other professionals in preparing detailed memoranda for the LES Committee during

the Compensation Period discussing the status of pertinent matters in these proceedings.

21.     Through meetings, telephone conferences, and correspondence, Akin Gump has assisted the LES Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in these chapter 11 cases, to monitor closely LES's management of these proceedings, and to reach independent conclusions on the merits of specific matters.

## C.     Court Hearings

22.     Akin Gump attorneys attended, either in-person or telephonically, all of the hearings held before this Court affecting the LES estate during the Compensation Period.  In preparing for Court hearings, Akin Gump reviewed all applicable motions and applications filed with the Court, including any responses thereto, and then presented, as needed, the LES Committee's position at such hearings.

## D.     Other Parties' Retention of Professionals

23.     During the Compensation Period, the Debtors filed various applications for authorization to retain legal counsel, a consultant, a restructuring firm and chief restructuring officer, and financial advisors (the "Debtors' Retention Applications").  In addition, during the Compensation Period, the Official Committee of Unsecured Creditors of LFG (the "LFG Committee") filed various applications for authorization to retain legal counsel and financial advisors (the "LFG Committee's Retention Applications, and together with the Debtors' Retention Applications, the "Retention Applications").  Akin Gump reviewed and analyzed each of the Retention Applications.  Akin Gump had numerous discussions with the Debtors, the LFG Committee, and their proposed professionals with respect to the Retention Applications to ensure that (i) all professionals employed by the Debtors and the LFG Committee were necessary to the administration of the Debtors' estates and (ii) the compensation proposed for each professional employed by the Debtors and the LFG Committee was appropriate in light of the financial

circumstances and value of the services to be performed by the professional. In connection therewith, Akin Gump prepared detailed memoranda summarizing the key terms of each such professional's retention to assist the LES Committee with its analysis regarding the Retention Applications.

24.     Also during the Compensation Period, this Court entered its Order authorizing the professional fees of the Commingled Type A Test Case plaintiff to be treated as administrative expenses of the LES estate. Accordingly, on February 9, 2009, the Commingled Type A Test Case plaintiff filed an application to retain legal counsel (the "Type A Retention Application"). Akin Gump reviewed and analyzed the Type A Retention Application, and on February 19, 2009, Akin Gump, on behalf of the LES Committee, joined the Debtors' objection to the Type A Retention Application, asserting that the relief requested in the Type A Retention Application, specifically, the retention of three separate law firms as counsel, was unreasonable and constituted an undue burden on the LES estate.

**E.     Retention of the LES Committee's Professionals**

25.     During the Compensation Period, Akin Gump prepared the LES Committee's application to retain Akin Gump as its lead counsel. To ensure compliance with Akin Gump's disclosure obligations under Bankruptcy Rule 2014, Akin Gump reviewed all declarations and/or affidavits filed by parties in interest in these cases and then prepared its own affidavits (the "Affidavits"). Akin Gump's initial Affidavit was filed on December 31, 2008, as part of Akin Gump's retention application, followed by a supplemental Affidavit filed on March 24, 2009.

26.     On or about December 12, 2008, the LES Committee elected to retain Protiviti to advise it with respect to the myriad financial challenges facing the Debtors. Akin Gump, on behalf of the LES Committee, negotiated with Protiviti the terms of their retention and reviewed the LES Committee's application to retain Protiviti prior to filing it with the Court.

27.    On or about December 12, 2008, the LES Committee elected to retain GCG to serve as its communications agent and assist it in complying with its obligations under Bankruptcy Code section 1102(b)(3). Akin Gump, on behalf of the LES Committee, negotiated with GCG the terms of their retention and reviewed the LES Committee's application to retain GCG prior to filing it with the Court.

**F.    Preparation of Monthly Billing Statements / Other Professionals' Monthly Billing Statements**

28.    During the Compensation Period, Akin Gump prepared its Monthly Fee Statements. Akin Gump also reviewed the monthly billing reports received from the other professionals retained in these cases to identify any issues regarding such billing reports and to ensure compliance with the Local Rules for the Eastern District of Virginia.

