Paul V. Shalhoub (Admitted *Pro Hac Vice*)
Rachel C. Strickland (Admitted *Pro Hac Vice*)
Jordana Linder (Admitted *Pro Hac Vice*)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

     - and -

Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 41044)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

Attorneys for the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

-------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| LandAmerica Financial Group, Inc., <u>et al.</u>, | : | Case No. 08-35994 (KRH) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------x

**FIRST APPLICATION OF WILLKIE FARR & GALLAGHER LLP
AS COUNSEL FOR DEBTORS FOR INTERIM ALLOWANCE OF
COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED
<u>FROM NOVEMBER 26, 2008 THROUGH FEBRUARY 28, 2009</u>**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Willkie Farr & Gallagher LLP ("**WF&G**"), attorneys for the above-captioned

debtors and debtors-in-possession, in support of its first application (the "**Application**") for

interim allowance of compensation for professional services rendered and reimbursement of

expenses incurred from November 26, 2008 through February, 28, 2009 (the "**First Application Period**"), respectfully represents:

<b><u>PRELIMINARY STATEMENT</u></b>

1.       By this Application and pursuant to sections 330 and 331 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), WF&G requests that this Court authorize interim allowance of compensation for professional services rendered and reimbursement of expenses incurred during the First Application Period in the amount of $4,191,668.77 (the "**Application Amount**").  The Application Amount includes: (a) reimbursement of $129,170.77 in actual and necessary expenses WF&G incurred in connection with its rendition of professional services during the First Application Period;[1] and (b) compensation of $4,062,498.00 in fees for services rendered during the First Application Period.  The Application Amount includes $609,374.70 which represents 15% of WF&G's fees that have been "held back" (the "**Holdback**") in accordance with the Interim Compensation Order (as defined herein) pending interim approval of this Application by the Court.  At this time, WF&G is requesting payment of the Holdback relating to the First Application Period.

<b><u>JURISDICTION AND VENUE</u></b>

2.       This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for

---

[1]    WF&G's standard practice is to treat certain expenses as having been incurred when such obligations are recorded and reflected as payable in WF&G's accounting system.  Accordingly, WF&G reserves its right to seek at a later date compensation for expenses incurred during the First Application Period that may not have been posted as of yet and thus are not included herein.

the relief requested herein are sections 330 and 331 of the Bankruptcy Code, and Bankruptcy Rule 2016.

## BACKGROUND

3. On November 26, 2008 (the "**Initial Petition Date**"), LandAmerica Financial Group, Inc. ("**LFG**") and LandAmerica 1031 Exchange Services, Inc. ("**LES**" and, collectively with LFG, the "**Debtors**") filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code. On March 6, 2009, LandAmerica Assessment Corporation ("**LAC**"), filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code, on March 27, 2009, LandAmerica Title Company ("**LandAm Title**") filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code, and on March 31, 2009, Southland Title Corporation, Southland Title of Orange County, and Southland Title of San Diego (collectively, the "**Southland Entities**") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors and LAC, LandAm Title and the Southland Entities (collectively, the "**Subsequent Debtors**") continue to manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. Pursuant to orders of this Court dated November 28, 2008, March 11, 2009, April 8, 2009, and April 9, 2009 the chapter 11 cases of the Debtors and Subsequent Debtors are being jointly administered under case number 08-35994. No trustee or examiner has been appointed in the Debtors' and Subsequent Debtors' chapter 11 cases.

4. On December 3, 2008, the United States Trustee for the Eastern District of Virginia (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors in the case of (a) LFG (the "**LFG Creditors' Committee**"); and (b) LES (the "**LES Creditors' Committee**", and, together with the LFG Creditors' Committee, the "**Creditors' Committees**").

## WF&G'S FEES AND EXPENSES

5.      WF&G's services in these cases have been substantial, necessary, and beneficial to the Debtors, their estates, creditors and other parties-in-interest.  Throughout the First Application Period, the variety and complexity of the issues involved in these cases and the need to address certain matters on an expedited basis has required WF&G, in the discharge of its professional responsibilities, to devote substantial time by professionals from several legal disciplines on a daily basis.

6.      Specifically, WF&G's requests reflect the requisite time, skill, and effort WF&G expended towards, inter alia (a) assisting the Debtors in the initial stages of their chapter 11 cases; (b) assisting LFG with the sale of its stock in the Underwriters (as defined below) to Fidelity (as defined below); (c) working with LFG to evaluate, market, and sell, as applicable, the remaining businesses of its subsidiaries; (d) litigating disputes relating to the ownership of Exchange Funds (as defined below), and (e) moving the Debtors through the chapter 11 process without undue delay.

7.      In accordance with section II.B. of the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, issued January 30, 1996 (the "**UST Guidelines**"), WF&G makes the following disclosures:

>   (a)    The Debtors have been given an opportunity to review this Application and have approved the amount requested herein.

>   (b)    The Debtors have not yet filed a chapter 11 plan or plans (the "**Plan**") or disclosure statement (the "**Disclosure Statement**") in these cases.  Presently, the Debtors' exclusive periods to file and solicit acceptances of their Plan or Plans under section 1121 of the Bankruptcy Code are scheduled to expire on July 24, 2009, and September 2, 2009, respectively.

(c)      To the best of WF&G's knowledge, all quarterly fees have been paid to the U.S. Trustee, and required monthly operating reports covering the period from the Initial Petition Date through February 28, 2009 have been filed.

(d)      WF&G is advised that as of February 28, 2009, LFG had approximately $100,247,641, and LES had approximately $141,296,430 in cash on hand.

(e)      WF&G is advised that the Debtors are paying all undisputed administrative expenses in the ordinary course of business.

## MONTHLY FEE STATEMENTS

8.      WF&G was retained as counsel to the Debtors, effective as of the Initial Petition Date, pursuant to an order of this Court dated December 22, 2008. On December 21, 2008, the Court entered the Order Under Sections 105(a) and 331 of Bankruptcy Code Establishing Procedures for Interim Compensation (the "**Interim Compensation Order**"). The Interim Compensation Order provides, among other things, that retained professionals of the Debtors are required to serve monthly itemized billing statements ("**Fee Statements**") to the U.S. Trustee, the Debtors, counsel to the Debtors, and counsel to the Creditors' Committees. Upon passage of a twenty day objection period, if no objections have been received, the Debtors are authorized to pay to the professionals 85% of the fees, and 100% of the expenses requested.

