Charles R. Gibbs (admitted *pro hac vice*)
Keefe Bernstein (admitted *pro hac vice*)
Sarah Link Schultz (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: 214.969.2800
Facsimile: 214.969.4343

Catherine Creely (Virginia Bar No. 74796)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: 202.887.4000
Facsimile: 205.955.7827

Lynn Tavenner (Virginia Bar No. 30083)
Paula S. Beran (Virginia Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219
Telephone: 804.783.8300
Facsimile: 804.783.0178

*Attorneys for The Official Committee of Unsecured Creditors of LandAmerica 1031 Exchange Services, Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

-------------------------------------------------------------------------x
|  |  |
|---|---|
| In re: | Chapter 11 |
| LandAmerica Financial Group, Inc., et al., | Case No. 08-35994 (KRH) |
| Debtors. | Jointly Administered |
-------------------------------------------------------------------------x

## SECOND INTERIM APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP FOR ALLOWANCE OF COMPENSATION AND EXPENSE REIMBURSEMENT AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LANDAMERICA 1031 EXCHANGE SERVICES, INC.

Name of Applicant:   Akin Gump Strauss Hauer & Feld LLP

Authorized to Provide Professional Services to:  Official Committee of Unsecured Creditors of LandAmerica 1031 Exchange Services, Inc.

Date of Retention:  January 16, 2009 (*nunc pro tunc* to December 8, 2008)

Period for Which Compensation
and Reimbursement is Sought:  March 1, 2009 through May 31, 2009

Amount of Compensation Sought as
Actual, Reasonable, and Necessary:  $1,188,704.50

Amount of Expense Reimbursement Sought
as Actual, Reasonable, and Necessary:  $90,837.09

**<u>Monthly Fee Statements During the Compensation Period</u>**

| Time Period | Fees | Expenses | Status |
|---|---|---|---|
| 3/01/09 – 3/31/09 | $507,161.00 | $39,026.93 | Pending. Pursuant to the Interim Compensation Order, Akin Gump received 85% of the fees requested and 100% of the expenses requested. |
| 4/01/09 – 4/30/09 | $396,731.50 | $33,416.86 | Pending. Pursuant to the Interim Compensation Order, Akin Gump received 85% of the fees requested and 100% of the expenses requested. |
| 5/01/09 – 5/31/09 | $284,812.00 | $18,393.30 | Pending. Akin Gump has not currently received any payment for fees and expenses incurred in May.[1] |

---

[1] In accordance with the Order Establishing Procedures for Interim Compensation entered on December 22, 2008, barring objections, Akin Gump has respectfully requested payment on July 23, 2009 for fees and expenses incurred in May.

Charles R. Gibbs (admitted *pro hac vice*)
Keefe Bernstein (admitted *pro hac vice*)
Sarah Link Schultz (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: 214.969.2800
Facsimile: 214.969.4343

Catherine Creely (Virginia Bar No. 74796)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: 202.887.4000
Facsimile: 205.955.7827

Lynn Tavenner (Virginia Bar No. 30083)
Paula S. Beran (Virginia Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219
Telephone: 804.783.8300
Facsimile: 804.783.0178

*Attorneys for The Official Committee of Unsecured
Creditors of LandAmerica 1031 Exchange Services,
Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

-------------------------------------------------------------------------x
                                            :
In re:                                      :        Chapter 11
                                            :
LandAmerica Financial Group, Inc., et al.,  :        Case No. 08-35994 (KRH)
                                            :
                    Debtors.                :        Jointly Administered
-------------------------------------------------------------------------x

## SECOND INTERIM APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP FOR ALLOWANCE OF COMPENSATION AND EXPENSE REIMBURSEMENT AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LANDAMERICA 1031 EXCHANGE SERVICES, INC.

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump" or "Applicant"), counsel for the

Official Committee of Unsecured Creditors (the "LES Committee") of LandAmerica 1031

Exchange Services, Inc. ("LES"), submits this Second Interim Application for Allowance of

Compensation and Expense Reimbursement as Counsel to the Official Committee of Unsecured

Creditors of LandAmerica 1031 Exchange Services, Inc. (the "Application") pursuant to sections

330 and 331 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and

Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

# I. PRELIMINARY STATEMENT

1. By this Application, Akin Gump seeks (i) an interim allowance and award of full compensation for the professional services rendered by Akin Gump as attorneys for the LES Committee for the period from March 1, 2009 through May 31, 2009 (the "Compensation Period") in the amount of $1,188,704.50, representing 2,812.50 hours of professional and paraprofessional services, and (ii) reimbursement of actual and necessary expenses of $90,837.09 incurred by Akin Gump during the Compensation Period in connection with the rendition of such professional and paraprofessional services. This Application is submitted pursuant to the terms of this Court's Order Under Sections 105(a) and 331 of the Bankruptcy Code Establishing Procedures for Interim Compensation, dated December 22, 2008 (the "Interim Compensation Order").

# II. BACKGROUND

2. On November 26, 2008 (the "Petition Date"), LES and LandAmerica Financial Group, Inc. ("LFG") each filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On March 6, 2009, March 27, 2009 and March 31, 2009, various other affiliates of LFG[2] (collectively with LES and LFG, the "Debtors") each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Pursuant to orders of this Court dated November 28, 2008, March 11, 2009, April 8, 2009 and April 9, 2009, the Debtors' chapter 11 cases are being jointly administered for procedural purposes only. Since the Petition Date, the Debtors have continued in possession of their property and have continued to operate their

---

[2] The other affiliates of LFG that have filed voluntary chapter 11 petitions are LandAmerica Assessment Corporation, LandAmerica Title Company, Southland Title Corporation, Southland Title of Orange County, and Southland Title of San Diego.

businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee has been appointed in the Debtors' chapter 11 cases.

