Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 41044)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

Attorneys for the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
-------------------------------------------------------x
In re                                  :      Chapter 11
                                       :
LandAmerica Financial Group, Inc., et al.   :   Case No. 08-35994 (KRH)
                                       :
                   Debtors.            :      (Jointly Administered)
-------------------------------------------------------x
```

## SECOND INTERIM APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF MCGUIREWOODS LLP, CO-COUNSEL TO THE DEBTORS, FOR SERVICES RENDERED FROM MARCH 1, 2009 THROUGH MAY 31, 2009

McGuireWoods LLP ("MW"), in its capacity as co-counsel to LandAmerica Financial

group, Inc. ("LFG"), LandAmerica 1031 Exchange Services, Inc. ("LES"), LandAmerica

Assessment Corporation ("LAC"), LandAmerica Title Company ("LandAm Title"), and

Southland Title Corporation, Southland Title of San Diego, and Southland Title of Orange

County (collectively, the "Southland Entities" and collectively with LFG, LES, LAC, and

LandAm Title the "Debtors"), debtors and debtors in possession in the above-captioned jointly

administered cases, submits the following as its Second Interim Application for Compensation

and Reimbursement of Expenses for Services Rendered from March 1, 2009 through May 31,

2009 (the "Application") pursuant to 11 U.S.C. §§ 330, 331 and 503(b), Federal Rule of

Bankruptcy Procedure 2016, and Local Bankruptcy Rule 2016-1.  MW certifies that the Debtors have received a copy of this Application, but have not completed their review.  In addition, MW certifies that a copy of this Application has been served on the Office of the United States Trustee and counsel for the Official Committee of Unsecured Creditors in the cases of (a) LandAmerica Financial Group, Inc. (the "LFG Creditors' Committee") and (b) LandAmerica 1031 Exchange Services, Inc. (the "LES Creditors' Committee", and, together with the LFG Creditors' Committee, the "Creditors' Committees").  For its Application, MW seeks the entry of an order, substantially in the form attached hereto as <u>Exhibit A</u>, granting interim approval of compensation in the amount of $3,016,393.75 and reimbursement of expenses in the amount of $33,197.81 for services rendered by MW from March 1, 2009 through May 31, 2009 (the "Application Period").[1]  In support of the Application, MW respectfully represents as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The bases for the relief requested herein are sections 330, 331 and 503(b) of title 11 of the United States Code (the "Bankruptcy Code"), Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") 2016 and Local Bankruptcy Rule 2016-1.

## BACKGROUND

3.      On November 26, 2008 (the "Petition Date"), LFG and LES filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code. On March 6, 2009,

---

[1]      MW mistakenly overbilled the Debtors by $54 in fees for services provided during the month of March ($889,689.73 instead of $889,635.73). MW also mistakenly billed (and was paid by) the Debtors for $15,363.00 in overtime expenses during the Application Period. MW will no longer pass overtime expenses to the Debtors and has reduced the holdback payment request herein by $15,363.00.

March 27, 2009 and March 31, 2009, various other LFG affiliates (LAC, LandAm Title, and the Southland Entities) filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108. No trustee or examiner has been appointed in the Debtors' chapter 11 cases.

4.      On December 3, 2008, the United States Trustee for the Eastern District of Virginia (the "Trustee") appointed (a) an Official Committee of Unsecured Creditors in the case of LES (the "LES Committee") and (b) an Official Committee of Unsecured Creditors in the case of LFG (the "LFG Committee," and, together with the LES Committee, the "Creditors' Committees"). On June 4, 2009, the Trustee filed his Amended Appointment of Unsecured Creditors Committee, adding two (2) additional members to the LES Committee. Pursuant to orders of this Court dated November 28, 2008, March 11, 2009, April 8, 2009, and April 9, 2009, the chapter 11 cases of the Debtors are being jointly administered under case number 08-35994.

5.      The events leading up to the Petition Date are set forth in the Affidavit of G. William Evans, Chief Financial Officer of LandAmerica Financial Group, Inc. and Vice President of LandAmerica 1031 Exchange Services, Inc., in Support of Chapter 11 Petitions and First Day Pleadings, dated November 26, 2008 [Docket No. 12].

## MCGUIREWOODS LLP'S EMPLOYMENT

6.      On December 5, 2008, MW filed an Application to Employ McGuireWoods LLP as Co-Counsel for the Debtors Pursuant to 11 U.S.C. §§ 327(a) and 329 [Docket No. 116] (the "Employment Application").

7.      On December 23, 2008, the Court entered its Order Granting Application to Employ McGuireWoods LLP as Co-Counsel to Debtors [Docket No. 437] (the "Employment Order").

8.      On December 21, 2008 the Court entered its Order Under Sections 105(a) and 331 of the Bankruptcy Code Establishing Interim Compensation Procedures [Docket No. 411] (the "Interim Compensation Order").

9.      Pursuant to the terms of the Interim Compensation Order, if no objection is filed to a monthly fee statement within twenty (20) days of the service of that application, then the Debtors may pay their respective professionals eighty-five percent (85%) of the fees and one hundred percent (100%) of the expenses set forth in the applicable monthly fee statement.  The Interim Compensation Order provides for the payment of the remaining fifteen percent (15%) of fees upon Court approval of a professional's interim fee application.

10.     By this Application, MW is seeking, inter alia, interim approval of its compensation and reimbursement of expenses pursuant to the Employment Order, the Interim Compensation Order, and pursuant to sections 330, 331 and 503(b) of the Bankruptcy Code for the Application Period.

11.     MW charges legal fees on an hourly basis at its attorneys' and paraprofessionals' hourly rates, which rates are set in accordance with the attorney's or paraprofessional's seniority and experience and are adjusted from time to time.  MW also charges the Debtors for its actual out-of-pocket expenses incurred including, but not limited to, photocopying, long distance telephone calls, messenger services, computer research, travel expenses, overnight mail and court fees.  MW's fee structure and expense reimbursement policies were disclosed in MW's Employment Application, to which no party objected and this Court approved.

12.     The names of all MW attorneys and paraprofessionals who have worked on this matter and their respective hourly rates are set forth on <u>Exhibit B</u> hereto.

13.     MW currently holds a retainer from the Debtors in the approximate amount of $159,805.84.

14.     To the best of MW's knowledge, and upon information and belief, the Debtors have paid or will pay undisputed postpetition operating expenses in the ordinary course.

15.     To the best of MW's knowledge, and upon information and belief, the Debtors have sufficient funds on hand (as of May 31, 2009, approximately $80,712,000.00 for LFG, $131,674,000.00 for LES, $1,513,000.00 for LAC, $907,000.00 for LandAm Title, and $5,469,000.00 for the Southland Entities) to pay the compensation and reimbursement of expenses requested herein.

16.     To the best of MW's knowledge, and upon information and belief, the Debtors have filed with the Court all monthly operating reports presently due, and have paid all quarterly fees to the United States Trustee that are presently due.

## FEE PROCEDURES AND MONTHLY FEE STATEMENTS

17.     The Interim Compensation Order approved a set of interim compensation procedures attached thereto (the "Interim Compensation Procedures"). Pursuant to paragraph (c) of the Interim Compensation Procedures, Interim Fee Applications (as defined therein) must be filed at three month intervals (the "Interim Fee Period") after the three month period ending February 28, 2009. The Interim Fee Applications must be filed within 45 days after the end of each Interim Fee Period, which for the period of March 1, 2009 to May 31, 2009, is on or before July 15, 2009. In accordance with paragraphs (a) and (d) of the Interim Compensation Procedures, MW will serve a copy of this Application upon the Notice Parties (as defined

therein).  Moreover, notice of the Application will be served on the parties entitled to receive notice under the Court's Amended Order Pursuant to Bankruptcy Code Sections 102 and 105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1 Establishing Certain Notice, Case Management, and Administrative Procedures (the "Amended Case Management Order") [Docket No. 435].

18.     Pursuant to the Interim Compensation Procedures, approximately on or after the tenth (10th) day of each month following the month for which compensation was sought, MW submitted a monthly statement to the Notice Parties.  Parties entitled to receive notice of the monthly statement had twenty (20) days to review and object to any such statement.  If there were no objections, at the expiration of the twenty (20) day period, the Debtors were required to promptly pay eighty-five percent (85%) of the fees and one hundred percent (100%) of the expenses identified in each monthly statement.  MW submitted monthly statements for each month during the Application Period and no objections were received for the statements covering March 1, 2009 – March 31, 2009, April 1 – April 30, 2009, and May 1, 2009 – May 31, 2009. MW has been paid approximately 85% of its total requested fees and approximately 100% of its expenses during the Application Period, except for the month of May, 2009.  A chart summarizing these payments and the monthly statements is attached hereto as Exhibit C.

