IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

FILED
2009 AUG 18 PM 2: 11
RICHMOND DIVISION

Judge Kevin Huennekens
United States Courthouse
701 East Broad Street Suite 4304
Richmond, VA 23219-1888

| | | |
|---|---|---|
| In re: | | Chapter 11 |
| LANDAMERICA FINANCIAL GROUP, INC., et al. | | Case No. 08-35994 (KH) |
| Debtors | | Jointly Administered |

## OBJECTION TO PROFESSIONAL FEES

I, the undersigned, hereby file my objections to the professional fees outlined below in conjunction with the "Second Interim Application for Compensation" in this matter, the hearing for which is scheduled 8/25/2009 at 11:00 AM at Judge Huennekens Courtroom, 701 E. Broad St., Rm. 5000.

I am a victim of LandAmerica 1031 Exchange Services, Inc.'s (LES) failed efforts to remain afloat after the Auction Rate Securities market failed in February 2008. As such, I have been unfairly deemed an "unsecured creditor" in this matter, but I am really an exchange depositor or an 'involuntary creditor.' At a time when LandAmerica's cash balances have dropped, I feel that extreme caution is due in examining all submitted fees to ensure that the work was necessary and done productively, was not duplicative, that it benefitted the Estate to the extent charged, that it was managed efficiently, and that it was done in an effort to keep costs down.

## TOTAL OF FEES QUESTIONED

Recent applications for compensation for professional services from March 1, 2009 through May, 31 2009 were in the amount of **$3,826,291.00**, comprising a high percentage of the remaining cash of LandAmerica 1031 Exchange Services, Inc., the debtor. The present requested fees & costs are:

| | |
|---|---|
| Akin Gump | $1,188,704 fees and $ 90,837 costs |
| Tavenner & Beran | $     76,594 fees and $  2,557 costs |
| Protiviti | $   499,924 fees and $36,523 costs |
| Willkie Farr | $1,252,440 fees and $77,276 costs |
| McGuire Woods | $   592,729 fees and $  8,727 costs |

1

Total requested fees through May 31, 2009 $ 7,971,939. At this rate, by the time this case is finished, the fees could exceed 50% of the cash that was in the commingled bank account when the bankruptcy was filed. The Exchangers have not even been told of the results obtained by these large fees. Where is the value? Why are we kept in the dark? Highly respected empirical research in academia into the level of professional bankruptcy fees suggests the fees must be aggressively managed and reviewed to protect the remaining value in the estate. Associated with this research are models that predict fee levels in large corporate bankruptcies. By the standards of the well known LoPucki-Doherty model, the fees in this particular bankruptcy case appear extreme.

Recent bankruptcies of General Motors, Tronox and Stanford clearly show Judges and Trustees are empowered to fight fee inflation and padding, and to protect victims and creditors, who are in no position to truly understand what the attorneys professionals are actually doing, from bankruptcy predation.

These matters have come up in those recent cases, with favorable fee-reducing results:
* fee application not supported by appropriate documentation
* impermissibly vague supporting documentation
* excessive use of high billing professionals

" ... courts have endorsed percentage cuts as a practical means of trimming fat from a fee application." *Byers*, 598 F.Supp. 2d at 648, *quoting N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2nd Cir. 1983) (internal citations omitted).

<u>In light of the above, I believe that at least a 33% reduction from the requested fees is appropriate.</u>

## CLEAR DANGERS IN APPROVING FEES AS SUBMITTED

Our "Creditors Committee" and "its Attorney" have been completely unforthcoming regarding the unbelievable cash drain posed by these outrageous professional fees. Moreover, I have neither heard nor seen anything produced from them indicating that they themselves are producing value to victims, exchangers and unsecured creditors. Certainly at the astronomical hourly rates submitted there should be some measurable results, or our interests should have been protected in some way, rather than the travesty of justice that has been perpetrated upon us, the victims of this crime. What recovery or fund of money have these professionals produced for the estate to justify these enormous fees? Their sole purpose, as far as I can tell, has been to strip us of what little remains of our stolen money, consistently working against the better interests of the exchangers, even over our objections to the tactics used by them. Every victim, attorney, and every other professional involved in this case KNOWS that LandAmerica 1031 was involved in a Ponzi Scheme, and this case should never have been allowed in to the bankruptcy format at all. The executives of this company should be in front of a criminal court, and certainly should never have been left as Debtors in Possession. From this position, allowed by the court and supported by our own misguided and ineffective Council, they have effectively raped us twice.

The recently "unsealed" letters and admissions by various LandAmerica executives in 2008 which, among other things, indicate that company management stated that the customers of its 1031 exchange subsidiary were ESCROWED TRUST CUSTOMERS, for which the company acted as fiduciary. Yet, we now know this position is completely contrary to the position the company and my Creditors Committee later decided to pursue in this Ch. 11 proceeding. Statements in other letters indicate the company was knowingly engaged in deceiving the public in general about the solvency of the company since 2008, and although it is not stated outright, there are perhaps no

2

ethical or legal ways that could have gone on for ten months. They continued to advertise their "solid" financial position, and use obviously defunct endorsements as to their sound financial health. Some of the authors of these letters were involved in reviewing and approving these very fees for the court. <u>Clearly, these people should not be doing that job, and for that reason alone, all of these fees ought to immediately be independently re-evaluated by this Court, the U.S. Trustee, or an Independent Appointed fee Examiner.</u>

An unfaithful fiduciary should forfeit all demands for compensation. In view of the Debtor's continued role in this Bankruptcy, and its own admissions by the corporate top executives that my deposited funds were held in 'trust' and that LandAmerica was my 'fiduciary' and that essentially LandAmerica was running a Ponzi Scheme, I ask for a Fee Examiner to be appointed. I also ask that the Court closely scrutinize these demands for fees coming out of the very money we deposited in trust with LandAmerica as an admitted fiduciary. We must trust that the Court will do the right thing in this case, for once, and do something at this point to protect the victims of this fraud in what little manner is left.

