# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

FILED
2009 AUG 18 PM 2: 11
RICHMOND DIVISION

In re:                                              | Chapter 11

LANDAMERICA FINANCIAL GROUP, INC., et al.           | Case No. 08-35994 (KH)

         Debtors     | Jointly Administered

## OBJECTION TO PROFESSIONAL FEES

I, the undersigned, hereby file my objections to the professional fees outlined below in conjunction with the "Second Interim Application for Compensation" in this matter, the hearing for which is scheduled 8/25/2009 at 11:00 AM at Judge Huennekens Courtroom, 701 E. Broad St., Rm. 5000.

I am a victim of LandAmerica 1031 Exchange Services, Inc.'s (LES) failed efforts to remain afloat after the Auction Rate Securities market failed in February 2008. As such, I have been deemed an "unsecured creditor" in this matter, but I am really an exchange depositor or an 'involuntary creditor.' At a time when LandAmerica's cash balances have dropped, I feel that extreme caution is due in examining all submitted fees to ensure that the work was necessary and done productively, was not duplicative, that it benefitted the Estate to the extent charged, that it was managed efficiently, and that it was done in an effort to keep costs down.

## TOTAL OF FEES QUESTIONED

Recent applications for compensation for professional services from March 1, 2009 through May, 31 2009 were in the amount of $3,826,291.00, comprising a high percentage of the remaining cash of LandAmerica 1031 Exchange Services, Inc., the debtor. The present requested fees & costs are:

Akin Gump $1,188,704 fees and $ 90,837 costs
Tavenner & Beran    $   76,594 fees and $ 2,557 costs
Protiviti $  499,924 fees and $36,523 costs
Willkie Farr $1,252,440 fees and $77,276 costs
McGuire Woods $  592,729 fees and $ 8,727 costs

Total requested fees through May 31, 2009 $ 7,971,939. At this rate, by the time this case is finished, the fees could exceed 50% of the cash that was in the commingled bank account when the bankruptcy was filed. The Exchangers have not even been told of the results obtained by these large fees. Where is the value? Why are we kept in the dark? Highly respected empirical research in academia into the level of professional bankruptcy fees suggests the fees must be aggressively managed and reviewed to protect the remaining value in the estate. Associated with this research are models that predict fee levels in large corporate bankruptcies. By the standards of the well known LoPucki-Doherty model, the fees in this particular bankruptcy case appear extreme.

1

Recent bankruptcies of General Motors, Tronox and Stanford clearly show Judges and Trustees are empowered to fight fee inflation and padding, and to protect victims and creditors, who are in no position to truly understand what the attorneys professionals are actually doing, from bankruptcy predation.

These matters have come up in those recent cases, with favorable fee-reducing results:
* fee application not supported by appropriate documentation
* impermissibly vague supporting documentation
* excessive use of high billing professionals

" ... courts have endorsed percentage cuts as a practical means of trimming fat from a fee application." *Byers*, 598 F.Supp. 2d at 648, *quoting N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2nd Cir. 1983) (internal citations omitted).

<u>In light of the above, I believe that at least a *50%* reduction from the requested fees is appropriate.</u>

## CLEAR DANGERS IN APPROVING FEES AS SUBMITTED

I have heard nothing from "our Creditors Committee" or "its Attorney" regarding the extreme cash drain posed by these professional fees. Moreover, I have neither heard nor seen anything produced from them, indicating that they themselves are producing value to victims, exchangers and unsecured creditors. Certainly at the astronomical hourly rates submitted there should some measurable results. What recovery or fund of money have these professionals produced for the estate to justify these enormous fees?

Articles appearing the last two weeks -- probably well known by now - in the Richmond, Virginia press contain letters and admissions by various LandAmerica executives in 2008 which, among other things, indicate that company management stated that the customers of its 1031 exchange subsidiary were escrowed trust customers, for which the company acted as fiduciary. Yet, we now know this position is completely contrary to the position the company and my Creditors Committee later decided to pursue in this Ch. 11 proceeding. Statements in other letters indicate the company was "living on vapors" for 2008, and although it is not stated outright, there are perhaps no ethical or legal ways that could have gone on for ten months. Some of the authors of these letters were involved in reviewing and approving these very fees for the court. <u>Clearly, these people should not be doing that job, and for that reason alone, all of these fees ought to immediately be independently re-evaluated by this Court, the U.S. Trustee, or an Independent Appointed fee Examiner.</u> An unfaithful fiduciary should forfeit all demands for compensation. In view of the Debtor's continued role in this Bankruptcy, and its own admissions by the corporate top executives that my deposited funds were held in 'trust' and that LandAmerica was my 'fiduciary' and that essentially LandAmerica was running a Ponzi Scheme, I ask for a Fee Examiner to be appointed. I also ask that the Court closely scrutinize these demands for fees coming out of the very money we deposited in trust with LandAmerica as an admitted fiduciary. We are trusting that the Court will do the right thing and do something to protect the victims of this fraud. We ask the Court to take upon itself by Judicial Notice and conduct an inquiry as to why all of these things have been kept secret from us, and if Bankruptcy Fraud has been committed by covering up the fraud and Ponzi Scheme.

## CONCLUSION

Therefore, I respectfully ask that the requested fees be denied or held up until they can be fully and independently analyzed. I request that the US Trustee implement a formal program to re-examine

the reasonableness of these fees -- perhaps with an impartial outside party - and afterwards communicate to us victims, exchangers and unsecured creditors his opinion on the matter and what he feels these services are actually worth, and in particular, justifying why anything less than at least a 50% reduction ought to be authorized.

        John R Corrado  
        5782 Lance St  
        San Diego, CA 92120  
        Exchanger