IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
-------------------------------------------------x
In re                                            :   Chapter 11
                                                 :
LandAmerica Financial Group, Inc., et al.,       :   Case No. 08-35994 (KRH)
                                                 :
                    Debtors.                     :   (Jointly Administered)
-------------------------------------------------x
```

**OMNIBUS ORDER: (A) APPROVING DISCLOSURE STATEMENT;
(B) FIXING VOTING RECORD DATE; (C) APPROVING SOLICITATION
MATERIALS AND PROCEDURES FOR DISTRIBUTION THEREOF;
(D) APPROVING FORMS OF BALLOTS AND ESTABLISHING
PROCEDURES FOR VOTING ON DEBTORS' PLAN; (E) SCHEDULING
HEARING AND ESTABLISHING NOTICE AND OBJECTION
PROCEDURES IN RESPECT OF CONFIRMATION OF DEBTORS' PLAN;
AND (F) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "**Motion**") of the debtors and debtors in

possession in the above-captioned cases (each a "**Debtor**" and, collectively, the "**Debtors**") for

entry of an order, pursuant to sections 105, 502, 1125, 1126, and 1128 of title 11 of the United

States Code (the "**Bankruptcy Code**") and Rules 2002, 3001, 3003, 3017, 3018 and 3020 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"): (a) approving the Debtors'

Disclosure Statement With Respect to the Joint Chapter 11 Plan of LandAmerica Financial Group,

Inc. and Its Affiliated Debtors (as the same may be amended, modified and/or supplemented after

the date thereof, the "**Proposed Disclosure Statement**"); (b) fixing a voting record date for

purposes of determining which holders of Claims against the Debtors are entitled to vote on the

Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and Its Affiliated Debtors (as the

same may be amended, modified and/or supplemented after the date thereof, the "**Plan**");

(c) approving solicitation materials and procedures for distribution of the Disclosure Statement[1]

and the Plan; (d) approving forms of Ballots and establishing procedures for voting on the Plan; (e)

scheduling a hearing and establishing notice and objection procedures in respect of confirmation of

the Plan; and (f) granting related relief; and the Court having jurisdiction to consider the Motion

and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and

venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Debtors

having filed with the Court the Proposed Disclosure Statement and the Plan; and the Court having

reviewed the Proposed Disclosure Statement, the Motion, and the responses thereto, if any; and the

Court having found and determined that the legal and factual bases set forth in the Motion and at

the Disclosure Statement Hearing establish just cause for the relief granted herein; and sufficient

notice of the Motion having been given; and no other or further notice being necessary or required;

and it appearing to the Court, based upon the full record of these cases that the Motion should be

granted; and after due deliberation, and sufficient cause appearing therefor,

## IT IS HEREBY FOUND THAT:

1.      Notice of the Motion and the Disclosure Statement Hearing was served as

proposed in the Motion, and such notice constitutes good and sufficient notice to all interested

parties, and no other or further notice need be provided.

2.      The Proposed Disclosure Statement contains "adequate information" within

the meaning of section 1125 of the Bankruptcy Code.

3.      The forms of the Ballots annexed hereto as Exhibits 1, 2, 3 and 4 are

sufficiently consistent with Official Form No. 14 and adequately address the particular needs of

---

[1]      Capitalized terms used but not otherwise defined herein shall have the meanings that are ascribed to such terms in the Motion.

these chapter 11 cases and are appropriate for the Classes of Claims that are entitled to vote to accept or reject the Plan.

4.      The forms of the Ballots require the furnishing of sufficient information to assure that duplicate Ballots are not submitted and tabulated.

5.      Ballots need not be provided to the holders of unimpaired Claims in Classes LES 1, LES 2, LFG 1, LFG 2, SD 1 and SD 2 because the Plan provides that such Classes are unimpaired and, therefore, conclusively presumed to accept the Plan.

6.      Ballots need not be provided to the holders of Interests in Class LFG 6, because such holders are deemed to reject the Plan.

7.      Ballots need not be provided to holders of Claims or Interests which are Debtors or subsidiaries or controlled affiliates of Debtors because such holders are deemed to accept the Plan.

8.      The period, set forth below, during which the Debtors may solicit acceptances to the Plan is a reasonable and adequate period of time under the circumstances for creditors to make an informed decision to accept or reject the Plan.

9.      The procedures for the solicitation and tabulation of votes to accept or reject the Plan (as more fully set forth in the Motion and below) provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code.

10.     The notice substantially in the form annexed hereto as Exhibit 5 (the "**Confirmation Hearing Notice**") and the procedures set forth below for providing such notice to all creditors and equity security holders of the time, date, and place of the hearing to consider confirmation of the Plan (the "**Confirmation Hearing**") and the contents of the Solicitation

Materials (as defined below) comply with Bankruptcy Rules 2002 and 3017 and constitute

sufficient notice to all interested parties.  Therefore, it is hereby

### ORDERED, ADJUDGED AND DECREED that:

1.     The Motion is granted to the extent set forth herein.  All objections, responses and

reservations of rights, to the extent not resolved by the provisions of this Order, are overruled on

the merits.

2.     The Proposed Disclosure Statement is APPROVED (as so approved, the

"**Disclosure Statement**").

3.     October 13, 2009, is established as the record date (the "**Record Date**") for

purposes of this Order and determining which creditors are entitled to vote on the Plan and which

creditors and Interest holders shall receive materials which include notices of non-voting status.

4.     November 10, 2009, at 4:00 p.m. (prevailing Eastern Time) is established as the

deadline (the "**Voting Deadline**") to submit a Ballot to vote to accept or reject the Plan.

5.     The Debtors are authorized and empowered to commence to distribute the

Confirmation Hearing Notice.

6.     The Debtors are authorized and empowered to commence to distribute solicitation

materials (the "**Solicitation Materials**") including:

   (a)     this Disclosure Statement Order, excluding the exhibits annexed hereto;

   (b)     either

      (1)     a Ballot and/or a master Ballot, together with a return envelope and
              the Disclosure Statement (with the Plan and other exhibits annexed
              thereto), or

      (2)     a Notice of Non-Voting Status (as defined below), as applicable;
              and

(c)    in the Solicitation Materials for holders of Claims against LES or LFG, a letter of support from the LES Committee or the LFG Committee, as applicable, in the forms attached hereto as <u>Exhibits 6</u> and <u>7</u>, respectively; by

October 17, 2009 (the "**<u>Solicitation Commencement Date</u>**") to: (A) all persons or entities, other than wholly-owned holders of Intercompany Claims, identified on the Debtors' schedules of liabilities filed pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007 (as amended or modified prior to the Record Date, the "**<u>Schedules</u>**") as holding liquidated, noncontingent, and undisputed Claims, in an amount greater than zero dollars, excluding scheduled Claims that have been (i) superseded by a timely filed proof of claim, (ii) disallowed or expunged, or (iii) paid in full; (B) all parties who timely filed proofs of claim, as reflected on the official claims register maintained by Epiq Bankruptcy Solutions, LLC (the "**<u>Balloting Agent</u>**" or "**<u>Epiq</u>**"), as of the close of business on the Record Date, whose Claims have not been disallowed or expunged prior to the Solicitation Commencement Date, and whose Claims are not the subject of an objection seeking to disallow or expunge such Claims as of the Solicitation Commencement Date; (C) the assignee of a transferred and assigned Claim (whether a filed Claim or a party included on the Schedules) entitled to receive such Solicitation Materials (whose transfer and assignment has been noted on the Court's docket and is effective pursuant to Bankruptcy Rule 3001(e) as of the close of business on the Record Date); and (D) the beneficial holders of the Debtors' debt and equity securities as of the Record Date.

7.    The Debtors are authorized and empowered to commence to distribute or cause to be distributed by the Solicitation Commencement Date, a copy of this Order (without the exhibits annexed hereto), the Confirmation Hearing Notice, and the Disclosure Statement (together with the Plan and other exhibits annexed thereto) to, among other parties (to the extent such parties did not receive the Solicitation Materials): (a) the United States Trustee for the Southern District of New York (the "**<u>US Trustee</u>**"); (b) counsel for the official committees appointed in these cases; (c) the

Indenture Trustee for the 3.125% Debentures and the 3.25% Debentures (as defined in the Plan);

(d) the Securities and Exchange Commission; (e) the United States Attorney's Office for the

Eastern District of Virginia; (f) the Department of Justice; (g) the Pension Benefit Guaranty

Corporation; (h) the Internal Revenue Service; (i) the Federal Deposit Insurance Corporation;

(j) all relevant federal, state and local taxing authorities at their statutory addresses; (k) all parties

who have filed a request for service of all pleadings pursuant to and in accordance with

Bankruptcy Rule 2002 as of the day prior to service; and (l) the Debtors' insurers.

8.      Solicitation Materials, which shall include Ballots, shall be distributed to holders, as

of the Record Date, of Claims in Classes LES 3, LES 4, LES 5, LES 6, LES 7, LFG 3, LFG 4,

LFG 5 and SD 3, which Classes are designated under the Plan as entitled to vote to accept or reject

the Plan.  For holders of the 3.125% Debentures and the 3.25% Debentures, Ballots shall be

distributed to the beneficial holders of such securities, and such beneficial holders shall be entitled

to vote such holders' Class LFG 3 Claims, pursuant to the provisions of decretal paragraphs 16-22

hereof.

9.      A copy of this Order, the Confirmation Notice, and a notice of non-voting status,

substantially in the form annexed hereto as Exhibit 8 (the "**Notice of Non-Voting Status**"), shall

be distributed to holders, as of the Record Date, of Claims in Classes LES 1, LES 2, LFG 1, LFG

2, SD 1 and SD 2 that are deemed to accept the Plan and holders of Interests in Class LFG 6 that

are deemed to reject the Plan.

10.     The Debtors are not required to distribute copies of the Plan and Disclosure

Statement to any holder of a Claim or Interest in Classes LES 1, LES 2, LFG 1, LFG 2, LFG 6, SD

1 and SD 2 unless such holder makes a specific request in writing for the same.

11.     The Debtors are not required to distribute Solicitation Materials to Debtors or subsidiaries or controlled affiliates of Debtors that are holders of Claims against or Interests in a Debtor, and such entities are deemed to accept the Plan.

12.     The Creditors' Committees' letters of support annexed hereto as <u>Exhibits 6</u> and <u>7</u> are approved for inclusion in the Solicitation Materials of holders of Claims against LES and LFG, as applicable, that are entitled to vote on the Plan.

13.     With respect to addresses from which one or more prior notices served in these cases were returned as undeliverable by the United States Postal Service, the Debtors are excused from distributing Solicitation Materials to those entities listed at such addresses if the Debtors are unable to obtain accurate addresses for such entities before the Solicitation Commencement Date after having exercised good faith efforts to obtain more current addresses, and failure to attempt to re-deliver Solicitation Materials to such entities will not constitute inadequate notice of the Confirmation Hearing, the Voting Deadline, or a violation of Bankruptcy Rule 3017(d).

14.     To the extent the Debtors send Solicitation Materials, which are returned as undeliverable by the United States Postal Service, and the Debtors are unable to obtain a more current address after commercially reasonable, good faith efforts, failure to distribute Solicitation Materials to such entities will not constitute inadequate notice of the Confirmation Hearing, the Voting Deadline, or violation of Bankruptcy Rule 3017(d).

15.     All holders of Claims entitled to vote on the Plan in Class LFG 4 who wish to receive a cash distribution from LFG on account of their Allowed Claim pursuant to Section 5.10 of the Plan are required to check the box on their Ballot indicating that they wish to make such cash election.

16.     With respect to the Solicitation Materials to be distributed to holders of the 3.125% Debentures or the 3.25% Debentures, the Debtors shall distribute Solicitation Materials, including Ballots, to record holders of the 3.125% Debentures or the 3.25% Debentures in Class LFG 3 reflected in the records of Depository Trust Company, including, without limitation, brokers, banks, commercial banks, transfer agents, trust companies, dealers, or other agents or nominees (collectively, the "**Voting Nominees**"), and each Voting Nominee shall be entitled to receive reasonably sufficient numbers of Solicitation Materials (including beneficial Ballots) to distribute to the beneficial owners of the Claims for whom such Voting Nominee acts (collectively, the "**Beneficial Owners**"), and the Debtors shall be responsible for each such Voting Nominee's reasonable, actual, and necessary out-of-pocket expenses associated with the distribution of Solicitation Materials to the Beneficial Owners of such Claims and the tabulation of the beneficial Ballots and completion of master Ballots.

17.     Each Voting Nominee is required to forward Solicitation Materials to Beneficial Owners, receive returned Ballots from the Beneficial Owners, tabulate the results according to the instructions set forth in the master Ballots, and return, among other information set forth therein, such results to the Balloting Agent in a master ballot no later than the Voting Deadline.

18.     The Beneficial Owner is required to return its beneficial ballot to the Voting Nominee in sufficient time prior to the Voting Deadline for the Voting Nominee to tabulate votes and return a master ballot to the Voting Agent, provided, however, if a beneficial ballot has been pre-validated by the Voting Nominee, the Beneficial Owner should return such beneficial ballot to the Voting Agent so as to be received prior to the Voting Deadline.  If a Beneficial Owner holds 3.125% Debentures or 3.25% Debentures through more than one Voting Nominee or through multiple accounts, such Beneficial Owner may receive more than one Ballot, and each such

8

Beneficial Owner should execute a separate Ballot for each block of 3.125% Debentures or 3.25%

Debentures that it holds through any Voting Nominee and must return each such Ballot to the

appropriate Voting Nominee to properly vote such Class LFG 3 Claims.

19.    Multiple master Ballots may be completed and delivered to the Voting Agent by a

single Voting Nominee. Votes reflected by multiple master Ballots will be counted except to the

extent that the votes thereon are duplicative of other master Ballots.  If two or more master Ballots

are inconsistent, the latest master Ballots actually received prior to the Voting Deadline will, to the

extent of such inconsistency, supersede and revoke any prior master Ballot.

20.    Each Voting Nominee shall retain all Ballots returned by Beneficial Owners for a

period of one year after the Effective Date of the Plan.

21.    The Indenture Trustee shall not be entitled to vote on behalf of the Beneficial

Owners; rather, each Beneficial Owner must submit his or her own Ballot in accordance with the

voting procedures.

22.    All Ballots and master Ballots must be properly executed, completed, and the

original thereof shall be delivered to the Balloting Agent so as to be actually received by no later

than the Voting Deadline.  Notwithstanding the foregoing, each holder of a Claim in Classes LES

3, LES 4, LES 5 and Commingled Exchange Principle Claims in Class LES 6 may revoke or

amend such holder's ballot in the event the Debtors modify the Allowed amount of such holder's

Claim on Schedules 1.34, 1.35, 1.195 or 1.196 to the Plan.

