Charles R. Gibbs (admitted *pro hac vice*)
Keefe Bernstein (admitted *pro hac vice*)
Sarah Link Schultz (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: 214.969.2800
Facsimile: 214.969.4343

Catherine Creely (Virginia Bar No. 74796)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: 202.887.4000
Facsimile: 205.955.7827

Lynn Tavenner (Virginia Bar No. 30083)
Paula S. Beran (Virginia Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219
Telephone: 804.783.8300
Facsimile: 804.783.0178

*Attorneys for The Official Committee of Unsecured Creditors of LandAmerica 1031 Exchange Services, Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

------------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LandAmerica Financial Group, Inc., <u>et al.</u>, | : | Case No. 08-35994 (KRH) |
| | : | |
| Debtors. | : | Jointly Administered |

------------------------------------------------------------------------x

## THIRD INTERIM APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP FOR ALLOWANCE OF COMPENSATION AND EXPENSE REIMBURSEMENT AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LANDAMERICA 1031 EXCHANGE SERVICES, INC.

Name of Applicant:   Akin Gump Strauss Hauer & Feld LLP

Authorized to Provide Professional Services to:  Official Committee of Unsecured Creditors of LandAmerica 1031 Exchange Services, Inc.

Date of Retention: January 16, 2009 (*nunc pro tunc* to December 8, 2008)

Period for Which Compensation
and Reimbursement is Sought:  June 1, 2009 through August 31, 2009

Amount of Compensation Sought as
Actual, Reasonable, and Necessary:  $1,093,624.00

Amount of Expense Reimbursement Sought
as Actual, Reasonable, and Necessary:  $88,985.55

## Monthly Fee Statements During the Compensation Period

| Time Period | Fees | Expenses | Status |
|---|---|---|---|
| 6/01/09 – 6/30/09 | $439,861.00 | $27,185.89 | Pending. Pursuant to the Interim Compensation Order, Akin Gump received 85% of the fees requested and 100% of the expenses requested. |
| 7/01/09 – 7/31/09 | $345,798.50 | $43,812.35 | Pending. Pursuant to the Interim Compensation Order, Akin Gump received 85% of the fees requested and 100% of the expenses requested. |
| 8/01/09 – 8/31/09 | $307,964.50 | $17,987.31 | Pending. Pursuant to the Interim Compensation Order, Akin Gump received 85% of the fees requested and 100% of the expenses requested. |

Charles R. Gibbs (admitted *pro hac vice*)
Keefe Bernstein (admitted *pro hac vice*)
Sarah Link Schultz (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: 214.969.2800
Facsimile: 214.969.4343

Catherine Creely (Virginia Bar No. 74796)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: 202.887.4000
Facsimile: 205.955.7827

Lynn Tavenner (Virginia Bar No. 30083)
Paula S. Beran (Virginia Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219
Telephone: 804.783.8300
Facsimile: 804.783.0178

*Attorneys for The Official Committee of Unsecured
Creditors of LandAmerica 1031 Exchange Services,
Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

----------------------------------------------------------------x

In re:

LandAmerica Financial Group, Inc., et al.,

Debtors.

----------------------------------------------------------------x

:
:
:
:
:
:
:
:

Chapter 11

Case No. 08-35994 (KRH)

Jointly Administered

## THIRD INTERIM APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP FOR ALLOWANCE OF COMPENSATION AND EXPENSE REIMBURSEMENT AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LANDAMERICA 1031 EXCHANGE SERVICES, INC.

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump" or "Applicant"), counsel for the Official Committee of Unsecured Creditors (the "LES Committee") of LandAmerica 1031 Exchange Services, Inc. ("LES"), submits this Third Interim Application for Allowance of Compensation and Expense Reimbursement as Counsel to the Official Committee of Unsecured Creditors of LandAmerica 1031 Exchange Services, Inc. (the "Application") pursuant to sections 330 and 331 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

# I.  PRELIMINARY STATEMENT

1.    By this Application, Akin Gump seeks (i) an interim allowance and award of full compensation for the professional services rendered by Akin Gump as attorneys for the LES Committee for the period from June 1, 2009 through August 31, 2009 (the "Compensation Period") in the amount of $1,093,624.00, representing 2,445.50 hours of professional and paraprofessional services, and (ii) reimbursement of actual and necessary expenses of $88,985.55 incurred by Akin Gump during the Compensation Period in connection with the rendition of such professional and paraprofessional services.  This Application is submitted pursuant to the terms of this Court's Order Under Sections 105(a) and 331 of the Bankruptcy Code Establishing Procedures for Interim Compensation, dated December 22, 2008 (the "Interim Compensation Order").

# II.  BACKGROUND

2.    On November 26, 2008 (the "Petition Date"), LES and LandAmerica Financial Group, Inc. ("LFG") each filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On March 6, 2009, March 27, 2009, March 31, 2009 and July 17, 2009, various other affiliates of LFG[1] (collectively with LES and LFG, the "Debtors") each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Pursuant to orders of this Court dated November 28, 2008, March 11, 2009, April 8, 2009, April 9, 2009 and July 22, 2009, the Debtors' chapter 11 cases are being jointly administered for procedural purposes only. Since the Petition Date, the Debtors have continued in possession of their property and have

---

[1]  The other affiliates of LFG that have filed voluntary chapter 11 petitions are LandAmerica Assessment Corporation, LandAmerica Title Company, Southland Title Corporation, Southland Title of Orange County, Southland Title of San Diego, and LandAmerica Credit Services, Inc.

continued to operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee has been appointed in the Debtors' chapter 11 cases.

3. This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are Bankruptcy Code sections 330 and 331 and Bankruptcy Rule 2016.

