Paul V. Shalhoub (Admitted *Pro Hac Vice*)
Rachel C. Strickland (Admitted *Pro Hac Vice*)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

- and -

Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 41044)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

Attorneys for the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

-------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| LandAmerica Financial Group, Inc., <u>et al.</u>, | : | Case No. 08-35994 (KRH) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------x

**THIRD APPLICATION OF WILLKIE FARR & GALLAGHER LLP
AS COUNSEL FOR DEBTORS FOR INTERIM ALLOWANCE OF
COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED
<u>FROM JUNE 1, 2009 THROUGH AUGUST 31, 2009</u>**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Willkie Farr & Gallagher LLP ("**WF&G**"), attorneys for the above-captioned

debtors and debtors in possession, in support of its third application (the "**Application**") for

interim allowance of compensation for professional services rendered and reimbursement of

expenses incurred from June 1, 2009 through August 31, 2009 (the "**Third Application Period**"), respectfully represents:

## PRELIMINARY STATEMENT

1.      By this Application, and pursuant to sections 330 and 331 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), WF&G requests that this Court authorize interim allowance of compensation for professional services rendered and reimbursement of expenses incurred during the Third Application Period in the amount of $2,593,492.55 (the "**Application Amount**").  The Application Amount includes: (a) reimbursement of $115,329.05 in actual and necessary expenses WF&G incurred in connection with its rendition of professional services during the Third Application Period;[1] and (b) compensation of $2,478,163.50 in fees for services rendered during the Third Application Period.  The Application Amount includes $371,724.53 which represents 15% of WF&G's fees that have been "held back" (the "**Holdback**") in accordance with the Interim Compensation Order (as defined herein) pending interim approval of this Application by the Court.  At this time, WF&G is requesting payment of the Holdback relating to the Third Application Period.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for

---

[1]    WF&G's standard practice is to treat certain expenses as having been incurred when such obligations are recorded and reflected as payable in WF&G's accounting system.  Accordingly, WF&G reserves its right to seek at a later date compensation for expenses incurred during the Third Application Period that may not have been posted as of yet and thus are not included herein.

the relief requested herein are sections 330 and 331 of the Bankruptcy Code, and Bankruptcy Rule 2016.

## BACKGROUND

3. On November 26, 2008 (the "**Initial Petition Date**"), LandAmerica Financial Group, Inc. ("**LFG**") and LandAmerica 1031 Exchange Services, Inc. ("**LES**") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On March 6, 2009, March 27, 2009, March 31, 2009, and July 17, 2009, various other LFG affiliates (LandAmerica Assessment Corporation ("**LAC**"), LandAmerica Title Company ("**LandAm Title**"), Southland Title Corporation, Southland Title of Orange County and Southland Title of San Diego (collectively, the "**Southland Entities**"), LandAmerica Credit Services, Inc. ("**LandAm Credit**" and, together with LAC, LandAm Title, and the Southland Entities, the "**Debtors**")) each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, respectively. Pursuant to orders of this Court dated November 28, 2008, March 11, 2009, April 8, 2009, April 9, 2009 and July 22, 2009. In addition, on October 12, 2009, Capital Title Group, Inc. ("**CTG**") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The chapter 11 cases of the Debtors are being jointly administered under case number 08-35994. A motion to jointly administer CTG's chapter 11 case with the other Debtors' chapter 11 cases is currently pending before this Court. The Debtors continue to manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' chapter 11 cases.

4. On December 3, 2008, the United States Trustee for the Eastern District of Virginia (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors in the case of (a) LFG (the "**LFG Creditors Committee**"), and (b) LES (the "**LES Creditors Committee**," and, together with the LFG Creditors Committee, the "**Creditors Committees**").

5.      On June 4, 2009, the U.S. Trustee filed his Amended Appointment of Unsecured Creditors Committee, adding two (2) additional members to the LES Committee.

6.      On September 9, 2009, the Debtors filed initial drafts of the Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and its Affiliated Debtors (as may be amended, modified and/or supplemented, the "**Plan**") and Disclosure Statement with Respect to the Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and its Affiliated Debtors (as may be amended, modified and/or supplemented, the "**Disclosure Statement**").  The Debtors filed revised drafts of the Plan and the Disclosure Statement on October 2, 2009 and October 12, 2009, respectively.

7.      By order dated October 14, 2009, this Court approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code and authorized the Debtors to solicit votes to accept or reject the Plan from certain creditors.  A hearing with respect to confirmation of the Plan is scheduled for November 18, 2009.

## WF&G'S FEES AND EXPENSES

8.      WF&G's services in these cases have been substantial, necessary, and beneficial to the Debtors, their estates, creditors and other parties-in-interest.  Throughout the Third Application Period, the variety and complexity of the issues involved in these cases and the need to address certain matters on an expedited basis has required WF&G, in the discharge of its professional responsibilities, to devote substantial time by professionals from several legal disciplines on a daily basis.

9.      Specifically, WF&G's requests reflect the requisite time, skill, and effort WF&G expended towards, inter alia:  (a) assisting the Debtors in the wind-down of their businesses; (b) working with LFG to evaluate, market, and sell, as applicable, the remaining businesses of its subsidiaries; (c) implementing a protocol to resolve both inter-estate and LES

related disputes; (d) formulating, negotiating and drafting the Plan and the Disclosure Statement; (e) litigating disputes in connection with the adversary proceedings that have been initiated in the Debtors' chapter 11 cases; (f) disposing of over fifty of the Debtors' leasehold interests in order to mitigate losses and maximize values for the Debtors' estates; (g) reviewing and filing omnibus objections to claims filed against the Debtors; and (h) otherwise moving the Debtors through the chapter 11 process without undue delay.

          10.      In accordance with section II.B. of the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, issued January 30, 1996 (the "**UST Guidelines**"), WF&G makes the following disclosures:

(a)      The Debtors have been given an opportunity to review WF&G's fees and expenses accrued during the Application Period.

(b)      The Debtors filed the Plan and the Disclosure Statement on September 9, 2009 and filed amended versions of the Plan and the Disclosure Statement on October 2, 2009 and October 12, 2009. Presently, the Debtors' exclusive periods to file and solicit acceptances of their Plan under section 1121 of the Bankruptcy Code are scheduled to expire on October 15, 2009 and December 15, 2009, respectively.

(c)      To the best of WF&G's knowledge, all quarterly fees have been paid to the U.S. Trustee, and required monthly operating reports covering the period from the Initial Petition Date through August 31, 2009 have been filed.