**G.    Financial Reports and Analyses**

29.    Akin Gump reviewed the Debtors' financial reports during the Compensation Period and assisted Protiviti in summarizing such reports for the LES Committee. Additionally, Akin Gump attorneys participated in numerous conference calls and electronic communications with the Debtors and their professionals, the LES Committee's other professionals, and individual members of the LES Committee to discuss the administration of the Debtors' estates and the Debtors' liquidity.

**H.    Schedules and Statements of Financial Affairs**

30.    During the Compensation Period, Akin Gump, along with Protiviti, reviewed and analyzed the schedules of assets and liabilities and statement of financial affairs filed by LES to determine the secured and unsecured claims asserted against LES, as well as the assets held by LES potentially available for distribution to LES's unsecured creditors.

**I.       Fidelity Sale**

31.      On the first day of the Debtors' cases, LFG filed a motion to sell its stock in Commonwealth Land Title Insurance Company and Lawyers Title Insurance Corporation (collectively, the "Underwriters") to Fidelity National Title Insurance Company and Chicago Title Insurance Company (collectively, "Fidelity").    Accordingly, immediately upon Akin Gump's retention, Akin Gump worked feverishly to conduct appropriate diligence in order to determine the impact, if any, of the sale of the Underwriters to Fidelity on the LES estate.  In addition, Akin Gump prepared for and attended the December 16, 2008 hearing on the sale of the Underwriters to Fidelity and advised the LES Committee regarding the potential effect of the sale on the unsecured creditors of LES.

**J.       Analysis of Assumption and/or Rejection of Pre-petition Agreements**

32.      Akin Gump reviewed and analyzed the various motions filed by the Debtors during the Compensation Period with respect to the assumption or rejection of executory contracts and unexpired leases of non-residential real property.  In particular, Akin Gump spent considerable time during the Compensation Period analyzing (i) the Debtors' first omnibus motion to reject certain unexpired real property leases and (ii) the Debtors' motion to assume a contract with PricewaterhouseCoopers to continue to advise the Debtors regarding certain tax litigation.    In connection with each such motion, Akin Gump analyzed the underlying agreements, summarized applicable portions of the underlying agreements and the motions for the LES Committee, and discussed and made recommendations to the LES Committee with respect to each such motion. Akin Gump's analyses of these motions, with the assistance of the LES Committee's other professionals, enabled the LES Committee to make informed decisions in supporting or opposing the relief requested based on, among other things, the effect assumption or rejection would have on the LES estate.

**K.    Analysis of Pre-petition Transactions**

33.    During the Compensation Period, Akin Gump, along with Protiviti, reviewed and analyzed the Debtors' directors' and officers' liability insurance policies to ensure that the Debtors' coverage was preserved. In connection with such analysis, Akin Gump prepared a comprehensive legal memorandum advising the LES Committee and its professionals of the details of such policies and the potential impact of such policies on the LES estate.

34.    Akin Gump, along with Protiviti, also reviewed and analyzed various issues regarding the auction rate securities held by LES. During the Compensation Period, Akin Gump reviewed the auction rate securities held by LES, analyzed settlements made by other parties regarding auction rate securities, analyzed potential third-party actions regarding the auction rate securities, and discussed pursuit of actions regarding same with the Debtors. Akin Gump's ongoing analyses of these issues, with the assistance of the LES Committee's other professionals, has enabled the LES Committee to make informed decisions regarding the favorable or unfavorable effects of particular courses of action on the LES estate.

**L.    Intercompany Claims Analysis**

35.    During the Compensation Period, Akin Gump began analyzing the intercompany claim asserted by the LFG estate against the LES estate. Akin Gump prepared a preliminary legal memorandum for the LES Committee analyzing the validity, if any, of the foregoing claim, as well as any defenses that may be asserted in connection with such claim.