9.      In compliance with the Interim Compensation Order, WF&G has submitted three Fee Statements relating to the First Application Period. Payment on account of these Fee Statements has been requested as follows:

(a)      Pursuant to the Fee Statement for the period November 26, 2008 through December 31, 2008 (the "**December Fee Statement**"), WF&G has requested payment of $1,386,086.02 representing 85% of the total fees requested for services

rendered (<u>i.e.</u>, $1,630,736.50), and $44,645.91 representing 100% of the expenses incurred during the period.[2]

(b) Pursuant to the Fee Statement for the period January 1, 2009 through January 31, 2009 (the "**January Fee Statement**"), WF&G has requested payment of $976,378.42 representing 85% of the total fees requested for services rendered (<u>i.e.</u>, 1,148,680.50), and $25,305.60 representing 100% of the expenses incurred during the period.

(c) Pursuant to the fee statement for the period February 1, 2009 through February 28, 2009 (the "**February Fee Statement**"), WF&G has requested payment of $1,090,618.85 representing 85% of the total fees requested for services rendered (<u>i.e.</u>, $1,283,081.00), and $59,219.26, representing 100% of the expenses incurred during the period.

10.     No objections to the December Fee Statement or the January Fee Statement were submitted and no objections to the February Fee Statement have been submitted as of the filing of this Application.  In accordance with the Interim Compensation Order, WF&G has received payment of $1,430,731.93 relating to the December Fee Statement and $1,001,684.02 relating to the January Fee Statement.  The objection deadline for the February Fee Statement is April 22, 2009; therefore, as of the date of this Application, WF&G has not received payment for the February Fee Statement.

## THIS FEE APPLICATION

11.     Prior to the Initial Petition Date, WF&G received retainers aggregating $700,000.  These retainers were applied to fees for services rendered and reimbursement for

---

[2]     The December Fee Statement was reissued on March 6, 2009 by WF&G in order to reflect the allocation of fees and expenses incurred for work performed on behalf of LES and LFG.  The January Fee Statement and February Fee Statement (as defined herein) similarly reflect the allocation of fees and expenses incurred on behalf of each Debtor.

expenses incurred prior to the Initial Petition Date.[3]  As of the Initial Petition Date, WF&G had no agreement or understanding between WF&G and any other entity for the sharing of compensation to be received for services rendered in or in connection with these cases.

12.     WF&G maintains written records of the time expended by attorneys and paraprofessionals in the rendition of professional services to the Debtors.  Such time records are made contemporaneously with the rendition of services by the person rendering such services.  A copy of the daily time records for the First Application Period, broken down by matter and listing the name of the attorney or paraprofessional, the date on which the services were performed, and the amount of time spent in performing the services, is annexed hereto as <u>Exhibit A</u>.  Additionally, annexed hereto as part of <u>Exhibit A</u> is a list of all of the matters for which services were rendered and the aggregate amount of hours and fees expended for each of those matters.

13.     For the convenience of the Court and parties-in-interest, annexed hereto as <u>Exhibit B</u> is a list of the attorneys and paraprofessionals who have worked on these cases during the First Application Period, the aggregate time expended by each individual during the First Application Period, his or her hourly billing rate during the First Application Period, and the amount of WF&G's fees attributable to each individual.

14.     WF&G also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of professional services.  A schedule setting forth the categories of expenses and amounts for which reimbursement is requested is annexed hereto as <u>Exhibit C</u>.

---

[3]     The Affidavit of Paul V. Shalhoub filed in support of WF&G's retention application inadvertently listed the retainer balance outstanding as of the Initial Petition Date in the amount of $461,244.00.  The actual outstanding retainer balance as of the Initial Petition Date was $506,735.00.

15. Pursuant to the Interim Compensation Order and UST Guidelines, WF&G recorded its services rendered and disbursements incurred on different matters reasonably expected by the Debtors to continue over a period of at least three months and to constitute a substantial portion of the fees sought during an application period.

### SUMMARY OF SERVICES RENDERED

16. Recitation of each and every item of professional services that WF&G performed would unduly burden the Court. Hence, the following summary highlights the major areas to which WF&G devoted substantial time and attention during the First Application Period. The full breadth of WF&G's services is reflected in WF&G's time records.[4]

A. **General Chapter 11 and Case Administration of LFG's Case**

17. WF&G has contributed significantly to the efficient administration of LFG's bankruptcy case. Where possible, WF&G has attempted to resolve disputes consensually, without seeking judicial intervention. WF&G has actively sought to maintain an efficient working relationship with Court personnel, the U.S. Trustee, counsel to the Creditors' Committees and other parties-in-interest, and to guide the Debtors to the culmination of their chapter 11 cases.

18. LFG is a holding company that operates through its various subsidiaries (collectively, with LFG, the "**Company**"). Through the bankruptcy process, LFG intends to maximize value for its creditors and its estate through sales of the Company's remaining businesses and/or the prompt and orderly wind-down and liquidation of such businesses. The size and complexity of the Company's business operations as well as the numerous legal and

---

[4] Copies of the daily time records are being provided to the Court and the Office of the U.S. Trustee. Parties in interest required to be served with WF&G's Fee Statements pursuant to the Interim Compensation Order have previously been furnished with such daily time records. Copies of the time records will be made available to other parties in interest upon reasonable request.

business issues arising in LFG's case, necessitate a significant amount of communication among LFG's management and other professionals employed by LFG. As a means of coordinating and assessing the progress made in LFG's case, and to address the extensive legal issues faced by LFG, conference calls were routinely held throughout the First Application Period among LFG's personnel, WF&G, the Debtors' co-counsel McGuireWoods LLP ("**MGW**"), LFG's financial advisors, Zolfo Cooper ("**Zolfo**"), and other professionals retained by the Debtors. The purpose of these calls and meetings was to discuss both short-term and long-term strategies of the case, identify and address various issues affecting LFG, and provide necessary updates of information designed to assist all parties in providing their professional services efficiently. Accordingly, such calls and meetings served the important function of, among other things, assigning tasks to specific parties to avoid the duplication of efforts among the professionals and management.

19. In addition, LFG and WF&G have worked closely with the LFG Creditors' Committee and its professionals to keep all parties fully informed of the legal, operational, financial and other issues affecting the estate including, but not limited to (a) the sale of the Underwriters, (b) the wind-down of the businesses of LFG's subsidiaries, (c) the sales of stock in certain other LFG subsidiaries, (d) the determination of when and how to sell the stock of FNF (as defined below), (e) evaluation of litigation and potential claims against the LFG estate, and (f) tax matters affecting the Debtors. Throughout the First Application Period, WF&G assisted LFG in preparing timely and informative responses to inquiries from the LFG Creditors' Committee. Additionally, WF&G attorneys assisted Zolfo and LFG in the preparation of a detailed presentation on key issues and concerns raised by the LFG Creditors' Committee and participated in a meeting with the full LFG Creditors' Committee held on January 13, 2009.

A second meeting with the LFG Creditors' Committee and SunTrust Bank[5] was held on March 11, 2009.