3. This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are Bankruptcy Code sections 330 and 331 and Bankruptcy Rule 2016.

4. On December 3, 2008, the Office of the United States Trustee for the Eastern District of Virginia (the "U.S. Trustee") duly appointed the LES Committee. The LES Committee currently consists of seven members.[3] On December 8, 2008, pursuant to Bankruptcy Code section 1103(a), the LES Committee selected Akin Gump to serve as counsel to the LES Committee. On December 31, 2008, the LES Committee filed an application to employ Akin Gump as its counsel. On January 16, 2009, this Court entered an order authorizing Akin Gump's retention as counsel to the LES Committee *nunc pro tunc* to December 8, 2008. The Court subsequently authorized the LES Committee to retain and employ Protiviti, Inc. ("Protiviti") as its financial advisor, The Garden City Group, Inc. ("GCG") as its communications agent, and Tavenner & Beran, PLC ("Tavenner & Beran") as its local counsel.

5. On April 14, 2009, Akin Gump filed its application for interim allowance of compensation and for reimbursement of expenses for services rendered during the period from December 8, 2008 through February 28, 2009 (the "First Fee Application"). On May 21, 2009, this Court entered an order approving the First Fee Application and authorizing and directing the Debtors to pay to Akin Gump compensation in the amount of $1,471,879.25 and to reimburse

---

[3] As of its appointment on December 3, 2008, the following entities were members of the LES Committee: Millmar Holdings, LLC; Endless Ocean, LLC; MB Venture, Ltd.; Amarillo Tower Limited; and Petaluma Southpoint, LLC.

Akin Gump for expenses incurred in the amount of $90,672.49. As of May 27, 2009, Akin Gump received payment of the fees and expenses allowed pursuant to the First Fee Application.

6. Except with respect to payments made pursuant to the Interim Compensation Order, Applicant has received no payment and no promises for payment from any source for services rendered in connection with LES's chapter 11 case. There is no agreement or understanding between the Applicant and any other person (other than members of Akin Gump) for the sharing of compensation to be received for the services rendered in these chapter 11 cases.

7. As stated in the Affirmation of Charles R. Gibbs, Esq. annexed hereto as **Exhibit A**, all of the services for which interim compensation is sought herein were rendered for or on behalf of the LES Committee solely in connection with LES's chapter 11 case.

8. Pursuant to the Interim Compensation Order, Akin Gump sent to LES and the appropriate notice parties its: (i) Monthly Fee Statement, dated April 13, 2009, for compensation and for reimbursement of expenses for services rendered during the period of March 1, 2009 through March 31, 2009 in the amounts of $507,161.00 for fees and $39,026.93 for expenses (the "March Monthly Fee Statement"); (ii) Monthly Fee Statement, dated May 12, 2009, for compensation and for reimbursement of expenses for services rendered during the period of April 1, 2009 through April 30, 2009 in the amounts of $396,731.50 for fees and $33,416.86 for expenses (the "April Monthly Fee Statement"); and (iii) Monthly Fee Statement, dated June 15, 2009, for compensation and for reimbursement of expenses for services rendered during the period of May 1, 2009 through May 31, 2009 in the amounts of $284,812.00 for fees and

---

On June 4, 2009, the U.S. Trustee appointed two additional members to the LES Committee: Gregory D. Schultz and The Mary and Fred Piro 1987 Trust.

6

$18,393.30 for expenses (the "May Monthly Fee Statement," and together with the March Monthly Fee Statement and the April Monthly Fee Statement, the "Monthly Fee Statements").

9. Pursuant to the Interim Compensation Order, as of the date of this Application, Akin Gump has received payment of 85% of the fees requested and 100% of the expenses requested with respect to the March and April Monthly Fee Statements. Akin Gump has not yet received any payment for fees and expenses requested with respect to the May Monthly Fee Statement. Akin Gump does not anticipate any objections to be made to the Monthly Fee Statements.

## III. SUMMARY OF SERVICES RENDERED

10. Since December 8, 2008, Akin Gump has rendered professional services to the LES Committee as requested and as necessary and appropriate in furtherance of the interests of LES's unsecured creditors. The variety and complexity of the issues in LES's chapter 11 case and the need to act or respond to such issues on an expedited basis in furtherance of the LES Committee's needs have required the expenditure of substantial time by Akin Gump personnel from numerous legal disciplines, on an as-needed basis.

11. Akin Gump maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services to the LES Committee. Such time records were made contemporaneously with the rendition of services by the person performing such services and in the ordinary course of Akin Gump's practice. A compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services for the LES Committee during the Compensation Period is attached hereto as **Exhibit B**.

12. Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, which are also

available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is contained in **Exhibit C** attached hereto.

13. Akin Gump respectfully submits that the professional services that it rendered on behalf of the LES Committee were necessary and appropriate and have directly contributed to the effective administration of LES's chapter 11 case. The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in **Exhibit B**. Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the LES Committee, as well as to identify some of the problems and issues that Akin Gump was required to address during the Compensation Period.