## REQUESTED FEES AND REIMBURSEMENT OF EXPENSES

19.     MW has played an important role in advising the Debtors and handling the day to day administration of the Debtors' chapter 11 cases.  As a result of its efforts during the Application Period, MW now seeks interim allowance of $3,016,393.75 in fees calculated at the applicable guideline hourly billing rates of the firm's personnel who have performed services on

behalf of the Debtors, and $33,197.81 in expenses actually and necessarily incurred by MW while providing services to the Debtors during the Application Period.

20.     In staffing this case, in budgeting and incurring charges and disbursements, and in preparing and submitting this Application, MW has been mindful of the need to be efficient while providing full and vigorous representation to the Debtors.  MW also has been especially cognizant of the standards established by this Court for compensation of professionals and reimbursement of charges and disbursements.  As described in detail herein, MW believes that the requests made in this Application comply with this Court's standards in the context of the unique circumstances surrounding these large and complex chapter 11 cases.

## SUMMARY OF SERVICES PROVIDED DURING THE APPLICATION PERIOD

**A.     General Case Administration.**

21.     <u>Description</u>.  MW assisted with, <u>inter alia</u>, the review, analysis and preparation of correspondence, documents, pleadings and notices; handled the daily administration of the Debtors' chapter 11 cases; prepared and maintained a case calendar, hearing planners and omnibus hearing agendas used by the Debtors and their professionals in these chapter 11 cases; prepared for and participated in all court hearings in these chapter 11 cases, including, but not limited to, the first day hearings; regularly participated in meetings and telephone conferences with officers and employees of the Debtors and the Debtors' financial and other advisors regarding the foregoing as well as other operational, organizational and strategic issues arising in the cases; regularly participated in meetings and telephone conferences with professionals for the Creditors' Committees, creditors and other parties in interest regarding the foregoing and various other issues arising in these cases; assisted the Debtors with the service of relevant documents on appropriate parties and the organization of information and document requests from various

parties; handled issues relating to electronic case filing; regularly communicated with the Clerk's office, Chambers and the U.S. Trustee's office regarding various case administration issues; drafted and filed notices of commencement; handled the internal coordination of motions, responses, objections and other related matters; coordinated the establishment and maintenance of MW's telephone hotline to assist in responding to the numerous inquiries from creditors and other parties in interest that these cases have generated; and researched responses to each message and otherwise responded to all inquiries tendered through the hotline.

22.     <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors in the administration and prosecution of these complex chapter 11 cases.

23.     <u>Status</u>.  These and other general case administration matters will continue until the chapter 11 cases are closed.

24.     <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 333.5 hours during the Application Period for a total of $92,036.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**B.      Restructuring and General Strategy.**

25.     <u>Description</u>.  MW assisted with, <u>inter alia</u>, the resolution of various issues and the development of various strategies regarding the Debtors' chapter 11 cases; analyzed issues and strategy regarding the Debtors' sale procedures, auctions and liquidations, including, but not limited to, the sale of the Debtors' stock in LandAmerica Home Warranty Company and LandAmerica LoanCare Servicing Center, Inc.; reviewed, drafted and handled the filing of pleadings regarding the foregoing; handled inquiries regarding the sale of assets; and participated

in meetings and telephone conferences with the Debtors and their professionals regarding the foregoing.

26.     <u>Necessity and Benefit to the Estates</u>.  As the Debtors are in the process of winding down their business operations, these services were necessary to assist the Debtors in the administration and prosecution of these complex chapter 11 cases.

27.     <u>Status</u>.  These matters will continue as the need arises.

28.     <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 177 hours during the Application Period for a total of $66,685.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**C.     Communications Matters.**

29.     <u>Description</u>.  MW assisted with, <u>inter alia</u>, both internal and external communications regarding the Debtors' bankruptcy filing, including external communications to the public through a dedicated hotline.

30.     <u>Necessity and Benefit to the Estates</u>.  These services were necessary to provide interested parties with information regarding the LandAmerica bankruptcy cases.

31.     <u>Status</u>.  These matters will continue as the need arises.

32.     <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 1.5 hours during the Application Period for a total of $442.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**D.     Corporate Governance.**

33.     <u>Description</u>.  MW assisted with, <u>inter alia</u>, the analysis of board policies and director correspondence; participated in board committee meetings; and prepared board minutes.

34.     <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors with corporate governance issues that arose as a result of the filing of the chapter 11 cases.

35.     <u>Status</u>.  These matters will continue as the need arises.

36.     <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 14.3 hours during the Application Period for a total of $8,442.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**E.     Schedules and SOFAS**

37.     <u>Description</u>.  MW assisted the Debtors and their professionals with, <u>inter alia</u>, issues pertaining to the filing of the Debtors' Schedules of Assets and Liabilities and the Debtors' Statements of Financial Affairs.

38.     <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors with compliance with the Bankruptcy Code, Local Bankruptcy Rules and the United States Trustee's guidelines.

39.     <u>Status</u>.  These matters will continue as the need arises.

40.     <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended .5 hours during the Application Period for a total of $162.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**F.    Monthly Operating Reports.**

41.    <u>Description</u>.  MW assisted the Debtors and their professionals with, <u>inter</u> <u>alia</u>, the preparation of and filing of the Debtors' Monthly Operating Reports.

42.    <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors with compliance with the Bankruptcy Code, Local Bankruptcy Rules and the United States Trustee's guidelines.

43.    <u>Status</u>.  These matters will continue as the need arises.

44.    <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 4.5 hours during the Application Period for a total of $1,790.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**G.    Professional Retention/Fee Applications.**

45.    <u>Description</u>.  Pursuant to the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules, MW drafted and filed an employment application for the Debtors to retain Deloitte Tax.  In addition, pursuant to the requirements of the Interim Compensation Order, MW has prepared detailed monthly fee statements for distribution to the Notice Parties and handled inquires from all of the professionals regarding monthly fee statements.  Moreover, MW assisted with, <u>inter</u> <u>alia</u>, various issues pertaining to the retention and payment of various professionals employed by the Debtors and the Committees in connection with the Debtors' bankruptcy cases, including bankruptcy counsel, special counsel, accountants, and financial advisors; reviewed, analyzed, drafted and filed various employment applications on behalf of the Debtors; reviewed and analyzed various employment applications filed by the Committees; attended hearings

relating to the same; drafted and filed MW's First Interim Fee Application, and communicated with the Office of the United States Trustee regarding the foregoing.

46.     Necessity and Benefit to the Estates.  These services were necessary to comply with the Bankruptcy Code, the Interim Compensation Order and the United States Trustee's guidelines.  Additionally, access to qualified professionals is critical to the Debtors' chapter 11 cases.

47.     Status.  These matters will continue as the need arises.