We ask the Court to take upon itself by Judicial Notice and conduct an inquiry as to why all of these things have been kept secret from us, and if Bankruptcy Fraud has been committed by covering up this planned fraud and Ponzi Scheme.

## Personal Statement to Judge Huennekens

It amazes me that the Court, while holding all the victims to the minutest letter of these contracts, has allowed NO CASE to be presented of the very apparent issue that LandAmerica 1031 had no intention of EVER trying in any way to fulfilling any of these contracts, such as mine, which were signed after LandAmerica had already called in Wilkie Farr to begin bankruptcy protection proceedings. There can be no other reason that LandAmerica 1031 would continue to take in funds when they knew they were bankrupt, and knew they had been insolvent for some considerable time, other than to steal those funds and defraud their victims. These same executives did not care that their clients would never be able to complete an exchange, would be liable for all taxes, and would loose all their money in this scheme. LandAmerica never claimed these funds as their property and had always, up until the bankruptcy, declared them as trust funds, even to the SEC, and never paid taxes on them. Before this bankruptcy they certainly would not have publicly made that statement, or advertised such a statement, if they wanted to continue in business as a 1031 facilitator! How can they now be allowed to claim them as their money, while not being liable for the tax consequence? If they did believe they were their funds then if nothing else they were lying to the SEC, as well as their prospective exchange customers. Their employees lied as well, since they never made such a claim, and in fact assured clients that all funds were in Trust. How can they be allowed by the Court to behave in such an obviously fraudulent manner and still be allowed to hide in bankruptcy proceedings?

This was nothing but a last minute money grab, with the clear intent to harm and defraud the later exchangers caught in this scheme. It is clear this company was out of funds several months before this bankruptcy and continued to take in funds in an attempt to close earlier exchanges, all the while knowing that eventually the game would stop, leaving some with no way to finish their exchange. If that is not a Ponzi scheme, then please explain to me what is…the fact that these executives were hoping that FNF would bail them out is no excuse. They were gambling with OUR money. They were only trying to save themselves, and failed, but we are paying the price for their greed and stupidity.

In my case they took in my funds 5 business days before their notice to declare bankruptcy was posted. You know, and I know that fraud was committed, and LandAmerica is the perpetrator of a massive Ponzi scheme, and was already under investigation by several different branches of the government. In all the other recent cases of Ponzi fraud involving 1031 exchanges the perpetrators are in jail, or being prosecuted...how can it be that these people committed the same crimes, yet are protected by your Court?

Wilkie Farr had to have been aware that LandAmerica was still taking in funds from customers, and that knowledge makes them complicit in defrauding those customers. I strongly object to the fees they are now garnering at our expense. If they had not been a part of this scheme, they would have immediately stopped the intake of funds from innocent customers.

Our own council has failed us, the exchangers, and hidden important information from us and the Court, and it is my personal assertion that they did this to make a fortune off of our misfortune by working this case in a manner to bilk the available funds for as long as possible, and that they have acted against out best interests from the very first. I have spoken with several different lawyers, and all of them agree that this case was handled in a stupid, ill conceived manner that did not protect the interests of the exchangers, and was meant to milk it for all the money possible. There was not one among them who was not shocked at the ruling given by you Judge Huennekens. I have also spoken with several representative organizations of the 1031 industry who were deeply dismayed by this ruling, stating that it undermines any foundation of trust in their industry, and endangers the future of this type of transaction in general, even though they assert that they do behave in an ethical, dependable manner toward their customers.

All of us, the victims in this case, are in shock that no mention of the crimes of these people has been allowed in this court. This whole case is a sham and a travesty of justice. **Since in the test cases phase 1 the Judge was supposedly limited to the four corners of the exchange agreement, perhaps you were not fully apprised of the truth by the lawyers in the case.** I personally cannot help but believe that you, Judge Huennekens, and Mr. Van Arsdale have been fully aware of all these facts all along. What a shame that nothing has been done to protect the victims in this case. It has certainly been a shame for me, and has devastated my life and my financial future. I am a victim in this case Judge Huennekens, and we have been treated like the ones who committed a crime...the terrible crime of trusting a one hundred year old, established company with many years of similar transactions, a well advertised solid financial backing, and good reputation, and the complete assurance by company employees that our funds were safe, solid and held in trust...shame on us! The shame and the blame needs to be placed where it belongs. It needs to fall on the heads of these schemers and liars who stole our money and are getting away with it in your courtroom.

## CONCLUSION

Therefore, I respectfully ask that the requested fees be denied or held up until they can be fully and independently analyzed. I request that the US Trustee implement a formal program to re-examine the reasonableness of these fees – perhaps with an impartial outside party - and afterwards communicate to us victims, exchangers and unsecured creditors his opinion on the matter and what he feels these services are actually worth, and in particular, justifying why anything less than at least a 33% reduction ought to be authorized.

August 15, 2009

Name: Vivian Hays
Exchanger/Depositor/Creditor

Address
11500 Avondale Loop
Hayden, ID 83835

*Vivian Hays* (signature)