23.    Solely for purposes of voting to accept or reject the Plan and not for the purpose of

the allowance of, or distribution on account of, a Claim and without prejudice to the rights of the

Debtors in any other context, each Claim within a Class of Claims entitled to vote to accept or

reject the Plan shall be entitled to vote the amount of such Claim as set forth on the Schedules,

except as set forth below, unless such holder has timely filed a proof of claim, in which event such

holder would be entitled to vote the amount of such Claim as set forth in such proof of claim;

provided that:

(a)  if a Claim is deemed allowed under the Plan, such Claim is allowed for voting purposes in the amount set forth in the Plan;

(b)  for Class LES 5 (Note Exchange Collectible Claims), the holders of such Claims shall be entitled, for voting purposes only, to vote the full principal amount of the note or other debt instrument held by LES as set forth on the Schedules or a proof of claim filed by such holder that is not subject to an objection, as applicable;

(c)  if a Claim for which a proof of claim has been timely filed is, by its terms, contingent, unliquidated, or disputed, or if the Claim is deemed disputed under the Plan, including Claims in Class LES 7 (LES Damages Claims) and Indemnification Claims, such Claim shall be temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00;

(d)  if a portion of a Claim for which a proof of claim has been timely filed is, by its terms, liquidated, in part, and unliquidated, in part, such Claim shall be temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, in an amount equal to the liquidated portion of the Claim;

(e)  if a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim is temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

(f)  if a Claim, other than a Claim against Capital Title Group is: (i) either (x) not scheduled or (y) scheduled as contingent, unliquidated, disputed or in an amount equal to zero dollars; and (ii) not the subject of (x) a timely-filed proof of claim filed by the applicable bar date, or (y) a proof of claim deemed timely filed by an order of the Bankruptcy Court before the Voting Deadline, then unless the Debtors have consented in writing, such Claim shall be disallowed for voting purposes pursuant to Bankruptcy Rule 3003(c);

(g)  if a Claim against Capital Title Group is scheduled by the Debtors on the Schedules as wholly contingent, unliquidated or disputed, such Claim shall be temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, in an amount equal to $1.00;

(h)     if a proof of claim has been timely filed, but such proof of claim does not indicate the Debtor against which such Claim is asserted, such Claim will be disallowed for voting purposes;

(i)     if the Debtors have served an objection seeking to disallow a Claim by October 21, 2009, such Claim shall be temporarily disallowed for voting purposes;

(j)     if the Debtors have served an objection seeking to reclassify, reduce or otherwise modify a Claim by October 21, 2009, such Claim shall be temporarily allowed for voting purposes in the amount, in the Class, and/or against the Debtor set forth in the objection; and

(k)     notwithstanding anything to the contrary contained herein, any creditor who has filed duplicate Claims against the same Debtor which are classified under the Plan in the same Class, shall be provided with only one set of Solicitation Materials and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims.

24.     Any holder of a Claim who seeks to have its Claim allowed for voting purposes in an amount different from that which is set forth in the Schedules, the Plan, the Disclosure Statement, or the procedures set forth herein, must file a motion (a "**Claimant Voting Motion**") seeking a hearing to consider the estimation of such Claim by October 30, 2009.  Such Claimant Voting Motion shall set forth with particularity the amount at which such claimant believes its Claim should be allowed, and the evidence in support thereof.

25.     If the Court has not, on or before the Confirmation Hearing, temporarily or otherwise allowed all or a portion of a Claim set forth in a Claimant Voting Motion for voting purposes pursuant to Bankruptcy Rule 3018(a), such Claim shall not be counted for voting purposes.

26.     In the event that a party timely files a Claimant Voting Motion pursuant to this Order, such party may, after conferring with the Debtors, seek to schedule an expedited hearing before the Court to have such motion heard prior to the Confirmation Hearing.

27.      In the event that a claimant reaches an agreement with the Debtors as to the treatment of its Claim for voting purposes, a stipulation setting forth that agreement may be presented to the Court for approval by notice of proposed stipulation and order, with presentment upon three (3) calendar days' notice to: (a) the Office of the United States Trustee; and (b) counsel to the Creditors' Committees.

28.      If a creditor casts more than one Ballot voting the same Claim(s) before the Voting Deadline, the latest dated, properly executed Ballot received before the Voting Deadline is deemed to reflect the voter's intent and, therefore, to supersede any prior Ballots.

29.      If a holder of Claims casts more than one Ballot voting the same Claim(s) which are received by the Balloting Agent on the same day, but which are voted inconsistently, such Ballots shall not be counted.

30.      Creditors must vote all of their Claims within a particular Class under the Plan either to accept or reject the Plan and may not split their vote(s), and thus Ballots (other than master Ballots) that partially accept and partially reject the Plan will not be counted.

31.      Any Ballot that is otherwise properly completed, executed, and timely returned to the Balloting Agent but does not indicate an acceptance or rejection of the Plan, or indicates both an acceptance and a rejection of the Plan, shall not be counted.

32.      No Ballot received after the Voting Deadline shall be counted, except, in the Chapter 11 Case of (a) a Subsidiary Debtor, such Ballot may be counted in the Debtors' sole discretion, (b) LES, such Ballot may be counted in the Debtors' discretion with the consent of the LES Committee, which consent will not be unreasonably withheld, delayed or conditioned, or (c) LFG, such Ballot may be counted in the Debtors' discretion with the consent of the LFG Committee, which consent will not be unreasonably withheld, delayed or conditioned.

33.    A vote shall be disregarded if this Court determines, after notice and a hearing, that such vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

34.    Any Ballot that is illegible or contains insufficient information to permit the identification of the claimant shall not be counted.

35.    Any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan shall not be counted.

36.    Any unsigned Ballot or signed but non-original Ballot shall not be counted.

37.    Except in the Debtors' sole discretion, any Ballot transmitted to the Balloting Agent by facsimile or other electronic means shall not be counted.

38.    In accordance with section 1125(e) of the Bankruptcy Code, to the fullest extent permitted by law, none of the Debtors (including their respective directors, officers, employees, shareholders, members, partners, agents or representatives (including attorneys, accountants, financial advisors and investment bankers), each solely in their capacity as such) shall have any liability on account of soliciting votes on the Plan or participating in such solicitation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale or purchase of securities, if such solicitation complies with the terms of this Order.

39.    The Confirmation Hearing Notice is approved.

40.    Pursuant to Rule 3016-1(D) of the Local Bankruptcy Rules for the Eastern District of Virginia, the Debtors shall file with the Clerk of the Court a summary of the Ballots received by the Voting Agent prior to the Confirmation Hearing.

41.     The Confirmation Hearing will be held at 11:00 a.m. (prevailing Eastern Time) on

November 18, 2009; provided, however, that the Confirmation Hearing may be adjourned from

time to time by the Court or the Debtors without further notice to parties other than an

announcement at or before the Confirmation Hearing or any adjourned Confirmation Hearing.

42.     The twenty-five day period required by Rule 2002(b) for notice of the deadline to

file objection to the confirmation of the Plan is hereby shortened pursuant to Bankruptcy Rule

9006(c).

43.     The Debtors shall publish the Confirmation Hearing Notice at least twenty-four

(24) days before the last date to object to confirmation of the Plan in: (a) the *Richmond Times-*

*Dispatch*; (b) *The New York Times*; (c) the *San Bernardino Sun*; and (d) the *Orange County*

*Register*.  Additionally, the Debtors will post the Confirmation Hearing Notice electronically at

http://chapter11.epiqsystems.com/landamerica.

44.     Objections to confirmation of the Plan, if any, must: (a) be made in writing;

(b) state with particularity the legal and factual ground therefor, and, if practicable, propose a

modification to the Plan that would resolve such objection; (c) conform to the Federal Rules of

Bankruptcy Procedure and the Local Rules; (d) be filed with this Court in accordance with

Standing Order No. 06-1 (Administrative Procedures for Filing, Signing, Retaining and

Verification of Pleadings and Papers in the Case Management/Electronic Case Filing (CM/ECF)

System (Administrative Procedures)) can be found at www.vaeb.uscourts.gov, the official website

for the bankruptcy court); and (e) be served so as to be received by each of the parties identified in

the Confirmation Hearing Notice at the respective addresses set forth therein no later than 4:00

p.m. (prevailing Eastern Time) on November 10, 2009.

45.    Objections to confirmation of the Plan not timely filed and served in the manner set forth above shall not be considered by the Court and shall be overruled.

46.    Objections to the adequacy of the Disclosure Statement with respect to Capital Title Group, and/or the solicitation of the creditors of Capital Title Group, Inc., if any, must: (a) be made in writing; (b) state with particularity the legal and factual ground therefor; (c) conform to the Federal Rules of Bankruptcy Procedure and the Local Rules; (d) be filed with this Court in accordance with Standing Order No. 06-1 (Administrative Procedures for Filing, Signing, Retaining and Verification of Pleadings and Papers in the Case Management/Electronic Case Filing (CM/ECF) System (Administrative Procedures)) can be found at www.vaeb.uscourts.gov, the official website for the bankruptcy court); and (e) be served so as to be received by each of the parties identified in the Confirmation Hearing Notice at the respective addresses set forth therein no later than 4:00 p.m. (prevailing Eastern Time) on November 10, 2009.

47.    The Debtors are authorized to take or refrain from taking any action necessary or appropriate to implement the terms of and the relief granted in this Order without seeking further order of the Court, including, but not limited to, the making of any payments reasonably necessary to perform the actions and distributions contemplated herein.

48.    The Debtors are authorized to make nonsubstantive changes to the Disclosure Statement, Plan, Ballots, Confirmation Hearing Notice, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Materials prior to their distribution.

49.     This Court shall retain jurisdiction with respect to all matters related to this Order.


Dated: October ___, 2009
       Richmond, Virginia


_____
KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

Paul V. Shalhoub (Admitted *Pro Hac Vice*)
Rachel C. Strickland (Admitted *Pro Hac Vice*)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York  10019
(212) 728-8000

        - and -

/s/ John H. Maddock III
Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 41044)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000
Attorneys for the Debtors and
Debtors in Possession

## LOCAL BANKRUPTCY RULE 9022-1(C) CERTIFICATION

        Pursuant to Local Rule 9022-1(C), I hereby certify that the foregoing proposed order substantially in the form herein has been endorsed by or served upon all necessary parties.

                                        /s/ John H. Maddock III
                                        ___

                                        Dion W. Hayes (VSB No. 34304)
                                        John H. Maddock III (VSB No. 41044)
                                        McGUIREWOODS LLP
                                        One James Center
                                        901 East Cary Street
                                        Richmond, Virginia 23219-4030
                                        (804) 775-1000

# EXHIBIT 1

No Person Has Been Authorized To Give Any Information Or Advice, Or To Make
Any Representation, Other Than What Is Contained In The Materials Mailed With
This Ballot Or Other Materials Authorized By The Court

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                           :
In re:                                                     :        Chapter 11
                                                           :
LandAmerica Financial Group, Inc., et al.,                 :        Case No. 08-35994 (KRH)
                                                           :
                                    Debtors.               :        (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**BALLOT FOR ACCEPTING OR REJECTING THE JOINT CHAPTER 11 PLAN**
**OF LANDAMERICA FINANCIAL GROUP, INC. AND ITS AFFILIATED DEBTORS**

**([INSERT CLASS] CLAIMS)**

On October 13, 2009, LandAmerica Financial Group, Inc. ("LFG") and its affiliated debtors and debtors in possession (collectively with LFG, the "Debtors") filed the Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and its Affiliated Debtors (the "Plan") and the disclosure statement (the "Disclosure Statement") with respect thereto.

On [_____], 2009, the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") (i) approved the Disclosure Statement and (ii) authorized the Debtors to solicit votes on the Plan.  **Court approval of the Disclosure Statement does not indicate approval of the Plan by the Court.**

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on creditors and interest holders if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in each class of claims entitled to vote that actually vote on the Plan. If any class of claims or interests rejects the Plan or is deemed to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to, and does not discriminate unfairly against, the classes rejecting it, and otherwise satisfies the requirements of 11 U.S.C. § 1129(b).

This ballot (the "Ballot") is being sent to all holders of [INSERT CLASS] Claims who are entitled to vote, for their use in voting to accept or reject the Plan.  The Plan is described in the Disclosure Statement which accompanies this Ballot.  Before you transmit your vote, please review both the Disclosure Statement and the Plan carefully, particularly the voting procedures described in Article X of the Disclosure Statement.

To have your vote count, you must complete and return this Ballot in the manner specified such that it is <u>RECEIVED</u> by the Voting Agent (as defined herein) on or before the Voting Deadline (as defined herein).

**Please read and follow the attached instructions carefully.**
**Please return your Ballot in the envelope provided.**

**The Voting Deadline is November 10, 2009 at 4:00 P.M. (Eastern Time)**

---

**IMPORTANT**

**You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.**

**Your claim has been placed in [INSERT CLASS] under the Plan.  If you hold claims in another class, you will receive a Ballot for each class in which you are entitled to vote.**

**Please read carefully and follow the instructions attached to this Ballot on completing and returning your Ballot.  The Voting Deadline by which your Ballot must be *received* by the Voting Agent is *4:00 p.m. (Eastern time) on November 10, 2009*.  If your Ballot is not received by the Voting Deadline, it will *not* be counted.  The Voting Agent will not accept Ballots by electronic or facsimile transmission.**

**If you have any questions, contact Epiq Bankruptcy Solutions, LLC (the "Voting Agent") at (866) 329-5543 or via e-mail to landamerica@epiqsystems.com.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**

You may receive multiple mailings containing Ballots.  You should vote each Ballot that you receive for all of the claims that you hold.

**Item 1.  Vote On Plan. (Please check one.)**  The undersigned, the holder of an unpaid [INSERT CLASS] Claim against the Debtors, in the amount of $_____

         ☐      ACCEPTS (votes FOR) the Plan.

         ☐      REJECTS (votes AGAINST) the Plan.

**Item 2.  Certification.**  By signing this Ballot, the undersigned hereby certifies that: (a) on October 13, 2009 it was the holder of an allowed [INSERT CLASS] Claim to which this Ballot pertains (or an authorized signatory for such holder), (b) it has full power and authority to vote to accept or reject the Plan, and (c) it has received a copy of the Disclosure Statement (including the appendices thereto) and other materials (collectively, the "Solicitation Package") and understands that the solicitation of votes to accept or reject the Plan is subject to all the terms and conditions set forth in the Disclosure Statement and Plan.

Name Of Voter:_____
                              (Print Or Type)

Social Security Or Federal Tax I.D. No.:_____

Signature:_____

Name Of Signatory:_____
                                (If Other Than Voter)

Title:_____

Address: _____

_____

_____

Date Signed:_____

If your address or contact information has changed, please note the new information here:

## INSTRUCTIONS FOR COMPLETING THE BALLOT

The Debtors are soliciting the votes of certain of the Debtors' creditors on their proposed Plan, described in and annexed as Exhibit 1 to the Disclosure Statement accompanying this Ballot.  Please review the Disclosure Statement and Plan carefully before you return this Ballot.  Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Plan.

**To complete the Ballot properly, take the following steps:**

(a)  Insert the amount of your claim in Item 1, unless an amount already appears on your Ballot.

(b)  Cast your vote either to accept or to reject the Plan by checking the proper box in Item 1.  Ballots that are signed and returned, but not expressly voted to accept or reject the Plan, will not be counted.  A Ballot accepting or rejecting the Plan may not be revoked after the Voting Deadline.

(c)  Review Item 2 carefully and provide the requested information.

(d)  Sign and date your Ballot.  Your signature is required in order for your vote to be counted.  You are also requested to provide your social security number or Tax I.D. number prior to receiving any distribution.  If the claim voted with this Ballot is held by a partnership, the Ballot should be executed in the name of the partnership by a general partner.  If the claim is held by a corporation, the Ballot must be executed by an authorized officer of such corporation.

(e)  If you believe that you have received the wrong Ballot, please immediately contact the Voting Agent, Epiq Bankruptcy Solutions, LLC at (866) 329-5543.

(f)  If you are completing this Ballot on behalf of another person or entity, indicate your relationship with that person or entity and the capacity in which you are signing.

(g)  Provide your name and mailing address if (i) different from the printed address that appears on the Ballot or (ii) no pre-printed address appears on the Ballot.

(h)  Return your Ballot using the enclosed return envelope.

**Please mail your ballot promptly to:**

**LandAmerica Financial Group, Inc. Ballot Processing**
**c/o Epiq Bankruptcy Solutions, LLC**
**757 Third Avenue, 3rd Floor**
**New York, NY 10017**

**If you have any questions regarding this Ballot or the voting procedures, please call the Voting Agent,**
**Epiq Bankruptcy Solutions, LLC promptly at (866) 329-5543.**

**This Ballot does *not* constitute and *will not* be deemed to constitute (a) a proof of claim or (b) an admission by the Debtors of the nature, validity, or amount of any claim.  This Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than to cast votes to accept or reject the Plan.**

If your claim against the Debtors has been paid, do not return this Ballot or vote on the paid claim.