4. On December 3, 2008, the Office of the United States Trustee for the Eastern District of Virginia (the "U.S. Trustee") duly appointed the LES Committee. On June 4, 2009, the U.S. Trustee appointed two additional members to the LES Committee. The LES Committee currently consists of seven members.[2]

5. On December 8, 2008, pursuant to Bankruptcy Code section 1103(a), the LES Committee selected Akin Gump to serve as counsel to the LES Committee. On December 31, 2008, the LES Committee filed an application to employ Akin Gump as its counsel. On January 16, 2009, this Court entered an order authorizing Akin Gump's retention as counsel to the LES Committee *nunc pro tunc* to December 8, 2008. This Court subsequently authorized the LES Committee to retain and employ Protiviti, Inc. ("Protiviti") as its financial advisor, The Garden City Group, Inc. ("GCG") as its communications agent, and Tavenner & Beran, PLC ("Tavenner & Beran") as its local counsel.

6. On April 14, 2009, Akin Gump filed its first application for interim allowance of compensation and for reimbursement of expenses for services rendered during the period from December 8, 2008 through February 28, 2009 (the "First Fee Application"). On May 21, 2009,

---

[2] The current members of the LES Committee are: Millmar Holdings, LLC; Endless Ocean, LLC; MB Venture, Ltd.; Amarillo Tower Limited; Petaluma Southpoint, LLC; Gregory D. Schultz; and The Mary and Fred Piro 1987 Trust.

this Court entered an order approving the First Fee Application and authorizing and directing the Debtors to pay to Akin Gump compensation in the amount of $1,471,879.25 and to reimburse Akin Gump for expenses incurred in the amount of $90,672.49. As of May 27, 2009, Akin Gump received payment of the fees and expenses allowed pursuant to the First Fee Application.

7.     On July 15, 2009, Akin Gump filed its second application for interim allowance of compensation and for reimbursement of expenses for services rendered during the period from March 1, 2009 through May 31, 2009 (the "Second Fee Application"). On September 2, 2009, this Court entered an order approving the Second Fee Application and authorizing and directing the Debtors to pay to Akin Gump compensation in the amount of $1,188,704.50 and to reimburse Akin Gump for expenses incurred in the amount of $90,837.09. As of September 3, 2009, Akin Gump received payment of the fees and expenses allowed pursuant to the Second Fee Application.

8.     Except with respect to payments made pursuant to the Interim Compensation Order, Applicant has received no payment and no promises for payment from any source for services rendered in connection with LES's chapter 11 case. There is no agreement or understanding between the Applicant and any other person (other than members of Akin Gump) for the sharing of compensation to be received for the services rendered in these chapter 11 cases.

9.     As stated in the Affirmation of Charles R. Gibbs, Esq. annexed hereto as **Exhibit A**, all of the services for which interim compensation is sought herein were rendered for or on behalf of the LES Committee solely in connection with LES's chapter 11 case.

10.    Pursuant to the Interim Compensation Order, Akin Gump sent to LES and the appropriate notice parties its: (i) Monthly Fee Statement, dated July 15, 2009, for compensation

and for reimbursement of expenses for services rendered during the period of June 1, 2009 through June 30, 2009 in the amounts of $439,861.00 for fees and $27,185.89 for expenses (the "June Monthly Fee Statement"); (ii) Monthly Fee Statement, dated August 17, 2009, for compensation and for reimbursement of expenses for services rendered during the period of July 1, 2009 through July 31, 2009 in the amounts of $345,798.50 for fees and $43,812.35 for expenses (the "July Monthly Fee Statement"); and (iii) Monthly Fee Statement, dated September 14, 2009, for compensation and for reimbursement of expenses for services rendered during the period of August 1, 2009 through August 31, 2009 in the amounts of $307,964.50 for fees and $17,987.31 for expenses (the "August Monthly Fee Statement," and together with the June Monthly Fee Statement and the July Monthly Fee Statement, the "Monthly Fee Statements").

11.     Pursuant to the Interim Compensation Order, as of the date of this Application, Akin Gump has received payment of 85% of the fees requested and 100% of the expenses requested with respect to the Monthly Fee Statements. Akin Gump does not anticipate any objections to be made to the Monthly Fee Statements.

### III.     SUMMARY OF SERVICES RENDERED

12.     Since December 8, 2008, Akin Gump has rendered professional services to the LES Committee as requested and as necessary and appropriate in furtherance of the interests of LES's unsecured creditors. The variety and complexity of the issues in LES's chapter 11 case and the need to act or respond to such issues on an expedited basis in furtherance of the LES Committee's needs have required the expenditure of substantial time by Akin Gump personnel from numerous legal disciplines, on an as-needed basis.

13.     Akin Gump maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services to the LES Committee. Such time records were made contemporaneously with the rendition of services by the person

performing such services and in the ordinary course of Akin Gump's practice. A compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services for the LES Committee during the Compensation Period is attached hereto as **Exhibit B**.

14.    Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, which are also available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is contained in **Exhibit C** attached hereto.

15.    Akin Gump respectfully submits that the professional services it rendered on behalf of the LES Committee were necessary and appropriate and have directly contributed to the effective administration of LES's chapter 11 case. The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in **Exhibit B**. Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the LES Committee, as well as to identify some of the problems and issues that Akin Gump was required to address during the Compensation Period.

A.    **Case Administration**

16.    During the Compensation Period, Akin Gump reviewed and analyzed all motions filed by the Debtors and other parties in interest in this Court. The motions and applications filed by the Debtors and other parties in interest that required Akin Gump's attention during the Compensation Period included: (i) the Debtors' motion to extend the period during which the Debtors have the exclusive right to file and solicit acceptances to a chapter 11 plan; (ii) the Debtors' motion to extend the period during which the Debtors may remove actions; (iii) the Debtors' motion to extend the time within which certain of the Debtors must assume or reject

unexpired leases of nonresidential real property; (iv) the Debtors' motion to sell LFG's stock in RealEC Technologies, Inc.; (v) numerous notices regarding the assumption or rejection of executory contracts and unexpired real property leases; (vi) numerous interim applications for the compensation of professionals; (vii) the Debtors' motion to enforce the automatic stay with respect to a California state court proceeding; (viii) supplements to the Debtors' list of ordinary course professionals; (ix) various motions regarding employment of professionals by the Debtors and other parties in interest; (x) the Debtors' motion to enter into settlement agreements with the Pension Benefit Guaranty Corporation; (xi) various omnibus claims objections filed by the Debtors; and (xii) the Debtors' motion to set the last day to file proofs of claim against certain of the Debtors. In addition to the foregoing motions filed in this Court, Akin Gump also reviewed and analyzed the potential impact on LES's bankruptcy case of pleadings filed in several actions currently pending in jurisdictions outside the Eastern District of Virginia.