(d)      WF&G is advised that as of August 31, 2009, the Debtors held the following cash on hand: LFG held approximately $86,253,191.00; LES held approximately $128,184,961.00; LAC held approximately $2,963,650.00; LandAm Title held approximately $982,092.00; the Southland Entities held approximately $4,596,461.00; and LandAm Credit held approximately $3,063,763.00.

(e)      WF&G is advised that the Debtors are paying all undisputed administrative expenses in the ordinary course of business.

11.	By order dated May 16, 2009, this Court approved on an interim basis the allowance of $4,062,498.00, representing 100% of the fees for professional services rendered by WF&G from November 26, 2008 through February 28, 2009 (the "**First Application Period**"), and $129,170.77, representing 100% of the actual and necessary expenses incurred in connection with the rendering of such professional services.  By order dated September 2, 2009, this Court approved on an interim basis the allowance of $3,467,779.00, representing 100% of the fees for professional services rendered by WF&G from March 1, 2009 through May 31, 2009 (the "**Second Application Period**"), and $136,347.64, representing 100% of the actual and necessary expenses incurred in connection with the rendering of such professional services.

## MONTHLY FEE STATEMENTS

12.	WF&G was retained as counsel to the Debtors, effective as of the Initial Petition Date, pursuant to an order of this Court dated December 22, 2008.  On December 21, 2008, this Court entered an Order Under Sections 105(a) and 331 of Bankruptcy Code Establishing Procedures for Interim Compensation (the "**Interim Compensation Order**").  The Interim Compensation Order provides, among other things, that retained professionals of the Debtors are required to serve monthly itemized billing statements (each, a "**Fee Statement**") on the U.S. Trustee, the Debtors, counsel to the Debtors, and counsel to the Creditors Committees.  Upon passage of a twenty (20) day objection period, if no objections have been received, the Debtors are authorized to pay to the professionals 85% of the fees and 100% of the expenses requested.

13.	In compliance with the Interim Compensation Order, WF&G has submitted three Fee Statements relating to the Third Application Period.  Payment on account of these Fee Statements has been requested as follows:

(a) Pursuant to the Fee Statement for the period June 1, 2009 through June 30, 2009 (the "**June Fee Statement**"), WF&G has requested payment of $760,091.68 representing 85% of the total fees requested for services rendered (i.e., $894,225.50), and $40,246.03 representing 100% of the expenses incurred during the period.

(b) Pursuant to the Fee Statement for the period July 1, 2009 through July 31, 2009 (the "**July Fee Statement**"), WF&G has requested payment of $677,899.15 representing 85% of the total fees requested for services rendered (i.e., $797,399.00), and $47,780.47 representing 100% of the expenses incurred during the period.

(c) Pursuant to the Fee Statement for the period August 1, 2009 through August 31, 2009 (the "**August Fee Statement**"), WF&G has requested payment of $668,558.15 representing 85% of the total fees requested for services rendered (i.e., $786,539.00), and $27,302.55, representing 100% of the expenses incurred during the period.

14.     No objections to the June Fee Statement or the July Fee Statement were submitted and no objections to the August Fee Statement have been submitted as of the filing of this Application.  In accordance with the Interim Compensation Order, WF&G has received payment of $800,337.71 relating to the June Fee Statement and $725,569.63 relating to the July Fee Statement.  The objection deadline for the August Fee Statement is October 21, 2009; therefore, as of the date of this Application, WF&G has not received payment for the August Fee Statement.

**THIS FEE APPLICATION**

15.     Prior to the Initial Petition Date, WF&G received retainers aggregating $700,000.00.  Certain of these retainers were applied to fees for services rendered and reimbursement for expenses incurred prior to the Initial Petition Date.  Currently, WF&G holds a

remaining retainer in the amount of $486,244.000.[2]  As of the Initial Petition Date, WF&G had no agreement or understanding between WF&G and any other entity for the sharing of compensation to be received for services rendered in or in connection with these cases.

16.     WF&G maintains written records of the time expended by attorneys and paraprofessionals in the rendition of professional services to the Debtors.  Such time records are made contemporaneously with the rendition of services by the person rendering such services.  A copy of the daily time records for the Third Application Period, broken down by matter and listing the name of the attorney or paraprofessional, the date on which the services were performed, and the amount of time spent in performing the services, is annexed hereto as <u>Exhibit A</u>.  Additionally, annexed hereto as part of <u>Exhibit A</u> is a list of all of the matters for which services were rendered and the aggregate amount of hours and fees expended for each of those matters.

17.     For the convenience of the Court and parties in interest, annexed hereto as <u>Exhibit B</u> is a list of the attorneys and paraprofessionals who have worked on these cases during the Third Application Period, the aggregate time expended by each individual during the Third Application Period, his or her hourly billing rate during the Third Application Period, and the amount of WF&G's fees attributable to each individual.

18.     WF&G also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of professional services.  A schedule setting forth the categories of expenses and amounts for which reimbursement is requested is annexed hereto as <u>Exhibit C</u>.

---

[2]     The remaining retainer amount differs slightly from the amounts disclosed in WF&G's retention application and prior fee applications due to an accounting error.

19.     Pursuant to the Interim Compensation Order and UST Guidelines, WF&G recorded its services rendered and disbursements incurred on different matters reasonably expected by the Debtors to continue over a period of at least three months and to constitute a substantial portion of the fees sought during an application period.

## SUMMARY OF SERVICES RENDERED

20.     Recitation of each and every item of professional services that WF&G performed would unduly burden the Court.  Hence, the following summary highlights the major areas to which WF&G devoted substantial time and attention during the Third Application Period.  The full breadth of WF&G's services is reflected in WF&G's time records.[3]

### A.     General Chapter 11 and Case Administration of LFG's Case

21.     WF&G has contributed significantly to the efficient administration of LFG's bankruptcy case.  Where possible, WF&G has attempted to resolve disputes consensually, without seeking judicial intervention.  WF&G has actively sought to maintain an efficient working relationship with Court personnel, the U.S. Trustee, counsel to the Creditors Committees and other parties in interest, and to guide LFG and the other Debtors to the culmination of their chapter 11 cases.

22.     LFG is a holding company that operates through its various subsidiaries (collectively, the "**Company**").  Through the bankruptcy process, LFG intends to maximize value for its creditors and its estate through sales of the Company's remaining businesses and/or the prompt and orderly wind-down and liquidation of such businesses.