**M.    Adversary Proceedings**

36.    During the Compensation Period, parties to various pre-petition 1031 exchange agreements with LES ("Exchangers") initiated adversary proceedings (the "Exchange Actions") seeking the release of assets in the possession of LES. LES originally sought authority to establish a protocol that would allow LES to remit assets to certain Exchangers without further

Court approval.   The LES Committee strenuously objected and, as a result, along with the Debtors, the LFG Committee, and the plaintiffs in several of the Exchange Actions negotiated a protocol for the expedited consideration and resolution of five test cases (the "Test Cases").

37.      In connection with the expedited litigation of the Test Cases, Akin Gump has participated in no less than 15 depositions and reviewed no less than 50,000 pages of documents produced by the Debtors and other parties in interest regarding the Test Cases.   Akin Gump drafted no less than 10 substantive pleadings and no less than 5 sets of discovery requests during the Compensation Period in connection with the litigation of the Test Cases and reviewed the numerous motions and responses and responded to multiple sets of discovery requests filed by the Test Case plaintiffs, the Debtors, and the LFG Committee.

38.      During the Compensation Period, Akin Gump has devoted substantial time to preparing for the summary judgment motion and trial stages of the litigation of the Test Cases. The summary judgment hearing in the first Test Case was held on April 7, 2009.   Summary judgment hearings in the remaining Test Cases are set for April 16, 2009, and the first Test Case is currently set for trial on April 24, 2009.

39.      During the Compensation Period, Health Care REIT, Inc. ("HCN") filed a complaint against LES seeking the return of assets in the possession of LES.   LES originally sought to settle with HCN for $0.   The LES Committee strenuously objected and, as a result, the LES Committee, along with LES, HCN, and the LFG Committee, negotiated a settlement agreement whereby the LES estate received $2 million, to the benefit of all unsecured creditors of LES.

**N.      Modification of the LES Cash Management Order**

40.      During the Compensation Period, several Exchangers filed a motion requesting that, due to the well-publicized financial distress of Citibank, N.A. ("Citibank"), the LES Cash

Management Order[2] be amended to allow for certain assets held by LES at Citibank to be transferred to a financial institution on the list of depositories authorized by the Office of the United States Trustee for the Eastern District of Virginia (an "Authorized Depository"). This Court entered an order granting such motion on January 28, 2009. Accordingly, on February 10, 2009, the LES Committee filed a similar motion requesting that, in the interests of all unsecured creditors of LES, the remainder of cash held by LES at Citibank also be transferred to an Authorized Depository due to the financial crisis at Citibank and the fact that funds in several of LES's Citibank accounts exceeded standard FDIC insurance limits.

**O.     Creditor Inquiries**

41.     Akin Gump fielded numerous telephone inquiries and electronic communications during the Compensation Period from unsecured creditors to discuss the status of various pending matters and to respond to their many questions about the bankruptcy process and the status of their claims against the Debtors' estates.

**P.     Creditor Website**

42.     During the Compensation Period, Akin Gump, with the assistance of GCG, has maintained a website devoted to providing information to the unsecured creditors of LES. Akin Gump, with the assistance of GCG, regularly posts updates to the creditor website regarding the status of LES's chapter 11 case, the protocol and the expedited litigation on the Test Cases, and the pleadings filed by the LES Committee and other parties in interest in LES's case.

---

[2] On November 28, 2008, this Court entered its Order Authorizing: (A) Maintenance and Continued Use of the Debtor's Existing Bank Accounts and Continued Business Forms; (B) A Waiver of Certain Operating Guidelines Relating to Bank Accounts; and (C) A Limited Waiver of and an Extension of Time for the Debtor to Comply with Section 345 of the Bankruptcy Code.

## IV.    FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

43.    The Bankruptcy Code sets forth the legal standards for awarding compensation to professionals. The format for fee applications is set forth in the Compensation Guidelines for Professionals in the United States Bankruptcy Court for the Eastern District of Virginia (the "Guidelines").