B.      **The Fidelity Transaction**

20.      During the First Application Period, WF&G attorneys devoted significant time negotiating and working to ensure that the Fidelity Transaction (as defined below) was approved by the Court and timely consummated. Prior to the Initial Petition Date, approximately 85 to 90% of the Company's revenues were derived from LFG's primary title insurance underwriting subsidiaries – Commonwealth Land Title Insurance Company, Lawyers Title Insurance Corporation, and United Capital Title Insurance Company, and their respective subsidiaries (collectively, the "**Underwriters**").

21.      During the first 30 days of LFG's chapter 11 case, WF&G attorneys were consumed by the process of procuring approval of the sale of the Underwriters to Fidelity National Financial, Inc. ("**FNF**"), Fidelity National Title Insurance Company ("**FNTIC**") and Chicago Title Insurance Company ("**CTIC**" and collectively with FNF and FNTIC, "**Fidelity**"). As this Court is aware, the stock purchase agreement for the sale of the Underwriters was originally executed on November 25, 2008, and subsequently amended on December 12, 2008. In connection therewith, WF&G attorneys assisted LFG in an expedited discovery process so that parties could take discovery in connection with the sale hearing. Additionally, WF&G attorneys provided extensive advice to LFG with respect to compliance with applicable anti-trust laws and the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended (the "**HSR Act**"). After a lengthy, contested evidentiary hearing conducted by WF&G attorneys on December 16, 2008, the sale to Fidelity and the related stock purchase agreement were approved

---

[5]      SunTrust Bank serves as the Administrative Agent under LFG's prepetition credit facility.

by this Court.  Shortly thereafter, Fidelity attempted to withdraw from the deal by asserting, among other things, that a material adverse change had occurred with respect to the Underwriters' businesses.  WFG attorneys on behalf of LFG immediately drafted and filed a motion and a complaint with this Court, seeking specific performance.  After a hearing conducted by WF&G attorneys on Sunday, December 21, 2008, this Court approved an amended stock purchase agreement which was the result of a settlement between the parties, and the sale of the Underwriters to Fidelity closed on December 22, 2008.  By the terms of the final stock purchase agreement, LFG realized significant value for its estate: (a) $134,762,521 in cash, (b) shares of FNF common stock equal to $50,000,000 (as determined by the closing price of FNF common stock on December 19, 2008), and (c) a subordinated promissory note issued by Fidelity in an initial principal amount equal to $50,000,000.[6]

22.     Since the sale of the Underwriters, LFG and its professionals have spent considerable time separating LFG and its subsidiaries' operations from the Underwriters pursuant to the Transition Services Agreement, whereby LFG has continued to operate material elements of the Underwriters businesses (e.g., accounting, information technologies, human resources, etc.) pending their transition to Fidelity.  WF&G has assisted LFG and Zolfo in their ongoing efforts towards resolution of issues with respect to (a) reimbursement of services provided pursuant to the transition services agreement between the parties, (b) the treatment under the transition services agreement and the stock purchase agreement of year end adjustments recorded in December 2008, and (c) the treatment of employee benefits, accounts payable, and other liabilities as of December 22, 2008.

---

[6]     In addition, FNTIC acquired the capital stock of United Capital Title Insurance Company ("**United**") from an indirect subsidiary of LFG for a purchase price equal to a statutory measure of United's net worth as of the closing (approximately $12 million).

C.    **Asset Sales**

23.    Since the sale of the Underwriters, WF&G has been working with Zolfo and LFG to evaluate the Company's remaining businesses to determine the manner in which to best maximize value, including through one or more sales of such remaining businesses and/or the prompt and orderly wind-down and liquidation of such businesses.  As of the Petition Date, LFG wholly-owned approximately 28 direct subsidiaries and approximately 219 active and inactive indirect subsidiaries (certain of which are joint ventures), and it owned an interest in approximately 14 non-title joint ventures.  During the First Application Period, LFG, together with Zolfo and the assistance of WF&G attorneys, marketed, negotiated and pursued approximately 14 different transactions.  WF&G attorneys devoted significant time to drafting and negotiating asset purchase agreements and stock purchase agreements for such transactions.

24.    In connection with the proposed sale of LFG's stock in LandAmerica Valuation Corporation (the "**LVC Transaction**"), WFG attorneys assisted LFG in negotiating a stock purchase agreement and drafting and filing a motion with this Court on February 27, 2009, seeking approval of the terms of the sale.  At the hearing held on March 19, 2009, this Court approved the LVC Transaction.  With the assistance of WF&G, the LVC Transaction closed on April 1, 2009, resulting in additional value for the LFG estate.

25.    WF&G undertook significant efforts in negotiating the sale of LAC's assets pursuant to an asset purchase agreement drafted by WF&G attorneys.  Further, in order to consummate the sale of LAC's assets (the "**LAC Transaction**"), WF&G attorneys prepared and filed on March 5, 2009 (a) a voluntary petition on behalf of LAC in this Court for relief under chapter 11 of the Bankruptcy Code, (b) other first day pleadings, and (c) a motion requesting approval of the terms of the proposed asset purchase agreement.  At the hearing held on March

24, 2009, this Court approved the LAC Transaction.  WF&G attorneys are still working with

LFG and the buyer to close the LAC Transaction in the near future.

       D.     **1031 Litigation**

       26.     As the Court is aware, prior to the Initial Petition Date, LES entered into

agreements with its customers (the "**Exchange Agreements**") whereby it acquired the net

proceeds of the sales of relinquished properties (the "**Exchange Funds**") in order to facilitate

like kind exchanges in accordance with the requirements of the Internal Revenue Code.  During

the course of its operations, upon information and belief, LES entered into two primary types of

Exchange Agreements:  (a) agreements that include language contemplating that the applicable

Exchange Funds would be placed in an account or sub-account associated with the relevant

customer's name (the "**Segregated Exchange Agreements**"); and (b) agreements that do not

include this "segregation" language (the "**Commingled Exchange Agreements**").

       27.     LES believes that, as of the Initial Petition Date, the Exchange Funds

maintained by LES included funds acquired from approximately 450 customers pursuant to

separate Exchange Agreements; approximately 50 related to Segregated Exchange Agreements,

and approximately 400 related to Commingled Exchange Agreements.  Since the Initial Petition

Date and as of the filing of this Application, WF&G has assisted LES in the approximately 100

adversary proceedings filed in this Court regarding the Exchange Funds, and several related

actions which have been filed in various state courts.

       28.     Due to the large number of suits and the need for an orderly and efficient

adjudication of such matters, during the First Application Period, WF&G assisted LES in

establishing procedures to settle disputes relating to the ownership of Exchange Funds through

the designation of four test cases (the "**Lead Cases**"), by which the common legal and factual

issues involved in the adversary proceedings would be litigated and all adversary proceedings

other than the Lead Cases would be stayed. Additionally, during the First Application Period, WF&G worked with LES and the LES Creditors' Committee to designate the Lead Cases and a schedule for their resolution, which agreement is set forth in this Court's Order Establishing Schedule Protocol for Adversary Proceedings, dated January 16, 2009.