## A.    Case Administration

14. During the Compensation Period, Akin Gump reviewed and analyzed all motions filed by the Debtors and other parties in interest in this Court. The motions and applications filed by the Debtors and other parties in interest that required Akin Gump's attention during the Compensation Period included: (i) the Debtors' motion to extend the period during which LFG and LES have the exclusive right to file and solicit acceptances to a chapter 11 plan; (ii) motions with respect to the sale of LFG's stock in certain of its subsidiaries; (iii) the Debtors' motion to extend the time within which the Debtors must assume or reject unexpired leases of non-residential real property; (iv) numerous motions by the Debtors to assume or reject executory contracts and unexpired real property leases, as well as the Debtors' motion to establish procedures for future rejection of executory contracts and unexpired leases; (v) numerous interim applications for the compensation of professionals; (vi) several motions for relief from the automatic stay; (vii) the Debtors' motion to employ ordinary course professionals; (viii) the Debtors' motion to approve a performance incentive plan; (ix) the Debtors' motion to sell certain

de minimis assets; and (x) numerous pleadings filed in adversary proceedings filed by exchange customers seeking various declaratory, injunctive, and monetary relief regarding exchange funds held by LES. In addition to the foregoing motions filed in this Court, Akin Gump also reviewed and analyzed the potential impact on LES's bankruptcy case of several actions filed in jurisdictions outside the Eastern District of Virginia.

15.     In connection with all motions and applications filed by the Debtors and other parties in interest in these cases, Akin Gump, with the assistance of the LES Committee's other professionals, conducted extensive diligence on the subject matter of each motion and application to, among other things, ascertain the effect the relief requested in the pleading would have on the LES estate. Akin Gump's diligence efforts included reviewing all underlying documentation related to the applicable pleading, communicating with representatives of the Debtors and third parties to address issues related to the relief requested, and working with the LES Committee's other professionals to ensure that the LES Committee had a complete understanding of the effect the granting of the relief requested in a given pleading would have on the LES estate.

16.     Akin Gump kept the LES Committee members advised of all material motions, applications, and case developments during the Compensation Period through detailed memoranda and, as appropriate, conference calls or in-person meetings with individual LES Committee members and the entire LES Committee. During the Compensation Period, Akin Gump also had numerous telephonic conferences and electronic communications with the Debtors and their professionals to discuss and address pending issues and proposed actions.

17.     Akin Gump routinely held internal meetings with the professionals assigned to this matter to ensure that Akin Gump was representing the LES Committee in the most efficient

manner at the least cost to the LES estate. As discussed in detail above, at the request of the LES Committee, Akin Gump assisted in or took the lead in analyzing all motions presented by the Debtors and other parties in interest and advised the LES Committee on its own initiatives and directions for LES's chapter 11 case. In addition, Akin Gump coordinated all LES Committee activities, including attending to member issues and interacting with the LES Committee's chair in setting agendas for the LES Committee's conference calls. Akin Gump also regularly consulted with Protiviti, GCG, and Tavenner & Beran with respect to documents and other information received from the Debtors, their representatives, and other sources.

18. Due to Akin Gump's experience in counseling creditors' committees, Akin Gump believes it was able to efficiently address all issues relating to case administration that have arisen during the pendency of the Debtors' chapter 11 cases.

**B.     LES Committee Meetings**

19. The LES Committee played a very active role in LES's chapter 11 case during the Compensation Period. Akin Gump, together with the other LES Committee's professionals, held no fewer than twelve (12) telephonic meetings with the LES Committee during the Compensation Period. In addition, Akin Gump had telephonic conferences with individual LES Committee members and the LES Committee chair.

20. Prior to its meetings with the LES Committee, Akin Gump reviewed each pending matter requiring the LES Committee's attention and all underlying documentation in connection therewith. Thereafter, Akin Gump discussed each of these matters with the LES Committee's other professionals, the LES Committee, and individual LES Committee members. During these discussions, Akin Gump assisted the LES Committee in formulating a position with respect to each pending matter. In addition, Akin Gump prepared and/or assisted the LES

Committee's other professionals in preparing detailed memoranda for the LES Committee during the Compensation Period discussing the status of pertinent matters in these proceedings.

21.    Through meetings, telephone conferences, and correspondence, Akin Gump has assisted the LES Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in these chapter 11 cases, to monitor closely LES's management of these proceedings, and to reach independent conclusions on the merits of specific matters.

## C.    Court Hearings

22.    Akin Gump attorneys attended, either in-person or telephonically, all of the hearings held before this Court affecting the LES estate during the Compensation Period. In preparing for Court hearings, Akin Gump reviewed all applicable motions and applications filed with the Court, including any responses thereto, and then presented, as needed, the LES Committee's position at such hearings.

## D.    Analysis of Other Parties' Retention of Professionals

23.    During the Compensation Period, the Debtors filed a motion seeking authority to retain certain professionals utilized by the Debtors in the ordinary course of their business (the "Professionals Motion"). Akin Gump reviewed and analyzed the Professionals Motion. Although the Professionals Motion provided for a monthly fee cap on the amount the Debtors were authorized to pay each ordinary course professional without further court approval, it failed to provide for an aggregate cap on such fees paid to each individual ordinary course professional. Accordingly, on May 12, 2009, Akin Gump, on behalf of the LES Committee, filed a limited objection to the Professionals Motion asserting that an aggregate cap should be incorporated into any order entered granting the Professionals Motion. At the May 14, 2009 hearing on the

Professionals Motion, the Debtors agreed to establish an aggregate cap on the fees paid to each ordinary course professional without further court approval.