48.     Hours Spent and Compensation Requested.  In connection with the foregoing matters, MW's professionals expended 123.7 hours during the Application Period for a total of $45,797.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

**H.     Creditors Committees.**

49.     Description.  MW assisted with, inter alia, the organization of and preparation for various section 341 meetings of creditors; responded to information requests by the Creditors' Committees' professionals; and communicated with and attended meetings with the Creditors' Committees' professionals regarding the progress and status of the cases, including, but not limited to, asset sales, specific pleadings and various other issues.

50.     Necessity and Benefit to the Estates.  These services were necessary to assist the Debtors with maintaining open communication and resolving disputes with the Committees and their professionals on a consensual basis.

51.     Status.  These matters will continue as the need arises.

52.     Hours Spent and Compensation Requested.  In connection with the foregoing matters, MW's professionals expended 17.9 hours during the Application Period for a total of

$7,812.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**I.  Automatic Stay.**

      53.    <u>Description</u>.  MW assisted with, <u>inter</u> <u>alia</u>, the review, analysis and preparation of correspondence, documents, pleadings and notices relating to motions for relief from the automatic stay; attended hearings related to same; drafted correspondence and participated in meetings and telephone conferences regarding violations of the automatic stay; and conducted research regarding various issues related to automatic stay matters.

      54.    <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors in enforcing the automatic stay, reducing the administrative burden on the Debtors' management and reducing expenses incurred by the Debtors' bankruptcy estates by resolving potential automatic stay related matters.

      55.    <u>Status</u>.  These and other automatic stay related matters will continue until a chapter 11 plan is confirmed.

      56.    <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 14.7 hours during the Application Period for a total of $5,494.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**J.  Employment and Compensation.**

      57.    <u>Description</u>.  MW assisted with, <u>inter</u> <u>alia</u>, the review and analysis of issues regarding executive compensation and workers' compensation; research and analysis relating to employee termination and COBRA issues; and research and analysis regarding an employee performance incentive plan.

58.     <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors with issues pertaining to various employee related matters.

59.     <u>Status</u>.  These and other employee related matters will continue as the need arises.

60.     <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 18.5 hours during the Application Period for a total of $5,830.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**K.     Labor/Retiree Matters.**

61.     <u>Description</u>.  MW assisted with, <u>inter</u> <u>alia</u>, research and analysis relating to key employee benefit plans; analysis of claims filed by the Department of Labor; and various meetings, research, and analysis to resolve certain disputes with the Pension Benefit Guaranty Corporation.

62.     <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors with employee retention issues to ensure a cost effective wind down of the Debtors' business operations.

63.     <u>Status</u>.  These matters will continue as the need arises.

64.     <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 10.9 hours during the Application Period for a total of $4,996.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**L.     Executory Contracts.**

65.     <u>Description</u>.  MW assisted with, <u>inter</u> <u>alia</u>, the review and analysis of various executory contracts and the development of various strategies regarding the possible assumption

or rejection of certain executory contracts; researched, drafted, and analyzed pleadings regarding the assumption and rejection of certain executory contracts; negotiated matters related to the assumption and rejection of certain executory contracts; and regularly participated in meetings and telephone conferences with the Debtors, their professionals and opposing counsel regarding the foregoing.

66.     Necessity and Benefit to the Estates.  These services were necessary to assist the Debtors in developing and implementing a strategy for assuming and rejecting various executory contracts consistent with the wind down of the Debtors' business operations.

67.     Status.  These matters will continue as the need arises.

68.     Hours Spent and Compensation Requested.  In connection with the foregoing matters, MW's professionals expended 94.9 hours during the Application Period for a total of $33,687.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

**M.     Litigation.**

69.     Description.  MW conducted numerous meetings with client and government officials regarding an internal investigation in response to inquiries from certain governmental agencies; prepared and implemented document collection procedures to facilitate the investigation; conducted extensive document review to facilitate the investigation and to respond to Committee document requests; conducted investigation; conducted interviews of current and former employees in conjunction with the investigation; prepared privilege log and addressed and analyzed various discovery issues; and conducted legal research associated with issues raised during investigation.

70. <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors with various inquiries from government agencies and Committee document requests.

71. <u>Status</u>.  These matters will continue as the need arises.

72. <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 15,795.9 hours during the Application Period for a total of $2,146,482.25.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**N.      Vendor Matters.**

73. <u>Description</u>.  MW analyzed and responded to correspondence received from a key vendor and its counsel; reviewed and analyzed the vendor related contract and negotiated with the vendor and its counsel to reach a consensual rejection of the vendor's supply agreement.

74. <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors in developing and implementing a strategy for resolving various vendor related issues.

75. <u>Status</u>.  These matters will continue as the need arises.

76. <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 1 hour during the Application Period for a total of $325.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**O.      Real Estate.**

77. <u>Description</u>.  MW assisted with, <u>inter</u> <u>alia</u>, the review, analysis and drafting of correspondence, documents and pleadings regarding real property leases and the rejection of certain leases; researched and analyzed various matters regarding real property leases; drafted and filed a motion to reject nonresidential real estate leases; and participated in meetings and

telephone conferences with the Debtors and their professionals, landlords and their counsel, and other parties in interest regarding the foregoing.

78.     <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors in various real estate related matters and the wind down of Debtors' business operations.

79.     <u>Status</u>.  These matters will continue as the Debtors continue their efforts to wind down and liquidate their assets.

80.     <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 8.1 hours during the Application Period for a total of $3,847.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**P.      Financing.**

81.     <u>Description</u>.  MW assisted with, <u>inter</u> <u>alia</u>, the review, analysis and preparation of correspondence, documents, pleadings and notices relating to various cash management issues, including, but not limited to, the transfer of certain funds from existing accounts into new accounts.

82.     <u>Necessity and Benefit to the Estates</u>.  These services were necessary to address various cash management issues and the transfer of certain deposited funds in compliance with Court orders.

83.     <u>Status</u>.  These matters will continue as the need arises.

84.     <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 5.4 hours during the Application Period for a total of $2,565.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**Q.     Insurance Matters.**

85.     <u>Description</u>.  MW assisted with, <u>inter</u> <u>alia</u>, the review and analysis of various general liability, directors and officers and errors and omissions policy related issues; and researched issues regarding the foregoing.

86.     <u>Necessity and Benefit to the Estates</u>.  These services were necessary to ensure that the Debtors were in compliance with their insurance obligations.

87.     <u>Status</u>.  These matters will continue as the need arises.

88.     <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 1.7 hours during the Application Period for a total of $807.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**R.     Tax Matters.**