You may not split your vote.  You must vote the entire claim that you hold to accept or to reject the Plan.  You will be deemed to have voted the full amount of your claim in your vote.  You must vote all your claims within a single class to either accept or reject the Plan.  **A Ballot that partially rejects and partially accepts the Plan will not be counted.**

To ensure your vote is counted, you must complete, sign, and return this Ballot to the address printed on the enclosed pre-addressed postage-paid envelope and set forth above.  **Unsigned Ballots will not be counted.**

Ballots must be received by the Voting Agent at the address set forth above, by 4:00 p.m. (Eastern time) on November 10, 2009 (the "Voting Deadline").  **If a Ballot is received after the Voting Deadline, it will not be counted.**

Except as otherwise provided herein, the delivery of a Ballot will be deemed made only when the original executed Ballot is actually received by the Voting Agent.  In all cases, sufficient time should be allowed to assure timely delivery.  **Delivery of a Ballot to the Voting Agent by facsimile, e-mail, or any other electronic means will not be valid.**  No Ballot should be sent to the Debtors or financial or legal advisor of the Debtors.  **Ballots not received by the Voting Agent will be null and void and will not be counted.**

# EXHIBIT 2

**No Person Has Been Authorized To Give Any Information Or Advice, Or To Make
Any Representation, Other Than What Is Contained In The Materials Mailed With
This Ballot Or Other Materials Authorized By The Court**

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  | : |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| LandAmerica Financial Group, Inc., et al., | : | Case No. 08-35994 (KRH) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**BALLOT FOR ACCEPTING OR REJECTING THE JOINT CHAPTER 11 PLAN
OF LANDAMERICA FINANCIAL GROUP, INC. AND ITS AFFILIATED DEBTORS**

**(CLASS LFG 4: LFG EXCHANGE GUARANTEE CLAIMS)**

On October 13, 2009, LandAmerica Financial Group, Inc. ("LFG") and its affiliated debtors and debtors in possession (collectively with LFG, the "Debtors") filed the Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and its Affiliated Debtors (the "Plan") and the disclosure statement (the "Disclosure Statement") with respect thereto.

On [____], 2009, the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") (i) approved the Disclosure Statement and (ii) authorized the Debtors to solicit votes on the Plan.  **Court approval of the Disclosure Statement does not indicate approval of the Plan by the Court.**

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on creditors and interest holders if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in each class of claims entitled to vote that actually vote on the Plan. If any class of claims or interests rejects the Plan or is deemed to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to, and does not discriminate unfairly against, the classes rejecting it, and otherwise satisfies the requirements of 11 U.S.C. § 1129(b).

This ballot (the "Ballot") is being sent to all holders of claims who are entitled to vote, for their use in voting to accept or reject the Plan.  The Plan is described in the Disclosure Statement which accompanies this Ballot.  Before you transmit your vote, please review both the Disclosure Statement and the Plan carefully, particularly the voting procedures described in Article X of the Disclosure Statement.

To have your vote count, you must complete and return this Ballot in the manner specified such that it is RECEIVED by the Voting Agent (as defined herein) on or before the Voting Deadline (as defined herein).

**Please read and follow the attached instructions carefully.
Please return your Ballot in the envelope provided.**

**The Voting Deadline is November 10, 2009 at 4:00 P.M. (Eastern Time)**

---

**IMPORTANT**

**You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.**

**Your claim has been placed in Class LFG 4 under the Plan.  If you hold a claim(s) in another class, you will receive a Ballot for each class in which you are entitled to vote.**

**Please read carefully and follow the instructions attached to this Ballot on completing and returning your Ballot.  The Voting Deadline by which your Ballot must be *received* by the Voting Agent is *4:00 p.m. (Eastern time) on November 10, 2009*.  If your Ballot is not received by the Voting Deadline, it will *not* be counted.  The Voting Agent will not accept Ballots by electronic or facsimile transmission.**

**If you have any questions, contact Epiq Bankruptcy Solutions, LLC (the "Voting Agent") at (866) 329-5543 or via e-mail to landamerica@epiqsystems.com.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**

---

You may receive multiple mailings containing Ballots.  You should vote each Ballot that you receive for all of the claims that you hold.

**Item 1.  Vote On Plan. (Please check one.)**  The undersigned, the holder of an unpaid LFG Exchange Guarantee Claim against the Debtors, in the amount of $_____

☐        ACCEPTS (votes FOR) the Plan.

☐        REJECTS (votes AGAINST) the Plan.

**Item 2.  Election to Receive Cash Distribution.  (Optional)**  If the undersigned chooses to accept the Plan, then by checking the box below, the undersigned may elect to (i) receive a one time cash payment of thirty percent (30%) of the undersigned's Allowed LFG Exchange Guarantee Claim in full satisfaction of the undersigned's LFG Exchange Guarantee Claim against LFG and (ii) assign to the LFG Trust the undersigned's rights to claims and causes of action against third parties on account of the undersigned's claims against the Debtors.  **THIS ELECTION MAY ONLY BE MADE IN CONNECTION WITH VOTING FOR THE PLAN, AND ONCE MADE IS IRREVOCABLE.** THE ELECTION WILL NOT BE VALID IF YOU OBJECT TO CONFIRMATION OF THE PLAN OR IF YOU VOTE TO REJECT THE PLAN. THE DEBTORS RESERVE THEIR RIGHTS TO OBJECT TO THE UNDERSIGNED'S CLAIM. THIS OFFER IS NOT AN ACKNOWLEDGEMENT BY THE DEBTORS OF THE NATURE, VALIDITY, OR AMOUNT OF THE UNDERSIGNED'S CLAIM. IN ACCORDANCE WITH THE PLAN, FAILURE TO MAKE THIS ELECTION WILL RESULT IN YOUR CLAIM BEING TREATED AS A LFG GENERAL UNSECURED CLAIM. **THIS ELECTION WILL NOT LIMIT ANY CLAIMS YOU MAY HAVE AGAINST OTHER DEBTORS.**

The undersigned, the holder of a LFG Exchange Guarantee Claim in the unpaid amount indicated above,

☐        ELECTS to (i) receive a one time cash payment of thirty percent (30%) of the undersigned's Allowed LFG Exchange Guarantee Claim in full satisfaction of the undersigned's Allowed LFG Exchange Guarantee Claim against LFG and (ii) hereby assign to the LFG Trust the undersigned's rights to claims and causes of action against third parties on account of the undersigned's claims against the Debtors.

**Item 3.  Certification.**  By signing this Ballot, the undersigned hereby certifies that: (a) on October 13, 2009 it was the holder of an Allowed LFG Exchange Guarantee Claim to which this Ballot pertains (or an authorized signatory for such holder), (b) it has full power and authority to vote to accept or reject the Plan, and (c) it has received a copy of the Disclosure Statement (including the appendices thereto) and other materials (collectively, the "Solicitation Package") and understands that the solicitation of votes to accept or reject the Plan is subject to all the terms and conditions set forth in the Disclosure Statement and Plan.

Name Of Voter:_____
                                    (Print Or Type)

Social Security Or Federal Tax I.D. No.:_____

Signature:_____

Name Of Signatory:_____
                                    (If Other Than Voter)

Title:_____

Address: _____

_____

_____

Date Signed:_____

If your address or contact information has changed, please note the new information here:

## INSTRUCTIONS FOR COMPLETING THE BALLOT

The Debtors are soliciting the votes of certain of the Debtors' creditors on their proposed Plan, described in and annexed as Exhibit 1 to the Disclosure Statement accompanying this Ballot.  Please review the Disclosure Statement and Plan carefully before you return this Ballot.  Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Plan.

**To complete the Ballot properly, take the following steps:**

(i)   Insert the amount of your claim in Item 1, unless an amount already appears on your Ballot.

(j)   Cast your vote either to accept or to reject the Plan by checking the proper box in Item 1.  Ballots that are signed and returned, but not expressly voted to accept or reject the Plan, will not be counted.  A Ballot accepting or rejecting the Plan may not be revoked after the Voting Deadline.

(k)  If you choose to accept the Plan, choose whether you elect to receive a one time cash payment of thirty percent (30%) of your Allowed LFG Exchange Guarantee Claim in full satisfaction of your Allowed LFG Exchange Guarantee Claim against LFG and assign to the LFG Trust your rights to claims and causes of action against third parties on account of your exchange by checking the box in Item 2. This election, once made, is irrevocable. This election will not be valid if you object to confirmation of the Plan or if you do not vote to accept the Plan.

(l)   Review Item 3 carefully and provide the requested information.

(m) Sign and date your Ballot.  Your signature is required in order for your vote to be counted.  You are also requested to provide your social security number or Tax I.D. number prior to receiving any distribution.  If the claim voted with this Ballot is held by a partnership, the Ballot should be executed in the name of the partnership by a general partner.  If the claim is held by a corporation, the Ballot must be executed by an authorized officer of such corporation.

(n)  If you believe that you have received the wrong Ballot, please immediately contact the Voting Agent, Epiq Bankruptcy Solutions, LLC at (866) 329-5543.

(o)  If you are completing this Ballot on behalf of another person or entity, indicate your relationship with that person or entity and the capacity in which you are signing.

(p)  Provide your name and mailing address if (i) different from the printed address that appears on the Ballot or (ii) no pre-printed address appears on the Ballot.

(q)  Return your Ballot using the enclosed return envelope.

**Please mail your ballot promptly to:**

**LandAmerica Financial Group, Inc. Ballot Processing**
**c/o Epiq Bankruptcy Solutions, LLC**
**757 Third Avenue, 3rd Floor**
**New York, NY 10017**

**If you have any questions regarding this Ballot or the voting procedures, please call the Voting Agent,**
**Epiq Bankruptcy Solutions, LLC promptly at (866) 329-5543.**

**This Ballot does *not* constitute and *will not* be deemed to constitute (a) a proof of claim or (b) an admission by the Debtors of the nature, validity, or amount of any claim.  This Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than to cast votes to accept or reject the Plan.**

If your claim against the Debtors has been paid, do not return this Ballot or vote on the paid claim.

You may not split your vote.  You must vote the entire claim that you hold to accept or to reject the Plan.  You will be deemed to have voted the full amount of your claim in your vote.  You must vote all your claims within a single class to either accept or reject the Plan.  **A Ballot that partially rejects and partially accepts the Plan will not be counted.**

To ensure your vote is counted, you must complete, sign, and return this Ballot to the address printed on the enclosed pre-addressed postage-paid envelope and set forth above.  **U**nsigned Ballots will not be counted.

Ballots must be received by the Voting Agent at the address set forth above, by 4:00 p.m. (Eastern time) on November 10, 2009 (the "Voting Deadline").  **If a Ballot is received after the Voting Deadline, it will not be counted.**

# EXHIBIT 3

LandAmerica Financial Group, Inc. Ballot Processing
c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue, 3rd Floor
New York, NY 10017

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :

In re:                             :         Chapter 11
                             :

LandAmerica Financial Group, Inc., et al.,   :         Case No. 08-35994 (KRH)
                             :

                    Debtors.  :         (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**BALLOT FOR ACCEPTING OR REJECTING THE JOINT CHAPTER 11 PLAN**
**OF LANDAMERICA FINANCIAL GROUP, INC. AND ITS AFFILIATED DEBTORS**

**MASTER BALLOT FOR VOTING the [   %] CONVERTIBLE**
**SENIOR DEBENTURES due 20xx**
**issued by landamerica financial group, inc.**

**(CLASS LFG 3: LFG GENERAL UNSECURED CLAIMS)**
**(CUSIP Number XXXXXXXXX)**

> THE **VOTING DEADLINE** BY WHICH YOUR MASTER BALLOT MUST BE ***ACTUALLY RECEIVED*** BY THE DEBTORS' VOTING AGENT, EPIQ BANKRUPTCY SOLUTIONS, LLC, IS **4:00 P.M. (EASTERN TIME) ON NOVEMBER 10, 2009**.  IF YOUR MASTER BALLOT IS NOT ***ACTUALLY RECEIVED*** ON OR BEFORE THE VOTING DEADLINE, THE VOTES REPRESENTED BY YOUR MASTER BALLOT WILL ***NOT*** BE COUNTED.

This Master Ballot is to be used by you, as a broker, bank, commercial bank, transfer agent, trust company, dealer, or other agent or nominee (or as the proxy holder or agent of one of the foregoing) (each, a "**Voting Nominee**"), for beneficial owners of the [   %] Convertible Senior Debenture due [20XX] issued by LandAmerica Financial Group, Inc. (collectively, the "**Debentures**"), to transmit the votes of beneficial owner(s) in respect of their Debentures to accept or reject the Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and Its Affiliated Debtors, dated October 13, 2009, (as may be amended and/or modified, the "**Plan**"). Capitalized terms used and not otherwise defined herein shall have the meaning set forth in the Plan. The Plan is Exhibit 1 to the Disclosure Statement with Respect to the Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and Its Affiliated Debtors, dated October 13, 2009 (the "**Disclosure Statement**"), which accompanies this Master Ballot. Before you transmit your beneficial owner(s)' votes, please review the Disclosure Statement carefully, including the voting procedures explained in Article X thereof.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon the beneficial owners of the Debentures for which you are the Voting Nominee if it is accepted by the holders of two-thirds (2/3) in amount and more than one-half (1/2) in number of Claims in each Class that vote on the Plan, and if it otherwise satisfies the requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained (or if a Class of Claims or Interests is deemed to reject the Plan), the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan provides fair and equitable treatment to, and does not discriminate unfairly against, the Class or Classes rejecting it, and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

**PLEASE READ AND FOLLOW THE ATTACHED INSTRUCTIONS CAREFULLY. COMPLETE, SIGN, AND DATE THIS MASTER BALLOT, AND RETURN IT SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE DEBTORS' VOTING AGENT, EPIQ BANKRUPTCY SOLUTIONS, LLC ON OR BEFORE THE VOTING DEADLINE OF 4:00 P.M. (EASTERN TIME) ON <u>NOVEMBER 10, 2009</u>.  IF THIS MASTER BALLOT IS NOT COMPLETED, SIGNED, AND <u>ACTUALLY RECEIVED</u> BY THE DEBTORS' VOTING AGENT PRIOR TO THE EXPIRATION OF THE VOTING DEADLINE, THEN THE VOTES TRANSMITTED BY THIS MASTER BALLOT WILL NOT BE COUNTED.**

**Item 1.** **Certification of Authority to Vote.** The undersigned certifies that as of the October 13, 2009 record date, the undersigned (please check the applicable box):

☐    Is a Voting Nominee for the beneficial owners of the aggregate principal amount of Debentures listed in Item 2 below, and is the record holder of such Debentures, or

☐    Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a Voting Nominee that is the record holder of the aggregate principal amount of Debentures listed in Item 2 below, or

☐    Has been granted a proxy (an original of which is attached hereto) from a Voting Nominee, or a beneficial owner, that is the record holder of the aggregate principal amount of Debentures listed in Item 2 below,

and, accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the beneficial owners of the Debentures described in Item 2 below.

**Item 2.** **Class LFG 3 Vote (LFG General Unsecured Claims).** The undersigned transmits the following votes of beneficial owner(s) in respect of their Debentures, and certifies that the following beneficial owner(s) of the Debentures, as identified by their respective customer account numbers set forth below, are beneficial owner(s) of such Debentures as of the October 13, 2009 record date and have delivered to the undersigned, as Voting Nominee, Beneficial Owner Ballots casting such votes. (Indicate in the appropriate column the aggregate principal amount voted for each account, or attach such information to this Master Ballot in the form of the following table.)  Please note that each beneficial owner must vote all his, her, or its Class LFG 3 Claims (LFG General Unsecured Claims) either to accept or reject the Plan, and may not split such vote.