17. In connection with all motions and applications filed by the Debtors and other parties in interest in these cases, Akin Gump, with the assistance of the LES Committee's other professionals, conducted extensive diligence on the subject matter of each motion and application to, among other things, ascertain the effect the relief requested in the pleading would have on the LES estate. Akin Gump's diligence efforts included reviewing all underlying documentation related to the applicable pleading, communicating with representatives of the Debtors and third parties to address issues related to the relief requested, and working with the LES Committee's other professionals to ensure that the LES Committee had a complete understanding of the effect the granting of the relief requested in a given pleading would have on the LES estate. In addition, as the U.S. Trustee appointed the two additional members to the LES Committee during the Compensation Period, Akin Gump, with the assistance of the LES

Committee's other professionals, spent considerable time providing information to these new members to facilitate their complete understanding of the history and status of the Debtors' cases and the LES Committee's involvement in the Debtors' cases.

18.     Akin Gump kept the LES Committee members advised of all material motions, applications, and case developments during the Compensation Period through detailed memoranda and, as appropriate, conference calls or in-person meetings with individual LES Committee members and the entire LES Committee. During the Compensation Period, Akin Gump also had numerous telephonic conferences and electronic communications with the Debtors and their professionals to discuss and address pending issues and proposed actions.

19.     Akin Gump routinely held internal meetings with the professionals assigned to this matter to ensure that Akin Gump was representing the LES Committee in the most efficient manner at the least cost to the LES estate. As discussed in detail above, at the request of the LES Committee, Akin Gump assisted in or took the lead in analyzing all motions presented by the Debtors and other parties in interest and advised the LES Committee on its own initiatives and directions for LES's chapter 11 case. In addition, Akin Gump coordinated all LES Committee activities, including attending to member issues and interacting with the LES Committee's chair in setting agendas for the LES Committee's conference calls. Akin Gump also regularly consulted with Protiviti, GCG, and Tavenner & Beran with respect to documents and other information received from the Debtors, their representatives, and other sources.

20.     Due to Akin Gump's experience in counseling creditors' committees, Akin Gump believes it was able to efficiently address all issues relating to case administration that have arisen during the pendency of the Debtors' chapter 11 cases.

**B.      LES Committee Meetings**

21.      The LES Committee played a very active role in LES's chapter 11 case during the Compensation Period. Akin Gump, together with the other LES Committee's professionals, held no fewer than twelve (12) telephonic meetings with the LES Committee during the Compensation Period and four (4) in-person meetings (which meetings occurred in connection with the July, 2009 court-ordered mediations). In addition, Akin Gump had several telephonic conferences with individual LES Committee members and the LES Committee chair.

22.      Prior to its meetings with the LES Committee, Akin Gump reviewed each pending matter requiring the LES Committee's attention and all underlying documentation in connection therewith. Thereafter, Akin Gump discussed each of these matters with the LES Committee's other professionals, the LES Committee, and individual LES Committee members. During these discussions, Akin Gump assisted the LES Committee in formulating a position with respect to each pending matter.

23.      Through meetings, telephone conferences, and correspondence, Akin Gump has assisted the LES Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in these chapter 11 cases, to monitor closely LES's management of these proceedings, and to reach independent conclusions on the merits of specific matters.

**C.      Court Hearings**

24.      Akin Gump attorneys attended, either in-person or telephonically, all of the hearings held before this Court affecting the LES estate during the Compensation Period. In preparing for Court hearings, Akin Gump reviewed all applicable motions and applications filed with this Court, including any responses thereto, and then presented, as needed, the LES Committee's position at such hearings.

**D.  Analysis of Other Parties' Retention of Professionals**

25.  During the Compensation Period, Akin Gump, on behalf of the LES Committee, communicated with the Debtors and the Official Committee of Unsecured Creditors of LFG (the "LFG Committee") regarding the Debtors' proposed retention of special litigation counsel to pursue claims in connection with the auction-rate securities.  On June 4, 2009, the Debtors filed an application seeking authority to retain Quinn Emanuel Urquhart & Hedges LLP ("Quinn Emanuel") as special litigation counsel (the "Quinn Application").  Akin Gump reviewed and analyzed the Debtors' proposed engagement letter and pleadings regarding the retention of Quinn Emanuel to ensure that (i) the proposed retention of Quinn Emanuel was necessary to the administration of the Debtors' estates and (ii) the compensation proposed was appropriate in light of the financial circumstances and value of the services to be performed by Quinn Emanuel. Numerous issues arose in connection with the Debtors' proposed retention of Quinn Emanuel as special litigation counsel.  Accordingly, on July 17, 2009, the Debtors withdrew the Quinn Application.

26.  After further extensive discussions with the professionals for the LES Committee and the LFG Committee regarding both the selection of Jenner & Block, LLP ("Jenner") and the term of retention for Jenner, on August 11, 2009, the Debtors filed an application seeking authority to retain Jenner as special litigation counsel to pursue claims in connection with the auction-rate securities (the "Jenner Application"). Akin Gump reviewed and analyzed the Debtors' proposed engagement letter and pleadings and provided significant input regarding the retention of Jenner to ensure that (i) the proposed retention of Jenner was necessary to the administration of the Debtors' estates and (ii) the compensation proposed was appropriate in light of the financial circumstances and value of the services to be performed by Jenner.  On August 27, 2009, this Court entered an order approving the Jenner Application.