---

[3]     Copies of the daily time records are being provided to the Court and the U.S. Trustee.  Parties in interest required to be served with WF&G's Fee Statements pursuant to the Interim Compensation Order have previously been furnished with such daily time records.  Copies of the time records will be made available to other parties in interest upon reasonable request.

23.     The size and complexity of the Company's business operations as well as the numerous legal and business issues arising in LFG's case, necessitate a significant amount of communication among LFG's management and other professionals employed by LFG.  As a means of coordinating and assessing the progress made in LFG's case, and to address the extensive legal issues faced by LFG, conference calls were routinely held throughout the Third Application Period among LFG's personnel, WF&G, the Debtors' co-counsel McGuireWoods LLP ("**MGW**"), LFG's financial advisors, Zolfo Cooper ("**Zolfo**"), and other professionals retained by the Debtors.  The purpose of these calls and meetings was to discuss both short-term and long-term strategies of the case, identify and address various issues affecting LFG, and provide necessary updates of information designed to assist all parties in providing their professional services efficiently.  Accordingly, such calls and meetings served the important function of, among other things, assigning tasks to specific parties to avoid the duplication of efforts among the professionals and management.

24.     In addition, LFG and WF&G have worked closely with the LFG Creditors Committee and its professionals to keep all parties fully informed of the legal, operational, financial and other issues affecting LFG's estate including, but not limited to: (a) the wind-down of the Company's businesses; (b) the evaluation, marketing, and sale, as applicable, of the Company's remaining businesses; (c) the analysis and review of proofs of claims filed against LFG; (d) the evaluation of pending and threatened litigation against the LFG estate; and (e) the commencement of negotiations and settlement discussions between LFG and Fidelity National Financial, Inc. to resolve issues between the two parties.  Also, throughout the Third Application Period, WF&G assisted LFG in preparing timely and informative responses to inquiries from the LFG Creditors Committee.  Additionally, WF&G attorneys assisted Zolfo and LFG in the

preparation of a detailed presentation on key issues and concerns raised by the LFG Creditors Committee and participated in meetings with both Creditors Committees to consensually resolve various issues relating to LFG's and other Debtors' estates.

25. During the Third Application Period, the Debtors identified the need to file LandAm Credit for chapter 11 bankruptcy protection in order to help with the orderly wind-down of its business. In connection with the bankruptcy filing, WF&G attorneys prepared and filed a voluntary petition on behalf of LandAm Credit and other first day pleadings to ensure a smooth transition into chapter 11. WF&G also assisted LandAm Credit in acquiring approval of a sale, on an expedited basis, of substantially all of its assets to LAMAT, LLC. By order of this Court dated August 3, 2009, the sale of substantially all of LandAm Credit's assets was approved, which resulted in a purchase price of approximately $3.5 million to LandAm Credit's estate before any working capital adjustments or transaction costs.

26. Further, during the Third Application Period, WF&G assisted LandAm Credit in compiling and filing its schedules of assets and liabilities (the "**Schedules**") and its statement of financial affairs (the "**SOFA**"), which were timely filed on August 28, 2009. WF&G also assisted LandAm Credit in obtaining approval of its motion to establish a deadline to file proofs of claim against its estate. The Court established September 30, 2009 as the general claims bar date and January 13, 2010 as the governmental unit bar date.

B. **The Inter-Estate and LES Mediations**

27. On May 21, 2009, the Bankruptcy Court approved a protocol (the "**Mediation Protocol**") providing for a two-step mediation of (a) certain inter-estate transactions between LFG and LES (the "**Inter-Estate Mediation**"), and (b) issues relating to a compromise plan of liquidation involving a global resolution of, among other things, certain litigation test

cases (the "**Lead Cases**"), which share common legal and factual issues with other adversary proceedings pending against LES (the "**LES Mediation**").

28.     WF&G and representatives for LES, LFG, and each of the Creditors Committees participated in the two-day Inter-Estate Mediation.  In connection with the Inter-Estate Mediation, WF&G attorneys spent a significant amount of time engaged in discovery, and researching and reviewing documentation in preparation for depositions.  At the conclusion of the Inter-Estate Mediation, on July 3, 2009, the Creditors Committees reached a negotiated resolution for the treatment of the various inter-estate disputes, including LFG's advance of approximately $65 million to LES to enable LES to honor certain of its customers' exchange transactions.

29.     The second step of the Mediation Protocol, the LES Mediation, was designed to address a structure for a plan of liquidation encompassing a global resolution of, among other things, outstanding issues relating to the Lead Cases, including the resolution of whether certain customers were entitled to consequential damages and whether proceeds of sales of relinquished properties (the "**Exchange Funds**") were held by LES in constructive trusts on behalf of their customers.  WF&G, representatives for LES, LFG, each of the Creditors Committees and certain Lead Case Plaintiffs partook in the Mediation Protocol, which concluded on July 14, 2009 and resulted in the Creditors Committees and the Lead Case plaintiffs agreeing to a proposed resolution of many of the outstanding issues related to the Lead Cases.

30.     WF&G played a critical role in the creation and implementation of the Mediation Protocol.  As a result of the LES and Inter-Estate Mediations, the Debtors, with the input of the Creditors Committees, have worked diligently to document the resolution of the

Inter-Estate Mediation and LES Mediation, which ultimately formed the basis of a consensual plan of liquidation that enjoys the support of both Creditors Committees.

        C.      **Plan of Liquidation and Disclosure Statement**

        31.      Immediately after the formation of term sheets from the Inter-Estate and LES Mediation, the Debtors and WF&G attorneys began formulating a plan of liquidation with the input of the Creditors Committees. During the next six weeks, WF&G attorneys devoted substantial time and effort to the drafting and finalizing the terms of the Plan, the Disclosure Statement and related documents. During this time, the Debtors, WF&G attorneys and the Creditors Committees exchanged over a dozen drafts of the Plan and the Disclosure Statement and spent numerous hours on conference calls to negotiate and finalize the terms of the Plan. Shortly after the end of the Third Application Period, the Debtors filed the Plan and Disclosure Statement.