44.    Under Bankruptcy Code section 330, the Court may award counsel to the LES Committee reasonable compensation for actual, necessary services rendered by such attorneys and paraprofessionals employed by such attorneys based on the nature, extent and value of the services rendered, time spent on such services and the cost of comparable services other than in a bankruptcy case. Furthermore, the Court may award reimbursement for actual, necessary expenses.

45.    Under the "lodestar" approach, the Court should consider the number of hours of service reasonably devoted to the case multiplied by the attorney's reasonable rates. Courts frequently consider the specific "lodestar" factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). These lodestar tests were adopted by the Fourth Circuit in *Barber v. Kimbrells, Inc.*, 577 F.2d 216, 226 (4th Cir.), *cert. denied*, 439 U.S. 934 (1978), and in *Anderson v. Morris*, 658 F.2d 246, 249 (4th Cir. 1981), where the Fourth Circuit held that the District Court should employ the lodestar approach, and then adjust the fee on the basis of the remaining *Johnson* factors in the case. Akin Gump respectfully submits that a consideration of these factors should result in this Court's allowance of the full compensation sought.

> (A)    The Time and Labor Required.  The professional services rendered by Akin Gump on behalf of the LES Committee have required the continuous expenditure of substantial time and effort under significant time pressures. The

services rendered required a high degree of professional competence and expertise in order to be administered with skill and dispatch.

(B)     The Novelty and Difficulty of the Questions.  In this case, as in all others in which the firm is involved, Akin Gump's effective advocacy and creative approach have helped clarify and resolve a number of complex and novel issues.

(C)     The Skill Requisite to Perform the Legal Service Properly.  Akin Gump believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Akin Gump's practice, and its creative approach to the resolution of issues has contributed to the maximization of distributions to LES's unsecured creditors.

(D)     The Preclusion of Other Employment by the Attorney Due to Acceptance of the Case.  Due to the size of Akin Gump's financial restructuring department, Akin Gump's representation of the LES Committee has not precluded its acceptance of new clients.

(E)     The Customary Fee.  The fee sought herein is based upon Akin Gump's normal hourly rates for services of this kind.  Akin Gump respectfully submits that the fee sought herein is not unusual given the magnitude and complexity of these chapter 11 cases and the time expended in attending to the representation of the LES Committee and is commensurate with fees Akin Gump has been awarded in other cases, as well as with fees charged by other attorneys of comparable experience.

(F)     Whether the Fee is Fixed or Contingent.  Pursuant to Bankruptcy Code sections 330 and 331, all fees sought by professionals employed under

Bankruptcy Code section 1103 are contingent pending final approval by this Court and are subject to adjustment depending upon the services rendered and the results obtained. Thus far, however, the collective efforts of the various parties in interest and their respective professionals, including Akin Gump, have resulted in the consensual resolution of many significant issues in these cases in a relatively short period of time given the complexity of the Debtors' chapter 11 cases.

(G)    Time Limitations Imposed by the Client or the Circumstances. As already indicated, Akin Gump has been required to attend to certain issues arising in these chapter 11 cases in compressed and urgent time periods.

(H)    The Amount Involved and the Results Obtained. Through the efforts of Akin Gump, the LES Committee has been an active participant in these chapter 11 cases, and its constructive assistance, as well as criticism, has greatly contributed to enhancement of the recoveries available to the unsecured creditors of LES and to the efficient administration of these chapter 11 cases.