29. Towards the end of the First Application Period, the Lead Cases entered the "Liability Phase I" stage which contemplated the resolution of the issue of the ownership of the Exchange Funds and was limited to the following legal issues: (a) tracing the Exchange Funds, (b) contractual interpretation of the Exchange Agreements, and (c) the existence of an express or resulting trust between LES and the plaintiffs in each of the Lead Cases.[7] Therefore, WF&G attorneys conducted fact discovery, which involved the depositions of nine current or former LES employees, one Lawyer's Title employee, and SunTrust Bank. Further, WF&G attorneys began preparation for the expert discovery phase, in contemplation of taking expert depositions the week of March 10, 2009. In addition, WF&G attorneys performed a significant amount of research in contemplation of drafting summary judgment motions and responses to the same. Finally, WF&G began initial preparation for the first Lead Case trial which is scheduled to begin on April 24, 2009.

30. On February 23, 2009, this Court approved a settlement agreement between LES and HealthCare REIT ("**HCN**"), and the Creditors' Committees regarding funds held by Centennial Bank as "Escrow Holder" on behalf of LES and HCN pursuant to two Exchange Agreements between LES and HCN and two "Qualified Escrow Agreements" entered into between HCN, LES, and Centennial Bank (the "**Settlement Agreement**"). The negotiations

---

[7] Discovery was not limited to the legal issues involved in Liability Phase I and the parties are not prohibited from seeking additional discovery after the conclusion of Liability Phase I.

conducted by WF&G attorneys were key to reaching such Settlement Agreement. At the time of the Initial Petition Date, LES held, through Centennial Bank, approximately $137 million in funds associated with the HCN transaction, which sum represented the largest deposit held by LES in connection with its exchange business as of the Initial Petition Date. On December 4, 2008, HCN filed an adversary proceeding against LES seeking a declaratory judgment that the funds were HCN's property and not property of LES's bankruptcy estate because LES held the funds in escrow, a specialized form of trust, and, therefore had no beneficial or equitable interest in the funds. After extensive, expedited discovery by WF&G attorneys and intense negotiations, the parties reached an amicable resolution of the matter. The Settlement Agreement provided for the payment of $2 million by HCN to LES in exchange for LES's authorization for Centennial Bank to release the funds to HCN.

E.   **General Chapter 11 and Case Administration of LES's Case**

   31.  During the First Application Period, WF&G contributed significantly to the efficient administration of LES's case. Additionally, WF&G attorneys spent a significant amount of time working with LES customers, the LES Creditors' Committee, and the U.S. Trustee to ensure that the Exchange Funds are held in stable financial institutions. Further, WF&G professionals drafted a motion to revise the Order Authorizing: (A) Continued Use of the Debtor's Centralized Cash Management System; (B) maintenance and Continued Use of the Debtor's Existing Bank Accounts and Business Forms; (C) A Waiver of Certain Operating Guidelines Relating to Bank Accounts; and (D) An Extension of the Time for the Debtor to Comply with Section 345 of the Bankruptcy Code, in order to permit LES to use the commingled Exchange Funds to pay reasonable and necessary expenses of the LES estate, including, but not limited to, necessary fees and expenses for key vendors and professionals.

32.     On a daily basis WF&G attorneys responded to the regular and numerous communications from LES customers inquiring as to the status of the Exchange Funds and the LES chapter 11 case.   Further, during the First Application Period, WF&G assisted LES in compiling and filing its schedules of assets and liabilities (the "**Schedules**"), its statements of financial affairs (the "**SOFAs**") and list of equity security holders (the "**Equity List**") which were timely filed on December 31, 2009.

F.     **General Litigation**

33.     During the First Application Period, WF&G represented the Debtors in connection with various litigations in courts other than the Court brought against certain of the Debtors' current and former officers and employees by various plaintiffs who deposited Exchange Funds with LES prior to the Initial Petition Date.   On February 3, 2009, WF&G filed an adversary complaint with the Court seeking a stay of these matters.   Notwithstanding this action, however, WF&G was able to negotiate a consensual agreement to stay these cases without the Court's intervention.   Additionally, WF&G attorneys assisted LFG in connection with litigation related to various lease disputes.

G.     **Beau Street v. CTG Real Estate**

34.     During the First Application Period, WF&G represented LFG's subsidiaries LandAmerica OneStop, Inc. ("**OneStop**") and Capital Title Group, Inc. ("**CTG**") in connection with a complaint in equity filed on February 13, 2009, by the landlords Beau Street Associates, Inc. and JBP Holdings, LLC's (together, the "**Beau Street Complaint Plaintiffs'**") in Pennsylvania state court against OneStop and CTG, as well as against now-dissolved former LFG subsidiary CTG Real Estate Information Services, Inc. ("**CTG REIS**").   WF&G assisted LFG with several productions of documents in connection with requests by the Beau Street Complaint Plaintiffs.   Further, WF&G attorneys spent a significant amount of time researching

the claims, preparing an answer, and engaging in preliminary settlement discussions in connection with the matter.

H.   **Corporate Matters**

35.     During the First Application Period, WF&G expended substantial time and effort addressing issues relating to the Debtors' insurance policies. WF&G assisted the Debtors in evaluating their insurance coverage, including directors' and officers', errors and omissions, fiduciary, and employed lawyers liability insurance, as well as negotiating additional liability insurance policies. WF&G coordinated with the Debtors' insurance brokers and noticed such insurers of the various claims both pending and threatened in these cases.

I.   **Executory Contracts/Leases**

36.     During the First Application Period, WF&G worked with MGW to advise LFG concerning its rights and obligations in connection with various executory contracts and unexpired leases of real property, pending LFG's decision to reject, assume and/or assign the various contracts and leases. Moreover, WF&G assisted LFG in resolving various disputes relating to the Company's leases.

J.   **Tax**

37.     During the First Application Period, WF&G assisted MGW in advising LFG with respect to various tax issues, including the preservation of net operating loss carryforwards arising from the sale of the Underwriters to Fidelity.

K.   **Creditor/Claims Issues**

38.     During the First Application Period, WF&G responded to numerous communications from creditors received in these chapter 11 cases. WF&G obtained an order of this Court, dated February 27, 2009 (the "**Bar Date Order**"), establishing April 6, 2009, as the deadline by which all non-governmental entities must file proofs of prepetition claims against the

Debtors' estates. The Bar Date Order also established May 26, 2009 as the deadline for all governmental units to file proofs of prepetition claims against the Debtors' estates.

L. **WF&G Retention**

39. During the First Application Period, WF&G obtained Court approval for its retention and took the actions necessary to compile and serve Fee Statements in accordance with the Interim Compensation Order. During the First Application Period, WF&G also filed one Supplemental Affidavit in connection with its retention as counsel to the Debtors.