24.     Also during the Compensation Period, the Debtors filed an application to retain Deloitte Tax LLP as a tax consultant to assist the Debtors during the restructuring process (the "Deloitte Application"). Akin Gump reviewed and analyzed the Deloitte Application to ensure that (i) the professionals proposed to be retained by the Debtors were necessary to the administration of the Debtors' estates and would not provide services duplicative of those provided by professionals already engaged by the Debtors; and (ii) the compensation proposed for each professional employed by the Debtors was appropriate in light of the financial circumstances and value of the services to be performed by the professional. On May 18, 2009, this Court entered an order approving the Deloitte Application.

25.     During the Compensation Period, the Commingled Type A Test Case plaintiff filed an application to retain a forensic accountant (the "Forensic Accountant Retention Application"). Akin Gump reviewed and analyzed the Forensic Accountant Retention Application to ensure that (i) the forensic accountants that the Commingled Type A Test Case plaintiff sought to retain were necessary to the administration of the Debtors' estates and (ii) the compensation proposed for each forensic accountant proposed to be employed by the Commingled Type A Test Case plaintiff was appropriate in light of the financial circumstances and value of the services to be performed by the forensic accountant.

26.     Also during the Compensation Period, Akin Gump, on behalf of the LES Committee, communicated with the Debtors and the LFG Committee regarding the Debtors' proposed retention of special litigation counsel to pursue claims in connection with the auction-rate securities. Akin Gump reviewed and analyzed the Debtors' proposed engagement letter and

pleadings regarding the retention of such special litigation counsel on a preliminary basis to ensure that (i) the proposed retention of special litigation counsel was necessary to the administration of the Debtors' estates and (ii) the compensation proposed was appropriate in light of the financial circumstances and value of the services to be performed by the special litigation counsel.

## E.     Analysis of Other Parties' Compensation of Professionals

27.     During the Compensation Period, the Debtors filed their first interim applications for compensation of the Debtors' legal counsel, as well as monthly reports outlining the compensation and reimbursable expenses of the Debtors' restructuring firm and chief restructuring officer (the "Debtors' Fee Applications"). In addition, during the Compensation Period, the Official Committee of Unsecured Creditors of LFG (the "LFG Committee") filed their first interim applications for compensation of professionals of the LFG Committee's legal counsel and financial advisors (the "LFG Committee's Fee Applications") and the Commingled Type A Test Case plaintiff filed its first interim application for compensation of its legal counsel (the "Type A Fee Application," and together with the Debtors' Fee Applications and the LFG Committee's Fee Applications, the "Fee Applications"). Akin Gump reviewed and analyzed each of the Fee Applications. Akin Gump had numerous discussions with the Debtors, the LFG Committee, and the Commingled Type A Test Case plaintiff with respect to the Fee Applications to ensure that the compensation proposed for each professional employed by the Debtors, the LFG Committee, and the Commingled Type A Test Case plaintiff was appropriate in light of the financial circumstances and value of the services to be performed by the professional.

**F.    Preparation of Monthly Billing Statements / Review of Other Professionals'
Monthly Billing Statements**

28.    During the Compensation Period, Akin Gump prepared its Monthly Fee
Statements.  Akin Gump also reviewed the monthly billing reports received from the other
professionals retained in these cases, as well as the Fee Applications filed by the Debtors, the
LFG Committee, and the Commingled Type A Test Case plaintiff, to identify any issues
regarding such billing reports and to ensure compliance with the Local Rules for the Eastern
District of Virginia.

**G.    Compensation of the LES Committee's Professionals**

29.    During the Compensation Period, Akin Gump prepared the LES Committee's first
interim application for compensation of Akin Gump as its lead counsel.  To ensure compliance
with Akin Gump's continuing disclosure obligations under Bankruptcy Rule 2014, Akin Gump
reviewed all declarations and/or affidavits filed by parties in interest in these cases and then
prepared its own supplemental affidavits (the "Affidavits").  Akin Gump filed its initial Affidavit
on December 31, 2008, as part of Akin Gump's retention application.  Akin Gump filed its first
supplemental Affidavit on March 24, 2009, and its second supplemental Affidavit
contemporaneously with this Application.

**H.    Analysis of Financial Reports**

30.    Akin Gump reviewed the Debtors' financial reports during the Compensation
Period and assisted Protiviti in summarizing such reports for the LES Committee.  Additionally,
Akin Gump attorneys participated in numerous conference calls and electronic communications
with the Debtors and their professionals, the LES Committee's other professionals, and
individual members of the LES Committee to discuss the administration of the Debtors' estates
and the Debtors' liquidity.

## I. Analysis of Assumption and/or Rejection of Pre-petition Agreements

31.     Akin Gump reviewed and analyzed the various motions filed by the Debtors during the Compensation Period with respect to the assumption or rejection of executory contracts and unexpired leases of non-residential real property.     In particular, during the Compensation Period, Akin Gump analyzed (i) the Debtors' motion to assume a contract with PricewaterhouseCoopers to continue to advise the Debtors regarding certain tax litigation; (ii) the Debtors' motion to extend the time within which the Debtors may assume or reject unexpired leases of non-residential real property; (iii) the Debtors' motion to reject an unexpired equipment lease with Technology Leasing Concepts, Inc.; (iv) the Debtors' motion to reject certain executory reinsurance contracts; (v) Debtors' second omnibus motion to reject certain executory contracts; (vi) the Debtors' motion to approve procedures for future rejection of certain executory contracts and unexpired leases; and (vii) notices of rejection of no fewer than thirty-nine (39) various other executory contracts and unexpired leases.  In connection with each such motion, Akin Gump analyzed the underlying agreements, summarized applicable portions of the underlying agreements and the motions for the LES Committee, and discussed and made recommendations to the LES Committee with respect to each such motion.  Akin Gump's analysis of these motions, with the assistance of the LES Committee's other professionals, enabled the LES Committee to make informed decisions in supporting or opposing the relief requested based on, among other things, the effect assumption or rejection would have on the LES estate.