89.     <u>Description</u>.  MW assisted the Debtors with, <u>inter</u> <u>alia</u>, research and analysis regarding various corporate tax issues, strategy for resolving agent lag premium litigation and corresponding IRS proofs of claim, and tax issues relating to sale of underwriters to Fidelity National Financial, Inc.; provided analysis regarding the Debtors' tax sharing agreement and tax allocation issues; provided analysis and formulate strategy regarding net operating losses; conducted research and analysis regarding escheatment issues; and participated in meetings and telephone conferences with the Debtors and various taxing authorities regarding the foregoing.

90.     <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors in connection with resolving tax related issues.

91.     Status.  These matters will continue as the need arises.

92.     Hours Spent and Compensation Requested.  In connection with the foregoing matters, MW's professionals expended 317.2 hours during the Application Period for a total of $162,801.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

**S.     Claims Administration.**

93.     Description.  MW assisted with, inter alia, the review and analysis of and responses to numerous claimants' communications; reviewed and analyzed potential claims issues; and participated in telephone conferences with counsel regarding the filing of proofs of claim.

94.     Necessity and Benefit to the Estates.  These services were necessary to assist the Debtors in developing and implementing a claims resolution strategy and responding to claimants regarding claims related issues.

95.     Status.  These matters will continue as the need arises.

96.     Hours Spent and Compensation Requested.  In connection with the foregoing matters, MW's professionals expended 21.9 hours during the Application Period for a total of $7,912.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

**T.     Disclosure Statement and Plan.**

97.     Description.  MW assisted the Debtors with, inter alia, reviewed a motion to extend exclusivity; analyzed issues pertaining to the plan process; reviewed mediation protocols to resolve inter-estate and 1031 test case issues; and participated in meetings and telephone conferences with the Debtors and their professionals regarding the foregoing.

98.     <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors with various employee benefit and pension matters.

99.     <u>Status</u>.  These matters will continue as the need arises.

100.     <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 4.2 hours during the Application Period for a total of $2,432.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**U.     Employee Benefits/Pensions**

101.     <u>Description</u>.  MW assisted the Debtors with, <u>inter alia</u>, inquiries from the Department of Labor; the review and analysis of compensation and benefit compliance; researched issues and formulated strategies regarding the management and administration of the Debtors' cash balance plan, including, but not limited to lump sum payment issues and issues regarding possible deficiencies and distress termination; handled issues regarding the Pension Benefit Guaranty Corporation; and participated in meetings and telephone conferences with the Debtors and their professionals regarding the foregoing.

102.     <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors with various employee benefit and pension matters.

103.     <u>Status</u>.  These matters will continue as the need arises.

104.     <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 267.4 hours during the Application Period for a total of $145,356.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**V. Centennial Bank Sale.**

105. <u>Description</u>. MW assisted with, <u>inter alia</u>, developing a strategy for the possible sale of the Debtors' interest in Orange County Bank Corp., including, but not limited to, communications with Sandler O'Neil and Debtors regarding bid procedures and potential bidders; and research and analysis of various regulatory issues relating to a possible asset or stock sale.

106. <u>Necessity and Benefit to the Estates</u>. These services were necessary to allow the Debtors to maximize the value of the Debtors' Orange County Bank Corp. stock for the benefit of the Debtors' estates.

107. <u>Status</u>. These matters will continue as the need arises.

108. <u>Hours Spent and Compensation Requested</u>. In connection with the foregoing matters, MW's professionals expended 192.1 hours during the Application Period for a total of $84,545.50. The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**W. LES.**

109. <u>Description</u>. MW assisted with, <u>inter alia</u>, development of various strategies relating to 1031 exchange issues, including, but not limited to, assisting with promulgating and responding to discovery and pleadings in test cases, assisting with various 1031 litigation issues, and developing strategy for handling non-bankruptcy 1031 tax litigation asserted against affiliated non-Debtor entities.

110. <u>Necessity and Benefit to the Estates</u>. These services were necessary to assist the Debtors in the defense of the test cases, as well as other non-bankruptcy 1031 tax litigation, and to resolve certain 1031 tax litigation.

111.　Status.  These matters will continue as the need arises.

112.　Hours Spent and Compensation Requested.  In connection with the foregoing matters, MW's professionals expended 165.6 hours during the Application Period for a total of $60,718.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

**X.　LandAmerica Financial Group Litigation.**

113.　Description.  In addition to conducting the internal investigation and defending the Section 1031 tax exchange litigation described above, MW assisted with, inter alia, various general litigation matters, including, but not limited to, drafting and filing notices of bankruptcy in various state court litigation, and addressing the adversary proceedings filed by *Ram Quest Software* and *RQ Holdings, Inc.* as well as various actions asserted by the Texas Department of Insurance.

114.　Necessity and Benefit to the Estates.  These services were necessary to assist the Debtors with responding to various bankruptcy and non-bankruptcy litigation matters.

115.　Status.  These matters will continue as the need arises.

116.　Hours Spent and Compensation Requested.  In connection with the foregoing matters, MW's professionals expended 125.7 hours during the Application Period for a total of $46,137.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

**Y.　LandAmerica Assessment Corporation.**

117.　Description.  MW assisted with, inter alia, the review, analysis and preparation of correspondence, documents, pleadings and notices relating to the LAC chapter 11 case; handled the day to day administration of LAC's chapter 11 case; prepared for and participated in all court

hearings, including, but not limited to, the first day hearings; drafted and filed notices of

commencement, notices of bankruptcy, and responses to motions for relief from stay; attend

hearings on motions for relief from the automatic stay; assisted with the sale of substantially all

of LAC's assets to Partner Assessment Corporation; regularly participated in meetings and

telephone conferences with officers and employees of the Debtor and the Debtor's financial and

other advisors regarding the foregoing as well as other operational, organizational and strategic

issues arising in the cases.

118.    <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist LAC

in the administration and prosecution of its chapter 11 case.

119.    <u>Status</u>.  These and other case administration matters will continue until LAC's

chapter 11 case is closed.

120.    <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing

matters, MW's professionals expended 85.3 hours during the Application Period for a total of

$32,878.00.  The complete narrative, time detail of the hours incurred and the value of the matter

by professional is attached hereto as <u>Exhibit E</u>.

**Z.      LandAmerica Title Company.**

121.    <u>Description</u>.  MW assisted with, <u>inter alia</u>, the review, analysis and preparation of

correspondence, documents, pleadings and notices relating to the LandAm Title bankruptcy case;

handled the day to day administration of LandAm Title's chapter 11 case; prepared for and

participated in all court hearings, including, but not limited to, the first day hearings; drafted and

filed notices of commencement, notices of bankruptcy, and responses to motions for relief from

stay; attend hearings on motions for relief from the automatic stay; assisted in imposing a stay in

a California Court of Appeals case involving LandAm Title; regularly participated in meetings

and telephone conferences with officers and employees of the Debtor and the Debtor's financial and other advisors regarding the foregoing as well as other operational, organizational and strategic issues arising in the cases.

122. <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist LandAm Title in the administration and prosecution of its chapter 11 case.

123. <u>Status</u>.  These and other case administration matters will continue until LandAm Title's chapter 11 case is closed.

124. <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 47.7 hours during the Application Period for a total of $18,293.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**AA.    Southland Title Company.**