| Your Customer Account Number of Each Beneficial Owner of Debentures | Principal Amount of Debentures Voted to ACCEPT the Plan | | Principal Amount of Debentures Voted to REJECT the Plan |
|---|---|---|---|
| 1. | $ | **OR** | $ |
| 2. | $ | **OR** | $ |
| 3. | $ | **OR** | $ |
| 4. | $ | **OR** | $ |
| 5. | $ | **OR** | $ |
| 6. | $ | **OR** | $ |
| 7. | $ | **OR** | $ |
| 8. | $ | **OR** | $ |
| 9. | $ | **OR** | $ |
| 10. | $ | **OR** | $ |
| 11. | $ | | |
| **TOTALS** | $ | | $ |

**Item 3.Certification As to Transcription of Information From Item 3 of Beneficial Owner Ballots As to Other Debentures Voted by Beneficial Owners.** The undersigned certifies that the undersigned has transcribed in the following table the information, if any, provided by each beneficial owner in Item 3 of the applicable Beneficial Owner Ballot, identifying any other Debentures for which such beneficial owner has submitted other Ballots:

| | TRANSCRIBE FROM ITEM 3 OF THE BENEFICIAL OWNER BALLOT: | | | |
|---|---|---|---|---|
| **YOUR customer account number for each beneficial owner who completed Item 3 of the Beneficial Owner Ballot** | **Account Number**<br><br>*(Transcribe from Item 3 of Beneficial Owner Ballot)* | **Name of Record Holder**<br><br>*(Transcribe from Item 3 of Beneficial Owner Ballot)* | **Principal Amount of Other Debentures Voted**<br><br>*(Transcribe from Item 3 of Beneficial Owner Ballot)* | **CUSIP No. of other Class LFG 3 Debentures Voted** |
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |

**Item 4.** **Certification.** By signing this Master Ballot, the undersigned certifies that each beneficial owner of Debentures listed in Item 2 above has been provided with a copy of the Disclosure Statement, including the exhibits thereto, and acknowledges that the solicitation of votes is subject to all the terms and conditions set forth in the Disclosure Statement.

Name of Broker, Bank, or Other Nominee:

_____

(Print or Type)

Name of Proxy Holder or Agent for Broker,
Bank, or Other Nominee (if applicable):

_____

(Print or Type)

DTC No.:_____

Social Security or Federal Tax I.D. No.:_____

Signature:_____

By:_____

Title:_____

Street Address:_____

City, State, Zip Code:_____

Telephone Number: (___)_____

Date Completed:_____

---

**THIS MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE DEBTORS' VOTING AGENT, EPIQ BANKRUPTCY SOLUTIONS, LLC, BEFORE 4:00 P.M. (EASTERN TIME) ON NOVEMBER 10, 2009 OR THE VOTES TRANSMITTED HEREBY WILL NOT BE COUNTED.**

---

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, OR IF YOU NEED ADDITIONAL COPIES OF THIS BALLOT, THE DISCLOSURE STATEMENT, THE PLAN OR OTHER RELATED MATERIALS OR DOCUMENTS, PLEASE CALL EPIQ BANKRUPTCY SOLUTIONS, LLC AT (866) 329-5543 OR VIA E-MAIL AT landamerica@epiqsystems.com.**

## INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT

**VOTING DEADLINE:**

The Voting Deadline is **4:00 P.M. (EASTERN TIME) ON NOVEMBER 10, 2009,** unless extended in writing by the Debtors in accordance with the Disclosure Statement Order. To have the vote of your customers count, you must complete, sign, and return this Master Ballot so that it is **ACTUALLY RECEIVED** on or before the Voting Deadline by Epiq Bankruptcy Solutions, LLC at:

LandAmerica Financial Group, Inc. Ballot Processing
c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue, 3rd Floor
New York, NY 10017

**HOW TO VOTE:**

If you are both the record holder and beneficial owner of any principal amount of Debentures and you wish to vote such Debentures, you may complete, execute, and return to Epiq Bankruptcy Solutions, LLC either a Beneficial Owner Ballot or a Master Ballot.

**If you are transmitting the votes of any beneficial owners of Debentures other than yourself, you may *either*:**

1.  Complete and execute the Beneficial Owner Ballot (other than Items 2 and 3) and deliver to the beneficial owner such "prevalidated" Beneficial Owner Ballot, along with the Disclosure Statement and other materials requested to be forwarded. The beneficial owner should complete Items 2 and 3 of that Ballot and return the completed Beneficial Owner Ballot to Epiq Bankruptcy Solutions, LLC so as to be received before the Voting Deadline;

*OR*

2.  For any Beneficial Owner Ballots you do not "prevalidate":

Deliver the Beneficial Owner Ballot to the beneficial owner, along with the Disclosure Statement and other materials requested to be forwarded, and take the necessary actions to enable such beneficial owner to (a) complete and execute such Beneficial Owner Ballot voting to accept or reject the Plan, and (b) return the completed and executed Beneficial Owner Ballot to you in sufficient time to enable you to complete the Master Ballot and deliver it to Epiq Bankruptcy Solutions, LLC before the Voting Deadline; and

With respect to all Beneficial Owner Ballots returned to you, you must properly complete the Master Ballot, as follows:

a.  Check the appropriate box in Item 1 on the Master Ballot;

b.  Indicate the votes to accept or reject the Plan in Item 2 of this Master Ballot, as transmitted to you by beneficial owners of Debentures. To identify such beneficial owners without disclosing their names, please use the customer account number assigned by you to each such beneficial owner, or, if no such customer account number exists, please assign a number to each account (making sure to retain a separate list of each beneficial owner and the assigned number). **IMPORTANT: BENEFICIAL OWNERS MAY NOT SPLIT THEIR VOTES, EXCEPT IN THE SOLE**

2

**DISCRETION OF THE DEBTORS. IF ANY BENEFICIAL OWNER HAS ATTEMPTED TO SPLIT SUCH VOTE, PLEASE CONTACT EPIQ BANKRUPTCY SOLUTIONS, LLC IMMEDIATELY.** Any Beneficial Owner Ballot or Master Ballot which is validly executed but which does not indicate acceptance or rejection of the Plan by the indicated beneficial owner or which attempts impermissibly to split a vote will not be counted;

c.      Please note that Item 3 of this Master Ballot requests that you transcribe the information provided by each Beneficial Owner from Item 3 of the completed Beneficial Owner Ballot of such Beneficial Owner relating to other Debentures voted;

d.      Review the certification in Item 4 of the Master Ballot;

e.      Sign and date the Master Ballot, and provide the remaining information requested;

f.      If additional space is required to respond to any item on the Master Ballot, please use additional sheets of paper clearly marked to indicate the applicable Item of the Master Ballot to which you are responding;

g.      Multiple Master Ballots may be completed and delivered to the Voting Agent. Votes reflected by multiple Master Ballots will be counted except to the extent that the votes thereon are duplicative of other Master Ballots. If two or more Master Ballots are inconsistent, the latest Master Ballots actually received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior Master Ballot. If more than one Master Ballot is submitted and the later Master Ballot supplements rather than supersedes the earlier Master Ballot(s), please mark the subsequent Master Ballot with the words "Additional Vote" or such other language as you customarily use to indicate an additional vote that is not meant to revoke an earlier vote; and

h.      Deliver the completed and executed Master Ballot so that it is *actually received* by Epiq Bankruptcy Solutions, LLC on or before the Voting Deadline. For each completed and executed Beneficial Owner Ballot returned to you by a beneficial owner, either forward such Beneficial Owner Ballot (along with your Master Ballot) to Epiq Bankruptcy Solutions, LLC or retain such Beneficial Owner Ballot in your files for at least one year from the Voting Deadline.

If your Master Ballot is damaged or lost or if you did not receive a Master Ballot you may request a replacement by sending a written request to Epiq Bankruptcy Solutions, LLC at the address listed on the prior page, or by calling (866) 329-5543.

**PLEASE NOTE:**

This Master Ballot is not a letter of transmittal and may not be used for any purpose other than to cast votes to accept or reject the Plan. Holders should not surrender, at this time, certificates representing their securities. Epiq Bankruptcy Solutions, LLC will **not** accept delivery of any such certificates surrendered together with this Master Ballot.

No Beneficial Owner Ballot or Master Ballot shall constitute or be deemed a proof of claim, an assertion of a claim, or an admission by the Debtors of the nature, validity or amount of any claim.

No fees or commissions or other remuneration will be payable to any Voting Nominee or other person for soliciting votes on the Plan. We will, however, upon written request, reimburse you for

customary and reasonable mailing and handling expenses incurred by you in forwarding the Beneficial Owner Ballots and other enclosed materials to the beneficial owners of Debentures held by you as a Voting Nominee or in a fiduciary capacity.

---

**NOTHING CONTAINED HEREIN OR IN THE ENCLOSED DOCUMENTS SHALL RENDER YOU OR ANY OTHER PERSON THE AGENT OF ANY DEBTOR OR EPIQ BANKRUPTCY SOLUTIONS, LLC, OR AUTHORIZE YOU OR ANY OTHER PERSON TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF ANY OF THEM WITH RESPECT TO THE PLAN OR DISCLOSURE STATEMENT, EXCEPT FOR THE STATEMENTS CONTAINED IN THE ENCLOSED DOCUMENTS**

---

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE VOTING PROCEDURES, OR IF YOU NEED ADDITIONAL COPIES OF THE MASTER BALLOT, BALLOTS, DISCLOSURE STATEMENT, THE PLAN, OR OTHER RELATED MATERIALS, PLEASE CALL EPIQ BANKRUPTCY SOLUTIONS, LLC AT (866) 329-5543.**

---

# EXHIBIT 4

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
In re:                                    :      Chapter 11
                                          :
LandAmerica Financial Group, Inc., et al.,   :      Case No. 08-35994 (KRH)
                                          :
                            Debtors.      :      (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**BALLOT FOR ACCEPTING OR REJECTING THE JOINT CHAPTER 11 PLAN**
**OF LANDAMERICA FINANCIAL GROUP, INC. AND ITS AFFILIATED DEBTORS**

**BENEFICIAL OWNER BALLOT FOR VOTING the [  %] CONVERTIBLE SENIOR**
**DEBENTURES DUE [20XX] issued by LANDAMERICA FINANCIAL GROUP, INC.**

**(CLASS LFG 3: LFG GENERAL UNSECURED CLAIMS)**
**(CUSIP Number XXXXXXXXX)**

On October 13, 2009, LandAmerica Financial Group, Inc. ("LFG") and its affiliated debtors and debtors in possession (collectively with LFG, the "Debtors") filed the Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and its Affiliated Debtors (as may be amended and/or modified, the "Plan") and the disclosure statement (the "Disclosure Statement") with respect thereto.

On October __, 2009, the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") (i) approved the Disclosure Statement and (ii) authorized the Debtors to solicit votes on the Plan. **Court approval of the Disclosure Statement does not indicate approval of the Plan by the Court.**

If you are a beneficial owner of the [  %] Convertible Senior Debentures due [20XX] issued by LandAmerica Financial Group, Inc. (collectively, the "**Debentures**"), please use this Ballot to cast your vote to accept or reject the Plan dated October 13, 2009.  Capitalized terms used and not otherwise defined herein shall have the meaning set forth in the Plan. The Plan is Exhibit 1 to the Disclosure Statement, dated October 13, 2009, which accompanies this Ballot. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the holders of two-thirds (2/3) in amount and more than one-half (1/2) in number of Claims in each Class that vote on the Plan, and if it otherwise satisfies the requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained (or if a Class of Claims or Interests is deemed to reject the Plan), the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan provides fair and equitable treatment to, and does not discriminate unfairly against, the Class or Classes rejecting it, and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. To have your votes count, you must complete, sign and return this Ballot in accordance with the instructions described below.

---

**IMPORTANT**

**VOTING DEADLINE: YOUR BALLOT MUST BE *RECEIVED* BY THE VOTING AGENT BY 4:00 P.M. (EASTERN TIME) ON <u>NOVEMBER 10, 2009</u>. IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR BROKER, BANK, COMMERCIAL BANK, TRANSFER AGENT, TRUST COMPANY, DEALER OR OTHER NOMINEE (EACH, A "<u>VOTING NOMINEE</u>"), YOU MUST RETURN YOUR BALLOT SO THAT IT IS RECEIVED BY YOUR VOTING NOMINEE IN SUFFICIENT TIME TO SUBMIT IT ON A MASTER BALLOT ON YOUR BEHALF TO THE DEBTORS' VOTING AGENT PRIOR TO THE EXPIRATION OF THE VOTING DEADLINE..**

REVIEW THE ACCOMPANYING DISCLOSURE STATEMENT FOR THE PLAN. DO NOT RETURN ANY SECURITIES WITH THIS BALLOT. This Ballot is ***not*** a letter of transmittal and may not be used for any purpose other than to cast votes to accept or reject the Plan.

---

**HOW TO VOTE**

1.  COMPLETE ITEM 1 (if not already filled out by your Voting Nominee).
2.  Cast your vote either to accept or reject the Plan by checking the proper box in ITEM 2.
3.  Provide the information required by ITEM 3 if applicable to you.
4.  Review the certifications contained in ITEM 4 and ITEM 5.
5.  **SIGN AND DATE THE BALLOT** (unless your Ballot has already been signed or "prevalidated" by your Voting Nominee). Unsigned Ballots will **not** be counted.
6.  PLEASE RETURN YOUR BALLOT TO YOUR VOTING NOMINEE IN SUFFICIENT TIME FOR YOUR VOTING NOMINEE TO PROCESS YOUR BALLOT AND SUBMIT A MASTER BALLOT TO THE VOTING AGENT SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING DEADLINE.
7.  YOU WILL RECEIVE A SEPARATE BALLOT FOR EACH ISSUE OF SECURITIES YOU OWN WHICH ENTITLES YOU TO VOTE TO ACCEPT OR REJECT THE PLAN.
8.  YOU MUST VOTE ***ALL YOUR DEBENTURES EITHER*** TO ACCEPT OR TO REJECT THE     PLAN AND ***MAY NOT SPLIT YOUR VOTE***. EXCEPT IN THE SOLE DISCRETION     OF THE DEBTORS, SPLIT VOTES WILL NOT BE COUNTED.

---

Your authorized signatory may execute this Ballot, but must provide your name and address on this Ballot and may be required to submit evidence to the Bankruptcy Court demonstrating such signatory's authorization to vote on your behalf. Authorized signatories voting on behalf of more than one beneficial owner must complete a separate Ballot for each owner.

You may receive multiple mailings containing Ballots, especially if you own your Debentures through more than one bank, broker, or other intermediary. You should vote each Ballot that you receive for all of the Debentures that you beneficially own.

You must provide all of the information requested by this Ballot. Failure to do so may result in the disqualification of your vote. If your Ballot is damaged or lost or if you did not receive a Ballot you may request a replacement by addressing a written request to the Voting Nominee through which you hold the Debentures.

**Item 1. Principal Amount of Debentures Voted.** The undersigned certifies that as of October 13, 2009, the undersigned was the beneficial owner, or the Voting Nominee of a beneficial owner in the case of pre-validated ballots, of Debentures in the following aggregate unpaid principal amount (insert amount in the box below). If your Debentures are held by a Voting Nominee on your behalf and you do not know the amount, please contact your Voting Nominee immediately.

| $ |
|---|

**Item 2. Vote.** The beneficial owner of the Debentures identified herein votes as follows (check ONE box only—if you do not check a box, or if you check both boxes, your vote will not be counted):

☐ to **Accept** (votes for) the Plan.    ☐ to **Reject** (votes against) the Plan.

*A vote to accept the Plan will be deemed an acceptance of the releases and injunctions contained in Article Fourteen of the Plan.*

**Item 3. Identify All Other Debentures Voted.** By returning this Ballot, the beneficial owner of the Debentures identified herein certifies that (a) this Ballot is the only Ballot submitted for the Debentures owned by such beneficial owner, except for the Debentures identified in the following table, and (b) all Ballots for Debentures submitted by the beneficial owner indicate the same vote to accept or reject the Plan that the beneficial owner has indicated in Item 2 of this Ballot (please use additional sheets of paper if necessary):

<u>ONLY COMPLETE ITEM 3 IF YOU HAVE
SUBMITTED OTHER BALLOTS</u>

| Account Number | Name of Record Holder* | Principal Amount of Other Debentures Voted | CUSIP no. of other Class LFG 3 Debentures Voted |
|---|---|---|---|
|  |  | $ |  |
|  |  | $ |  |
|  |  | $ |  |

\*    Insert your name if the Debentures are held by you in record name or, if held in street name, insert the name of your broker or bank.

**Item 4. Authorization.**  By executing this Ballot, the beneficial owner of the Debentures identified herein (or Voting Nominee of such beneficial owner in the case of pre-validated ballots) certifies that it (a) has full power and authority to execute this Ballot with respect to the Debentures identified herein, (b) was the beneficial owner of the Debentures described herein (or Voting Nominee of such beneficial owner) on and as of October 13, 2009, and (c) has received a copy of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes for the Plan is subject to all the terms and conditions set forth in the Disclosure Statement.