27.     On May 21, 2009, this Court entered an order authorizing the Debtors to retain certain professionals utilized by the Debtors in the ordinary course of their business (the "Professionals Order"). During the Compensation Period, the Debtors provided notice of three supplements (the "Supplements") to the list of ordinary course professionals (the "Ordinary Course Professionals") employed by the Debtors pursuant to the terms of the Professionals Order. Akin Gump reviewed and analyzed each of the Supplements to ensure that (i) the Ordinary Course Professionals proposed to be retained by the Debtors were necessary to the administration of the Debtors' estates and would not provide services duplicative of those provided by professionals already engaged by the Debtors; and (ii) the compensation proposed for each Ordinary Course Professional was appropriate in light of the financial circumstances and value of the services to be performed by each Ordinary Course Professional. Pursuant to the Professionals Order, each of the Ordinary Course Professionals was deemed approved by this Court without the need for further notice or a hearing.

28.     Also during the Compensation Period, the Debtors filed an application seeking authority to retain Wall Street Realty Capital, Inc. ("WSRC") to provide investment banking and financial advisory services to LFG (the "WSRC Application"). Akin Gump reviewed and analyzed the WSRC Application to ensure that (i) the services proposed to be performed by WSRC were necessary to the administration of the Debtors' estates and would not be duplicative of those provided by professionals already engaged by the Debtors; and (ii) the compensation proposed for WSRC was appropriate in light of the financial circumstances and value of the services to be performed. On June 22, 2009, this Court entered an order approving the WSRC Application.

29.     During the Compensation Period, the LFG Committee filed an application seeking authority to retain McGrath North Mullin & Kratz PC LLO ("McGrath") as special counsel to render insurance and related legal services to the LFG Committee as needed throughout LFG's chapter 11 case (the "McGrath Application"). Akin Gump reviewed and analyzed the McGrath Application to ensure that (i) the services to be provided by McGrath were necessary to the administration of the Debtors' estates and (ii) the compensation proposed for McGrath was appropriate in light of the financial circumstances and value of the services to be performed.     On August 27, 2009, this Court entered an order approving the McGrath Application.

## E.     Analysis of Other Parties' Compensation of Professionals

30.     During the Compensation Period, the Debtors' legal counsel and other professionals filed their second interim applications for compensation and their monthly reports outlining the compensation and reimbursable expenses of the Debtors' restructuring firm and chief restructuring officer (the "Debtors' Fee Applications").     In addition, during the Compensation Period, the LFG Committee's legal counsel and financial advisors filed their second interim applications for compensation (the "LFG Committee's Fee Applications") and the Commingled Type A Test Case plaintiff filed its first interim application for compensation of its forensic accountant (the "Type A Fee Application," and together with the Debtors' Fee Applications and the LFG Committee's Fee Applications, the "Fee Applications"). Akin Gump reviewed and analyzed each of the Fee Applications. Akin Gump had numerous discussions with counsel for the Debtors, the LFG Committee, and the Commingled Type A Test Case plaintiff with respect to the Fee Applications to ensure that the compensation proposed for each professional employed by the Debtors, the LFG Committee, and the Commingled Type A Test

Case plaintiff was appropriate in light of the financial circumstances and value of the services to be performed by the professional.

**F.    Preparation of Monthly Billing Statements**

31.    During the Compensation Period, Akin Gump prepared its Monthly Fee Statements and its Second Fee Application. To ensure compliance with Akin Gump's continuing disclosure obligations under Bankruptcy Rule 2014, Akin Gump reviewed all declarations and/or affidavits filed by parties in interest in these cases and then prepared its own supplemental affidavits (the "Affidavits"). Akin Gump filed its initial Affidavit on December 31, 2008, as part of Akin Gump's retention application. Akin Gump filed its first supplemental Affidavit on March 24, 2009, and its second supplemental Affidavit on July 9, 2009.

**G.    Analysis of Financial Reports**

32.    Akin Gump reviewed the Debtors' financial reports during the Compensation Period and assisted Protiviti in summarizing such reports for the LES Committee. Additionally, Akin Gump attorneys participated in numerous conference calls and electronic communications with the Debtors and their professionals, the LES Committee's other professionals, and individual members of the LES Committee to discuss the administration of the Debtors' estates and the Debtors' liquidity.

**H.    Analysis of Assumption and/or Rejection of Pre-petition Agreements**

33.    By order entered May 13, 2009, this Court approved procedures for the Debtors to assume or reject certain unexpired leases of nonresidential real property and other executory contracts, and to abandon certain personal property related to rejected leases. During the Compensation Period, Akin Gump reviewed and analyzed no fewer than twenty-nine (29) notices of rejection of executory contracts and unexpired leases pursuant to such procedures. In connection with each such notice, Akin Gump analyzed the underlying agreement, summarized

applicable portions of the underlying agreement and the notice for the LES Committee, and discussed and made recommendations to the LES Committee with respect to each such notice of rejection. Akin Gump's analysis of these notices of rejection, with the assistance of the LES Committee's other professionals, enabled the LES Committee to make informed decisions in supporting or opposing the relief requested based on, among other things, the effect assumption or rejection would have on the LES estate.

## I.      Analysis of Lift Stay Litigation

34.      Akin Gump reviewed and analyzed the various motions filed by parties during the Compensation Period with respect to modification of the automatic stay. In particular, Akin Gump spent considerable time during the Compensation Period analyzing (i) the motion of Conveca Associates Limited Partnership to permit the continuation of certain state court litigation; (ii) the motion of HST Investments, LP to continue certain state court litigation; (iii) the motion of CP Oxford Gardens, LLC to continue certain state court litigation; and (iv) the motion of Heritage Owner, LLC, Sunburst Heritage, LLC, Heritage Center Enterprises, LLC, Etzi Heritage LLC, Z Heritage LLC, and Suisan City Investments, LLC to allow the continuation of pending arbitration proceedings. In connection with each such motion, Akin Gump analyzed the underlying agreements or litigation, summarized applicable portions of the underlying agreements, litigation, and motions for the LES Committee, and discussed and made recommendations to the LES Committee with respect to each such motion. Akin Gump's analysis of these motions, with the assistance of the LES Committee's other professionals, enabled the LES Committee to make informed decisions in supporting or opposing the relief requested based on, among other things, the effect the modification of the automatic stay would have on the LES estate.