        D.      **Asset Sales**

        32.      Since the sale of the Underwriters, WF&G has been working with Zolfo and LFG to evaluate the Company's remaining businesses to determine the manner in which to best maximize value, including through one or more sales of such remaining businesses and/or the prompt and orderly wind-down and liquidation of such businesses. As of the Initial Petition Date, LFG wholly-owned approximately 28 direct subsidiaries and approximately 219 active and inactive indirect subsidiaries (certain of which are joint ventures), and it owned an interest in approximately 14 non-title joint ventures. During the Third Application Period, LFG, together with Zolfo and the assistance of WF&G attorneys, marketed, negotiated and pursued approximately thirteen different transactions. WF&G attorneys devoted significant time to drafting and negotiating asset purchase agreements and stock purchase agreements for such transactions. Although several of these transactions have not yet been finalized, negotiations

between LFG and its professionals, and potential strategic buyers have continued throughout the Third Application Period.

33. During the Third Application Period, WF&G attorneys negotiated and sought court approval of a sale of LFG's ownership interest in RealEC Technologies, Inc. ("**RealEC**") to LPS Asset Management Solutions, Inc. The approval of the sale of LFG's ownership interests in RealEC resulted in approximately $2.6 million in value for LFG's estate.

E. **Creditor/Claims Issues**

34. During the Third Application Period, WF&G attorneys continued to respond to numerous communications from creditors received in these chapter 11 cases. Since the Initial Petition Date, the Debtors also have worked diligently to resolve significant claims filed against their estates. The Debtors have settled certain prepetition and postpetition claims in accordance with the settlement procedures that were approved by this Court. Specifically, the Debtors entered into consensual agreements terminating or amending several of their unexpired non-residential real property leases. In addition, the Debtors continued to negotiate the settlement of certain lawsuits that are pending against their estates. Moreover, during the Third Application Period, WF&G attorneys spent a significant amount of time working with Zolfo and the Debtors to review and reconcile numerous claims filed against LFG, LES, the Southland Entities, LandAm Title and LAC. As a result, the Debtors filed six (6) omnibus claim objections to expunge numerous claims against their estates.

35. The Debtors and WF&G attorneys have also focused on resolving certain significant government claims, including those asserted by the Internal Revenue Service and the Pension Benefit Guarantee Corporation. The Debtors are hopeful of reaching consensual resolutions regarding these claims.

F.      **General Chapter 11 and Case Administration of LES's Case**

36.      During the Third Application Period, WF&G contributed significantly to the efficient administration of LES's case.  Among other things, WF&G attorneys worked with LES's customers, the LES Creditors Committee and the U.S. Trustee to ensure that the Exchange Funds are held in stable financial institutions.  In addition, WF&G attorneys continued to pursue settlement of certain claims by LES customers pursuant to the settlement procedures approved in these chapter 11 cases.

37.      In an effort to maximize the value of LES's estate, LES, with the assistance of WF&G and Zolfo, has also focused its efforts on marketing and selling its investments in subordinate student loan auction rate securities (the "**Auction Rate Securities**").  Due to the illiquid nature of these assets, the potential sale of the Auction Rate Securities has required prolonged discussions between the Debtors, the LES Committee, and prospective brokers and purchasers.  As a result of these efforts, the Debtors anticipate shortly filing a motion with this Court seeking approval of procedures to market and, if appropriate, sell the Auction Rate Securities.

G.      **General Litigation**

38.      During the Third Application Period, WF&G continued to represent the Debtors in connection with various litigations in courts other than this Court brought against certain of the Debtors' current and former officers and employees by various plaintiffs who deposited Exchange Funds with LES prior to the Initial Petition Date.  WF&G continued to negotiate agreements to stay these cases without the Court's intervention.

H.      **Beau Street v. CTG Real Estate**

39.      During the Third Application Period, WF&G represented LFG's subsidiaries, LandAmerica OneStop, Inc. ("**OneStop**") and CTG, in connection with a complaint

in equity filed on February 13, 2009, by the landlords Beau Street Associates, Inc. and JBP

Holdings, LLC (together, the "**Beau Street Complaint Plaintiffs**") in Pennsylvania state court

against OneStop and CTG, as well as against now-dissolved former LFG subsidiary, CTG Real

Estate Information Services, Inc. ("**CTG REIS**").  WF&G assisted LFG with production of

documents in connection with requests made by the Beau Street Complaint Plaintiffs, negotiated

resolutions to various discovery disputes, and engaged in preliminary settlement discussions in

connection with this action.

I.     **Corporate Matters**

40.     During the Third Application Period, WF&G expended substantial time

and effort addressing issues relating to the Debtors' insurance policies.  WF&G continued to

assist the Debtors in evaluating their insurance coverage, including directors' and officers',

errors and omissions, fiduciary, and employed lawyers liability insurance.  In particular, WF&G

attorneys communicated with the Debtors' insurers regarding, among other things, settlement

notifications and defense costs submissions to the insurers, and with the Creditors Committees

regarding insurance proceeds.  WF&G continued to coordinate with the Debtors' insurance

brokers and provide notice to such insurers of the various claims both pending and threatened in

these cases.

J.     **Executory Contracts/Leases**

41.     The Debtors have spent a significant amount of time disposing of their

interests in their real property leases.  During the Third Application Period, WF&G assisted the

Debtors and Zolfo in evaluating and establishing stream-lined procedures whereby the Debtors

disposed of over twenty of their real property leasehold interests in order to mitigate losses and

maximize value for their estates.  Further, with WF&G's assistance, the Debtors have reached

settlements with several vendors and landlords in accordance with the settlement procedures that have been approved in these cases.

K. **WF&G Fee Application**

42. During the Third Application Period, WF&G continued to prepare and serve Fee Statements in compliance with the Interim Compensation Order. In addition, during this period, WF&G prepared, filed, and served its application for interim allowance of compensation relating to the Second Application Period.

## EVALUATING WF&G'S SERVICES

43. The allowance of interim compensation for services rendered and reimbursement of expenses incurred in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> [A] debtor's attorney, or any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331.

44. Concerning the level of compensation, section 330(a)(l) of the Bankruptcy Code provides, in pertinent part, that the court may award to a professional person, including the debtor's attorney:

> "reasonable compensation for actual, necessary services rendered by the . . . professional person, or attorney and by any paraprofessional person employed by any such person . . . ."

11 U.S.C. § 330. The Congressional intent and policy expressed in section 330 of the Bankruptcy Code is to provide for adequate compensation to continue to attract qualified and competent practitioners to bankruptcy cases.