(I)    The Experience, Reputation and Ability of the Attorneys. Akin Gump has a large and sophisticated financial restructuring practice and is playing and has played a major role in numerous cases of national import including, for example, the reorganization proceedings of Adelphia Business Solutions, Inc., Aetna Industries, Inc., Allegiance Telecom, Inc., American Commercial Lines LLC, Anchor Glass Container Corporation, ATA Holdings Corp., Bally Total Fitness Holding Corporation, Calpine Corporation, Collins & Aikman Corporation, Dairy Mart Convenience Stores, Inc., Dan River Inc., Delta Air Lines Inc., Exide Technologies, FLAG Telecom Holdings Limited, Granite Broadcasting

Corporation, Hayes Lemmerz International, Inc., Haynes International, Inc., Kaiser Aluminum Corporation, The LTV Corporation, Loral Space & Communications Ltd., Pegasus Satellite Television, Inc., Polaroid Corporation, Propex, Inc., Quebecor World (USA) Inc., Scott Cable Communications, Inc., TOUSA, Inc., Tower Automotive, Inc., Venture Holdings Company, LLC, Verasun Energy Corporation, Worldcom, Inc., and XO Communications, Inc. Akin Gump's experience enables it to perform the services described herein competently and expeditiously. In addition to its expertise in the area of corporate reorganization, Akin Gump has called upon the expertise of its partners and associates in other practice areas to perform the wide-ranging scope of the legal work necessitated by these chapter 11 cases, including tax and litigation.

(J)     The "Undesirability" of the Case. These cases are not undesirable.

(K)     The Nature and Length of the Professional Relationship with the Client. Akin Gump was selected as counsel to the LES Committee on December 8, 2008. The Court entered an order on January 16, 2009, authorizing the LES Committee to employ Akin Gump, *nunc pro tunc* to December 8, 2008. Akin Gump has been rendering services continuously to the LES Committee since December 8, 2008 and continuing through the Compensation Period, as necessary and appropriate.

## V.     **ALLOWANCE OF COMPENSATION**

46.     The professional services rendered by Akin Gump required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the LES Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort. It is respectfully submitted that the services rendered to the LES Committee were performed efficiently, effectively and

economically, and the results obtained to date have benefited not only the members of the LES

Committee, but also the unsecured creditor body of LES as a whole and the LES estate.

47.    The allowance of interim compensation for services rendered and reimbursement

of expenses in bankruptcy cases is expressly provided for in Bankruptcy Code section 331:

> Any professional person . . . may apply to the court not more than
> once every 120 days after an order for relief in a case under this
> title, or more often if the court permits, for such compensation for
> services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331.  Moreover, this Court has authorizing the filing of this Application in the

Interim Compensation Order.

48.    With respect to the level of compensation, Bankruptcy Code section 330(a)(1)

provides, in pertinent part, that the Court may award to a professional person:

> reasonable compensation for actual, necessary services rendered . . .

11 U.S.C. § 330(a)(1).  Section 330(a)(3)(A), in turn, provides that

> In determining the amount of reasonable compensation to be
> awarded, the court shall consider the nature, the extent, and the
> value of such services, taking into account all relevant factors,
> including –
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of,
> or beneficial at the time at which the service was rendered toward
> the completion of, a case under this title;
> (D) whether the services were performed within a reasonable
> amount of time commensurate with the complexity, importance,
> and nature of the problem, issue, or task addressed; and
> (E) whether the compensation is reasonable based on the
> customary compensation charged by comparably skilled
> practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A).  The clear congressional intent and policy expressed in this statute is

to provide for adequate compensation in order to continue to attract qualified and competent

bankruptcy practitioners to bankruptcy cases.

49.     The total time spent by Akin Gump attorneys and paraprofessionals during the Compensation Period was 3,379.65 hours. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task. As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time.

50.     Akin Gump respectfully requests that the Court not "hold back" any portion of the fees awarded. This Application covers the period from December 8, 2008 through and including February 28, 2009. Pursuant to the Interim Compensation Order, Akin Gump's monthly fees are subject to a 15% "holdback." The amount of Akin Gump's holdbacks for the Compensation Period is $220,781.89. By the time of the April 16, 2009 hearing on this Application, Akin Gump will have additional 15% holdbacks for the month of March 2009 (the "Additional Holdback"). Akin Gump suggests that based on the Additional Holdback, there is no need for any holdbacks of the fees awarded pursuant to this Application.