M. **Schedules, Statements, and Equity List**

40. During the First Application Period, WF&G assisted LFG in compiling and filing its Schedules, SOFAs and Equity List which were filed on February 9, 2009. Due to the complexity of LFG's case, preparation the of the Schedules and SOFAs required a significant amount of attention by WF&G attorneys, LFG employees, and Zolfo professionals. WF&G believes that the great deal of time and effort that went into ensuring that the Schedules and SOFAs accurately reflect LFG's assets and obligations has benefited LFG's estate by reducing the number of filed proofs of claim that LFG must review and analyze. WF&G also assisted LES is in preparing its Schedules, SOFAs and Equity List which were filed on December 31, 2008 as discussed more fully in paragraph 32 herein.

## EVALUATING WF&G'S SERVICES

41. The allowance of interim compensation for services rendered and reimbursement of expenses incurred in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> [A] debtor's attorney, or any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331.

42. Concerning the level of compensation, section 330(a)(l) of the Bankruptcy Code provides, in pertinent part, that the court may award to a professional person, including the debtor's attorney

> reasonable compensation for actual, necessary services rendered by the . . . professional person, or attorney and by any paraprofessional person employed by any such person . . . .

11 U.S.C. § 330. The Congressional intent and policy expressed in section 330 of the Bankruptcy Code is to provide for adequate compensation to continue to attract qualified and competent practitioners to bankruptcy cases.

43. The "lodestar" method of fee calculation developed by the Third Circuit is the method used to determine a "reasonable" attorney fee in all the federal courts, including the bankruptcy courts. Under the "lodestar" approach, the Court should consider the number of hours of service reasonably devoted to the case multiplied by the attorney's reasonable rates. Courts frequently consider the specific "lodestar" factors enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). The lodestar factors were adopted by the Fourth Circuit in Barber v. Kimbrells, Inc., 577 F.2d 216, 226 (4th Cir.), cert. denied, 439 U.S. 934 (1978), and in Anderson v. Morris, 658 F.2d 246, 249 (4th Cir. 1981), where the Fourth Circuit held that the district court should employ the lodestar approach, and then adjust the fee on the basis of the remaining Johnson factors in the case. The following are the Johnson factors:

(a)     the time and labor required;

(b)     the novelty and difficulty of the questions;

(c)     the skill requisite to perform the legal service properly;

(d)     the preclusion of other employment by the attorney due to acceptance of the case;

(e)       the customary fee;

(f)       whether the fee is fixed or contingent;

(g)       time limitations imposed by the client or the circumstances;

(h)       the amount involved and the results obtained;

(i)       the experience, reputation and ability of the attorneys;

(j)       the "undesirability" of the case;

(k)       the nature and length of the professional relationship with the client; and

(l)       awards in similar cases.

Johnson, 488 F.2d at 717-719; Barber, 577 F.2d at 226, n.28; Anderson, 658 F.2d at 248, n.2.

## WF&G'S REQUEST FOR INTERIM COMPENSATION

44.     WF&G submits that its request for interim allowance of compensation is reasonable.  The services rendered by WF&G, as highlighted above, required substantial time and effort, resulting in the timely resolution of various issues presented in these cases.

45.     The services rendered by WF&G during the First Application Period were performed diligently and efficiently.  Accordingly, when possible WF&G delegated tasks to lower cost junior attorneys or, for discrete matters, to attorneys with specialized expertise in the particular task at issue.  While that approach may have required intra-office conferences or involved individual attorneys who spent only a few hours on the matter at hand, the net result was enhanced cost efficiency.

46.     In many instances, WF&G has been able to successfully resolve disputes without the need to resort to the Court.  When necessary, however, WF&G actively represented the Debtors' interests before the Court and substantially furthered the Debtors' efforts to preserve the value of the Debtors' estates for their creditors.

47.     During the First Application Period, WF&G encountered a variety of challenging legal issues, often requiring substantial research and negotiation.  WF&G brought to bear legal expertise in many areas, including bankruptcy, litigation, corporate, and tax.  WF&G attorneys have rendered advice in all of these areas with skill and dispatch.

48.     The services rendered to the Debtors by WF&G during the First Application Period required an aggregate expenditure of 7,131.90 recorded hours of the time of attorneys and paraprofessionals.  Exhibit B sets forth a list of such individuals, the aggregate amount of time expended by each, and the current hourly billing rate for each.  The blended hourly rate for the services of attorneys who recorded time during the First Application Period was $609.65.[8]

49.     WF&G's hourly rates and fees charged are consistent with the market rate for comparable services.  The hourly rates and fees charged by WF&G are the same as those generally charged to, and paid by, WF&G's other clients.  Indeed, unlike fees paid by most WF&G clients, due to the "holdback" of fees from prior monthly fee statements and the delays inherent in the fee application process, the present value of the fees paid to WF&G by the Debtors is significantly less than fees paid monthly by other WF&G clients.

## DISBURSEMENTS

50.     WF&G incurred actual and necessary out-of-pocket expenses during the First Application Period, in connection with the rendition of the professional services described above, in the amounts set forth in Exhibit C.  By this Application, WF&G respectfully requests allowance of such reimbursement in full.

---

[8]     The blended hourly rate (excluding paraprofessional time) is calculated by dividing the total amount of fees earned by WF&G attorneys ($3,909,909.00) by the total number of hours billed (6,413.40) by such attorneys.  The blended hourly rate including paraprofessional time is $569.62, or $4,062,498.00 in fees billed by WF&G professionals (both attorneys and paraprofessionals) divided by 7,131.90 hours billed.

51.     The disbursements for which WF&G seeks reimbursement include the following:

a.  Duplicating – Charged at $0.10 per page, based upon the cost of supplies. The charge per page includes a charge for maintaining the duplicating facilities;

b.  Telecommunications – Long distance calls are billed at actual cost. Outgoing domestic facsimile transmittals are billed at $0.50 per page, while there is no charge for incoming facsimiles. This rate is based upon costs incurred by WF&G for machine maintenance, phone line rental, and supplies used in operating the fax machine;

c.  Computer Research Charges – WF&G's practice is to bill clients for LEXIS and Westlaw research at actual cost, which does not include amortization for maintenance and equipment;

d.  Overtime Expenses – WF&G's practice is to allow any attorney working later than 8:00 p.m. and any legal assistant working later than 7:30 p.m. to charge a working meal to the appropriate client;

e.  Local Car Service – WF&G's practice is to allow attorneys, legal assistants, and secretaries to charge car service to the appropriate client after 8:00 p.m.; and

f.  Delivery Services – WF&G's practice is to charge postal, overnight delivery, and courier services at actual cost.