## J. Analysis of Lift Stay Litigation

32.     Akin Gump reviewed and analyzed the various motions filed by parties during the Compensation Period with respect to the modification of the automatic stay.  In particular, Akin Gump spent considerable time during the Compensation Period analyzing (i) the motion of BVT

Institutional Investments, Inc. and U.S. Retail Income Fund, VIII-D, L.P. to collect an arbitration award; (ii) the motion of Wildcat Synergy Equities, LLC to continue a state court negligence action; (iii) the motion of the Grandview Condominium Association, Inc. and Robert F. Kelly and Joan P. Kelly and all others similarly situated to permit certain state court litigation to proceed; (iv) the motion of General Financial Services, Inc. to foreclose on certain real property collateral; (v) the motion of HST Investments, LP to continue certain state court litigation; and (vi) the motion of CP Oxford Gardens, LLC to continue certain state court litigation. In connection with each such motion, Akin Gump analyzed the underlying agreements or litigation, summarized applicable portions of the underlying agreements, litigation, and motions for the LES Committee, and discussed and made recommendations to the LES Committee with respect to each such motion. Akin Gump's analysis of these motions, with the assistance of the LES Committee's other professionals, enabled the LES Committee to make informed decisions in supporting or opposing the relief requested based on, among other things, the effect the modification of the automatic stay would have on the LES estate.

33.     On April 1, 2009, SunTrust, as administrative agent for itself and other lenders, filed a motion seeking relief from the automatic stay to setoff their pre-petition claims against the LFG estate against cash held by the lenders in depository accounts with LFG as of the Petition Date (the "SunTrust Motion"). Akin Gump reviewed and analyzed the SunTrust Motion, and on May 7, 2009, Akin Gump, on behalf of the LES Committee, filed a limited objection to the SunTrust Motion asserting that SunTrust had failed to establish the requisite elements of setoff, including mutuality, and that there is a substantial likelihood that the funds held in the SunTrust account as of the Petition Date are owned, at least in part, by the LES estate.

## K. Analysis of Pre-petition Transactions

34. During the Compensation Period, Akin Gump reviewed and analyzed several class action lawsuits filed against SunTrust Banks, Inc. ("SunTrust") and various directors and officers of the Debtors and prepared a comprehensive legal memorandum for the LES Committee regarding the impact of such class action lawsuits on the LES estate.

35. Also during the Compensation Period, Akin Gump analyzed potential causes of action that could be brought by the LES estate against various third parties, as well as, claims that could be brought against the Debtors by third parties. In connection with such analysis, Akin Gump prepared a comprehensive legal memorandum advising the LES Committee and its professionals of the possible pursuit and likelihood of success of such potential lawsuits.

36. Akin Gump, along with Protiviti, also reviewed and analyzed issues related to claims against the Debtors' directors and officers, including analyzing the Debtors' directors' and officers' liability insurance policies to ensure that the Debtors' coverage was preserved. In connection with such analysis, during the Compensation Period, Akin Gump revised and distributed a comprehensive legal memorandum advising the LES Committee and its professionals of the details of such policies and the potential impact of such policies on the LES estate.

37. Akin Gump and Protiviti further reviewed and analyzed various issues regarding the auction rate securities held by LES. During the Compensation Period, Akin Gump reviewed the auction rate securities held by LES, analyzed settlements made by other parties regarding auction rate securities, analyzed potential third-party actions regarding the auction rate securities, and the Debtors' retention of special litigation counsel to pursue actions regarding same. Akin Gump's ongoing analyses of these issues, with the assistance of the LES Committee's other

professionals, has enabled the LES Committee to make informed decisions regarding the favorable or unfavorable effects of particular courses of action on the LES estate.

**L.     Analysis of Asset / Stock Transactions**

38.     Akin Gump reviewed and analyzed the various motions filed by the Debtors during the Compensation Period with respect to the sale of the Debtors' stock and/or assets in various entities.  In particular, during the Compensation Period, Akin Gump analyzed (i) the sale of LFG's stock in LandAmerica Valuation Corporation; (ii) the sale of substantially all of LAC's assets; (iii) the sale of LFG's stock in LoanCare Servicing Center, Inc.; (iv) the sale of LFG's stock in LandAmerica Home Warranty Company, LandAmerica Property Inspection Services, Inc., Buyer's Real Estate Services, Inc., and Residential Property Maintenance, Inc; and (v) the Debtors' motion to approve procedures for the sale of certain de minimis assets.  In connection with each such motion, Akin Gump analyzed the underlying agreements and the proposed purchase price for the assets or stock, summarized applicable portions of the underlying agreements and motions for the LES Committee, and discussed the potential effect of each motion on the LES estate and made recommendations to the LES Committee with respect to each such motion.