125. <u>Description</u>.  MW assisted with, <u>inter alia</u>, the review, analysis and preparation of correspondence, documents, pleadings and notices relating to the Southland Title bankruptcy cases; handled the day to day administration of the Southland Entities' chapter 11 cases; prepared for and participated in all court hearings, including, but not limited to, the first day hearings; drafted and filed notices of commencement, notices of bankruptcy, and responses to motions for relief from stay; attend hearings on motions for relief from the automatic stay; regularly participated in meetings and telephone conferences with officers and employees of the Debtors and the Debtors' financial and other advisors regarding the foregoing as well as other operational, organizational and strategic issues arising in the cases.

126. <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Southland Entities' in the administration and prosecution of their chapter 11 cases.

127. <u>Status</u>.  These and other case administration matters will continue until the Southland Entities chapter 11 cases are closed.

128. <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 53.2 hours during the Application Period for a total of $19,738.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

## APPLICABLE LEGAL STANDARD

129. The Bankruptcy Code sets forth the legal standards for awarding compensation to professionals employed by the debtor.  The format for fee applications is set forth in the U.S. Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under section 330 of the Bankruptcy Code (the "Guidelines").

130. Under section 330 of the Bankruptcy Code, the Court may award counsel to the Debtors reasonable compensation for actual, necessary services rendered by such attorneys and paraprofessionals employed by such attorneys based on the nature, extent and value of the services rendered, time spent on such services and the cost of comparable services other than in a bankruptcy case.  Furthermore, the Court may award reimbursement for actual, necessary expenses.

131. The expenses incurred by MW, as set forth herein, are reasonable and necessary charges for items including, but not limited to, photocopying, long distance telephone calls, messenger services, computer research, travel expenses, overnight mail and court fees. Photocopy charges are assessed at ten cents ($.10) per page, which MW believes to be competitive for professional firms in this geographic area.  Some larger copy and mailing projects may have been performed at an outside copy center at a lower per page rate.  In all

cases, MW has passed through the costs of the outsourced copy or mailing projects to the estate without markup.  MW incurred messenger service charges when such delivery was more economical or when prompt delivery was necessary in a given circumstance.

132.    Under the "lodestar" approach, the Court should consider the number of hours of service reasonably devoted to the case multiplied by the attorney's reasonable rates.  Courts frequently consider the specific "lodestar" factors enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).  These lodestar factors were adopted by the Fourth Circuit in Barber v. Kimbrells, Inc., 577 F.2d 216, 226 (4th Cir.), cert. denied, 439 U.S. 934 (1978), and in Anderson v. Morris, 658 F.2d 246, 249 (4th Cir. 1981), where the Fourth Circuit held that the district court should employ the lodestar approach, and then adjust the fee on the basis of the remaining Johnson factors in the case.  The following are the Johnson factors:

(a)    the time and labor required;

(b)    the novelty and difficulty of the questions;

(c)    the skill requisite to perform the legal service properly;

(d)    the preclusion of other employment by the attorney due to acceptance of the case;

(e)    the customary fee;

(f)    whether the fee is fixed or contingent;

(g)    time limitations imposed by the client or the circumstances;

(h)    the amount involved and the results obtained;

(i)    the experience, reputation and ability of the attorneys;

(j)    the "undesirability" of the case;

(k)    the nature and length of the professional relationship with the client; and

(l)     awards in similar cases.

Johnson, 488 F.2d at 717-719; Barber, 577 F.2d at 226, n.28; Anderson, 658 F.2d at 248, n.2.

133.     MW believes that the services rendered to the Debtors and the out-of-pocket expenses incurred therewith were both necessary and reasonable in view of the Debtors' obligations in these cases, and the size and complexity of these cases.

134.     Moreover, MW has worked closely with the Debtors' other professionals to be very efficient and avoid the duplication of services in these chapter 11 cases.

135.     MW is the largest law firm in the Commonwealth of Virginia and among the largest law firms in the country, and has substantial expertise in bankruptcy, business law, commercial litigation and other substantive areas, which has allowed MW to effectively and efficiently address issues arising in a national bankruptcy case.  Further, the rates charged by MW are significantly less than rates charged by other law firms in comparable national chapter 11 cases and MW's rates are consistent with rates charged to other clients in non bankruptcy matters.  MW has efficiently assisted the Debtors by employing a streamlined case management structure that generally consists of a core team with various other attorneys and paraprofessionals assigned to other discrete tasks to avoid the performance of duplicative or unnecessary work. MW believes the fees requested herein satisfy the Johnson factors as set forth above.

## SUMMARY OF EXHIBITS

136.     A proposed order approving the Application is attached hereto as Exhibit A.

137.     Attached hereto as Exhibit B is a list of all attorneys and paraprofessionals who have worked on these cases, by name, year of admission (where applicable), hourly rate, hours expended on these cases, and total fees incurred.

138.    Pursuant to the Interim Compensation Order, MW has received approximately eighty-five percent (85%) of its monthly fees and approximately one hundred percent (100%) of its monthly disbursements for services rendered March 1, 2009 – March 31, 2008; and April 1, 2009 – April 30, 2009.  MW has submitted, but not received payment for, its fee statement for May 1, 2009 – May 31, 2009.  In total, MW has received $1,651,192.16 in fees and $32,322.19 in disbursements.  See Exhibit C attached hereto for a statement of those payments.  Pursuant to the Interim Compensation Order, approximately fifteen percent (15%) of MW's total fees, totaling $291,386.84 (not including May's holdback which should total $161,080.40) have been withheld by the Debtors pending approval of this Application.

139.    A summary of all actual and necessary expense disbursements is attached hereto as Exhibit D.

140.    A chronological itemization of time categorized by task performed is attached hereto as Exhibit E.  MW has made every effort to place all time entries in the proper service category; however, it should be noted that in some circumstances an entry could have been properly placed in more than one of the service categories.  In such circumstances, MW has used its best efforts to place the time entry in the service category that represents the primary purpose of the services rendered.  Time entries do not appear in more than one service category.

### NOTICE

141.    Pursuant to the Interim Compensation Order, MW has served copies of the Application on the Notice Parties (as defined therein).  In addition, MW has served notice of the Application and notice of the hearing on the Application on the parties entitled to receive notice under the Amended Case Management Order [Docket No. 435].  MW submits that no other or further notice need be given.

## WAIVER OF MEMORANDUM OF LAW

142.     Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in this Application, the Debtors request that this Court waive the requirement that all motions be accompanied by a written memorandum of law.

## NO PRIOR REQUEST

143.     No prior request for the relief sought herein has been made to this Court in these bankruptcy cases.  This is MW's second application for compensation and reimbursement of expenses.

**WHEREFORE**, MW respectfully requests that this Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, (i) approving the compensation and reimbursement of expenses requested herein on an interim basis, (ii) authorizing and directing the Debtors to pay such amounts, and (iii) granting MW such other and further relief as is just and proper.

Dated: Richmond, Virginia
　　　 July 15, 2009

<div style="margin-left:40%">

/s/ John H. Maddock III
Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 41044)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

Attorneys for the Debtors and
Debtors in Possession

</div>

Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 41044)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

Attorneys for the Debtors and
Debtors in Possession


IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
-------------------------------------------------------x
In re                                       :    Chapter 11
                                            :
LandAmerica Financial Group, Inc., et al.   :    Case No. 08-35994 (KRH)
                                            :
                      Debtors.              :    (Jointly Administered)
-------------------------------------------------------x
```