**Item 5. Certifications.**  By returning this Ballot, the beneficial owner of the Debentures identified herein also acknowledges that any securities being offered pursuant to the Plan are not being offered pursuant to a registration statement filed with the Securities and Exchange Commission and represents that any such securities will be acquired for its own account and not with a view to any distribution of such securities in violation of the Securities Act.

By executing this Ballot, the beneficial owner of the Debentures identified herein authorizes and instructs its Voting Nominee (a) to furnish the voting information and the amount of Debentures the Voting Nominee holds on its behalf in a Master Ballot transmitted to the Debtors or their agent (unless this is a prevalidated ballot that is to be forwarded directly to the Voting Agent in accordance with the Voting Nominee's instructions), and (b) to retain this Ballot and related information in its records for at least one year after the Voting Deadline.

Name: _____
                                      (Print or Type)

Social Security or Federal Tax I.D. No.:__
                                      (Optional)

Signature:_____

By:_____
                                      (If Appropriate)

Title:_____
                                      (If Appropriate)

Street Address:_____

City, State, Zip Code:_____

Telephone Number: (___)_____

Date Completed:_____

        No fees, commissions, or other remuneration will be payable to any Voting Nominee or other person for soliciting votes on the Plan. This Ballot shall not constitute or be deemed a proof of claim

3

or equity interest, an assertion of a claim or equity interest, or an admission by the Debtors of the nature, validity or amount of any claim or interest.

Delivery of your Ballot to your Voting Nominee does not constitute a vote on the Plan, which will only be deemed to occur when and if the Voting Nominee through which you hold Debentures timely submits a Master Ballot reflecting all of its beneficial holders' votes.  The Debtors assume no responsibility for any delay or error on the part of any of your Voting Nominees.

Claimants submitting multiple duplicative Ballots in the same Class shall be deemed to have voted in the manner of the last Ballot cast.  If a claimant casts more than one Ballot voting the same Claim(s) which are received by the Balloting Agent on the same day, but which are voted inconsistently, such Ballots will not be counted.  Any Ballot that is illegible or contains insufficient information to permit the identification of the claimant will not be counted.

---

**YOUR VOTE MUST BE FORWARDED IN AMPLE TIME FOR YOUR VOTE TO BE *ACTUALLY RECEIVED* BY THE DEBTORS' VOTING AGENT, EPIQ BANKRUPTCY SOLUTIONS, LLC, BY 4:00 P.M. (EASTERN TIME) ON <u>NOVEMBER 10, 2009</u>, OR YOUR VOTE WILL NOT BE COUNTED. IF THE ENCLOSED ENVELOPE IS ADDRESSED TO YOUR VOTING NOMINEE, MAKE SURE YOUR VOTING NOMINEE RECEIVES YOUR BALLOT IN SUFFICIENT TIME TO SUBMIT IT ON A MASTER BALLOT ON YOUR BEHALF TO THE DEBTORS' VOTING AGENT PRIOR TO THE EXPIRATION OF THE VOTING DEADLINE.**

---

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, OR IF YOU NEED ADDITIONAL COPIES OF THIS BALLOT, THE DISCLOSURE STATEMENT, THE PLAN OR OTHER RELATED MATERIALS OR DOCUMENTS, PLEASE CALL EPIQ BANKRUPTCY SOLUTIONS, LLC AT (866) 329-5543 OR VIA E-MAIL AT landamerica@epiqsystems.com.**

YOU SHOULD REVIEW THE DISCLOSURE STATEMENT AND PLAN CAREFULLY BEFORE YOU VOTE. YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND YOUR CLASSIFICATION AND TREATMENT UNDER THE PLAN.

# EXHIBIT 5

Paul V. Shalhoub (Admitted *Pro Hac Vice*)
Rachel C. Strickland (Admitted *Pro Hac Vice*)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

        - and -

Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 41044)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

Attorneys for the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

-------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case |
| | : | |
| LandAmerica Financial Group, Inc., et al., | : | Case No. 08-035994 (KRH) |
| | : | |
| Debtors. | : | Jointly Administered |

-------------------------------------------------------x

**NOTICE OF**

**(1)  APPROVAL OF DISCLOSURE STATEMENT;**
**(2)  HEARING ON CONFIRMATION OF PLAN;**
**(3)  DEADLINE AND PROCEDURES FOR FILING OBJECTIONS TO
      CONFIRMATION OF PLAN;**
**(4)  TREATMENT OF CERTAIN UNLIQUIDATED OR DISPUTED CLAIMS FOR
      NOTICE, VOTING, AND DISTRIBUTION PURPOSES;**
**(5)  DEADLINE AND PROCEDURES FOR TEMPORARY ALLOWANCE OF
      CERTAIN CLAIMS FOR VOTING PURPOSES;**
**(6)  VOTING RECORD DATE;**
**(7)  VOTING DEADLINE FOR RECEIPT OF BALLOTS; AND**
**(8)  PROPOSED RELEASE, INJUNCTION AND EXCULPATION IN THE PLAN**

**TO ALL CREDITORS AND INTEREST HOLDERS OF LANDAMERICA FINANCIAL GROUP, INC., LANDAMERICA 1031 EXCHANGE SERVICES, INC., AND THEIR AFFILIATED DEBTORS:**

PLEASE TAKE NOTICE that LandAmerica Financial Group, Inc., LandAmerica 1031 Exchange Services, Inc., and their affiliated debtors, debtors and debtors in possession in the above-captioned cases (the "Debtors") are soliciting votes on the Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and its Affiliated Debtors (as may be further amended or modified, the "Plan") from holders of impaired claims who are (or may be) entitled to receive distributions under the Plan.

PLEASE TAKE FURTHER NOTICE that if the Plan is confirmed by the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") the terms of the Plan will be binding on all holders of claims against, and all current and former holders of equity securities and other interests in, the Debtors.

PLEASE TAKE FURTHER NOTICE that the Bankruptcy Court entered an order on [_____], 2009 (the "Solicitation Procedures Order") (Docket No. [_____]) approving the disclosure statement (the "Disclosure Statement") with respect to the Plan and providing, among other things, that:

1. Confirmation Hearing Date.  The hearing to consider confirmation of the Plan (the "Confirmation Hearing"), will commence on **November 18, 2009 at 11:00 a.m. (Eastern)** or as soon thereafter as counsel can be heard, before the Honorable Kevin R. Huennekens, United States Bankruptcy Court for the Eastern District of Virginia, 701 East Broad Street, Room 5000, Richmond, VA 23219.  The Confirmation Hearing may be adjourned from time to time by announcing the adjournment in open court.  The Plan may be further modified, if necessary, under 11 U.S.C. § 1127 before, during, or as a result of the Confirmation Hearing, without further notice to parties in interest.

2. Objections To Confirmation.  **November 10, 2009 at 4:00 p.m. (Eastern)** is the last date and time for filing and serving objections to confirmation of the Plan (the "Objection Deadline").  To be considered, objections, if any, to confirmation of the Plan must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Eastern District of Virginia, (c) set forth the name of the objector and the nature and amount of any claim or interest asserted by the objector against or in the Debtors, their estates, or their property, (d) state with particularity the legal and factual bases for the objection, (e) be filed with the Bankruptcy Court together with proof of service, and (f) be served by personal service, overnight delivery, or first-class mail, so as to be RECEIVED no later than Objection Deadline, upon:

**The Debtors:**

LandAmerica Financial Group, Inc., *et al*.
5600 Cox Road
Glen Allen, Virginia 23060
Attn:   G. William Evans, Chief Financial Officer
        Chad Perrine, Esq.

-and-

Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York  10019-6099
Attn:   Paul V. Shalhoub, Esq.
        Rachel C. Strickland, Esq.

Co-Counsel to the Debtors

-and-

McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
Attn:   Dion W. Hayes, Esq.
        John H. Maddock III, Esq.

Co-Counsel to the Debtors

**The LES Creditors Committee:**

Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201-4675
Attn:   Charles R. Gibbs, Esq.
        Sarah Link Schultz, Esq.

-and-

Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia 23219
Attn:   Lynn Tavenner, Esq.

**The LFG Creditors Committee:**

Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022-4689
Attn:   Jeffrey S. Sabin, Esq.

-and-

LeClair Ryan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23218-2499
Attn:   Bruce H. Matson, Esq.

-and-

**The United States Trustee**

701 East Broad Street, Suite 4304
Richmond, VA 23219
Attn:   Robert B. Van Arsdale, Esq.

**Objections not timely filed and served in the manner set forth above shall not be considered and shall be deemed overruled**.

3. Record Date.  **October 13, 2009** is the record date (the "Record Date") for determining (i) creditors and interest holders entitled to receive Solicitation Packages and other notices and (ii) creditors entitled to vote to accept or reject the Plan.  The proper holder of a docketed proof of claim or scheduled claim will be determined by reference to the claims register of the Voting Agent (as defined herein), as may be modified by Notices of Transfer filed and reflected on the Court's official docket (ECF), at 11:59 p.m. (Eastern) on October 13, 2009, and only those registered holders of claims as reflected on the docket together with the Voting Agent's database on the Record Date will be entitled to vote.  Therefore, (i) the holders of any claims filed and (ii) the transferees of any claims for which Notices of Transfer have been filed after the Record Date will not be entitled to vote.

4. Voting Deadline.  If you hold a claim against the Debtors as of the Record Date, and are entitled to vote to accept or reject the Plan, you have received this Notice with a ballot form and voting instructions applicable to your claim.  For your vote to be counted, ballots must be completed, executed, and RECEIVED by **November 10, 2009 at 4:00 p.m. (Eastern)** (the "Voting Deadline") by Epiq Bankruptcy Solutions, LLC (the "Voting Agent") at:

**LandAmerica Financial Group, Inc.**
**c/o Epiq Bankruptcy Solutions, LLC**
**FDR Station, P.O. Box 5014**
**New York, NY 10150-5014**

Ballots may **NOT** be cast by facsimile transmission or other electronic means.  **Ballots that are not received by the Voting Deadline will not be counted.**

5. Treatment of Certain Claims. Any holder of a claim that is unimpaired under the Plan is deemed to have accepted the Plan and is not entitled to vote on the Plan.  Holders of claims in Class LES 1, Class LES 2, Class LFG 1, Class LFG 2, Class SD 1, and Class SD 2 are unimpaired and their votes will not be solicited.

Any holder of a claim or interest that is impaired and who will not receive or retain any property on account of such claim or interest under the Plan is deemed to have rejected the Plan and is not entitled to vote on the Plan.  Holders of Claims and interests in Class LFG 6 are impaired and will not receive or retain any property under the Plan and their votes will not be solicited.

Any holder of a claim (a) that is either (i) not scheduled or (ii) scheduled in the Debtors' schedules of assets and liabilities, or any amendment thereof (the "Schedules") at zero, as unknown or as disputed, contingent or unliquidated, and (b) that is not the subject of (i) a timely-filed proof of claim filed by the applicable Court-established bar date or (ii) a proof of claim deemed timely filed by an order of the Bankruptcy Court before the Voting Deadline, will not be treated as a creditor with respect to the claim for purposes of (i) receiving notices regarding, or distributions under, the Plan or (ii) voting on the Plan.

Any holder of a claim who is otherwise entitled to vote on the Plan and (a) which is the subject of a timely filed proof of claim or a proof of claim deemed timely filed by an order of the Bankruptcy Court and (b) to which the Debtors have filed an objection to disallow the claim by October 22, 2009, which objection has not been resolved, will have its claim temporarily disallowed for purposes of voting on the Plan, subject to the right of the holder to file a Rule 3018(a) Motion (as defined herein), as set forth below.  The Debtors are required to file an objection to a claim on or prior to October 22, 2009 for such objection to have the effect of disallowing such claim for voting purposes.

Any holder of a claim who is otherwise entitled to vote on the Plan and (a) who timely filed a proof of claim or a proof of claim deemed timely filed by the Bankruptcy Court and (b) whose claim is the subject of an objection seeking to modify such holder's claim in amount or classification by October 22, 2009, which objection has not been resolved, will have such claim allowed temporarily for voting purposes only, and not for purposes of allowance or distribution, in the amount or with the class set forth in the objection.

Any holder of a claim who is otherwise entitled to vote on the Plan and who filed against the Debtors a proof of claim reflecting a claim or portion of a claim that is unliquidated, will have such claim allowed temporarily for voting purposes only, and not for purposes of allowance or distribution, for that portion of the claim that is liquidated and no amount shall be allocated for voting purposes on account of the unliquidated portion. Fully unliquidated claims shall be counted for purposes of determining whether a sufficient number of the allowed claims in the applicable class has voted to accept the Plan, but the allowed amount of the fully unliquidated claim shall be $1.00 for voting purposes, subject to the right of the holder to file a Rule 3018(a) Motion, as set forth below.

6.  Temporary Allowance Of Claims.  If you disagree with the Debtors' classification of, or objection to, your claim and believe that you should be entitled to vote on the Plan, **the Debtors encourage you to contact the Debtors' counsel promptly concerning your request**.

In the event you are not able to reach a consensual resolution with the Debtors, then you must: (i) contact the Voting Agent to obtain a ballot and file the ballot by the Voting Deadline and (ii) timely file and serve a motion for order under Fed. R. Bankr. P. 3018(a) (a "Rule 3018(a)

Motion") seeking temporary allowance of your claim for the purpose of accepting or rejecting the Plan.

The Rule 3018(a) Motion must be filed with the Clerk of the Court on or before **October 30, 2009 at 4:00 p.m. (Eastern)** (the "Rule 3018(a) Motion Deadline") and served so as to be received by the Notice Parties (as defined in the Solicitation Procedures Order) by the Rule 3018(a) Motion Deadline, in accordance with the procedures set forth in the Solicitation Procedures Order.

**Rule 3018(a) Motions that are not timely filed and served in the manner set forth above will not be considered, and the claims referred to therein will not be counted in determining whether the Plan has been accepted or rejected.**

Any party who timely files and serves a Rule 3018(a) Motion in accordance with the paragraph above shall be permitted to cast a provisional vote to accept or reject the Plan. If, and to the extent that, the Debtors and such party are unable to resolve the issues raised by the Rule 3018(a) Motion before the Voting Deadline, then, at the Confirmation Hearing, the Court will determine whether the provisional ballot is to be counted as a vote on the Plan and, if so, in what amount.

7. <u>Release, Injunction and Exculpation in the Plan</u>. The Plan provides for certain releases, injunctions and exculpations of certain parties. The text of the release, injunction and exculpation provisions of the Plan are set forth below.[2]

(i) <u>Injunction</u>. Article 14.3 of the Plan states:

**Upon the entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan provided, however, that nothing contained herein shall preclude the Securities and Exchange Commission from pursuing actions against any Persons, provided, further, nothing herein shall constitute a waiver of any rights or defenses such Persons with respect with such actions, including, but not limited to, defenses related to validity, priority, amount and timeliness of such Claims.**

(ii) <u>Injunction</u>. Article 14.4 of the Plan states:

---

[2]      All capitalized terms used in Section 7 herein shall have the meanings assigned in the Plan.

Except as otherwise provided in this Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against or Interests in the Debtors or the Estates are, with respect to any such Claims or Interests, permanently enjoined after the Confirmation Date from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Post-Effective Date Entities, Post-Effective Date LFG, the Estates, the Trusts or any of their property (including insurance proceeds), or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtors, the Post-Effective Date Entities, Post-Effective Date LFG, the Trusts, or the Estates or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Post-Effective Date Entities, Post-Effective Date LFG, the Trusts, or the Estates or any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; provided, however, that nothing contained herein shall preclude (i) such Persons from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of this Plan, including Section 1.55 of the Plan, or commencing, enforcing, collecting or otherwise recovering on any suit, action or other proceeding that is not an Enjoined Action against Persons other than Debtors, the Post-Effective Date Entities, Post-Effective Date LFG, the Estates, or the Trusts, (ii) the Trustees from pursuing Causes of Action pursuant to the terms of this Plan  which may deplete proceeds of one or more of the Debtors' insurance policies or (iii) the Securities and Exchange Commission from pursuing actions against any Persons, provided, further, nothing herein shall constitute a waiver of any rights or defenses of such Persons with respect with such actions, including, but not limited to, defenses related to validity, priority, amount and timeliness of such Claims.