**J.     Analysis of Pre-petition Transactions**

35.     During the Compensation Period, Akin Gump reviewed and analyzed pleadings filed in connection with two purported class action lawsuits filed against SunTrust Banks, Inc. ("SunTrust") and various directors and officers of the Debtors, currently consolidated in a single action pending in the District of South Carolina (the "MDL Litigation"). On July 10, 2009, the Debtors filed a motion for a preliminary injunction to enjoin the continued prosecution of the MDL Litigation until after the effective date of a confirmed plan of reorganization in the Debtors' cases. The Debtors' motion for preliminary injunction was originally set for hearing on August 25, 2009. However, the Debtors filed a motion to continue the hearing on their motion for preliminary injunction until the September 21, 2009 omnibus hearing, which the LES Committee orally supported. The hearing on this matter has since been further continued and is scheduled to be heard at the November omnibus hearing.

36.     Also during the Compensation Period, Akin Gump researched and analyzed potential causes of action that could be brought by the LES estate against various third parties, as well as claims that could be brought against the Debtors by third parties. In connection with such analysis, Akin Gump engaged in discussions with the LES Committee and its professionals regarding the possible pursuit and likelihood of success of such potential lawsuits to enable the LES Committee to make informed decisions regarding particular courses of action.

37.     During the Compensation Period, Akin Gump, along with Protiviti, also reviewed and analyzed issues related to claims against the Debtors' directors and officers, including analyzing additional directors' and officers' liability insurance policies produced by the Debtors. In connection with such analysis, during the Compensation Period, Akin Gump revised and distributed a comprehensive legal memorandum advising the LES Committee and its

professionals of the details of such policies and the potential impact of such policies on the LES estate.

38.    Akin Gump and Protiviti further reviewed and analyzed various issues regarding the auction-rate securities held by LES.  During the Compensation Period, Akin Gump, along with Protiviti, reviewed the auction-rate securities held by LES, analyzed settlements made by other parties regarding auction-rate securities, analyzed potential third-party actions regarding the auction-rate securities, and analyzed various offers to purchase the auction-rate securities held by LES.  Further, Akin Gump engaged in extensive discussions with counsel for the Debtors and the LFG Committee regarding the Debtors' proposed retention of special litigation counsel to pursue the litigation regarding the auction-rate securities.

K.    **Analysis of Asset / Stock Transactions**

39.    Akin Gump reviewed and analyzed several motions filed by the Debtors during the Compensation Period with respect to the sale of the Debtors' stock and/or assets in various entities.  In particular, during the Compensation Period, Akin Gump analyzed (i) the sale of LFG's stock in RealEC Technologies, Inc.; and (ii) the sale of substantially all of the assets of LandAmerica Credit Services, Inc.  In connection with each such motion, Akin Gump analyzed the underlying agreements and the proposed purchase price for the assets or stock, summarized applicable portions of the underlying agreements and motions for the LES Committee, discussed the potential effect of each motion on the LES estate and made recommendations to the LES Committee with respect to each such motion.

L.    **Analysis of Tax Claims**

40.    During the Compensation Period, Akin Gump began analyzing various tax issues related to the Debtors' chapter 11 filings.  In particular, Akin Gump reviewed and analyzed the Debtors' tax sharing agreement and consolidated tax returns and researched the liability of

members of a consolidated tax group. Further, Akin Gump participated in several telephonic conferences with representatives of the Internal Revenue Service regarding relief for taxpayers in connection with the failure of a qualified intermediary. In connection with its analysis, Akin Gump also participated in discussions with tax counsel for the Debtors and the LFG Committee concerning tax claims asserted against the Debtors. Akin Gump also researched the tax implications of the Debtors' proposed plan and the trust agreements to be executed in connection with the plan. Akin Gump's ongoing analysis of these issues, with the assistance of the LES Committee's other professionals, has enabled the LES Committee to make informed decisions regarding the favorable or unfavorable consequences of particular courses of action on the LES estate.

## M.    Analysis of Employee Benefits and Issues

41.    During the Compensation Period, Akin Gump reviewed and analyzed the Debtors' motion to enter into three (3) agreements relating to the administration of the defined benefit pension plan sponsored by LFG (the "PBGC Motion"). In connection with its analysis of the PBGC Motion, Akin Gump analyzed the proposed agreements and summarized applicable portions of the agreements for the LES Committee, and discussed and made recommendations to the LES Committee with respect to the potential effects of the PBGC Motion on the LES estate, allowing the LES Committee to make informed decisions in supporting or opposing the relief requested.

## N.    Adversary Proceedings / Test Case Litigation

42.    On January 16, 2009, this Court entered an order approving a protocol (the "Test Case Protocol") for the expedited consideration and resolution of five adversary proceedings (the "Test Cases"). On April 15, 2009 and May 7, 2009, this Court entered orders granting motions for partial summary judgment in favor of the LES Committee and the LFG Committee in each of

the Test Cases, finding that the exchange funds held by LES in segregated and commingled accounts were property of the LES estate. The Test Case plaintiffs each filed notices of appeal of this Court's partial summary rulings, and Akin Gump filed a response objecting to each such appeal on behalf of the LES Committee.

43.     During the Compensation Period, at the completion of the mediation discussed in Section III.P., herein, each of the Test Case plaintiffs agreed to voluntarily dismiss their notices of appeal of the Test Case plaintiffs in favor of the Plan Mediation (as described below), although the Test Case plaintiffs each reserved the right to re-file their appeals.