45.     The "lodestar" method of fee calculation developed by the Third Circuit is the method used to determine a "reasonable" attorney fee in all the federal courts, including the bankruptcy courts.  Under the "lodestar" approach, the Court should consider the number of hours of service reasonably devoted to the case multiplied by the attorney's reasonable rates.  Courts frequently consider the specific "lodestar" factors enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).  The lodestar factors were adopted by the Fourth Circuit in Barber v. Kimbrells, Inc., 577 F.2d 216, 226 (4th Cir.), cert. denied, 439 U.S. 934 (1978), and in Anderson v. Morris, 658 F.2d 246, 249 (4th Cir. 1981), where the Fourth Circuit held that the district court should employ the lodestar approach, and then adjust the fee on the basis of the remaining Johnson factors in the case.  The following are the Johnson factors:

(a)     the time and labor required;

(b)     the novelty and difficulty of the questions;

(c)     the skill requisite to perform the legal service properly;

(d)     the preclusion of other employment by the attorney due to acceptance of the case;

(e)     the customary fee;

(f)     whether the fee is fixed or contingent;

(g)     time limitations imposed by the client or the circumstances;

(h)     the amount involved and the results obtained;

(i)     the experience, reputation and ability of the attorneys;

(j)     the "undesirability" of the case;

(k)     the nature and length of the professional relationship with the client; and

(l)     awards in similar cases.

Johnson, 488 F.2d at 717-719; Barber, 577 F.2d at 226, n.28; Anderson, 658 F.2d at 248, n.2.

**WF&G'S REQUEST FOR INTERIM COMPENSATION**

46.     WF&G submits that its request for interim allowance of compensation is reasonable.  The services rendered by WF&G, as highlighted above, required substantial time and effort, resulting in the timely resolution of various issues presented in these cases.

47.     The services rendered by WF&G during the Third Application Period were performed diligently and efficiently.  Accordingly, when possible, WF&G delegated tasks to lower cost junior attorneys or, for discrete matters, to attorneys with specialized expertise in the particular task at issue.  While that approach may have required intra-office conferences or involved individual attorneys who spent only a few hours on the matter at hand, the net result was enhanced cost efficiency.

48.     In many instances, WF&G has been able to successfully resolve disputes without the need to resort to the Court.  When necessary, however, WF&G actively represented the Debtors' interests before the Court and substantially furthered the Debtors' efforts to preserve the value of the Debtors' estates for their creditors.

49.     During the Third Application Period, WF&G encountered a variety of challenging legal issues, often requiring substantial research and negotiation.  WF&G brought to bear legal expertise in many areas, including bankruptcy, litigation, corporate and tax.  WF&G attorneys have rendered advice in all of these areas with skill and dispatch.

50.     The services rendered to the Debtors by WF&G during the Third Application Period required an aggregate expenditure of 4,594.60 recorded hours of the time of attorneys and paraprofessionals.  Exhibit B sets forth a list of such individuals, the aggregate amount of time expended by each, and the current hourly billing rate for each.  The blended

hourly rate for the services of attorneys who recorded time during the Third Application Period was $568.30.[4]

51.     WF&G's hourly rates and fees charged are consistent with the market rate for comparable services.  The hourly rates and fees charged by WF&G are the same as those generally charged to, and paid by, WF&G's other clients.  Indeed, unlike fees paid by most WF&G clients, due to the "holdback" of fees from prior Fee Statements and the delays inherent in the fee application process, the present value of the fees paid to WF&G by the Debtors is less than fees paid monthly by other WF&G clients.

## DISBURSEMENTS

52.     WF&G incurred actual and necessary out-of-pocket expenses during the Third Application Period, in connection with the rendition of the professional services described above, in the amounts set forth in Exhibit C.  By this Application, WF&G respectfully requests allowance of such reimbursement in full.

53.     The disbursements for which WF&G seeks reimbursement include the following:

> (a)     Duplicating – Charged at $0.10 per page, based upon the cost of supplies.  The charge per page includes a charge for maintaining the duplicating facilities;
>
> (b)     Telecommunications – Long distance calls are billed at actual cost.  There is no charge for outgoing or incoming facsimiles, except for the cost of any long distance transmissions;
>
> (c)     Computer Research Charges – WF&G's practice is to bill clients for LEXIS and Westlaw research at actual cost,

---

[4]     The blended hourly rate (excluding paraprofessional time) is calculated by dividing the total amount of fees earned by WF&G attorneys ($2,390,339.50) by the total number of hours billed (4,206.10) by such attorneys.  The blended hourly rate including paraprofessional time is $539.36 or $2,478,163.50 in fees billed by WF&G professionals (both attorneys and paraprofessionals) divided by 4,594.60 hours billed.

which does not include amortization for maintenance and equipment;

(d) <u>Overtime Expenses</u> – WF&G's practice is to allow any attorney working later than 8:00 p.m. and any legal assistant working later than 7:30 p.m. to charge a working meal to the appropriate client;

(e) <u>Local Car Service</u> – WF&G's practice is to allow attorneys, legal assistants, and secretaries to charge car service to the appropriate client after 9:00 p.m.; and

(f) <u>Delivery Services</u> – WF&G's practice is to charge postal, overnight delivery, and courier services at actual cost.

54. Though WF&G's practice is to bill clients for secretarial overtime and word processing at actual cost, WF&G, in its billing discretion, does not bill the Debtors for such charges.

## **NOTICE**

55. Pursuant to the Interim Compensation Order, WF&G will or has served copies of the Application on the Notice Parties (as defined therein). In addition, WF&G will or has served notice of the Application and notice of the hearing on the Application on the parties entitled to receive notice under the Amended Case Management Order [Docket No. 435]. WF&G submits that no other or further notice need be given.

## **NO PRIOR REQUEST**

56. No previous motion for the relief sought herein has been made to this or to any other Court.

## CONCLUSION

WHEREFORE, WF&G respectfully requests that this Court enter an order: (a) allowing WF&G interim allowance of compensation for services rendered in the aggregate amount of $2,478,163.50 during the Third Application Period, which includes $371,724.53 representing the 15% portion of fees for services rendered that has been "held-back"; (b) awarding WF&G reimbursement of actual, necessary expenses incurred in connection with the rendition of services during the Third Application Period, in the amount of $115,329.05; (c) authorizing and directing the Debtors to pay the foregoing amounts to WF&G to the extent not already paid; and (d) granting such other and further relief as may be just or proper.