51.     Akin Gump incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the LES Committee during the Compensation Period in the amount of $90,672.49, for which Akin Gump respectfully requests reimbursement in full. The disbursements and expenses have been incurred in accordance with Akin Gump's normal practice of charging clients for expenses clearly related to and required by particular matters. Akin Gump has endeavored to minimize these expenses to the fullest extent possible.

52.     Akin Gump's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, secretarial overtime, postage and certain other office services because the needs of each client for such services differ. Akin Gump believes that it is fairest to charge each client only for the services actually used in

performing services for it. In these proceedings, Akin Gump charges \$.20 per page for internal duplicating and does not charge for outgoing or incoming facsimile transmissions. Akin Gump has agreed not to charge for travel time in these proceedings.

53.     No agreement or understanding exists between Akin Gump and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these chapter 11 cases.

54.     No prior application has been made in this Court or in any other court for the relief requested herein for the Compensation Period.

**WHEREFORE**, Akin Gump respectfully requests that this Court enter an order:

(a)     approving the allowance of \$1,471,879.25 for compensation for professional services rendered to the LES Committee during the period from December 8, 2008 through and including February 28, 2009;

(b)     approving the reimbursement of Akin Gump's out-of-pocket expenses incurred in connection with the rendering of such services during the period December 8, 2008 through and including February 28, 2009 in the amount of \$90,672.49;

(c)     authorizing and directing LES to pay the fees and expenses awarded; and

(d)     granting such other and further relief as this Court may deem just and proper.

Dated: Richmond, Virginia

    April 14, 2009

                    /s/ *Mary A. House*

Charles R. Gibbs (admitted *pro hac vice*)
Keefe Bernstein (admitted *pro hac vice*)
Sarah Link Schultz (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas  75201
Telephone: 214.969.2800
Facsimile: 214.969.4343

Mary A. House (Virginia Bar No. 66613)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone:  202.887.4000
Facsimile:  205.955.7827

-and-

Lynn Tavenner (Virginia Bar No. 30083)
Paula S. Beran (Virginia Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219
Telephone: 804.783.8300
Facsimile: 804.783.0178

*Attorneys for The Official Committee of Unsecured
Creditors of LandAmerica 1031 Exchange Services,
Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 14th day of April, 2009 a true and correct copy of the foregoing *First Interim Application of Akin Gump Strauss Hauer & Feld LLP for Allowance of Compensation and Expense Reimbursement as Counsel to the Official Committee of Unsecured Creditors of LandAmerica 1031 Exchange Services, Inc.* has been served via first class mail, postage pre-paid and/or electronic delivery to:

Robert B. Van Arsdale – Via Email:
Office of the United States Trustee
701 East Broad St. Suite 4304
Richmond, Virginia 23219
Robert.B.Van.Arsdale@usdoj.gov

Dion W. Hayes, Esq. – Via Email:
John H. Maddock, III, Esq. – Via Email:
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219
dhayes@mcguirewoods.com
jmaddock@mcguirewoods.com

Paul V. Shalhoub, Esq. – Via Email:
Rachel C. Strickland, Esq. – Via Email:
WILLKIE FARR & GALLAGHER, LLP
787 Seventh Avenue
New York, New York 10019
pshalhoub@willkie.com
rstrickland@willkie.com

Bruce H. Matson – Via Email:
Christopher L. Perkins – Via Email:
LeClair Ryan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
bruce.matson@leclairryan.com
christopher.perkins@leclairryan.com

Jeffrey S. Sabin – Via Email:
Mark M. Elliott – Via Email:
Justin G. Imperato – Via Email:
Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022
jeffrey.sabin@bingham.com
mark.elliott@bingham.com
justin.imperato@bingham.com

Michelle H. Gluck – Via Standard Mail
Michael D. Beverly – Via Standard Mail
LandAmerica Financial Group, Inc.
5600 Cox Road
Glen Allen, VA  23060


_____ */s/ Sarah Link Schultz* _____
Sarah Link Schultz