52.     Though WF&G's practice is to bill clients for secretarial overtime and word processing at actual cost, WF&G, in its billing discretion, does not bill the Debtors for such charges.

## NOTICE

53.     Pursuant to the Interim Compensation Order, WF&G has served copies of the Application on the Notice Parties (as defined therein). In addition, WF&G has served notice of the Application and notice of the hearing on the Application on the parties entitled to receive

notice under the Amended Case Management Order [Docket No. 435]. WF&G submits that no

other or further notice need be given.

## **NO PRIOR REQUEST**

54.    No previous motion for the relief sought herein has been made to this or to

any other Court.

## **CONCLUSION**

WHEREFORE, WF&G respectfully requests that this Court enter an order: (a)

allowing WF&G interim allowance of compensation for services rendered in the aggregate

amount of $4,062,498.00, during the First Application Period, which includes $609,374.70

representing the 15% portion of fees for services rendered that has been "held-back"; (b)

awarding WF&G reimbursement of actual, necessary expenses incurred in connection with the

rendition of services during the First Application Period, in the amount of $129,170.77;

(c)  authorizing and directing the Debtors to pay to WF&G, to the extent not already paid,

$3,582,294.07, representing 85% of fees for services rendered during the First Application

Period and 100% of expenses associated with such services; and (d)  granting such other and

further relief as may be just or proper.

Dated: Richmond, Virginia                  Respectfully submitted,
      April 14, 2009

                                       /s/ Rachel C. Strickland
                                       WILLKIE FARR & GALLAGHER LLP
                                       Paul V. Shalhoub, Esq.
                                       Rachel C. Strickland, Esq.
                                       Jordana Linder, Esq.
                                       787 Seventh Avenue
                                       New York, New York  10019
                                       (212) 728-8000

                                       -and-

                                       /s/ John H. Maddock III
                                       Dion W. Hayes (VSB No. 34304)
                                       John H. Maddock III (VSB No. 41044)
                                       McGUIREWOODS LLP
                                       One James Center
                                       901 East Cary Street
                                       Richmond, Virginia 23219-4030
                                       (804) 775-1000

                                       Attorneys for the Debtors and Debtors in
                                       Possession

<u>**EXHIBIT A**</u>

**SERVICES RENDERED BY CATEGORY**
**NOVEMBER 26, 2008 THROUGH FEBRUARY 28, 2009**

| Service Category | Hours | Fees Earned |
|---|---|---|
| General Chapter 11 | 448.40 | 236,511.50 |
| General Litigation | 393.30 | 189,771.00 |
| General Corporate | 393.40 | 269,857.50 |
| Executory Contracts and Leases | 27.00 | 15,311.50 |
| Employee/Pension/Labor | 9.20 | 6,014.00 |
| Tax Issues | 13.10 | 9,687.00 |
| Creditor/Claim Issues | 88.00 | 51,691.00 |
| WF&G Retention | 16.90 | 6,831.50 |
| Non-WF&G Retention | 41.20 | 22,918.00 |
| WF&G Fee Applications | 58.00 | 22,086.00 |
| Non-WF&G Fee Applications | 1.40 | 329.00 |
| Schedules/Statements/Monthly Reports | 83.00 | 42,956.00 |
| Cash Collateral | 7.20 | 5,628.00 |
| Plan of Reorganization/Disclosure Statement | 7.90 | 5,508.50 |
| Asset Sales | 344.40 | 212,644.00 |
| 1031 Litigation | 3,034.40 | 1,659,204.00 |
| Fidelity Transaction | 1,553.90 | 973,594.50 |
| SEC Matters | 158.20 | 90,628.50 |
| LandAmerica Assessment Corp. | 73.40 | 38,470.00 |
| LES General Chapter 11 | 314.20 | 165,905.50 |
| Beau Street v. CTG Real Estate | 65.40 | 36,951.00 |
| **TOTAL** | **7,131.90** | **$4,062,498.00** |

**SERVICES RENDERED BY PROFESSIONALS**
**NOVEMBER 26, 2008 THROUGH FEBRUARY 28, 2009**

| Name | Department | Law School Graduation Date | Position | Hours | Hourly Rate | Fees Earned |
|------|-----------|---------------------------|----------|-------|-------------|-------------|
| **PARTNERS** | | | | | | |
| Marc Abrams | Bankruptcy | 1978 | Partner (4/30/90) | 4.90 | 994 | 4,875.50 |
| Mitchell J. Auslander | Litigation | 1980 | Partner (1/1/89) | 13.50 | 995 | 13,432.50 |
| Gregory S. Bruch | Litigation | 1985 | Partner (5/12/08) | 11.30 | 995 | 11,243.50 |
| Mark A. Cognetti | Corporate | 1998 | Partner (1/1/07) | 42.00 | 695 | 29,190.00 |
| Henry M. Cohn | Tax | 1980 | Partner (1/1/90) | 4.50 | 950 | 4,275.00 |
| Hillel Jacobson | Tax | 1999 | Partner (1/1/08) | 0.70 | 695 | 486.50 |
| Lawrence O. Kamin | Litigation | 1976 | Partner (1/1/85) | 474.60 | 950 | 450,870.00 |
| Martin B. Klotz | Litigation | 1991 | Partner (1/1/97) | 7.40 | 855 | 6,327.00 |
| Stephen T. Lindo | Employee Benefits | 1974 | Partner (10/31/88) | 0.40 | 995 | 398.00 |
| Terence K. McLaughlin | Litigation | 1996 | Partner (1/1/05) | 228.20 | 695 | 158,599.00 |
| Bernard A. Nigro, Jr. | Litigation | 1986 | Partner (1/1/06) | 116.30 | 950 | 110,485.00 |
| David E. Rubinsky | Employee Benefits | 1996 | Partner (1/1/07) | 1.00 | 695 | 695.00 |
| Paul V. Shalhoub | Bankruptcy | 1991 | Partner (1/1/00) | 309.90 | 855 | 264,964.50 |
| Rachel C. Strickland | Bankruptcy | 1998 | Partner (1/1/07) | 433.10 | 695 | 301,004.50 |
| | **TOTAL PARTNERS:** | | | **1,647.80** | | **$1,356,846.00** |
| **COUNSEL** | | | | | | |
| Jonathan Konoff | Corporate | 1991 | Special Counsel | 1.00 | 690 | 690.00 |
| Russell L. Smith | Government Relations | 1972 | Special Counsel | 2.20 | 855 | 1,881.00 |
| | **TOTAL SPECIAL COUNSEL:** | | | **3.20** | | **$2,571.00** |
| **ASSOCIATES** | | | | | | |
| Barbara A. Block | Government Relations | 2003 | Associate | 0.40 | 625 | 250.00 |
| Elizabeth Bower | Litigation | 2001 | Associate | 604.30 | 680 | 410,924.00 |
| Kevin Brown | Litigation | 2008 | Associate | 15.80 | 290 | 4,582.00 |