**M.     Exclusivity Issues**

39.     During the Compensation Period, the Debtors filed a motion to extend the periods within which LES and LFG have the exclusive right to file and solicit acceptances to a plan of reorganization by 120 days, respectively (the "Exclusivity Motion").  Akin Gump reviewed and analyzed the Exclusivity Motion, and on March 17, 2009, Akin Gump, on behalf of the LES Committee, filed an objection to the Exclusivity Motion, asserting that the relief requested in the Exclusivity Motion failed to establish the requisite cause for such an extension.  On March 23,

2009, this Court entered an order granting the Exclusivity Motion over the LES Committee's objection.

## N.    Analysis of Tax Claims

40.    During the Compensation Period, Akin Gump began analyzing various tax issues related to the Debtors' chapter 11 filings. In particular, Akin Gump reviewed and analyzed the Debtors' tax sharing agreement and consolidated tax returns and researched the liability of members of a consolidated tax group. Further, Akin Gump participated in several telephonic conferences and one in-person meeting with the Internal Revenue Service and Treasury representatives regarding relief for taxpayers in connection with the failure of a qualified intermediary. In connection with its analysis, Akin Gump prepared a comprehensive legal memorandum outlining these issues and advising the LES Committee of potential courses of action. Akin Gump's ongoing analysis of these issues, with the assistance of the LES Committee's other professionals, has enable the LES Committee to make informed decisions regarding the favorable or unfavorable consequences of particular courses of action on the LES estate.

## O.    Analysis of Employee Benefits and Issues

41.    During the Compensation Period, Akin Gump reviewed and analyzed the Debtors' pension plan and potential claims of the Pension Benefit Guaranty Corporation ("PBGC") against the Debtors' estates, as well as the eventual Rule 9019 settlement agreement entered into by and among the Debtors, the LFG Committee, and the PBGC. Akin Gump also reviewed and analyzed the performance incentive plan sought to be implemented by the Debtors. In connection with its analysis of these issues, Akin Gump analyzed the underlying agreements and motions and summarized applicable portions of the underlying agreements and motions for the LES Committee, and discussed and made recommendations to the LES Committee with

respect to the potential effects of the motions on the LES estate, allowing the LES Committee to make informed decisions in supporting or opposing the relief requested.

**P.  Analysis of Intercompany Claims**

42.  During the Compensation Period, the Debtors filed a motion to establish a litigation protocol to resolve certain issues and claims between the LES estate and the LFG estate. After various parties in interest filed objections to the proposed protocol, the Debtors proposed a protocol to resolve such intercompany issues through mediation (the "Intercompany Protocol").

43.  Pursuant to the Intercompany Protocol, Akin Gump, on behalf of the LES Committee, prepared and served on the LFG Committee an Issue Statement setting forth the claims that the LES Committee sought to have resolved at the mediation. Akin Gump also reviewed the Issue Statement of the LFG Committee and discussed the same with the LES Committee. Also during the Compensation Period, Akin Gump served discovery requests on the Debtors and spent substantial time analyzing the documents produced by the Debtors in connection with the Intercompany Protocol. Akin Gump advised the LES Committee with respect to the Intercompany Protocol and the consequences of various courses of action.

**Q.  Adversary Proceedings / Test Case Litigation**

44.  On January 16, 2009, this Court entered an order approving a protocol (the "Test Case Protocol") for the expedited consideration and resolution of five adversary proceedings (the "Test Cases"). During the Compensation Period, Akin Gump participated in no fewer than 21 depositions and reviewed no fewer than 200,000 pages of documents produced by the Debtors and other parties in interest regarding the Test Cases in connection with the expedited litigation of the Test Cases. Further, Akin Gump drafted no fewer than 9 substantive pleadings and no fewer than 17 sets of discovery requests and responses during the Compensation Period in

connection with the litigation of the Test Cases and reviewed the numerous motions and responses and responded to multiple sets of discovery requests filed by the Test Case plaintiffs, the Debtors, and the LFG Committee.

45.     During the Compensation Period, Akin Gump devoted substantial time to preparing to litigate the summary judgment motions in the Test Cases. The summary judgment hearing in the first Test Case was held on April 7, 2009 and the summary judgment hearings in the remaining Test Cases were held on April 16, 2009. On April 15, 2009, this Court entered an order granting the motions for partial summary judgment of the LES Committee and the LFG Committee, and finding that the funds held by LES in segregated exchange accounts were property of the LES estate. On May 7, 2009, this Court entered an order granting the motions for partial summary judgment of the LES Committee and the LFG Committee, and finding that the funds held by LES in commingled exchange accounts were also property of the LES estate. Also during the Compensation Period, the Test Case plaintiffs each filed notices of appeal of this Court's rulings on the motions for partial summary judgment in the Test Cases, and Akin Gump filed a response objecting to each such appeal on behalf of the LES Committee.

**R.     Creditor Inquiries**

46.     Akin Gump fielded numerous telephone inquiries and electronic communications during the Compensation Period from unsecured creditors to discuss the status of various pending matters and to respond to their many questions about the bankruptcy process and the status of their claims against the Debtors' estates.

**S.     Creditor Website**

47.     During the Compensation Period, Akin Gump, with the assistance of GCG, has maintained a website devoted to providing information to the unsecured creditors of LES. Akin Gump, with the assistance of GCG, regularly posts updates to the creditor website regarding the

status of LES's chapter 11 case, the protocol and the expedited litigation on the Test Cases, and the pleadings filed by the LES Committee and other parties in interest in LES's case.

## IV.     FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

48.     The Bankruptcy Code sets forth the legal standards for awarding compensation to professionals. The format for fee applications is set forth in the Compensation Guidelines for Professionals in the United States Bankruptcy Court for the Eastern District of Virginia (the "Guidelines").