**ORDER GRANTING SECOND INTERIM APPLICATION FOR COMPENSATION
AND REIMBURSEMENT OF EXPENSES OF MCGUIREWOODS LLP,
CO-COUNSEL TO THE DEBTORS, FOR SERVICES
RENDERED FROM MARCH 1, 2009 THROUGH MAY 31, 2009**

Upon consideration of the Second Interim Application for Compensation and

Reimbursement of Expenses of McGuireWoods LLP, Co-counsel to the Debtors, for Services

Rendered from March 1, 2009 through May 31, 2009 (the "Application"); and the Court having

reviewed the Application; and the Court having determined that the relief requested in the

Application is necessary and appropriate; and a hearing having been held on the matter on

August 25, 2009; and it appearing that proper and adequate notice of the Application has been

given and that no other or further notice is necessary; and upon the record herein; and after due

deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1.      The Application meets the requirements of the Bankruptcy Code and the compensation and reimbursement of expenses sought in the Application is both fair and reasonable.

2.      The Application is hereby approved in its entirety, and compensation for the Application Period in the total amount of $3,016,393.75 is hereby approved, and the Debtors are hereby authorized and directed to pay McGuireWoods LLP the unpaid portion of such compensation.

3.      The reimbursement of expenses for the Application Period in the total amount of $33,197.81 is hereby approved, and the Debtors are hereby authorized and directed to pay McGuireWoods LLP any unpaid portion of such reimbursements.

4.      This Court will retain jurisdiction with respect to any dispute concerning the relief granted hereunder.

Dated: Richmond, Virginia
       August _____, 2009

_____
KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

_____
Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 41044)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

Attorneys for the Debtors and
Debtors in Possession

## CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)

Pursuant to Local Rule 9022-1 (C), I hereby certify that the foregoing order has been

served upon all necessary parties.