Except as otherwise provided in this Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against or Interests in the Debtors or the Estates, other than the Debtors, the Post-Effective Date Entities, or the Trustees and the Trusts on behalf of the Debtors or the Post-Effective Date Entities, are enjoined after the Confirmation Date from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any Enjoined Action; (ii) enforcing, levying, attaching

**(including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against any prepetition officer or director of any Debtor, solely in their capacity as such, or any property of any such transferee or successor, each solely in their capacity as such arising from an Enjoined Action; and (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against any prepetition officer or director of any Debtor, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons, arising from an Enjoined Action provided, however, that nothing contained herein shall preclude the Securities and Exchange Commission from pursuing actions against any Persons, provided, further, nothing herein shall constitute a waiver of any rights or defenses such Persons with respect with such actions, including, but not limited to, defenses related to validity, priority, amount and timeliness of such Claims.**

**(c)      By accepting distributions pursuant to this Plan, each holder of an Allowed Claim or Interest will be deemed to have specifically consented to the Injunctions set forth in this Section.**

(iii)  <u>Exculpation</u>.  Article 14.5 of the Plan states:

**As of the Effective Date, the following parties, entities and individuals (in each case, solely in their capacity as such) shall have no liability for any postpetition act taken or omitted to be taken in connection with, or related to the Chapter 11 Cases or formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the consummation of the Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other act taken or omitted on or before the Effective Date to be taken in connection with or in contemplation of the Chapter 11 Cases of the Debtors (other than liability determined by a Final Order of a court of competent jurisdiction for actions or failure to act or disclose amounting to gross negligence, willful misconduct, intentional fraud or criminal conduct):  (i) the Debtors, their directors, officers and employees, and the agents, financial advisors, investment bankers, professionals, accountants and attorneys of the Debtors and their respective partners, owners and members; and (ii) the Creditors Committees, the respective members thereof, and the agents, financial advisors, investment bankers, professionals, accountants and attorneys of the Creditors Committees and their respective partners, owners and members; <u>provided</u>, <u>however</u>, nothing in this Section 14.5 of the Plan shall be deemed to release any act or omission that arose prior to the Petition Date.**

(iv)  <u>Injunction</u>.  Article 14.6 of the Plan states:

**The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released pursuant to Section 14.5 of this Plan.**

**You Are Advised To Carefully Review And Consider The Plan As Your Rights Might Be Affected.**

8. <u>Creditors of Capital Title Group, Inc</u>. On October 12, 2009, Capital Title Group, Inc. ("CTG") filed a chapter 11 bankruptcy petition with the Bankruptcy Court. On October 12, 2009, CTG filed a motion requesting the Bankruptcy Court consolidate for administrative purposes only CTG's bankruptcy case with those of the Debtors. Please be advised that notwithstanding entry of the Solicitations Procedures Order, creditors of CTG may file objections to the adequacy of the Disclosure Statement up and until the Confirmation Hearing.

9. <u>Information And Documents</u>. Copies of the Disclosure Statement, the Plan, and any exhibits thereto are publicly available along with the docket and other case information by accessing the Voting Agent's website at http://chapter11.epiqsystems.com/landamerica and may also be obtained, upon reasonable written request, from the Voting Agent at the address set forth above.

Dated: Richmond, Virginia
October ___, 2009

_____

Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 41044)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

- and -

Paul V. Shalhoub (Admitted *Pro Hac Vice*)
Rachel C. Strickland (Admitted *Pro Hac Vice*)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

Attorneys for the Debtor and
Debtor in Possession

# EXHIBIT 6

LES COMMITTEE
[address]
[telephone]

October ___, 2009

**VIA REGULAR MAIL**

All General Unsecured Creditors (the "Unsecured Creditors") of LandAmerica 1031 Exchange
Services, Inc. ("LES")

> Re:   Case No. 08-35994; *In re LandAmerica Financial Group, Inc.*, et al., in the United
> States Bankruptcy Court, Eastern District of Virginia

Dear Exchange Customers:

Enclosed with this letter is a copy of the Joint Chapter 11 Plan (the "Plan") of LandAmerica
Financial Group, Inc. ("LFG") and its affiliated debtors (collectively, the "Debtors") including
LES along with the accompanying Disclosure Statement (the "Disclosure Statement") and a ballot
(a "Ballot"). These documents are both voluminous and, in some cases, are written in legalese. To
assist you in reviewing these documents and deciding how to vote, this letter contains a brief
discussion regarding the purpose of each of the documents you have received as well as a summary
of the proposed Plan and a discussion of the alternatives considered by the Official Committee of
Unsecured Creditors of LES (the "LES Committee") in deciding to recommend that you vote to
accept the Plan.

The LES Committee strongly urges all LES Unsecured Creditors (which includes all exchangers
and LES "trade" creditors) to vote in favor of the Plan because we believe that:

> ☐ The expected recoveries to LES Unsecured Creditors under the Plan represent the most
> favorable outcome under the circumstances and as compared to other alternatives

> ☐ The Plan provides for the return of exchange funds to the exchangers in the most fair
> and expedited manner possible

> ☐ The Plan contains a mechanism for monetizing currently illiquid assets of LES

> ☐ The Plan provides a mechanism for maximizing the value of the Debtors' insurance
> policies for the benefit of all unsecured creditors of these estates

> ☐ The Plan provides a mechanism for avoiding continuation of expensive and protracted
> litigation, including litigation regarding the inter-company issues between LFG and
> LES and test case litigation involving the exchangers.

**What Do All of These Documents Mean?**

The ***Plan*** is the legal contract that will govern the gathering and distribution of the assets of the
Debtors. If the proposed Plan is approved (or confirmed) by the Bankruptcy Court with respect to
LES, all creditors of LES, including exchangers, will be bound by the terms of the Plan even if
they decided not to vote or voted to reject the Plan.

The **_Disclosure Statement_** is a summary of the events that caused the Debtors to file for chapter 11 protection, the events that have occurred since the Debtors filed for chapter 11, and the material terms of the Plan.  Although we recommend that you read the entire Disclosure Statement, we recommend that you pay special attention to Articles V and VI on pages 87-111.[3]

The **_Ballot_** is the document that allows you to vote to accept or reject the Plan.  If you want your vote to accept or reject the Plan to be counted, you <u>must</u> return your original <u>signed</u> Ballot so that it is received by the Debtors' voting agent (the "Voting Agent") no later than 4:00 p.m. (prevailing Eastern Time) on November 10, 2009.  The Voting Agent <u>will</u> <u>not</u> accept Ballots by email or facsimile.  The Voting Agent's address is:

> LandAmerica Financial Group, Inc., Ballot Processing
> c/o Epiq Bankruptcy Solutions, LLC
> 757 Third Avenue, 3rd Floor
> New York, NY 10017

You should have also received a notice of the **_Confirmation Hearing_** in your packet.  The Bankruptcy Court will hold a hearing on November 18, 2009 beginning at 11:00 a.m. (ET) to determine whether to confirm (or approve) the proposed Plan.  At that time, counsel for the Debtors and each of the LES and LFG Creditors' Committees will present evidence in support of the Plan.

Under the Bankruptcy Code for the Plan to be approved consensually, at least 1/2 in number of voting creditors <u>and 2/3 in amount of such creditors' claims of each class must vote to accept the Plan.  For example, if there is a class with five (5) voting creditors whose claims total $150, at least three (3) creditors with a total of $100 in claims must vote to accept the Plan.</u>

<u>If a class of creditors votes to reject the Plan, the Plan may still be confirmed if (a) at least one class of impaired creditors votes to accept the Plan, and (b) the Debtors can establish that the Plan is fair and equitable.[4]  This "cramdown" right is expressly provided for in the Bankruptcy Code.</u>

**What Does the Plan Say?**

<u>Plan Distributions That We Anticipate Will Be Paid Shortly After Plan Confirmation</u>

Before distributions can be made to LES Unsecured Creditors, the Bankruptcy Code provides that LES must pay certain post-petition expenses, referred to as "Administrative Expenses," in amounts approved by the Bankruptcy Court.  After these Administrative Expenses are paid, we anticipate that LES will have approximately $108.5 million cash on hand.[5]  In addition, the claims of certain

---

[3] References are to the current draft of the Plan and Disclosure Statement filed by the Debtors on October 12, 2009 Docket Nos. 2185 and 2186.

[4] To establish that a plan is fair and equitable to unsecured creditors (like exchangers) the Debtors must show either (a) that the creditors will receive payments equal to the value of their claims, or (b) that no junior creditors or interest holders are receiving anything under the Plan.  11 U.S.C. § 1129(b)(2)(B).  Here, the Debtors meet this requirement with respect to exchangers because junior creditors and interest holders are not receiving anything under the Plan.

[5] This includes cash from accounts designated as segregated accounts and commingled accounts, as well as interest earned on the auction rate securities and cash generated from several settlements during the LES case.

creditors entitled to priority in recovery, including the IRS[6] and the PBGC,[7] must be satisfied before distributions can be made to LES Unsecured Creditors.   In this case, as a result of the settlements negotiated at the Court-ordered mediation,[8] the Plan limits LES's total obligations to pay the claims of the IRS and the PBGC to $5,500,000.[9]   We anticipate that after these obligations are satisfied and $3 million is reserved to fund the LES Trust (discussed below), approximately $100 million in cash will be available for immediate distribution to LES Unsecured Creditors.   Of this cash, the Plan provides (again, as a result of the mediated settlement) for the immediate distribution of (a) the greater of 51% or $50 million to the Segregated Exchangers,[10] and (b) the remainder to other LES Unsecured Creditors (i.e., the Commingled Exchangers[11] and a small amount of "trade" debt[12]).   We believe that this initial distribution will occur on or before December 31, 2009 if the current Plan confirmation timeline is kept.   If these estimates are correct, the cash held by LES that will be available for immediate distribution to Exchangers will be sufficient to satisfy approximately 70% of the principal claims[13] asserted by Segregated Exchangers and 25% of the principal claims asserted by Commingled Exchangers.[14]   None of the cash will be used to satisfy the LFG estate's alleged $65 million claim for cash transferred from LFG to LES.[15]

<u>Anticipated Longer Term Distributions</u>

At the mediations, the parties settled claims between LES and LFG, resolved how to jointly pursue third-party claims held by both LES and LFG to maximize recoveries, and resolved how to share

---

[6] The IRS filed a proof of claim against LES in the amount of $127,889.14.  Additionally, because the Debtors were part of a consolidated tax group pre-petition, LFG has asserted that LES may also be responsible for certain of the Debtors' collective liabilities to the IRS.  The IRS has asserted claims of more than $55 million for such potential liabilities.

[7] The Pension Benefit Guaranty Corporation ("PBGC") filed proofs of claim against LES in the aggregate amount of $35,700,000.00.

[8] Counsel to the Debtors and counsel and members of the LES and LFG Committee participated in phase I of the mediation (which addressed the disputes between LFG and LES).  In addition to these parties, lawyers who have asserted they represent approximately 100 individual Commingled Exchangers as well as several of their clients and lawyers representing one Segregated Exchanger and their client participated in phase II of the mediation (which addressed the allocation of LES assets between Segregated Exchangers and Commingled Exchangers).

[9] The amount to be distributed on account of the claim of the PBGC against LES is the lesser of: (a) $5 million or (b) 25% of any amount paid by the Debtors on account of allowed claims of the PBGC.  To the extent the IRS has an allowed claim against the Debtors' consolidated tax group, LES is obligated to pay $500,000 on account of such claim.  If the IRS or PBGC has an allowed claim against LES in excess of these stated amounts, LFG has agreed to indemnify LES on a dollar-for-dollar basis.

[10] According to the Debtors' schedules, on the day LES filed chapter 11, there were approximately $76.5 million of principal claims held by Segregated Exchangers.

[11] According to the Debtors' schedules, on the day LES filed chapter 11, there were approximately $191.5 million of principal claims held by Commingled Exchangers.

[12] Based on a review of the timely filed proofs of claim, we believe trade claims to be approximately $4.2 million (inclusive of the $3.2 million claim asserted by LFG and discussed in footnote 13 herein).

[13] Principal claims are defined by the Plan to mean the principal amount of the exchange funds received by LES from an exchanger, including accrued interest, if any, if specifically provided for in the relevant exchange agreement.

[14] These are current estimates only.

[15] In addition to the alleged claim for $65 million for cash transferred from LFG to LES, LFG has asserted a claim in the amount of approximately $3.2 million for LES operating expenses paid by LFG.  The financial advisor for the LES Committee has reviewed the $3.2 million claim for operating expenses and has determined that such claim is likely valid.  As a result, the LFG claim against LES for $3.2 million, which is defined as the "Operating I/C Claim" in the Plan, will be paid the same way other "trade" claims against LES will be paid.

any recoveries between the creditors of LES and LFG.[16]  As a result of the mediations, the Plan creates two litigation trusts:  one for LES and one for LFG (the "LES Trust" and the "LFG Trust," and together, the "Trusts").  The LES Trust will be administered by an independent trustee selected by the LES Committee and the LFG Trust will be administered by an independent trustee selected by the LFG Committee (collectively, the "Trustees").  Each of the Trustees will be supervised by oversight committees[17] and will select their own post-confirmation counsel.[18]

The LES Trust will be responsible for prosecuting causes of action related to the auction rate securities ("ARS") that could be asserted by either LES or LFG.  The law firm of Jenner & Block has been retained to pursue the ARS litigation and prepare the case to be filed; they have begun their analysis of causes of action related to the ARS.  Any proposed settlement and/or resolution of the causes of action related to the ARS must be approved by the Bankruptcy Court.

The LFG Trust will be responsible for prosecuting causes of action against the Debtors' directors and officers and other professionals that relate to bad acts that occurred prior to the Debtors' chapter 11 cases that could be asserted by either LES or LFG.  Any proposed settlement and/or resolution of these causes of action must be approved by the Bankruptcy Court.

Any money obtained from recoveries (the "Proceeds")[19] under any of these causes of action, it will be distributed in the following order:

- ☐  ***First***, $8 million of the Proceeds will be distributed to the LFG Trust

- ☐  ***Second***, $65 million of Proceeds will be distributed to the LES Trust

- ☐  ***Third***, $3 million of Proceeds will be distributed to the LFG Trust

- ☐  ***Fourth***, 65% of the next $159 million of Proceeds will be distributed to the LES Trust, and the remaining 35% of such Proceeds will be distributed to the LFG Trust

- ☐  ***Fifth***, any Proceeds received in excess of $235 million will be split evenly (i.e., 50% each) between the LES Trust and the LFG Trust

---

[16] When LFG filed chapter 11, it owed non-insider creditors approximately $1.3 billion.  Any recoveries paid to the LFG estate will go to LFG's non-insider creditors.

[17] The oversight committee for the LES Trust will be made up of exchangers.

[18] It is not currently contemplated that Akin Gump Strauss Hauer & Feld LLP will serve as counsel to the LES Trust (aside from providing transition services).

[19] The LFG estate receives a portion of the Proceeds because, among other reasons, (a) it contributed causes of actions that are unique to the LFG estate including claims related to the auction rate securities; (b) the Proceeds are anticipated to include recoveries from available insurance proceeds under insurance policies that would be available to satisfy claims of both the LFG and the LES estate; and (c) it agreed to delay its recovery on account of the $65 million transferred from LFG to LES and not seek such recovery from LES's liquid assets (absent this agreement the LES estate would have likely incurred significant cost in connection with any effort to subordinate or recharacterize this claim asserted by LFG and defend against LFG's claim that the transfer was a fraudulent conveyance).

Any Proceeds received by the LES Trust pursuant to the splits described above and monies from any other assets monetized by the LES Trust[20] will then be distributed to the Unsecured Creditors of LES as follows:[21]

☐ *First*, 25% to the Segregated Exchangers and 75% to other LES Unsecured Creditors until the Segregated Exchangers have received 100% of their principal claims

☐ *Second*, 100% to the Commingled Exchangers and trade creditors until the Commingled Exchangers have received 100% of their principal claims

☐ *Third*, to the holders of allowed claims against LES based on damages caused by the failure to complete their exchange ("LES Damage Claims") on a pro rata basis[22]

What does all of this mean for you?  In addition to the $100 million initial cash distribution discussed above, LES Unsecured Creditors will receive in excess of $167 million of the first $233 million of any Proceeds received by the Trusts in connection with the prosecution of the various causes of action described above.  In other words, if the Trusts obtain $233 million in net Proceeds and if our estimated cash available for distribution is correct, Segregated Exchangers and Commingled Exchangers will recover approximately 100% of their principal claims.