## O.     Analysis of Intercompany Claims

44.     On May 21, 2009, this Court entered an order providing for the mediation of certain claims and issues between the LES estate and the LFG estate (the "Intercompany Protocol"). Pursuant to the Intercompany Protocol, Akin Gump, on behalf of the LES Committee, prepared and served discovery requests on the Debtors and spent substantial time analyzing the documents produced by the Debtors in connection with the Intercompany Protocol. Akin Gump also prepared for and participated in the depositions of three (3) representatives of the Debtors in connection with the Intercompany Protocol. Akin Gump discussed with the LES Committee the potential effect of various courses of action concerning the intercompany issues and made recommendations to the LES Committee with respect to the consequences of particular courses of action. Pursuant to the Intercompany Protocol, Akin Gump also prepared and provided the mediator (the "Mediator") with a confidential mediation statement setting forth a summary of the case to date and an overview of the basic allegations and relevant facts regarding the issues to be resolved at the mediation.

45.     During the Compensation Period and pursuant to the Intercompany Protocol, Akin Gump, on behalf of the LES Committee, participated in mediation with counsel for and

representatives of the Debtors and the LFG Committee to resolve the foregoing intercompany claims (the "Intercompany Mediation"). After extensive negotiations, the parties to the Intercompany Mediation agreed to a proposed resolution for the treatment of all intercompany issues. This agreement was memorialized in a term sheet and served as a partial framework for the Debtors' joint chapter 11 plan of reorganization that was filed on September 9, 2009.[3]

## P.    Plan and Disclosure Statement

46.    On May 21, 2009, this Court entered an order (the "Plan Mediation Protocol") providing for the mediation of issues relating to an LES plan of liquidation, including a resolution of the pending Test Cases (the "Plan Mediation," and together with the Intercompany Mediation, the "Mediation"). Pursuant to the Plan Mediation Protocol, Akin Gump, on behalf of the LES Committee, prepared a confidential mediation statement setting forth an overview of the basic allegations and relevant facts regarding the issues to be resolved at the Plan Mediation and a realistic assessment of the strengths and weaknesses of the LES Committee's position.

47.    During the Compensation Period and pursuant to the Plan Mediation Protocol, Akin Gump and the LES Committee participated in the Plan Mediation with counsel for and representatives of the LFG Committee, the Debtors, and the Test Case plaintiffs. After extensive negotiations regarding issues relating to an LES plan of liquidation, the parties to the Plan Mediation agreed to proposed terms for a joint plan of reorganization for the Debtors. This agreement was memorialized in a term sheet and, in conjunction with the term sheet agreed to during the Intercompany Mediation, served as the framework for the Debtors' joint chapter 11 plan of reorganization filed on September 9, 2009.

---

[3] The Debtors filed amended versions of their joint chapter 11 plan of reorganization on October 2, 2009, October 12, 2009, and October 13, 2009.

48.     Also during the Compensation Period, Akin Gump, on behalf of the LES Committee, spent considerable time reviewing and assisting Debtors' counsel in drafting a plan of reorganization for the Debtors encompassing the terms agreed to during the Mediation. Akin Gump reviewed and provided comments to numerous drafts to the Debtors' proposed plan and disclosure statement during the Compensation Period and engaged in extensive discussions with counsel for the Debtors and the LFG Committee regarding the proposed plan documents. Akin Gump's ongoing analysis of issues relating to the Debtors' proposed plan, with the assistance of the LES Committee's other professionals, has enabled the LES Committee to make informed decisions regarding the favorable or unfavorable consequences of particular plan provisions or courses of action on the LES estate.

49.     The Debtors' proposed plan contemplates the creation of a liquidation trust for each of the Debtors' estates (the "LFG Trust" and the "LES Trust"). Accordingly, during the Compensation Period, Akin Gump drafted the governing documents for the LES Trust and spent considerable time researching the qualifications of potential liquidation trustees to serve as trustee of the LES Trust (the "LES Trustee") and advising the LES Committee regarding such qualifications to allow the LES Committee to make an informed decision in selecting the LES Trustee. Also during the Compensation Period, Akin Gump took the lead on drafting a comprehensive inter-trust agreement (the "Inter-Trust Agreement") to govern the interaction between the LFG Trust and the LES Trust.

50.     In connection with the plan process, during the Compensation Period, Akin Gump also reviewed and analyzed various options proposed by the Debtors regarding the preservation and transitioning of the Debtors' data to the liquidation trustees following the effective date of a confirmed plan of reorganization for the Debtors' cases. Akin Gump's ongoing analyses of these

issues, with the assistance of the LES Committee's other professionals, has enabled the LES Committee to make informed decisions regarding the favorable or unfavorable effects of particular courses of action on the LES estate.

**Q.     Exclusivity Issues**

51.     On July 10, 2009, the Debtors filed a motion seeking an extension of the periods within which LES, LFG and certain other Debtors had the exclusive right to file and solicit acceptances to a plan of reorganization (the "Exclusive Periods") until the Mediation had been completed (the "Second Exclusivity Motion"). Akin Gump reviewed and analyzed the Second Exclusivity Motion, and agreed that the Debtors should be afforded additional time following the completion of the Mediation to file a plan of liquidation encompassing the terms negotiated and agreed to during the Mediation. On July 22, 2009, this Court entered an order granting the Second Exclusivity Motion.

52.     On August 31, 2009, the Debtors filed a motion seeking a further extension of the Exclusive Periods (the "Third Exclusivity Motion"). Akin Gump reviewed and analyzed the Third Exclusivity Motion and discussed with the LES Committee the potential effect of the Third Exclusivity Motion on the LES estate.[4]

**R.     Creditor Inquiries**

53.     Akin Gump fielded numerous telephone inquiries and electronic communications during the Compensation Period from unsecured creditors to discuss the status of various pending matters and to respond to their many questions about the bankruptcy process and the status of their claims against the Debtors' estates.

---

[4] After the Debtors filed their joint chapter 11 plan of reorganization on September 9, 2009, Akin Gump filed an objection on behalf of the LES Committee asserting that further extension of the Exclusive Periods was not

**S.  Creditor Website**

54.  During the Compensation Period, Akin Gump, with the assistance of GCG, has maintained a website devoted to providing information to the unsecured creditors of LES.  Akin Gump, with the assistance of GCG, regularly posts updates to the creditor website regarding the status of LES's chapter 11 case, the Test Case Protocol and the expedited litigation on the Test Cases, and the pleadings filed by the LES Committee and other parties in interest in LES's case.