Dated: Richmond, Virginia
      October 15, 2009

Respectfully submitted,

/s/ Paul V. Shalhoub
WILLKIE FARR & GALLAGHER LLP
Paul V. Shalhoub, Esq.
Rachel C. Strickland, Esq.
787 Seventh Avenue
New York, New York  10019
(212) 728-8000

-and-

/s/ John H. Maddock III
Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 41044)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

Attorneys for the Debtors and Debtors in Possession

**SERVICES RENDERED BY CATEGORY**
**JUNE 1, 2009 THROUGH AUGUST 31, 2009**

| Service Category | Hours | Fees Earned |
|---|---|---|
| General Chapter 11 | 237.50 | $122,242.50 |
| General Litigation | 163.60 | $86,555.00 |
| General Corporate | 84.60 | $57,750.50 |
| Executory Contracts and Leases | 123.20 | $58,358.50 |
| Automatic Stay | 50.70 | $34,200.00 |
| Employee/Pension/Labor | 11.80 | $6,472.00 |
| Tax Issues | 15.10 | $10,432.50 |
| Creditor/Claim Issues | 619.60 | $298,570.00 |
| Non-WF&G Retention | 50.80 | $29,367.50 |
| WF&G Fee Applications | 83.10 | $31,728.50 |
| Non-WF&G Fee Applications | 5.20 | $2,250.00 |
| Schedules/Statements/Monthly Reports | 0.90 | $440.00 |
| Plan of Reorganization/Disclosure Statement | 573.50 | $295,445.00 |
| Asset Sales | 298.70 | $147,684.50 |
| 1031 Litigation | 455.60 | $255,250.50 |
| Fidelity Transaction | 2.60 | $1,983.00 |
| SEC Matters | 323.90 | $156,798.50 |
| LandAmerica Assessment Corp. | 9.10 | $5,386.00 |
| LES General Chapter 11 | 59.20 | $32,993.00 |
| Beau Street v. CTG Real Estate | 82.80 | $43,190.00 |
| LandAmerica Title Company | 180.90 | $119,025.50 |
| LandAmerica Credit Services | 23.50 | $8,796.50 |
| Southland Entities | 4.10 | $2,957.50 |
| Inter-Estate Plan and Mediation | 703.60 | $421,191.50 |
| Regulatory Compliance | 65.10 | $36,262.50 |
| LES Plan Mediation | 365.90 | $212,832.50 |
| **TOTAL** | **4,594.60** | **$2,478,163.50** |

**SERVICES RENDERED BY PROFESSIONALS**
**JUNE 1, 2009 THROUGH AUGUST 31, 2009**

| Name | Department | Law School Graduation Date | Position | Hours | Hourly Rate | Fees Earned |
|------|-----------|----------------------------|----------|-------|-------------|-------------|
| **PARTNERS** | | | | | | |
| Mitchell J. Auslander | Litigation | 1980 | Partner (1/1/89) | 3.70 | 995 | 3,681.50 |
| Gregory S. Bruch | Litigation | 1985 | Partner (5/12/08) | 9.30 | 995 | 9,253.50 |
| Mark A. Cognetti | Corporate | 1998 | Partner (1/1/07) | 17.10 | 695 | 11,884.50 |
| Lawrence O. Kamin | Litigation | 1976 | Partner (1/1/85) | 247.00 | 950 | 234,650.00 |
| Mei Lin Kwan-Gett | Litigation | 1992 | Partner (1/1/08) | 0.20 | 695 | 139.00 |
| Stephen T. Lindo | Employee Benefits | 1974 | Partner (10/31/88) | 0.10 | 995 | 99.50 |
| Terence K. McLaughlin | Litigation | 1996 | Partner (1/1/05) | 206.30 | 695 | 143,378.50 |
| Christopher Peters | Tax | 1997 | Partner (1/1/07) | 10.30 | 695 | 7,158.50 |
| David E. Rubinsky | Employee Benefits | 1996 | Partner (1/1/07) | 0.90 | 695 | 625.50 |
| Paul V. Shalhoub | Bankruptcy | 1991 | Partner (1/1/00) | 91.40 | 855 | 78,147.00 |
| Rachel C. Strickland | Bankruptcy | 1998 | Partner (1/1/07) | 348.60 | 695 | 242,277.00 |
| | **TOTAL PARTNERS:** | | | **934.90** | | **$731,294.50** |
| **COUNSEL** | | | | | | |
| Ian Hochman | Litigation | 1997 | Special Counsel | 8.20 | 690 | 5,658.00 |
| Martin R. Miller | Corporate | 1982 | Special Counsel | 0.80 | 690 | 552.00 |
| Kim A. Walker | Intellectual Property | 1991 | Special Counsel | 2.20 | 690 | 1,518.00 |
| | **TOTAL SPECIAL COUNSEL:** | | | **11.20** | | **$7,728.00** |
| **ASSOCIATES** | | | | | | |
| Stephen Arbuthnot | Litigation | 1978 | Associate | 38.40 | 320 | 12,288.00 |
| Joseph Azam | Litigation | 2008 | Associate | 39.70 | 380 | 15,086.00 |
| Howard Block | Corporate | 2008 | Associate | 102.40 | 290 | 29,696.00 |
| Elizabeth Bower | Litigation | 2001 | Associate | 387.10 | 680 | 263,228.00 |
| Tequila Brooks | Litigation | 1997 | Associate | 44.80 | 320 | 14,336.00 |
| Katie Calabrese | Employee Benefits | 2006 | Associate | 4.60 | 510 | 2,346.00 |
| Jeffrey B. Clancy | Corporate | 2000 | Associate | 66.60 | 680 | 45,288.00 |
| Eliina Clark | Litigation | 2005 | Associate | 44.10 | 320 | 14,112.00 |