| Name | Department | Law School Graduation Date | Position | Hours | Hourly Rate | Fees Earned |
|---|---|---|---|---|---|---|
| Tonisha Calbert | Corporate | 2007 | Associate | 3.90 | 465 | 1,813.50 |
| Jeffrey B. Clancy | Corporate | 2000 | Associate | 213.50 | 680 | 145,180.00 |
| Kristin M. Darr | Litigation | 2006 | Associate | 10.20 | 510 | 5,202.00 |
| Laurita M. Denny | Litigation | 2007 | Associate | 560.70 | 465 | 260,725.50 |
| Jennifer Dudanowicz | Bankruptcy | 2007 | Associate | 47.80 | 465 | 22,227.00 |
| Jeffrey Goldfarb | Corporate | 2001 | Associate | 2.10 | 680 | 1,428.00 |
| Matthew J. Guercio | Corporate | 2003 | Associate | 176.90 | 625 | 110,562.50 |
| Rebecca Gutner | Tax | 2006 | Associate | 3.10 | 510 | 1,581.00 |
| Sandra Hanna | Litigation | 2001 | Associate | 124.70 | 680 | 84,796.00 |
| Jennifer Hardy | Bankruptcy | 2007 | Associate | 12.80 | 465 | 5,952.00 |
| Thomas S. Hur | Litigation | 1999 | Associate | 2.20 | 685 | 1,507.00 |
| Amina Jafri | Litigation | 2005 | Associate | 487.40 | 530 | 258,322.00 |
| Emma James | Litigation | 2007 | Associate | 209.40 | 465 | 97,371.00 |
| Jamie Ketten | Bankruptcy | 2003 | Associate | 367.40 | 625 | 229,625.00 |
| Alison R. Levine | Litigation | 2008 | Associate | 8.80 | 290 | 2,552.00 |
| Jeremy A. Linden | Litigation | 2007 | Associate | 33.40 | 465 | 15,531.00 |
| Jordana Linder | Bankruptcy | 2007 | Associate | 383.20 | 465 | 178,188.00 |
| Nancy McCabe | Insurance | 1993 | Associate | 155.60 | 685 | 106,586.00 |
| Derek M. Schoenmann | Litigation | 2003 | Associate | 258.40 | 625 | 161,500.00 |
| Khiran Sidhu | Litigation | 2008 | Associate | 155.80 | 380 | 59,204.00 |
| Michael P. Trahar | Litigation | 2004 | Associate | 177.40 | 590 | 104,666.00 |
| Stephen B. Vogel | Litigation | 2003 | Associate | 69.70 | 625 | 43,562.50 |
| Nelson Wagner | Litigation | 2008 | Associate | 58.10 | 380 | 22,078.00 |
| Brian J. Weinberger | Real Estate | 2006 | Associate | 3.70 | 510 | 1,887.00 |
| Monica Welby | Litigation | 2005 | Associate | 72.60 | 530 | 38,478.00 |
| Jeffrey A. Williams | Litigation | 2007 | Associate | 36.80 | 465 | 17,112.00 |
| Christopher Williamson | Litigation | 2004 | Associate | 32.40 | 590 | 19,116.00 |
| Seth Zelnick | Corporate | 2005 | Associate | 2.30 | 530 | 1,219.00 |
|  | **TOTAL ASSOCIATES:** |  |  | **4,290.80** |  | **$2,413,728.00** |
| **LAW CLERKS** |  |  |  |  |  |  |
| Howard Block | Corporate | 2008 | Law Clerk | 17.70 | 290 | 5,133.00 |
| Chantalle Fish | Litigation | 2008 | Law Clerk | 1.00 | 290 | 290.00 |
| Gregory Reid | Litigation | 2008 | Law Clerk | 436.70 | 290 | 126,643.00 |
| D.J. Stauber | Tax | 2008 | Law Clerk | 10.50 | 290 | 3,045.00 |
| Marina I. Zelinsky | Bankruptcy | 2008 | Law Clerk | 5.70 | 290 | 1,653.00 |
|  | **TOTAL LAW CLERKS:** |  |  | **471.60** |  | **$136,764.00** |
| **LEGAL ASSISTANTS** |  |  |  |  |  |  |
| Andy Alcindor | Litigation |  | Legal Asst. | 8.40 | 105 | 882.00 |
| Janice Amador | Litigation |  | Legal Asst. | 0.20 | 235 | 47.00 |
| Alison R. Ambeault | Bankruptcy |  | Legal Asst. | 199.50 | 235 | 46,882.50 |
| Michael Arakelyan | Litigation |  | Legal Asst. | 0.40 | 125 | 50.00 |
| Elizabeth Bubriski | Bankruptcy |  | Legal Asst. | 27.10 | 165 | 4,471.50 |
| Janine D'Aniello | Litigation |  | Law Clerk[9] | 7.20 | 260 | 1,872.00 |

---

[9]  Ms. D'Aniello is currently scheduled to graduate from law school in May 2009.

| Name | Department | Law School Graduation Date | Position | Hours | Hourly Rate | Fees Earned |
|------|-----------|---------------------------|----------|-------|-------------|-------------|
| Arthur Daye, Jr. | Litigation | | Legal Asst. | 13.30 | 175 | 2,327.50 |
| Lance Esteibar | Litigation | | Legal Asst. | 4.60 | 185 | 851.00 |
| Kelly Fitzgerald | Bankruptcy | | Legal Asst. | 52.50 | 165 | 8,662.50 |
| Nathan Ford | Litigation | | Legal Asst. | 2.00 | 175 | 350.00 |
| Ashley D. Hardwick | Corporate | | Legal Asst. | 3.30 | 250 | 825.00 |
| Diane Hinrichs | Litigation | | Legal Asst. | 204.40 | 260 | 53,144.00 |
| Lauren Kessler | Litigation | | Legal Asst. | 62.00 | 175 | 10,850.00 |
| David King | Government Relations | | Legal Asst. | 2.10 | 175 | 367.50 |
| Susan Lacheman | Litigation | | Legal Asst. | 12.30 | 240 | 2,952.00 |
| Chris Lisciandro | Litigation | | Legal Asst. | 6.30 | 175 | 1,102.50 |
| Sal Mancuso | Litigation | | Legal Asst. | 0.70 | 240 | 168.00 |
| Andy McClure | Litigation | | Legal Asst. | 5.50 | 175 | 962.50 |
| Ashley Moore | Litigation | | Legal Asst. | 3.50 | 205 | 717.50 |
| Peter Mularczyk | Real Estate | | Legal Asst. | 8.00 | 175 | 1,400.00 |
| Ana Munoz | Litigation | | Legal Asst. | 81.60 | 135 | 11,016.00 |
| Joshua Rosenthal | Litigation | | Legal Asst. | 0.70 | 165 | 115.50 |
| Adam Scavone | Bankruptcy | | Legal Asst. | 0.90 | 175 | 157.50 |
| Haley Schaeffer | Litigation | | Legal Asst. | 1.50 | 175 | 262.50 |
| Ann Staron | Corporate | | Legal Asst. | 4.20 | 250 | 1,050 |
| Caitlin Wong | Litigation | | Legal Asst. | 6.30 | 175 | 1,102.50 |
| **TOTAL LEGAL ASSISTANTS:** | | | | **718.50** | | **$152,589.00** |
| | | | | | | |
| **GRAND TOTAL:** | | | | **7,131.90** | | **$4,062,498.00** |