49.     Under Bankruptcy Code section 330, the Court may award counsel to the LES Committee reasonable compensation for actual, necessary services rendered by such attorneys and paraprofessionals employed by such attorneys based on the nature, extent and value of the services rendered, time spent on such services and the cost of comparable services other than in a bankruptcy case. In addition, the Court may award reimbursement for actual, necessary expenses.

50.     Under the "lodestar" approach, the Court should consider the number of hours of service reasonably devoted to the case multiplied by the attorney's reasonable rates. Courts frequently consider the specific "lodestar" factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). These lodestar tests were adopted by the Fourth Circuit in *Barber v. Kimbrells, Inc.*, 577 F.2d 216, 226 (4th Cir.), *cert. denied*, 439 U.S. 934 (1978), and in *Anderson v. Morris*, 658 F.2d 246, 249 (4th Cir. 1981), where the Fourth Circuit held that the District Court should employ the lodestar approach, and then adjust the fee on the basis of the remaining *Johnson* factors in the case. Akin Gump respectfully submits that a consideration of these factors should result in this Court's allowance of the full compensation sought.

(A)     The Time and Labor Required.  The professional services rendered by Akin Gump on behalf of the LES Committee have required the continuous expenditure of substantial time and effort under significant time pressures.  The services rendered required a high degree of professional competence and expertise in order to be administered with skill and dispatch.

(B)     The Novelty and Difficulty of the Questions.  In this case, as in all others in which the firm is involved, Akin Gump's effective advocacy and creative approach have helped clarify and resolve a number of complex and novel issues.

(C)     The Skill Requisite to Perform the Legal Service Properly.  Akin Gump believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Akin Gump's practice, and its creative approach to the resolution of issues has contributed to the maximization of distributions to LES's unsecured creditors.

(D)     The Preclusion of Other Employment by the Attorney Due to Acceptance of the Case.  Due to the size of Akin Gump's financial restructuring department, Akin Gump's representation of the LES Committee has not precluded its acceptance of new clients.

(E)     The Customary Fee.  The fee sought herein is based upon Akin Gump's normal hourly rates for services of this kind.  Akin Gump respectfully submits that the fee sought herein is not unusual given the magnitude and complexity of these chapter 11 cases and the time expended in attending to the representation of the LES Committee and is commensurate with fees Akin Gump has been awarded

in other cases, as well as with fees charged by other attorneys of comparable experience.

(F)     Whether the Fee is Fixed or Contingent. Pursuant to Bankruptcy Code sections 330 and 331, all fees sought by professionals employed under Bankruptcy Code section 1103 are contingent pending final approval by this Court and are subject to adjustment depending upon the services rendered and the results obtained. Thus far, however, the collective efforts of the various parties in interest and their respective professionals, including Akin Gump, have resulted in the consensual resolution of many significant issues in these cases in a relatively short period of time given the complexity of the Debtors' chapter 11 cases.

(G)     Time Limitations Imposed by the Client or the Circumstances. As already indicated, Akin Gump has been required to attend to certain issues arising in these chapter 11 cases in compressed and urgent time periods.

(H)     The Amount Involved and the Results Obtained. Through the efforts of Akin Gump, the LES Committee has been an active participant in these chapter 11 cases, and its constructive assistance, as well as criticism, has greatly contributed to enhancement of the recoveries available to the unsecured creditors of LES and to the efficient administration of these chapter 11 cases.

(I)     The Experience, Reputation and Ability of the Attorneys. Akin Gump has a large and sophisticated financial restructuring practice and is playing and has played a major role in numerous cases of national import including, for example, the reorganization proceedings of Adelphia Business Solutions, Inc., Aetna Industries, Inc., Allegiance Telecom, Inc., American Commercial Lines LLC,

Anchor Glass Container Corporation, ATA Holdings Corp., Bally Total Fitness Holding Corporation, Calpine Corporation, Collins & Aikman Corporation, Dairy Mart Convenience Stores, Inc., Dan River Inc., Delta Air Lines Inc., Exide Technologies, FLAG Telecom Holdings Limited, Granite Broadcasting Corporation, Hayes Lemmerz International, Inc., Haynes International, Inc., Kaiser Aluminum Corporation, The LTV Corporation, Loral Space & Communications Ltd., Pegasus Satellite Television, Inc., Polaroid Corporation, Propex, Inc., Quebecor World (USA) Inc., Scott Cable Communications, Inc., TOUSA, Inc., Tower Automotive, Inc., Venture Holdings Company, LLC, Verasun Energy Corporation, Worldcom, Inc., and XO Communications, Inc. Akin Gump's experience enables it to perform the services described herein competently and expeditiously. In addition to its expertise in the area of corporate reorganization, Akin Gump has called upon the expertise of its partners and associates in other practice areas to perform the wide-ranging scope of the legal work necessitated by these chapter 11 cases, including tax and litigation.

(J) <u>The "Undesirability" of the Case</u>. These cases are not undesirable.

(K) <u>The Nature and Length of the Professional Relationship with the Client</u>. Akin Gump was selected as counsel to the LES Committee on December 8, 2008. The Court entered an order on January 16, 2009, authorizing the LES Committee to employ Akin Gump, *nunc pro tunc* to December 8, 2008. Akin Gump has been rendering services continuously to the LES Committee since December 8, 2008 and continuing through the Compensation Period, as necessary and appropriate.