_____
John H. Maddock III

\9620975.2

In re LandAmerica Financial Group, Inc., et al.
Case No. 08-35994 (KRH)(Jointly Administered)

Name of Applicant: McGuireWoods LLP
Role: Co-Counsel to the Debtors

Second Interim Application:
  Fees Requested:  $3,016,393.75
  Expenses Requested:  $33,197.81

**Summary of Timekeepers**

| | Year Admitted | 2009 Rate | 2009 Hours | Amount |
|---|---|---|---|---|
| **Attorneys** | | | | |
| Anderson, III, James M. | 1998 | $ 475.00 | 0.7 | $332.50 |
| Beldner, Sabrina A. | 2001 | $ 350.00 | 6.1 | $2,135.00 |
| Bell, Craig D. | 1983 | $ 530.00 | 81.5 | $43,195.00 |
| Blair, Richard F. | 2008 | $ 325.00 | 550.2 | $178,815.00 |
| Blanks, Daniel F. | 2002 | $ 375.00 | 0.8 | $300.00 |
| Bobick, C.P. | 2007 | $ 300.00 | 475.1 | $142,530.00 |
| Boehm, Sarah B. | 2000 | $ 450.00 | 0.5 | $225.00 |
| Byrum, Jeremy S. | 2005 | $ 300.00 | 43.7 | $13,110.00 |
| Calleja, Kristen M. | 1997 | $ 445.00 | 99.8 | $44,411.00 |
| Carter III, Joseph C. | 1976 | $ 640.00 | 8.9 | $5,696.00 |
| Chambers, Robert Gordon | 1975 | $ 550.00 | 0.5 | $275.00 |
| Checkovich, Tennille | 2002 | $ 440.00 | 119.7 | $52,668.00 |
| Cipolla, Robert M. | 1998 | $ 525.00 | 20.3 | $10,657.50 |
| Cohen, Zachary D. | 2007 | $ 250.00 | 18.3 | $4,575.00 |
| Crouch, Ronald W. | 1981 | $ 525.00 | 16.6 | $8,715.00 |
| Cullen, Richard | 1977 | $ 715.00 | 44.9 | $32,103.50 |
| Dabbs, David F. | 1991 | $ 475.00 | 2 | $950.00 |
| DeLuca, Katherine K. | 2006 | $ 315.00 | 44.5 | $14,017.50 |
| Diller, Elizabeth A. | 2008 | $ 275.00 | 15.3 | $4,207.50 |
| Earle PC, James C. | 1986 | $ 445.00 | 0.7 | $311.50 |
| Elbert, Regina Johnson | 2005 | $ 345.00 | 71.7 | $24,736.50 |
| Fender, Matthew D. | 2008 | $ 315.00 | 122 | $38,430.00 |
| Fox, Shawn R. | 2002 | $ 475.00 | 28.5 | $13,537.50 |
| Freye, Gloria L. | 1988 | $ 480.00 | 0.3 | $144.00 |
| Hayden, Patrick L. | 1989 | $ 715.00 | 7.4 | $5,291.00 |
| Hayes, Dion W. | 1992 | $ 600.00 | 66.7 | $40,020.00 |
| Heaphy, Timothy J. | 1992 | $ 560.00 | 65.4 | $36,624.00 |
| Holladay-Tobias, Sara F | 2006 | $ 315.00 | 0.9 | $283.50 |
| Kane, Matthew C. | 1994 | $ 450.00 | 0.5 | $225.00 |
| Kittrell, Steven D. | 1978 | $ 650.00 | 2.2 | $1,430.00 |
| Lewis, Nicholas B. | 2006 | $ 335.00 | 1.1 | $368.50 |
| Lovelady, Adam Scott | 2008 | $ 260.00 | 123.2 | $31,125.50 |
| Lukitsch, Bethany Gayle | 1998 | $ 425.00 | 75.2 | $31,960.00 |
| Maddock III, John H. | 1996 | $ 475.00 | 381.6 | $181,260.00 |
| McCray, Anne Bentley | 1994 | $ 500.00 | 409.7 | $204,850.00 |
| McElligott Jr., James P. | 1974 | $ 635.00 | 164.6 | $104,521.00 |
| McElroy, Robert G. | 1978 | $ 590.00 | 105 | $61,950.00 |
| McIntyre Jr., Charles W. | 1987 | $ 615.00 | 0.4 | $246.00 |
| Meriwether, Nicholas E. | 2005 | $ 375.00 | 0.8 | $300.00 |
| Misken, Kenneth M. | 2000 | $ 400.00 | 6.8 | $2,720.00 |
| Moyer, Tracy Evans | 1998 | $ 435.00 | 100.3 | $39,346.50 |

| | | | | |
|---|---|---|---|---|
| Neal, Jonathan G. | 1998 | $ 335.00 | 37.5 | $12,562.50 |
| Oakey, David N. | 1981 | $ 560.00 | 21.6 | $12,096.00 |
| Oberoi, Rohan | 2006 | $ 365.00 | 59.8 | $21,827.00 |
| Park, Sandra B. | 2007 | $ 300.00 | 351 | $105,300.00 |
| Pfeifer, James W. | 2007 | $ 300.00 | 4.2 | $1,260.00 |
| Redd, H. Carter | 1992 | $ 455.00 | 0.2 | $91.00 |
| Robertson, David W. | 1981 | $ 565.00 | 0.2 | $113.00 |
| Rogerson, Christine H. | 1998 | $ 440.00 | 127.2 | $35,893.00 |
| Rooksby, Jacob H. | 2007 | $ 315.00 | 16.8 | $5,292.00 |
| Scott, Lori Michelle | 2003 | $ 295.00 | 32.2 | $9,499.00 |
| Sheerin, Joseph S. | 2001 | $ 450.00 | 13.3 | $5,985.00 |
| Shils, Jonathan R. | 1974 | $ 525.00 | 1.4 | $735.00 |
| Slaughter, Alexander H. | 1964 | $ 595.00 | 1.1 | $654.50 |
| Spahn, Thomas E. | 1977 | $ 635.00 | 1.4 | $889.00 |
| Stark, Bryan A. | 2007 | $ 295.00 | 47.4 | $13,983.00 |
| Steele, Martha L. | 1994 | $ 290.00 | 134.4 | $38,976.00 |
| Stevenson, Heather N. | 2000 | $ 370.00 | 95.8 | $29,457.50 |
| Surber, Sarah J. | 2007 | $ 275.00 | 164.9 | $45,347.50 |
| Taylor, Thomas E. | 1972 | $ 525.00 | 69 | $36,225.00 |
| Waylett, Darin K. | 2002 | $ 350.00 | 46.1 | $16,135.00 |
| **ATTORNEY TOTALS:** | | | | **$1,770,920.00** |