We cannot predict with any certainty how long it will take the LES Trust and the LFG Trust to resolve the causes of action discussed above, nor the amount of total Proceeds.  We would note, however, that because the Plan proposes to pool the Proceeds for distribution between the LES and LFG estates, LES Unsecured Creditors now have multiple sources of potential recovery (previously the LES Unsecured Creditors could only look to those causes of action that could be brought by LES).

Claims of Exchangers with Notes

Certain exchangers' exchange transaction included a note or similar instrument as some or all of the consideration ("Note Exchangers").  The collection of each Note Exchanger's note will be addressed on an individualized basis.  To the extent that each Note Exchanger's note is collected, the Note Exchanger will receive a distribution similar to that described above for Segregated Exchangers.[23]

Guaranty Claims Against LFG

Exchangers with a claim (the "Guaranty Claims") against LFG based on a written guarantee agreement with LFG (the "Guaranty Exchangers") will have allowed claims against LFG. Exchangers who have asserted guarantee claims against LFG but who do not have a written guarantee agreement will not have an allowed claim against LFG.  The aggregate total of written

---

[20] The LES Trust has also retained the right to pursue claims of LES against the insurers that issued certain 2008 errors and omission insurance policies and certain avoidance actions.

[21] The LES Trust will also retain certain other assets, including causes of action to compel the return of payments made to exchangers during the 90 days prior to LES filing for chapter 11 relief.  It is important to note that to the extent an exchanger who is a current Unsecured Creditor of LES votes to accept the Plan, the LES Trust will not pursue such causes of action against that exchanger.

[22] *See* Article XI of the Plan.

[23] *See* Section 1.151 and Section 5.5 of the Plan.

Guaranty Claims held by Segregated Exchangers is limited to $8.2 million. The aggregate total of written Guaranty Claims held by Commingled Exchangers is limited to $6.4 million.

If Guaranty Exchangers vote to accept the Plan, they may also elect to receive a distribution equal to 30% of their Guaranty Claim when initial distributions are made.[24] If a Guaranty Exchanger does not make this election, the Guaranty Exchanger will receive distributions on account of its Guaranty Claim at the same time other creditors of LFG receive distributions.[25] We cannot predict with any certainty when such distribution may be made by the LFG Trustee and/or whether such distributions will be greater or less than 30%.

Release of Avoidance Actions Against Exchangers

The Bankruptcy Code provides that in certain circumstances payments made before a company files chapter 11 may be recovered, or "clawed" back, by the Debtors.[26] If the Plan is approved, the LES Trustee will decide, with guidance from the oversight committee, if such action will be pursued. To encourage exchangers to vote for the Plan, the Plan prohibits the LES Trustee from initiating avoidance actions against exchangers who vote in favor of the Plan.[27] This provision is not intended to penalize exchangers.

Injunction Against Individual Actions

To ensure that LES assets are distributed equitably among all LES exchangers, the Plan proposes to temporarily stop individual creditors of any of the Debtors and shareholders of LFG from asserting claims against the Debtors' directors and officers if such claims would deplete the Debtors' insurance policies.[28] Additionally, the temporary injunction recognize that both LES creditors and LFG creditors have asserted an interest in many of the same assets – including certain litigation and the insurance policies. This temporary injunction is intended to prevent the proceeds of the Debtors' insurance policies from being depleted on a first come-first serve basis.

In any action brought against the Debtors' directors and officers, the directors and officers likely will be entitled to reimbursement from the Debtors' insurance companies for the cost of defending actions brought by the Trusts, as well as any actions brought by individual creditors or shareholders. Since the insurance policies contemplate the advancement of legal costs to defend causes of action against directors and officers, we believe the available policy proceeds could be significantly depleted by many millions of dollars in defense costs if individual claims are allowed to proceed against directors and officers in multiple forums. Reimbursements paid to a director or officer for defense costs would therefore reduce the amount of insurance coverage available to satisfy any judgment obtained against such director or officer. As a result, without the temporary injunction serving to limit and control the number of actions brought against directors and officers, a substantial portion of the proceeds of the Debtors' insurance policies would be

---

[24] *See* Section 1.126 and Section 5.10 of the Plan.

[25] *See* Section 5.10 of the Plan.

[26] *See* Article VII of the Disclosure Statement.

[27] *See* Section 14.9 of the Plan. Only exchangers who are currently owed money by LES are entitled to vote to accept or reject the Plan.

[28] In connection with the Plan, certain of the Debtors' pre-petition officers and directors have entered into a tolling agreement designed to protect the enjoined direct claims of Exchangers from being lost to a statute of limitations defense.

utilized to pay for defense costs incurred in multiple lawsuits filed around the country, therefore leaving less to distribute to the creditors of these estates.

**Why is the Plan More Favorable Than the Alternatives?**

The LES Committee believes that the Plan proposed is more favorable to LES Unsecured Creditors than other alternatives.

What if Exchange Funds Were Not Property of the LES Estate?  As you are aware, the LES Committee (along with the Debtors and the LFG Committee) argued that all funds deposited in LES bank accounts on the Petition Date were the property of the LES Estate and, as a result, this money should be available to satisfy the claims of all LES creditors.  Many parties argued that exchanger funds deposited in LES bank accounts were the property of individual exchangers and that such funds were held in an express or resulting trust.

In the case of the Segregated Exchangers, the Creditors Committees and LES alleged that based on the plain reading of the Exchange Agreement, Segregated Exchangers are unable to establish that LES and the Segregated Exchangers intended to create a trust relationship.  The LES Creditors Committee's decision to pursue these legal arguments was based in part on its belief that (a) pursuant to the governing contracts, legally no trust (or bailment) relationship was formed between LES and the Segregated Exchangers,[29] and (b) a determination that segregated test case plaintiff Millard's funds were not property of the LES Estate would have been prejudicial to creditors as a whole, especially the Commingled Exchangers.  In particular, if the Segregated Exchange Funds were paid to the Segregated Exchange Customers, this would have resulted in disproportionately large recoveries to Segregated Customers from the limited LES cash available as compared to the Commingled Exchange Customers who could not trace Exchange Funds and would have been left with no or de minimis distributions from the LES Estate's cash assets.[30]

In the case of the Commingled Exchangers, LES and the Creditors Committees argued that the plaintiffs were not able to establish that the parties intended to create a trust relationship.  LES and the Creditors Committees also argued that LES did not hold the funds associated with commingled test case plaintiff Luxenberg's exchange in an escrow and that those funds could not be excluded from the LES Estate pursuant to federal common law.  Furthermore, as a result of the extensive commingling of funds, the Commingled Exchangers were unable to trace their specific funds.  The LES Creditors Committee's decision to pursue these arguments was based on its belief that (a) pursuant to the governing contracts, legally no trust or escrow relationship was formed between LES and the Commingled Exchangers, and (b) even if the Commingled Exchangers were successful in establishing that the parties intended to create a trust or escrow relationship, they could not trace their specific funds, therefore resulting in no recovery to the Commingled Exchangers.  It was bolstered by the fact that in the event that the Commingled Funds were determined to not be assets of the LES Estate, Exchangers would be left to fight over the same

---

[29] To establish an express trust, one must show that the parties to the alleged trust affirmatively intended to create a trust.  This intent includes the intent for the trustee to have fiduciary duties to the beneficiary and for the beneficiary to maintain equitable ownership over the trust res.  A resulting trust, like an express trust, also requires an intent to create a trust; however, the intent may be inferred from the circumstances surrounding the transaction.

[30] Specifically, Segregated Exchangers would have received $71 million from the cash on hand in full satisfaction of their principal claims.

assets in multiple different venues, with no equitable way of marshalling and distributing these assets, and leaving open the very real possibility of disproportionate recoveries among Exchangers.

What About a Chapter 11 Trustee?  Some exchangers have asked why the LES Committee did not seek the appointment of a chapter 11 trustee.  The LES Committee believes that the appointment of a chapter 11 trustee would result in significant additional professional fees and may have significantly delayed LES's exit from chapter 11.[31]  Additionally, the United States Trustee advised that even if he was inclined to appoint a chapter 11 trustee for LES, he was not inclined to appoint a chapter 11 trustee for LFG.  This would have resulted in LES having a new party with new counsel trying to "catch up" while LFG would still be operated by and represented by the same people.  The LES Committee believes this may have disadvantaged LES creditors.

Distribution of the ARS  Some exchangers have suggested that LES distribute the ARS directly to exchangers in full or partial satisfaction of their claims.  There are several reasons that this will not work.  Certain of the contracts governing the ARS prevent the ARS from being divided into smaller pieces that could be distributed to the Unsecured Creditors and/or prevent individuals from holding the ARS.  Further, as discussed in additional detail in Article III of the Disclosure Statement, the ARS held by LES are subordinate in right of payment to certain other ARS.  As a result of this subordinated status, there is a possibility that upon maturity, the holders of subordinated ARS will receive little or no return on their investment.  Finally, although the repayment of the student loans underlying the ARS held by LES is guaranteed by the federal government, the repayment of the ARS themselves are not guaranteed.  In other words, even if it were possible to distribute the ARS to exchangers, it is possible that it would take longer for exchangers to recover any money and the recoveries may be less than the Plan will provide.

Inter-Estate Settlement  We also believe that entering into a settlement regarding the priority and right to distribution with respect to claims asserted by LFG against the LES estate is in the best interest of LES Unsecured Creditors.  As a result of the settlement, LFG is not receiving any of the cash currently held by LES.  Without a settlement, expensive and time consuming litigation would have ensued over whether to recharacterize and/or subordinate the $65 million claim asserted by LFG against LES as well as whether the funds advanced by LFG to LES could be recovered by LFG as a fraudulent conveyance.

The inter-estate settlement also limits potential LES liability to the IRS and the PBGC to no more than $5.5 million.  Absent this settlement, because LES is part of the Debtors' control group, LES's liabilities to the IRS and PBGC could have been much higher.

In addition to resolving the dispute referenced above, it is possible that significant litigation would have likely occurred between LES and LFG to determine which estates' creditors were entitled to pursue various causes of action related to the ARS or against the pre-petition directors and officers and professionals common to both estates.

---

[31] Chapter 11 trustees typically receive a percentage of all cash distributed to creditors.  This fee ranges between 1% and 3%.  In a case like this, the chapter 11 trustee would also likely seek to retain professional advisors including, but not limited to, attorneys and accountants.  These fees would be in addition to the fees incurred by the professionals retained by the debtor in possession.

Each of these disputes would be expensive and would significantly delay the Debtors' exit from chapter 11. Finally, absent such settlement, LES Unsecured Creditors would not be entitled to any distributions based on causes of action that belong solely to the LFG estate.[32]

<u>Injunction</u>  Finally, we believe that the injunction proposed by the Plan, which was an important part of the mediated settlements, is essential to ensuring that all Unsecured Creditors of LES receive the maximum recovery possible.  Without the injunction, a significant amount of time and money would be spent attempting to gather the Debtors' assets and defend against myriad claims filed by individual creditors and shareholders against the Debtors' directors and officers.  With the injunction in place, the Trusts will be able to pursue causes of action on behalf of all unsecured creditors of the Debtors' estates and distribute the Proceeds to such creditors in a fair and equitable manner, rather than have an inordinate amount of the insurance proceeds depleted by multiple lawsuits in multiple forums proceeding at the same time against the directors and officers.  (This would include exchangers racing to the courts and potentially depleting insurance policies.)  Additionally, to ensure that direct claims against officers and directors are preserved (a) certain of the Debtors' pre-petition officers and directors have entered into a tolling agreement with respect to the statute of limitations for such actions, and (b) with respect to those pre-petition officers and directors who did not sign the tolling agreement, creditors may bring such actions within thirty (30) days of the statute of limitation.[33]

The LES Committee believes that the proposed Plan embodies the most favorable result for the Unsecured Creditors of LES given the circumstances of the Debtors' chapter 11 cases.  If the Plan is not accepted, the agreements reached in mediation will not be enforceable, leaving many time consuming and expensive issues to resolve before LES will be able to exit chapter 11 and exchangers will receive distributions.  Accordingly, the LES Committee urges each Unsecured Creditor of LES to complete and return a ballot voting ***in favor of*** the Plan.  If you have any questions about completing your Ballot, please contact the Voting Agent at [____].

Sincerely,

LES Committee

---

[32] Recall that the proceeds of <u>all</u> causes of action related to the ARS and to the pre-petition misconduct of LES and LFG directors, officers and professionals that are recovered by the LES Trust and the LFG Trust will be placed into a single pot for distribution between the LES Trust and the LFG Trust, based on the waterfall described above.
[33] *See* Section 1.60 of the Plan.

bcc:    LES Committee
       Charles R. Gibbs

       Lynn Tavenner
       Robert Smith

# EXHIBIT 7

The Official Committee of Unsecured
Creditors of LandAmerica Financial Group, Inc.

October 14, 2009

**VIA REGULAR MAIL**

All General Unsecured Creditors of LandAmerica Financial Group, Inc. ("LFG")

> Re:     *In re LandAmerica Financial Group, Inc., et al.*
>         Case No. 08-35994
>         United States Bankruptcy Court, Eastern District of Virginia

Dear General Unsecured Creditors of LandAmerica Financial Group, Inc.:

The Official Committee of Unsecured Creditors of LFG (the "LFG Committee") is writing this letter to encourage you to **Vote For And Accept** the Joint Chapter 11 Plan (the "Plan") of LandAmerica Financial Group, Inc. ("LFG") and its affiliated debtors (collectively, the "Debtors"). The LFG Committee supports the plan and strongly recommends that all General Unsecured Creditors of LandAmerica Financial Group, Inc. ("Unsecured Creditors") vote to accept the plan in accordance with the instructions set forth on their ballots.[34]

Enclosed with this letter is a copy of the Plan along with the accompanying Disclosure Statement (the "Disclosure Statement") and a ballot (a "Ballot"). To assist you in reviewing these documents, we provide a brief description of each of the documents as well as a summary of the Plan. The LFG Committee has expended significant effort investigating the acts, conduct, assets, liabilities, and financial condition of the Debtors and numerous other matters relevant to the formulation of the Plan for the Debtors. Further, the LFG Committee participated in two mediations with the Debtors and the Official Committee of Unsecured Creditors of LandAmerica 1031 Exchange Services, Inc. ("LES Committee") which hastened the resolution of many inter-estate issues and led to the formulation of the Plan. Based on these activities, the LFG Committee believes that:

- The expected recoveries to LFG Unsecured Creditors under the Plan represent the most favorable outcome under the circumstances as compared to other alternatives;

- The Plan provides for the recovery of claims of unsecured creditors in the most fair and expedited manner possible;

- The Plan contains a mechanism for monetizing currently contingent assets of LFG and its subsidiary debtors;

- The Plan provides a mechanism for maximizing the value of the Debtors' insurance policies for the benefit of all unsecured creditors of these estates; and

---

[34] Each Unsecured Creditor must, however, make its own independent decision as to whether the Plan is acceptable to that Unsecured Creditor before voting to accept or reject the Plan.

- The Plan provides a mechanism for avoiding continuation of expensive and protracted litigation, including litigation regarding the inter-company issues between LFG and LandAmerica 1031 Exchange Services, Inc. ("LES") and test case litigation involving LES 1031 exchangers.

**Explanation of Enclosed Documents**

The Plan is the legal contract that will govern the assembly and distribution of the assets of the Debtors. If the Plan is approved (or confirmed) by the Bankruptcy Court, all creditors of LFG will be bound by the terms of the Plan even if they decided not to vote or voted to reject the Plan.

The Disclosure Statement is a summary of the events that caused the Debtors to file for chapter 11 protection, the events that have occurred since the Debtors filed for chapter 11, and the material terms of the Plan. Although you should read the entire Disclosure Statement, we recommend that you pay special attention to Articles II (recovery analysis) and XI (risk factors).