## IV.  FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

55.  The Bankruptcy Code sets forth the legal standards for awarding compensation to professionals.  The format for fee applications is set forth in the Compensation Guidelines for Professionals in the United States Bankruptcy Court for the Eastern District of Virginia (the "Guidelines").

56.  Under Bankruptcy Code section 330, this Court may award counsel to the LES Committee reasonable compensation for actual, necessary services rendered by such attorneys and paraprofessionals employed by such attorneys based on the nature, extent and value of the services rendered, time spent on such services and the cost of comparable services other than in a bankruptcy case.  In addition, this Court may award reimbursement for actual, necessary expenses.

57.  Under the "lodestar" approach, the Court should consider the number of hours of service reasonably devoted to the case multiplied by the attorney's reasonable rates.  Courts frequently consider the specific "lodestar" factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  These lodestar tests were adopted by the Fourth Circuit in *Barber v. Kimbrells, Inc.*, 577 F.2d 216, 226 (4th Cir.), *cert. denied*, 439 U.S. 934

---

warranted or appropriate.  On September 18, 2009, this Court entered an order granting the Third Exclusivity

(1978), and in *Anderson v. Morris*, 658 F.2d 246, 249 (4th Cir. 1981), where the Fourth Circuit held that the District Court should employ the lodestar approach, and then adjust the fee on the basis of the remaining *Johnson* factors in the case. Akin Gump respectfully submits that a consideration of these factors should result in this Court's allowance of the full compensation sought.

(A)     The Time and Labor Required. The professional services rendered by Akin Gump on behalf of the LES Committee have required the continuous expenditure of substantial time and effort under significant time pressures. The services rendered required a high degree of professional competence and expertise in order to be administered with skill and dispatch.

(B)     The Novelty and Difficulty of the Questions. In this case, as in all others in which the firm is involved, Akin Gump's effective advocacy and creative approach have helped clarify and resolve a number of complex and novel issues.

(C)     The Skill Requisite to Perform the Legal Service Properly. Akin Gump believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Akin Gump's practice, and its creative approach to the resolution of issues has contributed to the maximization of distributions to LES's unsecured creditors.

(D)     The Preclusion of Other Employment by the Attorney Due to Acceptance of the Case. Due to the size of Akin Gump's financial restructuring department, Akin Gump's representation of the LES Committee has not precluded its acceptance of new clients.

---

Motion over the objection of the LES Committee.

(E)     The Customary Fee.  The fee sought herein is based upon Akin Gump's normal hourly rates for services of this kind.  Akin Gump respectfully submits that the fee sought herein is not unusual given the magnitude and complexity of these chapter 11 cases and the time expended in attending to the representation of the LES Committee and is commensurate with fees Akin Gump has been awarded in other cases, as well as with fees charged by other attorneys of comparable experience.

(F)     Whether the Fee is Fixed or Contingent.  Pursuant to Bankruptcy Code sections 330 and 331, all fees sought by professionals employed under Bankruptcy Code section 1103 are contingent pending final approval by this Court and are subject to adjustment depending upon the services rendered and the results obtained.  Thus far, however, the collective efforts of the various parties in interest and their respective professionals, including Akin Gump, have resulted in the consensual resolution of many significant issues in these cases in a relatively short period of time given the complexity of the Debtors' chapter 11 cases.

(G)     Time Limitations Imposed by the Client or the Circumstances.  As already indicated, Akin Gump has been required to attend to certain issues arising in these chapter 11 cases in compressed and urgent time periods.

(H)     The Amount Involved and the Results Obtained.  Through the efforts of Akin Gump, the LES Committee has been an active participant in these chapter 11 cases, and its constructive assistance, as well as criticism, has greatly contributed to enhancement of the recoveries available to the unsecured creditors of LES and to the efficient administration of these chapter 11 cases.

(I)     The Experience, Reputation and Ability of the Attorneys.  Akin Gump has a large and sophisticated financial restructuring practice and is playing and has played a major role in numerous cases of national import including, for example, the reorganization proceedings of Adelphia Business Solutions, Inc., Aetna Industries, Inc., Allegiance Telecom, Inc., American Commercial Lines LLC, Anchor Glass Container Corporation, ATA Holdings Corp., Bally Total Fitness Holding Corporation, Calpine Corporation, Collins & Aikman Corporation, Dairy Mart Convenience Stores, Inc., Dan River Inc., Delta Air Lines Inc., Exide Technologies, FLAG Telecom Holdings Limited, Granite Broadcasting Corporation, Hayes Lemmerz International, Inc., Haynes International, Inc., Kaiser Aluminum Corporation, The LTV Corporation, Loral Space & Communications Ltd., Pegasus Satellite Television, Inc., Polaroid Corporation, Propex, Inc., Quebecor World (USA) Inc., Scott Cable Communications, Inc., TOUSA, Inc., Tower Automotive, Inc., Venture Holdings Company, LLC, Verasun Energy Corporation, Worldcom, Inc., and XO Communications, Inc. Akin Gump's experience enables it to perform the services described herein competently and expeditiously.  In addition to its expertise in the area of corporate reorganization, Akin Gump has called upon the expertise of its partners and associates in other practice areas to perform the wide-ranging scope of the legal work necessitated by these chapter 11 cases, including tax and litigation.

(J)     The "Undesirability" of the Case.  These cases are not undesirable.

(K)     The Nature and Length of the Professional Relationship with the Client. Akin Gump was selected as counsel to the LES Committee on December 8, 2008.

This Court entered an order on January 16, 2009, authorizing the LES Committee

to employ Akin Gump, *nunc pro tunc* to December 8, 2008. Akin Gump has been

rendering services continuously to the LES Committee since December 8, 2008

and continuing through the Compensation Period, as necessary and appropriate.