| Name | Department | Law School Graduation Date | Position | Hours | Hourly Rate | Fees Earned |
|---|---|---|---|---|---|---|
| Peter Kohoon | Litigation | 1993 | Associate | 0.50 | 320 | 160.00 |
| Jeanna Composti | Litigation | 2008 | Associate | 15.20 | 380 | 5,776.00 |
| Laurita M. Denny | Litigation | 2007 | Associate | 368.50 | 465 | 171,352.50 |
| David Drewes | Real Estate | 2001 | Associate | 0.40 | 680 | 272.00 |
| Jamie Eisen | Bankruptcy | 2003 | Associate | 93.80 | 625 | 58,625.00 |
| Jeff Fang | Corporate | 2006 | Associate | 91.70 | 510 | 46,767.00 |
| Chantalle Fish | Litigation | 2008 | Associate | 0.80 | 380 | 304.00 |
| Rebecca Forter | Tax | 2006 | Associate | 15.40 | 510 | 7,854.00 |
| Gorka Garcia | Litigation | 2001 | Associate | 7.60 | 320 | 2,432.00 |
| Carly Glover | Real Estate | 2007 | Associate | 0.20 | 465 | 93.00 |
| Matthew J. Guercio | Corporate | 2003 | Associate | 85.40 | 625 | 53,375.00 |
| Sandra Hanna | Litigation | 2001 | Associate | 151.80 | 680 | 103,224.00 |
| Jennifer Hardy | Bankruptcy | 2007 | Associate | 260.00 | 465 | 120,900.00 |
| Shan He | Corporate | 2008 | Associate | 1.60 | 380 | 608.00 |
| Amina Jafri | Litigation | 2005 | Associate | 296.10 | 530 | 156,933.00 |
| Emma James | Litigation | 2007 | Associate | 6.50 | 465 | 3,022.50 |
| Dan Kozusko | Litigation | 2003 | Associate | 3.90 | 625 | 2,437.50 |
| Jeremy A. Linden | Litigation | 2007 | Associate | 41.30 | 465 | 19,204.50 |
| Jordana Linder | Bankruptcy | 2007 | Associate | 309.70 | 465 | 144,010.50 |
| Nancy McCabe | Insurance | 1993 | Associate | 13.70 | 685 | 9,384.50 |
| Norman Ostrov | Litigation | 2006 | Associate | 80.90 | 510 | 41,259.00 |
| Gregory Reid | Litigation | 2008 | Associate | 39.40 | 380 | 14,972.00 |
| Elissa Rossi | Litigation | 2002 | Associate | 20.50 | 665 | 13,632.50 |
| Frank Scaduto | Litigation | 2005 | Associate | 24.10 | 530 | 12,773.00 |
| Khiran Sidhu | Litigation | 2008 | Associate | 304.70 | 380 | 115,786.00 |
| Stephen B. Vogel | Litigation | 2003 | Associate | 100.10 | 625 | 62,562.50 |
| Brian J. Weinberger | Real Estate | 2006 | Associate | 89.40 | 510 | 45,594.00 |
| Monica Welby | Litigation | 2005 | Associate | 0.60 | 530 | 318.00 |
| Marina Zelinsky | Bankruptcy | 2008 | Associate | 108.00 | 380 | 41,040.00 |
| Seth Zelnick | Corporate | 2005 | Associate | 0.50 | 530 | 265.00 |
|  | **TOTAL ASSOCIATES:** |  |  | **3,260.00** |  | **$1,651,317.00** |
| **LEGAL ASSISTANTS** |  |  |  |  |  |  |
| Andy Alcindor | Litigation |  | Legal Asst. | 0.20 | 105 | 21.00 |
| Alison R. Ambeault | Bankruptcy |  | Legal Asst. | 211.20 | 235 | 49,632.00 |
| Michael Arakelyan | Litigation |  | Legal Asst. | 1.20 | 125 | 150.00 |
| Elizabeth Bubriski | Bankruptcy |  | Legal Asst. | 0.90 | 165 | 148.50 |
| Corey Casbarro | Bankruptcy |  | Legal Asst. | 0.90 | 165 | 148.50 |
| Kelly Fitzgerald | Bankruptcy |  | Legal Asst. | 0.70 | 165 | 115.50 |
| Dan Gerstle | Litigation |  | Legal Asst. | 1.20 | 165 | 198.00 |
| Jill Hannon | Litigation |  | Legal Asst. | 0.30 | 175 | 52.50 |
| Diane Hinrichs | Litigation |  | Legal Asst. | 92.30 | 260 | 23,998.00 |
| George Ho | Corporate |  | Legal Asst. | 10.40 | 175 | 1,820.00 |
| Rebecca Hutcheon | Litigation |  | Legal Asst. | 3.70 | 235 | 869.50 |
| Lauren Kessler | Litigation |  | Legal Asst. | 1.00 | 175 | 175.00 |
| Susan Lacheman | Litigation |  | Legal Asst. | 0.80 | 240 | 192.00 |
| Chris Lisciandro | Litigation |  | Legal Asst. | 2.50 | 175 | 437.50 |

| Name | Department | Law School Graduation Date | Position | Hours | Hourly Rate | Fees Earned |
|------|-----------|--------------------------|----------|-------|-------------|-------------|
| Sal Mancuso | Litigation | | Legal Asst. | 2.30 | 240 | 552.00 |
| Lara Miranda | Litigation | | Legal Asst. | 19.70 | 165 | 3,250.50 |
| Ana Munoz | Litigation | | Legal Asst. | 30.10 | 135 | 4,063.50 |
| Bonnie Schmidt | Corporate | | Legal Asst. | 1.00 | 235 | 235.00 |
| Matthew Sorenson | Litigation | | Legal Asst. | 4.00 | 185 | 740.00 |
| Ann Staron | Corporate | | Legal Asst. | 4.10 | 250 | 1,025.00 |
| **TOTAL LEGAL ASSISTANTS:** | | | | **388.50** | | **$87,824.00** |
| | | | | | | |
| **GRAND TOTAL:** | | | | **4,594.60** | | **$2,478,163.50** |

<u>**EXHIBIT C**</u>

**DISBURSEMENTS FOR PERIOD**
**JUNE 1, 2009 THROUGH AUGUST 31, 2009**

| Disbursement | Amount |
|---|---:|
| Postage/Messenger/Overnight Delivery | 279.26 |
| Local Transportation | 4,485.24 |
| Long Distance Telephone | 4,226.36 |
| Local Meals | 4,993.28 |
| Other Out of Town Travel | 1,963.95 |
| Lodging | 7,974.72 |
| Airfare/Train | 10,244.70 |
| Reproduction | 32,333.48 |
| Air Freight | 1,547.74 |
| Data Acquisition | 41,483.46 |
| Court Reporter/Other Fees | 3,175.26 |
| Outside Consultants | 2,546.00 |
| Filing Fees/Corp Trust | 45.00 |
| Other Disbursements | 30.60 |
| **TOTAL:** | **$115,329.05** |

Paul V. Shalhoub (Admitted Pro Hac Vice)
Rachel C. Strickland (Admitted Pro Hac Vice)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