<u>**EXHIBIT C**</u>

**DISBURSEMENTS FOR PERIOD**
**NOVEMBER 26, 2008 THROUGH FEBRUARY 28, 2009**

| Disbursement | Amount |
|---|---|
| Postage/Messenger/Overnight Delivery | 277.36 |
| Local Transportation | 11,270.93 |
| Long Distance Telephone | 2,738.73 |
| Local Meals | 3,809.54 |
| Other Out of Town Travel | 5,669.50 |
| Lodging | 12,272.19 |
| Airfare/Train | 17,603.83 |
| Reproduction | 17,476.74 |
| Air Freight | 1,443.02 |
| Data Acquisition | 40,352.74 |
| Court Reporter/Other Fees | 15,884.33 |
| Filing Fees/Corp Trust | 69.00 |
| Other Disbursements | 302.86 |
| **TOTAL:** | **$129,170.77** |

Paul V. Shalhoub (Admitted Pro Hac Vice)
Rachel C. Strickland (Admitted Pro Hac Vice)
Jordana Linder (Admitted Pro Hac Vice)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

     - and -

Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 410444)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

Attorneys for the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| LandAmerica Financial Group, Inc., <u>et al.</u>, | : | Case No. 08-35994 (KRH) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------x

**SUMMARY SHEET PURSUANT TO
UNITED STATES TRUSTEE GUIDELINES FOR
REVIEWING APPLICATIONS FOR COMPENSATION
AND REIMBURSEMENT OF EXPENSES FILED
UNDER SECTION 330 OF THE BANKRUPTCY CODE**

1.    <u>Total Compensation and Expenses Requested</u>.  Willkie Farr & Gallagher LLP

("**WF&G**"), in connection with its application (the "**Application**") for interim allowance of

compensation for professional services rendered and reimbursement of expenses incurred in the
above-captioned cases, has requested that the Court enter an order:

> (a)    awarding WF&G interim allowance of compensation for services rendered in the aggregate amount of $4,062,498.00, during this interim application period, which includes $609,374.70 representing the 15% portion of fees for services rendered that has been "held-back";

> (b)    awarding WF&G interim allowance of reimbursement of actual, necessary expenses incurred in connection with the rendition of such professional services, in the aggregate amount of $129,170.77;

> (c)    authorizing and directing the Debtors to pay to WF&G, to the extent not already paid, $3,582,294.07, representing 85% of fees for services rendered during the First Application Period and 100% of expenses associated with such services; and

> (d)    granting such other and further relief as may be just or proper.

2.    <u>Total Compensation and Expenses Previously Awarded</u>.  As the Application is WF&G's first application for compensation and expenses, WF&G has not previously been awarded any compensation or expenses.

3.    <u>Name, Billing Rate, Bar Admission Date, Total Hours Billed, and Total Billings for Each Professional</u>.  Please refer to <u>Exhibit B</u> to the Application for: (a) the names and applicable billing rates for each professional and paraprofessional who billed time during the period for which compensation for services rendered and reimbursement of expenses incurred is sought (the "**First Application Period**"); (b) the date of law school graduation for each attorney; (c) the total hours and total amounts billed for each attorney and paraprofessional listed; and (d) the blended hourly rate for all attorneys and paraprofessionals who billed time during the First Application Period.

**EXHIBIT E**

Paul V. Shalhoub (Admitted Pro Hac Vice)
Rachel C. Strickland (Admitted Pro Hac Vice)
Jordana Linder (Admitted Pro Hac Vice)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

     - and -

Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 410444)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

Attorneys for the Debtors and
Debtors in Possession


IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

----------------------------------------------------x
In re                           :     Chapter 11
                                :
LandAmerica Financial Group, Inc., et al.,  :     Case No. 08-35994 (KRH)
                                :
            Debtors.       :     (Jointly Administered)
----------------------------------------------------x

**ORDER APPROVING FIRST APPLICATION OF WILLKIE
FARR &GALLAGHER LLP AS COUNSEL FOR DEBTORS FOR
INTERIM ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
FROM NOVEMBER 26, 2008 THROUGH FEBRUARY 28, 2009**

Upon the application, dated April 14, 2009, (the "**Application**") of Willkie Farr &

Gallagher LLP ("**WF&G**"), attorneys for LandAmerica Financial Group, Inc. and LandAmerica

1031 Services, Inc. (collectively, the "**Debtors**"), for interim allowance of compensation for

professional services rendered and reimbursement of expenses incurred from November 26, 2008 through February 28, 2009, pursuant to sections 330(a) and 331 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); and a hearing (the "**Hearing**") having been held before this Court on May [14], 2009 to consider the Application; and it appearing that sufficient notice has been given, and no other notice being necessary; and upon the full record of the Hearing and all prior proceedings in these cases; and after due deliberation and sufficient cause appearing therefore, it is hereby

ORDERED, ADJUDGED AND DECREED that:

1.      The Application is granted to the extent set forth herein.

2.      All capitalized terms used but not defined herein shall have the same meaning ascribed to them in the Application.

3.      The fees and expenses of WF&G requested for services rendered and expenses incurred during the First Application Period are approved on an interim basis, in the amounts and to the extent provided in Schedule A-1 annexed hereto.

4.      The Debtors are authorized and directed to pay as soon as practicable all fees and expenses approved by this Order (including the 15% Holdback) that remain unpaid.

5.      This Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

Dated: New York, New York
       May ___, 2009


_____
UNITED STATES BANKRUPTCY JUDGE

CASE NAME: LandAmerica Financial Group, Inc.
CASE NUMBER:  08-35994 (KRH) (Jointly Administered)

## SCHEDULE A-1

### FEES AND EXPENSES APPROVED ON AN INTERIM BASIS

| Applicant | Capacity | Interim Compensation Approved[1] | Interim Reimbursement of Expenses Approved | Hold-Back Approved |
|---|---|---|---|---|
| Willkie Farr & Gallagher LLP | Attorneys for the Debtors | $4,062,498.00 | $129,170.77 | $609,374.70 |

\8833466.1

---

[1]     This amount includes amounts "held-back."