## V.    ALLOWANCE OF COMPENSATION

51.    The professional services rendered by Akin Gump required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the LES Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort.  It is respectfully submitted that the services rendered to the LES Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited not only the members of the LES Committee, but also the unsecured creditor body of LES as a whole and the LES estate.

52.    The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in Bankruptcy Code section 331:

> Any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331.  Moreover, this Court has authorized the filing of this Application in the Interim Compensation Order.

53.    With respect to the level of compensation, Bankruptcy Code section 330(a)(1) provides, in pertinent part, that the Court may award to a professional person:

> reasonable compensation for actual, necessary services rendered . . .

11 U.S.C. § 330(a)(1).  Section 330(a)(3)(A), in turn, provides that

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A). The clear congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

54.     The total time spent by Akin Gump attorneys and paraprofessionals during the Compensation Period was 2,812.50 hours. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task. As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time.

55.     Akin Gump respectfully requests that the Court not "hold back" any portion of the fees awarded. This Application covers the period from March 1, 2009 through and including May 31, 2009. Pursuant to the Interim Compensation Order, Akin Gump's monthly fees are subject to a 15% "holdback." The amount of Akin Gump's holdbacks for the Compensation Period is $178,305.67. By the time of the August 25, 2009 hearing on this Application, Akin Gump will have additional 15% holdbacks for the months of June and July 2009 (the "Additional Holdback"). Akin Gump suggests that based on the Additional Holdback, there is no need for any holdbacks of the fees awarded pursuant to this Application.

56.     Akin Gump incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the LES Committee during the Compensation Period in the amount of $90,837.09, for which Akin Gump respectfully requests reimbursement in full. The disbursements and expenses have been incurred in accordance with Akin Gump's normal

practice of charging clients for expenses clearly related to and required by particular matters. Akin Gump has endeavored to minimize these expenses to the fullest extent possible.

57. Akin Gump's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, secretarial overtime, postage and certain other office services because the needs of each client for such services differ. Akin Gump believes that it is fairest to charge each client only for the services actually used in performing services for it. In these proceedings, Akin Gump charges $.20 per page for internal duplicating and does not charge for outgoing or incoming facsimile transmissions. Akin Gump has agreed not to charge for travel time for hearings in connection with these chapter 11 proceedings.[4]

58. No prior application has been made in this Court or in any other court for the relief requested herein for the Compensation Period.

**WHEREFORE**, Akin Gump respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit D**:

(a) approving the allowance of $1,188,704.50 for compensation for professional services rendered to the LES Committee during the period from March 1, 2009 through and including May 31, 2009;

(b) approving the reimbursement of Akin Gump's out-of-pocket expenses incurred in connection with the rendering of such services during the period March 1, 2009 through and including May 31, 2009 in the amount of $90,837.09;

(c) authorizing and directing LES to pay the fees and expenses awarded; and

---

[4] Although Akin Gump has agreed not to charge the LES Committee for travel time to and from Richmond for court hearings in connection with the Debtors' cases, Akin Gump does charge for travel time associated with Akin Gump's representation of the LES Committee that is not attributable to such court hearings.

(d)     granting such other and further relief as this Court may deem just and proper.

Dated: Richmond, Virginia

     July 13, 2009

_____/s/ Catherine Creely_____

Charles R. Gibbs (admitted *pro hac vice*)
Keefe Bernstein (admitted *pro hac vice*)
Sarah Link Schultz (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: 214.969.2800
Facsimile: 214.969.4343

Catherine Creely (Virginia Bar No. 74796)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: 202.887.4000
Facsimile: 205.955.7827

-and-

Lynn Tavenner (Virginia Bar No. 30083)
Paula S. Beran (Virginia Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219
Telephone: 804.783.8300
Facsimile: 804.783.0178

*Attorneys for The Official Committee of Unsecured Creditors of LandAmerica 1031 Exchange Services, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 15th day of July, 2009 a true and correct copy of the foregoing *Second Interim Application of Akin Gump Strauss Hauer & Feld LLP for Allowance of Compensation and Expense Reimbursement as Counsel to the Official Committee of Unsecured Creditors of LandAmerica 1031 Exchange Services, Inc.* has been served via first class mail, postage pre-paid and/or electronic delivery to:

Robert B. Van Arsdale – Via Email:
Office of the United States Trustee
701 East Broad St. Suite 4304
Richmond, Virginia 23219
Robert.B.Van.Arsdale@usdoj.gov

Dion W. Hayes, Esq. – Via Email:
John H. Maddock, III, Esq. – Via Email:
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219
dhayes@mcguirewoods.com
jmaddock@mcguirewoods.com

Paul V. Shalhoub, Esq. – Via Email:
Rachel C. Strickland, Esq. – Via Email:
WILLKIE FARR & GALLAGHER, LLP
787 Seventh Avenue
New York, New York 10019
pshalhoub@willkie.com
rstrickland@willkie.com

Bruce H. Matson – Via Email:
Christopher L. Perkins – Via Email:
LeClair Ryan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
bruce.matson@leclairryan.com
christopher.perkins@leclairryan.com

Jeffrey S. Sabin – Via Email:
Mark M. Elliott – Via Email:
Justin G. Imperato – Via Email:
Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022
jeffrey.sabin@bingham.com
mark.elliott@bingham.com
justin.imperato@bingham.com

Michelle H. Gluck – Via Standard Mail
Michael D. Beverly – Via Standard Mail
LandAmerica Financial Group, Inc.
5600 Cox Road
Glen Allen, VA 23060

_____ */s/ Sarah Link Schultz* _____
Sarah Link Schultz