**Paraprofessionals and Contract Attorneys**

| | | | |
|---|---|---|---|
| Allen, Paul J. | $ 150.00 | 496 | $74,400.00 |
| Akers, Ottie C | $ 75.00 | 587.9 | $44,092.50 |
| Bailey, Wanda C. | $ 175.00 | 11 | $1,925.00 |
| Barrett Jr., Richard E. | $ 170.00 | 13.6 | $2,312.00 |
| Bendall, Deborah L. | $ 90.00 | 0.4 | $36.00 |
| Bolton, Kimberly | $ 75.00 | 417.2 | $31,290.00 |
| Bragunier, Victoria L. | $ 75.00 | 9.3 | $697.50 |
| Burgin, Gina M. | $ 75.00 | 459.4 | $34,455.00 |
| Cain, Karen B. | $ 195.00 | 111.6 | $21,762.00 |
| Chapman, Barbara J. | $ 75.00 | 43.6 | $3,270.00 |
| Christie, Kathryn M. | $ 75.00 | 11.3 | $847.50 |
| Collins, Thomas Matthew | $ 195.00 | 1.7 | $331.50 |
| Condyles, Martha S. | $ 75.00 | 386.2 | $28,965.00 |
| Conway, Emily S. | $ 75.00 | 2.9 | $217.50 |
| Dagrosa, Gloria K. | $ 225.00 | 591.8 | $133,155.00 |
| Dent, Brian C. | $ 75.00 | 675.6 | $50,670.00 |
| Duke, Robert | $ 75.00 | 536.2 | $40,215.00 |
| Dylak, Margaret E. | $ 165.00 | 45.8 | $7,557.00 |
| Fallen, Cynthia D. | $ 90.00 | 1.9 | $171.00 |
| Githaiga, Joan | $ 75.00 | 451.7 | $33,877.50 |
| Hannan, Dorothy J. | $ 245.00 | 0.3 | $73.50 |
| Hodgson, Richard | $ 75.00 | 185.1 | $13,882.50 |
| Huff, Emmalissa | $ 75.00 | 13.1 | $982.50 |
| Huster, Marcy | $ 75.00 | 412.3 | $30,922.50 |
| Johnson, Hazel L. | $ 200.00 | 1.7 | $340.00 |
| Jordan, Linda T. | $ 225.00 | 4.8 | $1,080.00 |
| Kane, Nancy Warren | $ 75.00 | 365.2 | $27,390.00 |
| Knode, Todd A | $ 75.00 | 558.6 | $41,895.00 |
| Leek, Isabel D. | $ 200.00 | 5.5 | $1,100.00 |
| Liskey, Melissa S. | $ 185.00 | 1.8 | $333.00 |
| Luong, Cuong | $ 75.00 | 4.1 | $307.50 |
| Magee, Kristen M. | $ 75.00 | 421.2 | $31,590.00 |
| Molaison, Jacques Louis | $ 75.00 | 413.4 | $31,005.00 |
| Morrison de Lopez, Diane E. | $ 195.00 | 86.6 | $16,887.00 |
| Morrison, Kathryn C. | $ 75.00 | 713.1 | $53,482.50 |
| Nelms, Lee L. | $ 75.00 | 466.5 | $34,987.50 |

| | | | | |
|---|---|---|---|---|
| Nicholson, Corey | $ | 75.00 | 37.9 | $2,842.50 |
| Oates, Charles | $ | 75.00 | 559.45 | $41,958.75 |
| Sakats, Thomas W. | $ | 225.00 | 84 | $18,900.00 |
| Scott, Natasha C. | $ | 160.00 | 197.1 | $31,536.00 |
| Shreve, Ashley | $ | 75.00 | 579 | $43,425.00 |
| Smith, Crystal | $ | 75.00 | 680.5 | $51,037.50 |
| Smith, Frances C. | $ | 215.00 | 369.4 | $79,421.00 |
| Smith, Giles | $ | 75.00 | 660.4 | $49,530.00 |
| Stoewe, Ralph A. | $ | 75.00 | 18.9 | $1,417.50 |
| Rossettini, Matthew T. | $ | 40.00 | 8 | $320.00 |
| Turner, Audrey | $ | 75.00 | 603.3 | $45,247.50 |
| Walker, Lexi | $ | 75.00 | 514 | $38,550.00 |
| Wiggam, Boyd | $ | 75.00 | 597.1 | $44,782.50 |
| **PARAPROFESSIONAL TOTALS:** | | | | **$1,245,473.75** |
| | | | | |
| **TOTALS:** | | | | **$3,016,393.75** |

**EXHIBIT C**

Summary of Monthly Fee Statements

| Period Covered | Total Fees Incurred* | Total Fees Requested Pursuant to Interim Compensation Order | Fees Paid | Holdback | Total Expenses Incurred** | Total Expenses Requested Pursuant to Interim Compensation Order | Expenses Paid | Holdback |
|---|---|---|---|---|---|---|---|---|
| March 1, 2009 to March 31, 2009 | $878,604.50 | $746,813.83 | $746,813.83 | $131,790.67 | $11,085.23 | $11,085.23 | $11,085.23 | $0.00 |
| April 1, 2009 to April 30, 2009 | $1,063,974.50 | $904,378.33 | $904,378.33 | $159,596.17 | $21,236.96 | $21,236.96 | $21,236.96 | $0.00 |
| May 1, 2009 to May 31, 2009 | $1,073,868.75 | $912,788.44 | $0.00 | $1,073,868.75 | $16,238.62 | $16,238.62 | $0.00 | $16,238.62 |
| **TOTALS:** | **$3,016,447.75** | **$2,563,980.59** | **$1,651,192.16** | **$1,365,255.59** | **$48,560.81** | **$48,560.81** | **$32,322.19** | **$16,238.62** |

\* Includes a $54 overcharge in March
\*\* Includeds $15,363 in mistakenly charged overtime that MW is not requesting

## EXHIBIT D

## Summary Of Expenses

| Disbursement | Amount |
|---|---|
| Copy Charges | $  5,707.30 |
| Postal Service Charges | $       15.29 |
| Overtime Charges * | $          - |
| Long Distance Telephone Charges | $     479.20 |
| GENESYS CONFERENCING | 1501.07 |
| Computer Research | $  8,035.06 |
| Overnight Delivery | $     948.83 |
| Working Meals | $     963.77 |
| Travel and Transportation | $  6,082.24 |
| Court Costs | $  5,195.00 |
| Misc. (Smart Source Rentals  - Computer Equipment) | $     393.75 |
| Messenger Services (delivery) | $       42.77 |
| Court Reporter and Transcript Fees | $  2,171.95 |
| Now Legal Services | $  1,534.34 |
| Image Capture | $       93.24 |
| Reed Service | $       34.00 |
| **TOTAL:** | **$ 33,197.81** |

* McGuireWoods mistakenly billed the Debtors $15,363.00 in overtime charges and has deducted this amount from the total request for expense reimbursement.