The Ballot is the document that allows you to vote to accept or reject the Plan. If you want your vote to accept or reject the Plan to be counted, you must return your original signed Ballot so that it is received by the Debtors' voting agent (the "Voting Agent") no later than **November 10, 2009**. If you are a holder of a convertible note, there are special procedures that are otherwise contemplated by the enclosed solicitation materials. Please read the solicitation materials carefully. The Voting Agent will not accept Ballots by email or facsimile. The Voting Agent's address is:

> LandAmerica Financial Group, Inc., Ballot Processing
> c/o Epiq Bankruptcy Solutions, LLC
> 757 Third Avenue, 3rd Floor
> New York, NY 10017

LES Exchangers with a claim (the "Guaranty Claims") against LFG based on a written guarantee agreement executed by LFG (the "Guaranty Exchangers") will have allowed claims against LFG, designated as LFG Class 4. Exchangers who have asserted guarantee claims against LFG but who do not have a written guarantee agreement will not have an allowed claim against LFG.

Guaranty Exchangers have a special Ballot. If Guaranty Exchangers vote to accept the Plan (and do not object to the Plan), they may also elect to receive a distribution equal to 30% of their Guaranty Claim when initial distributions are made, provided they assign any claims to the LFG Trust as indicated on their Ballot. To receive this 30% cash distribution, a Guaranty Exchanger must note such election on the Ballot for LFG Class 4 creditors. If a Guaranty Exchanger does not make this election, the Guaranty Exchanger will receive distributions on account of its Guaranty Claim at the same time other creditors of LFG receive distributions. We cannot predict with any certainty when such distribution may be made by the LFG Trustee and/or whether such distributions will be greater or less than 30%.

The Bankruptcy Court will hold a hearing on **November 18, 2009**, beginning at **11:00 a.m. (EST)** to determine whether to approve (or confirm) the proposed Plan. At that time, counsel for the Debtors and each of the Creditors' Committees will present evidence in support of the Plan.

Under the Bankruptcy Code for the Plan to be approved consensually, at least 1/2 in number of voting creditors and 2/3 in amount of such creditors' claims of each class must vote to accept the Plan. For example, if there is a class with five (5) voting creditors whose claims total $150, at least three (3) creditors with a total of $100 in claims must vote to accept the Plan.

If a class of creditors votes to reject the Plan, the Plan may still be confirmed if (a) at least one class of impaired creditors votes to accept the Plan, and (b) the Debtors can establish that the Plan is fair and equitable.  This "cramdown" right is expressly provided for in the Bankruptcy Code.

**Summary of the Plan Provisions**

Plan Distributions

Pursuant to and in accordance with the Liquidation Analysis attached as Exhibit 4 to the Disclosure Statement, the Plan provides for an **estimated** distribution to LFG Class 3 of 28.3% and LFG Class 4 of 31%.  This distribution depends on several factors including the ultimate total amount of Allowed claims as well as recoveries by the LFG Trustee in certain litigation described in Article VIII of the Plan and Article VII of the Disclosure Statement.  If the current Plan confirmation timeline is kept, we believe an initial distribution to Allowed claims will occur on or before December 31, 2009.

The Liquidating Trusts

At the mediations, the parties settled claims between LES and LFG, resolved how to jointly pursue third-party claims held by both LES and LFG to maximize recoveries, and resolved how to share any recoveries between the creditors of LES and LFG.  As a result of the mediations, the Plan creates two litigation trusts: one for LES and one for LFG (the "LES Trust" and the "LFG Trust,").  The LFG Trust will be administered by an independent trustee selected by the LFG Committee, and the LES Trust will be administered by an independent trustee selected by the LES Committee (collectively, the "Trustees"). Each of the Trustees will be supervised by oversight committees and will select their own post-confirmation counsel.

The LFG Trust will be responsible for prosecuting, among potentially others, causes of action against the Debtors' directors and officers and other professionals (the "D & O Claims") that relate to bad acts that occurred prior to the Debtors' chapter 11 cases that could be asserted by either LES or LFG. Any proposed settlement and/or resolution of these causes of action must be approved by the Bankruptcy Court.  The LFG Creditors Committee, with the Debtor's consent, has selected Bruce H. Matson of LeClairRyan, A Professional Corporation, to serve as the LFG Trustee.

The LES Trust will be responsible for prosecuting causes of action related to the auction rate securities (the "ARS Claims") that could be asserted by either LES or LFG. Any proposed settlement and/or resolution of the causes of action related to the ARS must be approved by the Bankruptcy Court.  The LES Creditors Committee, with the Debtor's consent, has selected Gerard A, McHale, Jr., to serve as the LES Trustee.

As money is obtained from the prosecution and/or settlement of the D & O Claims and/or the ARS Claims, such proceeds shall be shared between the LFG Trust and the LES Trust, for distribution to creditors, as detailed in Article IX of the Plan.  In addition to these proceeds, creditors of LFG shall receive their pro rata share of the proceeds from other assets of LFG, consisting primarily of other potential litigation claims, recovery on intercompany claims against subsidiaries of LFG, and the liquidation of miscellaneous remaining assets.

We cannot predict with any certainty how long it will take the LFG Trust and the LES Trust to resolve the causes of action discussed above, nor the amount of total Proceeds.

<u>Injunction Against Individual Actions</u>

To ensure that LFG assets are distributed equitably among all LFG Creditors, the Plan proposes to temporarily stop individual creditors of any of the Debtors and shareholders of LFG from asserting claims against the Debtors' directors and officers if such claims would deplete the Debtors' insurance policies. Additionally, the temporary injunction recognizes that both LES creditors and LFG creditors have asserted an interest in many of the same assets — including certain litigation and the insurance policies. This temporary injunction is intended to prevent the proceeds of the Debtors' insurance policies from being depleted on a first come-first served basis.

In any action brought against the Debtors' directors and officers, the directors and officers likely will be entitled to reimbursement from the Debtors' insurance companies for the cost of defending actions brought by the Trusts, as well as any actions brought by individual creditors or shareholders. Since the insurance policies contemplate the advancement of legal costs to defend causes of action against directors and officers, we believe the available policy proceeds could be significantly depleted by many millions of dollars in defense costs if individual claims are allowed to proceed against directors and officers in multiple forums. Reimbursements paid to a director or officer for defense costs would therefore reduce the amount of insurance coverage available to satisfy any judgment obtained against such director or officer. As a result, without the temporary injunction serving to limit and control the number of actions brought against directors and officers, a substantial portion of the proceeds of the Debtors' insurance policies would be utilized to pay for defense costs incurred in multiple lawsuits filed around the country, therefore leaving less to distribute to the creditors of these estates.

The LFG Committee believes that the Plan embodies the most favorable result for the Unsecured Creditors of LFG given the circumstances of the Debtors' chapter 11 cases. If the Plan is not accepted, the agreements reached in mediation will not be enforceable, leaving many time consuming and expensive issues to resolve before LFG will be able to exit chapter 11 and creditors will receive distributions. Accordingly, the LFG Committee urges each Unsecured Creditor of

LFG to complete and return a ballot voting ***in favor of*** the Plan. If you have any questions about completing your Ballot, please contact the Voting Agent.

Sincerely,


Jeffrey S. Sabin
Counsel for the Official Committee of Unsecured
Creditors of LandAmerica Financial Group, Inc.

# EXHIBIT 8

Paul V. Shalhoub (Admitted *Pro Hac Vice*)
Rachel C. Strickland (Admitted *Pro Hac Vice*)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

      - and -

Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 41044)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

Attorneys for the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case |
| | : | |
| LandAmerica Financial Group, Inc., et al., | : | Case No. 08-035994 (KRH) |
| | : | |
| Debtors. | : | Jointly Administered |

------------------------------------------------------x

**NOTICE OF NON-VOTING STATUS WITH
RESPECT TO CERTAIN CLAIMS AND INTERESTS**

     PLEASE TAKE NOTICE that the Bankruptcy Court entered an order on [_____], 2009 (the "Solicitation Procedures Order") (Docket No. [_____]) approving the disclosure statement (the "Disclosure Statement") with respect to the Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and its Affiliated Debtors (the "Plan")[35] filed by the debtors and debtors in possession in the above-captioned cases (the "Debtors") and (ii) authorizing the Debtors to solicit votes on the Plan.

     PLEASE TAKE FURTHER NOTICE that, under the Solicitation Procedures Order, the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and the Plan, holders of claims or interests that are "impaired" as defined in section of the 1124

---

[35]     Unless otherwise defined herein, capitalized terms have the meanings ascribed to them in the Plan.

Bankruptcy Code and will not receive or retain any property under the Plan are deemed to reject the Plan and are not entitled to vote.

PLEASE TAKE FURTHER NOTICE that holders of interests in Class LFG 6 (LFG Equity Interests) are impaired and will not receive or retain any property under the Plan on account of such interests. Accordingly, holders of interests in Class LFG 6 are not entitled to vote on the Plan, and such Class is deemed to have rejected the Plan. Article 5.12 of the Plan governs the treatment of Class LFG 6.

PLEASE TAKE FURTHER NOTICE that certain claims are subject to objections or may be subject to future objections to disallow such claims, which objections may still be pending as of the Voting Deadline (as defined herein) (the "Disputed Claims"). Pursuant to the Solicitation Procedures Order, holders of Disputed Claims are not entitled to vote to accept or reject the Plan.

PLEASE TAKE FURTHER NOTICE that claims in Classes LES 1 (LES Priority Non-Tax Claims), LES 2 (LES Secured Claims), LFG 1 (LFG Priority Non-Tax Claims), LFG 2 (LFG Secured Claims), SD 1 (Subsidiary Priority Non-Tax Claims), and SD 2 (Subsidiary Secured Claims) are deemed to accept the Plan (the "Deemed Accepting Claims") and are not entitled to vote.

**PLEASE TAKE FURTHER NOTICE that you have been identified as the holder of (i) an LFG Equity Interest in Class LFG 6, (ii) a Disputed Claim, or (iii) a Deemed Accepting Claim. Accordingly, you are not entitled to vote on the Plan. The Debtors therefore will not solicit your vote, and you will not receive a ballot with respect to your impaired claim or interest.**

Accordingly, this may be the final notice you receive with respect to the Plan and with respect to your impaired claim or interest. Although you will not be entitled to vote on the Plan with respect to your impaired claim or interest, you are a party in interest in the Debtors' Chapter 11 Cases. Accordingly, you are entitled to participate in the Chapter 11 Cases, including by filing objections to confirmation of the Plan, as set forth below.

## CONFIRMATION HEARING AND CONFIRMATION OBJECTIONS

PLEASE TAKE FURTHER NOTICE THAT the hearing to consider confirmation of the Plan (the "Confirmation Hearing"), will commence on **November 18, 2009 at 11:00 a.m. (Eastern)** or as soon thereafter as counsel can be heard, before the Honorable Kevin R. Huennekens, United States Bankruptcy Court for the Eastern District of Virginia, 701 East Broad Street, Room 5000, Richmond, VA 23219. The Confirmation Hearing may be adjourned from time to time by announcing the adjournment in open court. The Plan may be further modified, if necessary, under section 1127 of the Bankruptcy Code before, during, or as a result of the Confirmation Hearing, without further notice to parties in interest.

PLEASE TAKE FURTHER NOTICE THAT **November 10, 2009 at 4:00 p.m. (Eastern)** is fixed as the last date and time for filing and serving objections to confirmation of the Plan (the "Objection Deadline"). To be considered, objections, if any, to confirmation of the Plan must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy

Rules for the Eastern District of Virginia, (c) set forth the name of the objector and the nature and amount of any claim or interest asserted by the objector against or in the Debtors, their estates, or their property, (d) state with particularity the legal and factual bases for the objection, (e) be filed with the Bankruptcy Court together with proof of service, and (d) be served by personal service, overnight delivery, or first-class mail, so as to be <u>RECEIVED</u> no later than Objection Deadline, upon:

**The Debtors:**

LandAmerica Financial Group, Inc., *et al.*
5600 Cox Road
Glen Allen, Virginia 23060
Attn:    G. William Evans, Chief Financial Officer
            Chad Perrine, Esq.


-and-
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York  10019-6099
Attn:    Paul V. Shalhoub, Esq.
            Rachel C. Strickland, Esq.

Co-Counsel to the Debtors

-and-

McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
Attn:    Dion W. Hayes, Esq.
            John H. Maddock III, Esq.

Co-Counsel to the Debtors

**The LES Creditors Committee:**

Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201-4675
Attn:    Charles R. Gibbs, Esq.
            Sarah Link Schultz, Esq.

-and-

Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, Virginia 23219
Attn:   Lynn Tavenner, Esq.

**The LFG Creditors Committee:**

Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022-4689
Attn:   Jeffrey S. Sabin, Esq.

-and-

LeClair Ryan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23218-2499
Attn:   Bruce H. Matson, Esq.

-and-

**The United States Trustee**

701 East Broad Street, Suite 4304
Richmond, VA 23219
Attn:   Robert B. Van Arsdale, Esq.

**Objections not timely filed and served in the manner set forth above shall not be considered and shall be deemed overruled.**

## TEMPORARY ALLOWANCE OF CLAIMS FOR VOTING PURPOSES

PLEASE TAKE FURTHER NOTICE that, if you disagree with the Debtors' classification of, or objection to, your claim and believe that you should be entitled to vote on the Plan, **please contact the Debtors' counsel promptly concerning your request**.

In the event you are not able to reach a consensual resolution with the Debtors, then you must: (i) contact the Voting Agent (as defined herein) to obtain a ballot and file the ballot by November 10, 2009 at 4:00 p.m. (Eastern) (the "Voting Deadline") and (ii) timely file and serve a motion for order under Fed. R. Bankr. P. 3018(a) (a "Rule 3018(a) Motion") seeking temporary allowance of your claim for the purpose of accepting or rejecting the Plan.

The Rule 3018(a) Motion must be filed with the Clerk of the Court on or before **October 30, 2009 at 4:00 p.m. (Eastern)** (the "Rule 3018(a) Motion Deadline") and served so as to be received by the Notice Parties (as defined in the Solicitation Procedures Order) by the Rule 3018(a) Motion Deadline, in accordance with the procedures set forth in the Solicitation Procedures Order.

**Rule 3018(a) Motions that are not timely filed and served in the manner set forth above will not be considered, and the claims referred to therein will not be counted in determining whether the Plan has been accepted or rejected**.

Any party who timely files and serves a Rule 3018(a) Motion in accordance with the paragraph above shall be permitted to cast a provisional vote to accept or reject the Plan.  If, and to the extent that, the Debtors and such party are unable to resolve the issues raised by the Rule 3018(a) Motion before the Voting Deadline, then, at the Confirmation Hearing, the Court will determine whether the provisional ballot is to be counted as a vote on the Plan and, if so, in what amount.

<u>**ADDITIONAL DOCUMENTS**</u>

**PLEASE TAKE FURTHER NOTICE that copies of the Disclosure Statement, the Plan, the Solicitation Procedures Order and any exhibits thereto are publicly available along with the docket and other case information by accessing the Debtors' case information website at** <u>http://chapter11.epiqsystems.com/landamerica</u> **and may also be obtained, upon reasonable written request, from the Epiq Bankruptcy Solutions, LLC (the "Voting Agent") at:**

**LandAmerica Financial Group, Inc.**<br>
**c/o Epiq Bankruptcy Solutions, LLC**<br>
**FDR Station, P.O. Box 5014**<br>
**New York, NY 10150-5014**

**IF YOU HAVE ANY QUESTIONS ABOUT THE STATUS OF YOUR CLAIM(S), YOU SHOULD CONTACT THE VOTING AGENT AT THE ADDRESS ABOVE OR BY TELEPHONE AT (866) 329-5543.**

Dated: Richmond, Virginia
      October ____, 2009

                          _____

                          Dion W. Hayes (VSB No. 34304)
                          John H. Maddock III (VSB No. 41044)
                          McGUIREWOODS LLP
                          One James Center
                          901 East Cary Street
                          Richmond, Virginia 23219-4030
                          (804) 775-1000

                                - and -

                          Paul V. Shalhoub (Admitted *Pro Hac Vice*)
                          Rachel C. Strickland (Admitted *Pro Hac Vice*)
                          WILLKIE FARR & GALLAGHER LLP
                          787 Seventh Avenue
                          New York, New York 10019
                          (212) 728-8000

                          Attorneys for the Debtor and
                        Debtor in Possession

\10029466.1