## V.     **ALLOWANCE OF COMPENSATION**

58.     The professional services rendered by Akin Gump required a high degree of

professional competence and expertise so that the numerous issues requiring evaluation and

determination by the LES Committee could be addressed with skill and dispatch and have,

therefore, required the expenditure of substantial time and effort. It is respectfully submitted that

the services rendered to the LES Committee were performed efficiently, effectively and

economically, and the results obtained to date have benefited not only the members of the LES

Committee, but also the unsecured creditor body of LES as a whole and the LES estate.

59.     The allowance of interim compensation for services rendered and reimbursement

of expenses in bankruptcy cases is expressly provided for in Bankruptcy Code section 331:

> Any professional person . . . may apply to the court not more than
> once every 120 days after an order for relief in a case under this
> title, or more often if the court permits, for such compensation for
> services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331. Moreover, this Court has authorized the filing of this Application in the Interim

Compensation Order.

60.     With respect to the level of compensation, Bankruptcy Code section 330(a)(1)

provides, in pertinent part, that the Court may award to a professional person:

> reasonable compensation for actual, necessary services rendered . . .

11 U.S.C. § 330(a)(1). Section 330(a)(3)(A), in turn, provides that

> In determining the amount of reasonable compensation to be
> awarded, the court shall consider the nature, the extent, and the

value of such services, taking into account all relevant factors, including –

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A). The clear congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

61.    The total time spent by Akin Gump attorneys and paraprofessionals during the Compensation Period was 2,445.50 hours. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task. As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time.

62.    Akin Gump respectfully requests that this Court not "hold back" any portion of the fees awarded. This Application covers the period from June 1, 2009 through and including August 31, 2009. Pursuant to the Interim Compensation Order, Akin Gump's monthly fees are subject to a 15% "holdback." The amount of Akin Gump's holdbacks for the Compensation Period is $164,043.59. By the time of the November 12, 2009 hearing on this Application, Akin Gump will have additional 15% holdbacks for the months of September and October 2009 (the "Additional Holdback"). Akin Gump suggests that based on the Additional Holdback, there is no need for any holdbacks of the fees awarded pursuant to this Application.

63. Akin Gump incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the LES Committee during the Compensation Period in the amount of $88,985.55, for which Akin Gump respectfully requests reimbursement in full. The disbursements and expenses have been incurred in accordance with Akin Gump's normal practice of charging clients for expenses clearly related to and required by particular matters. Akin Gump has endeavored to minimize these expenses to the fullest extent possible.

64. Akin Gump's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, secretarial overtime, postage and certain other office services because the needs of each client for such services differ. Akin Gump believes that it is fairest to charge each client only for the services actually used in performing services for it. In these proceedings, Akin Gump charges $.20 per page for internal duplicating and does not charge for outgoing or incoming facsimile transmissions. Akin Gump has agreed not to charge for travel time for hearings in connection with these chapter 11 proceedings.[5]

65. No prior application has been made in this Court or in any other court for the relief requested herein for the Compensation Period.

**WHEREFORE**, Akin Gump respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit D**:

(a) approving the allowance of $1,093,624.00 for compensation for professional services rendered to the LES Committee during the period from June 1, 2009 through and including August 31, 2009;

---

[5] Although Akin Gump has agreed not to charge the LES Committee for travel time to and from Richmond for court hearings in connection with the Debtors' cases, Akin Gump does charge for travel time associated with Akin Gump's representation of the LES Committee that is not attributable to such court hearings.

(b)     approving the reimbursement of Akin Gump's out-of-pocket expenses incurred in connection with the rendering of such services during the period June 1, 2009 through and including August 31, 2009 in the amount of $88,985.55;

(c)     authorizing and directing LES to pay the fees and expenses awarded; and

(d)     granting such other and further relief as this Court may deem just and proper.

Dated: Richmond, Virginia

October 15, 2009

_____/s/ Catherine Creely_____
Charles R. Gibbs (admitted *pro hac vice*)
Keefe Bernstein (admitted *pro hac vice*)
Sarah Link Schultz (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: 214.969.2800
Facsimile: 214.969.4343

Catherine Creely (Virginia Bar No. 74796)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: 202.887.4000
Facsimile: 205.955.7827

-and-

Lynn Tavenner (Virginia Bar No. 30083)
Paula S. Beran (Virginia Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219
Telephone: 804.783.8300
Facsimile: 804.783.0178

*Attorneys for The Official Committee of Unsecured Creditors of LandAmerica 1031 Exchange Services, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 15th day of October, 2009 a true and correct copy of the foregoing *Third Interim Application of Akin Gump Strauss Hauer & Feld LLP for Allowance of Compensation and Expense Reimbursement as Counsel to the Official Committee of Unsecured Creditors of LandAmerica 1031 Exchange Services, Inc.* has been served via first class mail, postage pre-paid and/or electronic delivery to:

Robert B. Van Arsdale – Via Email:
Office of the United States Trustee
701 East Broad St. Suite 4304
Richmond, Virginia 23219
Robert.B.Van.Arsdale@usdoj.gov

Dion W. Hayes, Esq. – Via Email:
John H. Maddock, III, Esq. – Via Email:
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219
dhayes@mcguirewoods.com
jmaddock@mcguirewoods.com

Paul V. Shalhoub, Esq. – Via Email:
Rachel C. Strickland, Esq. – Via Email:
WILLKIE FARR & GALLAGHER, LLP
787 Seventh Avenue
New York, New York 10019
pshalhoub@willkie.com
rstrickland@willkie.com

Bruce H. Matson – Via Email:
Christopher L. Perkins – Via Email:
LeClair Ryan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
bruce.matson@leclairryan.com
christopher.perkins@leclairryan.com

Jeffrey S. Sabin – Via Email:
Mark M. Elliott – Via Email:
Justin G. Imperato – Via Email:
Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022
jeffrey.sabin@bingham.com
mark.elliott@bingham.com
justin.imperato@bingham.com

Chad Perrine - Via Regular Mail
LandAmerica Financial Group, Inc.
5600 Cox Road
Glen Allen, VA 23060
cperrine@landam.com


/s/ Sarah Link Schultz
Sarah Link Schultz