        - and -

Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 410444)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

Attorneys for the Debtors and
Debtors in Possession


IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
------------------------------------------------------x
In re                              :    Chapter 11
                                   :
LandAmerica Financial Group, Inc., et al.,  :    Case No. 08-35994 (KRH)
                                   :
                Debtors.           :    (Jointly Administered)
------------------------------------------------------x
```

**SUMMARY SHEET PURSUANT TO
UNITED STATES TRUSTEE GUIDELINES FOR
REVIEWING APPLICATIONS FOR COMPENSATION
AND REIMBURSEMENT OF EXPENSES FILED
UNDER SECTION 330 OF THE BANKRUPTCY CODE**

      1.     <u>Total Compensation and Expenses Requested</u>.  Willkie Farr & Gallagher

LLP ("**WF&G**"), in connection with its application (the "**Application**") for interim allowance of

compensation for professional services rendered and reimbursement of expenses incurred in the above-captioned cases, has requested that the Court enter an order:

(a)    awarding WF&G interim allowance of compensation for services rendered in the aggregate amount of $2,478,163.50, during this interim application period, which includes $371,724.53 representing the 15% portion of fees for services rendered that has been "held-back";

(b)    awarding WF&G interim allowance of reimbursement of actual, necessary expenses incurred in connection with the rendition of such professional services, in the aggregate amount of $115,329.05;

(c)    authorizing and directing the Debtors to pay the foregoing amounts to WF&G to the extent not already paid; and

(d)    granting such other and further relief as may be just or proper.

2.    <u>Total Compensation and Expenses Previously Awarded</u>.  WF&G has previously been awarded on an interim basis the allowance of $4,062,498.00, representing 100% of the fees for professional services rendered by WF&G from November 26, 2008 through February 28, 2009, and $129,170.77, representing 100% of the actual and necessary expenses incurred in connection with the rendering of such professional services.  This Court also approved on an interim basis the allowance of $3,467,779.00, representing 100% of the fees for professional services rendered by WF&G from March 1, 2009 through May 31, 2009, and $136,347.64, representing 100% of the actual and necessary expenses incurred in connection with the rendering of such professional services.

3.    <u>Name, Billing Rate, Bar Admission Date, Total Hours Billed, and Total Billings for Each Professional</u>.  Please refer to <u>Exhibit B</u> to the Application for: (a) the names and applicable billing rates for each professional and paraprofessional who billed time during the period for which compensation for services rendered and reimbursement of expenses incurred is sought (the "**<u>Third Application Period</u>**"); (b) the date of law school graduation for each

attorney; (c) the total hours and total amounts billed for each attorney and paraprofessional listed; and (d) the blended hourly rate for all attorneys and paraprofessionals who billed time during the Third Application Period.

# **EXHIBIT E**

Paul V. Shalhoub (Admitted Pro Hac Vice)
Rachel C. Strickland (Admitted Pro Hac Vice)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

     - and -

Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 410444)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

Attorneys for the Debtors and
Debtors in Possession


IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

-------------------------------------------------------x
In re                                              :    Chapter 11
                                                   :
LandAmerica Financial Group, Inc., <u>et al.</u>,   :    Case No. 08-35994 (KRH)
                                                   :
                  Debtors.    :    (Jointly Administered)
-------------------------------------------------------x

**ORDER APPROVING THIRD APPLICATION OF WILLKIE
FARR & GALLAGHER LLP AS COUNSEL FOR DEBTORS FOR
INTERIM ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
<u>FROM JUNE 1, 2009 THROUGH AUGUST 31, 2009</u>**

      Upon the application, dated October 15, 2009 (the "**<u>Application</u>**"), of Willkie

Farr & Gallagher LLP ("**<u>WF&G</u>**"), attorneys for the debtors and debtors in possession in the

above-captioned cases (collectively, the "**<u>Debtors</u>**"), for interim allowance of compensation for

professional services rendered and reimbursement of expenses incurred from June 1, 2009

through August 31, 2009, pursuant to sections 330(a) and 331 of title 11 of the United States

Code (the "**Bankruptcy Code**"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"); and a hearing (the "**Hearing**") having been held before this Court on

November [12], 2009 to consider the Application; and it appearing that sufficient notice has been

given, and no other notice being necessary; and upon the full record of the Hearing and all prior

proceedings in these cases; and after due deliberation and sufficient cause appearing therefore, it

is hereby

ORDERED, ADJUDGED AND DECREED that:

1.      The Application is granted.

2.      All capitalized terms used but not defined herein shall have the same

meaning ascribed to them in the Application.

3.      The fees and expenses of WF&G requested for services rendered and

expenses incurred during the Third Application Period are approved on an interim basis, in the

amounts and to the extent provided in Schedule A-1 annexed hereto.

4.      The Debtors are authorized and directed to pay as soon as practicable all

fees and expenses approved by this Order (including the 15% Holdback) that remain unpaid.

5.      This Court shall retain jurisdiction over all matters arising from or related

to the interpretation and implementation of this Order.

Dated: Richmond, Virginia
          November ___, 2009

                                               _____
                                               UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

_____
WILLKIE FARR & GALLAGHER LLP
Paul V. Shalhoub, Esq.
Rachel C. Strickland, Esq.
787 Seventh Avenue
New York, New York  10019
(212) 728-8000

-and-

_____
Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 41044)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000


Attorneys for the Debtors and Debtors in Possession


## LOCAL BANKRUPTCY RULE 9022-1 (C) CERTIFICATION


Pursuant to Rule 9022-1(C) of the Local Rules of the United States Bankruptcy Court for

the Eastern District of Virginia, I hereby certify that the foregoing order has been endorsed by or

served upon all necessary parties.


_____
Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 41044)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

CASE NAME: LandAmerica Financial Group, Inc.
CASE NUMBER:  08-35994 (KRH) (Jointly Administered)

## <u>SCHEDULE A-1</u>

**FEES AND EXPENSES APPROVED ON AN INTERIM BASIS**

| <u>Applicant</u> | <u>Capacity</u> | Interim Compensation <u>Approved</u>[1] | Interim Reimbursement of Expenses <u>Approved</u> | Hold-Back <u>Approved</u> |
|---|---|---|---|---|
| Willkie Farr & Gallagher LLP | Attorneys for the Debtors | $2,478,163.50 | $115,329.05 | $371,724.53 |

\10045485.1

---

[1]  This amount includes amounts "held-back."