Charles R. Gibbs (admitted *pro hac vice*)
Keefe Bernstein (admitted *pro hac vice*)
Sarah Link Schultz (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: 214.969.2800
Facsimile: 214.969.4343

Catherine Creely (Virginia Bar No. 74796)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: 202.887.4000
Facsimile: 205.955.7827

Lynn Tavenner (Virginia Bar No. 30083)
Paula S. Beran (Virginia Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219
Telephone: 804.783.8300
Facsimile: 804.783.0178

*Attorneys for The Official Committee of Unsecured Creditors of LandAmerica 1031 Exchange Services, Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LandAmerica Financial Group, Inc., et al., | : | Case No. 08-35994 (KRH) |
| | : | |
| Debtors. | : | Jointly Administered |

-------------------------------------------------------------------x

## FINAL APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP FOR ALLOWANCE OF COMPENSATION AND EXPENSE REIMBURSEMENT AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LANDAMERICA 1031 EXCHANGE SERVICES, INC.

Name of Applicant:   Akin Gump Strauss Hauer & Feld LLP

Authorized to Provide Professional Services to:  Official Committee of Unsecured Creditors of LandAmerica 1031 Exchange Services, Inc.

Date of Retention: January 16, 2009 (*nunc pro tunc* to December 8, 2008)

Period for Which Compensation
and Reimbursement is Sought:  December 8, 2008 through December 6, 2009

Amount of Compensation Sought as
Actual, Reasonable, and Necessary: $4,639,413.25

Amount of Expense Reimbursement Sought
as Actual, Reasonable, and Necessary: $363,500.79

## Prior Interim Fee Applications

| Time Period | Fees | Expenses | Status |
|---|---|---|---|
| 12/08/08 – 2/28/09 (First Interim Fee Application) | $1,471,879.25 | $90,672.49 | On May 21, 2009, this Court entered an order (Docket No. 1469) awarding Akin Gump the fees and expenses requested in the First Interim Fee Application. Akin Gump has received payment of the fees and expenses awarded. |
| 3/01/09 – 5/31/09 (Second Interim Fee Application) | $1,188,704.50 | $90,837.09 | On September 2, 2009, this Court entered an order (Docket No. 1960) awarding Akin Gump the fees and expenses requested in the First Interim Fee Application. Akin Gump has received payment of the fees and expenses awarded. |
| 6/01/09 – 8/31/09 (Third Interim Fee Application) | $1,093,624.00 | $88,985.55 | On November 13, 2009, this Court entered an order (Docket No. 2560) awarding Akin Gump the fees and expenses requested in the First Interim Fee Application. Akin Gump has received payment of the fees and expenses awarded. |

## Monthly Fee Statements

| Time Period | Fees | Expenses | Status |
|---|---|---|---|
| 9/01/09 – 9/30/09 | $282,991.50 | $13,357.89 | Pending. Pursuant to the Interim Compensation Order, Akin Gump received 85% of the fees requested and 100% of the expenses requested. |
| 10/01/09 – 10/31/09 | $281,963.00 | $31,020.23 | Pending. Akin Gump has not yet received any of the fees and expenses pursuant to this fee statement. |
| 11/01/09 – 11/23/09 | $270,572.00 | $19,714.66 | Pending. Akin Gump has not yet received any of the fees and expenses pursuant to this fee statement. |

Charles R. Gibbs (admitted *pro hac vice*)
Keefe Bernstein (admitted *pro hac vice*)
Sarah Link Schultz (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: 214.969.2800
Facsimile: 214.969.4343

Catherine Creely (Virginia Bar No. 74796)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: 202.887.4000
Facsimile: 205.955.7827

Lynn Tavenner (Virginia Bar No. 30083)
Paula S. Beran (Virginia Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219
Telephone: 804.783.8300
Facsimile: 804.783.0178

*Attorneys for The Official Committee of Unsecured
Creditors of LandAmerica 1031 Exchange Services,
Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

---------------------------------------------------------------------------x
|  |  |
|---|---|
| In re: | Chapter 11 |
| LandAmerica Financial Group, Inc., <u>et al.</u>, | Case No. 08-35994 (KRH) |
| Debtors. | Jointly Administered |
---------------------------------------------------------------------------x

## FINAL APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP FOR ALLOWANCE OF COMPENSATION AND EXPENSE REIMBURSEMENT AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LANDAMERICA 1031 EXCHANGE SERVICES, INC.

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump" or "Applicant"), counsel for the

Official Committee of Unsecured Creditors (the "LES Committee") of LandAmerica 1031

Exchange Services, Inc. ("LES"), submits this Final Application for Allowance of Compensation

and Expense Reimbursement as Counsel to the Official Committee of Unsecured Creditors of

LandAmerica 1031 Exchange Services, Inc. (the "Application") pursuant to sections 330 and 331

of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2016 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

# I.    **PRELIMINARY STATEMENT**

1.     By this Application, Akin Gump seeks the (i) final allowance and award of full compensation for the professional services rendered by Akin Gump as attorneys for the LES Committee for the period from December 8, 2008 through December 6, 2009 (the "Compensation Period") in the amount of $4,639,413.25, representing 10,595.55 hours of professional and paraprofessional services, and (ii) reimbursement of actual and necessary expenses of $363,500.79 incurred by Akin Gump during the Compensation Period in connection with the rendition of such professional and paraprofessional services. This Application is submitted pursuant to Section 3.2 of the Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and Its Affiliated Debtors (as modified, the "Plan") and paragraph 26 of this Court's Order Confirming Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and Its Affiliated Debtors (Docket No. 2666) (the "Confirmation Order").

# II.    **JURISDICTION AND VENUE**

2.     This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334 and Article XV of the Plan. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are Bankruptcy Code sections 105, 330, and 331 and Bankruptcy Rules 2002(a) and 2016.

# III.    **BACKGROUND**

3.     On November 26, 2008 (the "Petition Date"), LES and LandAmerica Financial Group, Inc. ("LFG") each filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On March 6, 2009, March 27, 2009, March 31, 2009 and July 17, 2009,

various other affiliates of LFG[1] (collectively with LES and LFG, the "Debtors") each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Prior to the Effective Date (as defined below), the Debtors continued in possession of their property and continued to operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

4.     On December 3, 2008, the Office of the United States Trustee for the Eastern District of Virginia (the "U.S. Trustee") duly appointed the LES Committee. On June 4, 2009, the U.S. Trustee appointed two additional members to the LES Committee. Immediately prior to the Effective Date, the LES Committee consisted of seven members.[2]

5.     On December 8, 2008, pursuant to Bankruptcy Code section 1103(a), the LES Committee selected Akin Gump to serve as counsel to the LES Committee. On January 16, 2009, this Court entered an order authorizing Akin Gump's retention as counsel to the LES Committee *nunc pro tunc* to December 8, 2008. This Court subsequently authorized the LES Committee to retain and employ Protiviti, Inc. ("Protiviti") as its financial advisor, The Garden City Group, Inc. ("GCG") as its communications agent, and Tavenner & Beran, PLC ("Tavenner & Beran") as its local counsel.

6.     On September 9, 2009, the Debtors filed the initial Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and Its Affiliated Debtors (Docket No. 1992) and the

---

[1] The other affiliates of LFG that have filed voluntary chapter 11 petitions with this Court and are subject to the terms of the Plan are LandAmerica Assessment Corporation, LandAmerica Title Company, Southland Title Corporation, Southland Title of Orange County, Southland Title of San Diego, and LandAmerica Credit Services, Inc.

[2] The members of the LES Committee immediately prior to the Effective Date were: Millmar Holdings, LLC; Endless Ocean, LLC; MB Venture, Ltd.; Amarillo Tower Limited; Petaluma Southpoint, LLC; Gregory D. Schultz; and The Mary and Fred Piro 1987 Trust.

accompanying Disclosure Statement with Respect to Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and Its Affiliated Debtors (Docket No. 1991).

7.    After a hearing before this Court on October 13, 2009 (the "Disclosure Statement Hearing") and the subsequent filing of the modified Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and Its Affiliated Debtors (Docket No. 2206) and the accompanying modified Disclosure Statement with Respect to Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and Its Affiliated Debtors (Docket No. 2207) (the "Disclosure Statement"), this Court entered its Omnibus Order (A) Approving Disclosure Statement; (B) Fixing Voting Record Date; (C) Approving Solicitation Materials and Procedures for Distribution Thereof; (D) Approving Forms of Ballots and Establishing Procedures for Voting on Debtors' Plan; (E) Scheduling Hearing and Establishing Notice and Objection Procedures in Respect of Confirmation of Debtors' Plan; and (F) Granting Related Relief (Docket No. 2214) (the "Disclosure Statement Order"), dated October 14, 2009 approving the adequacy of the Disclosure Statement and authorizing the Debtors to solicit acceptances of the Plan.[3]

8.    Following a lengthy hearing on November 18, 2009 (the "Confirmation Hearing"), this Court entered its November 23, 2009 Confirmation Order, which confirmed the Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and Its Affiliated Debtors (Docket No. 2576). On December 7, 2009, each of the conditions precedent to consummation of the Plan was met, and the Plan became effective (the "Effective Date").

## IV.    **AKIN GUMP PRIOR FEE REQUESTS**

9.    Pursuant to the terms of this Court's Order Under Sections 105(a) and 331 of the Bankruptcy Code Establishing Procedures for Interim Compensation, dated December 22, 2008

---

[3] Further modified versions of the Plan were filed on October 24, 2009 (Docket No. 2342) and November 16, 2009 (Docket No. 2576).

(the "Interim Compensation Order"), on April 14, 2009, Akin Gump filed its first application for interim allowance of compensation and for reimbursement of expenses for services rendered during the period from December 8, 2008 through February 28, 2009 (the "First Fee Application"). On May 21, 2009, this Court entered an order approving the First Fee Application in full and authorizing and directing the Debtors to pay to Akin Gump compensation in the amount of $1,471,879.25 and to reimburse Akin Gump for expenses incurred in the amount of $90,672.49. On or about May 27, 2009, Akin Gump received payment of the fees and expenses allowed pursuant to the First Fee Application.

10. On July 15, 2009, Akin Gump filed its second application for interim allowance of compensation and for reimbursement of expenses for services rendered during the period from March 1, 2009 through May 31, 2009 (the "Second Fee Application"). On September 2, 2009, this Court entered an order approving the Second Fee Application in full and authorizing and directing the Debtors to pay to Akin Gump compensation in the amount of $1,188,704.50 and to reimburse Akin Gump for expenses incurred in the amount of $90,837.09. On or about September 3, 2009, Akin Gump received payment of the fees and expenses allowed pursuant to the Second Fee Application.

11. On October 15, 2009, Akin Gump filed its third application for interim allowance of compensation and for reimbursement of expenses for services rendered during the period from June 1, 2009 through August 31, 2009 (the "Third Fee Application"). On November 13, 2009, this Court entered an order approving the Third Fee Application in full and authorizing and directing the Debtors to pay to Akin Gump compensation in the amount of $1,093,624.00 and to reimburse Akin Gump for expenses incurred in the amount of $88,985.55. On or about

November 19, 2009, Akin Gump received payment of the fees and expenses allowed pursuant to the Third Fee Application.

12.     Except with respect to payments made pursuant to the Interim Compensation Order, Applicant has received no payment and no promises for payment from any source for services rendered in connection with LES's chapter 11 case.  There is no agreement or understanding between the Applicant and any other person (other than members of Akin Gump) for the sharing of compensation to be received for the services rendered in these chapter 11 cases.

13.     Pursuant to the Interim Compensation Order and Section 3.2 of the Plan, Akin Gump sent to LES and the appropriate notice parties its: (i) Monthly Fee Statement, dated October 15, 2009, for compensation and for reimbursement of expenses for services rendered during the period of September 1, 2009 through September 30, 2009 in the amounts of $282,991.50 for fees and $13,351.89 for expenses (the "September Monthly Fee Statement"); (ii) Monthly Fee Statement, dated November 23, 2009, for compensation and for reimbursement of expenses for services rendered during the period of October 1, 2009 through October 31, 2009 in the amounts of $281,963.00 for fees and $31,020.23 for expenses (the "October Monthly Fee Statement"); and (iii) Monthly Fee Statement, dated December 10, 2009, for compensation and for reimbursement of expenses for services rendered during the period of November 1, 2009 through November 23, 2009 in the amounts of $270,572.00 for fees and $19,714.66 for expenses (the "November Monthly Fee Statement," and together with the September Monthly Fee Statement and the October Monthly Fee Statement, the "Monthly Fee Statements").[4]  Pursuant to the Interim Compensation Order, on or about November 5, 2009, Akin Gump received payment

---

[4] The Interim Fee Applications, as well as the Monthly Fee Statements, are incorporated herein by reference.

of 85% of the fees requested and 100% of the expenses requested with respect to the September Monthly Fee Statement. As of the date of this Application, Akin Gump has not yet received payment of the fees and expenses requested with respect to the October and November Monthly Fee Statements.

14.     Additionally, on or about November 17, 2009, pursuant to Section 3.2(a) of the Plan, Akin Gump sent to the Debtors and the appropriate notice parties its statement of unpaid fee claims for the period of June 1, 2009 through October 31, 2009 ($519,475.54)[5] and its reasonable estimate of professional fees ($450,000.00) and expenses ($12,000.00) incurred from November 1, 2009 through the Effective Date (the "Effective Date Fee Estimate").[6]    On information and belief, pursuant to Section 3.2(a) of the Plan, on the Effective Date, the Debtors reserved the amount necessary to satisfy the Effective Fee Date Estimate to be held until this Application is approved by this Court.

15.     As stated in the Affirmation of Charles R. Gibbs, Esq. annexed hereto as **Exhibit A**, all of the services for which final compensation is sought herein were rendered for or on behalf of the LES Committee solely in connection with LES's chapter 11 case.

## V.     SUMMARY OF SERVICES RENDERED

16.     Since December 8, 2008, Akin Gump has rendered professional services to the LES Committee as requested and as necessary and appropriate in furtherance of the interests of LES's unsecured creditors. The variety and complexity of the issues in LES's chapter 11 case and the need to act or respond to such issues on an expedited basis in furtherance of the LES

---

[5] This amount represented the 15% holdback in the amount of $164,043.59 for fees incurred in June, July and August 2009, the 15% holdback in the amount of $42,448.72 for fees incurred in September 2009, and all fees and expenses incurred in October 2009 in the amount of $312,983.23.

[6] Akin Gump's actual fees and expenses incurred during the period from November 1, 2009 through December 6, 2009 totaled $368,884.54.

Committee's needs have required the expenditure of substantial time by Akin Gump personnel from numerous legal disciplines, on an as-needed basis.

17.     Akin Gump maintains written records of the time expended by all time keepers, including attorneys and paraprofessionals, in the rendition of their professional services to the LES Committee. Such time records were made contemporaneously with the rendition of services by the person performing such services and in the ordinary course of Akin Gump's practice. A compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services for the LES Committee during the Compensation Period is attached hereto as **Exhibit B.**[7]

18.     Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, which are also available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is contained in **Exhibit C** attached hereto.[8]

19.     Akin Gump respectfully submits that the professional services rendered on behalf of the LES Committee were necessary and appropriate and have directly contributed to the effective administration of LES's chapter 11 case. The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are

---

[7] **Exhibit B** contains such a compilation as it relates to the Monthly Fee Statements, which are not covered by Akin Gump's Interim Fee Applications. **Exhibit B** also contains a schedule of Court docket number references to Akin Gump's Interim Fee Applications that include detailed records as they relate to attorney and paraprofessional services included in such previous Interim Fee Applications.

[8] **Exhibit C** contains such a schedule as it relates to the Monthly Fee Statements, which are not covered by Akin Gump's Interim Fee Applications. Please refer to **Exhibit B** for a schedule of Court docket number references to Akin Gump's Interim Fee Applications that include such schedules as they relate to expenses included in such previous Interim Fee Applications.

fully set forth in **Exhibit B** and the Interim Fee Applications previously filed with and approved by this Court. Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the LES Committee, as well as to identify some of the problems and issues that Akin Gump was required to address during the Compensation Period.

## A. Case Administration

20. A portion of the services rendered during the Compensation Period related to the organizational needs of the LES Committee and matters related thereto. Akin Gump's attention to the LES Committee's organizational needs during the Compensation Period enabled the LES Committee to function as a coordinated group and to acquit its fiduciary duties.

21. During the Compensation Period, Akin Gump reviewed and analyzed all motions related to the LES estate that were filed by the Debtors and other parties in interest in this Court. Akin Gump, with the assistance of the LES Committee's other professionals, conducted extensive diligence on the subject matter of each motion and application to, among other things, ascertain the effect the relief requested in the pleading would have on the LES estate. Akin Gump's diligence efforts included (i) reviewing all underlying documentation and/or litigation related to the applicable pleading; (ii) communicating with representatives of the Debtors, the professionals representing the Official Committee of Unsecured Creditors of LFG (the "LFG Committee," and together with the LES Committee, the "Committees") and third parties to address issues related to the relief requested and to attempt to achieve amicable resolutions to such issues, as appropriate; (iii) working with the LES Committee's other professionals to ensure that the LES Committee had a complete understanding of the effect the granting of the relief requested in a given pleading would have on the LES estate; and (iv) providing summaries and analysis of such pleadings for the LES Committee, as necessary.

22.     Akin Gump kept the LES Committee members advised of all material motions, applications, and case developments during the Compensation Period through detailed memoranda and, as appropriate, conference calls or in-person meetings with individual LES Committee members, the chair of the LES Committee, and the entire LES Committee. During the Compensation Period, Akin Gump also had numerous telephonic conferences and electronic communications with the Debtors, the LFG Committee, and their respective professionals to discuss and address pending issues and proposed actions.

23.     Akin Gump held internal meetings with the professionals assigned to this matter to ensure that Akin Gump was representing the LES Committee in the most efficient manner at the least cost to the LES estate. As discussed in detail above, at the request of the LES Committee, Akin Gump assisted in or took the lead in analyzing all motions presented by the Debtors and other parties in interest and advised the LES Committee on its own initiatives and directions for LES's chapter 11 case. In addition, Akin Gump coordinated all LES Committee activities, including attending to member issues and interacting with the LES Committee's chair in setting agendas for the LES Committee's conference calls. Akin Gump also regularly consulted with Protiviti, GCG and Tavenner & Beran with respect to documents and other information received from the Debtors, their representatives, and other sources.

24.     Due to Akin Gump's experience in counseling creditors' committees, Akin Gump believes it was able to efficiently address all issues relating to case administration that have arisen during the pendency of the Debtors' chapter 11 cases.

**B.     LES Committee Meetings**

25.     The LES Committee played a very active role in LES's chapter 11 case. Akin Gump, together with the other LES Committee's professionals, held no fewer than thirty-five (35) telephonic meetings and five (5) in-person meetings with the LES Committee during the

Compensation Period. In addition, Akin Gump had numerous telephonic conferences with individual LES Committee members and the LES Committee chair.

26. Prior to its meetings with the LES Committee, Akin Gump reviewed each pending matter requiring the LES Committee's attention and all underlying documentation in connection therewith. Thereafter, Akin Gump discussed each of these matters with the LES Committee's other professionals, the LES Committee, and individual LES Committee members. During these discussions, Akin Gump assisted the LES Committee in formulating a position with respect to each pending matter. In addition, Akin Gump prepared and/or assisted the LES Committee's other professionals in preparing detailed memoranda for the LES Committee during the Compensation Period discussing the status of pertinent matters in LES's chapter 11 case.

27. Through in-person meetings, telephone conferences, and correspondence, Akin Gump assisted the LES Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that arose in these chapter 11 cases, to monitor closely the Debtors' management of these proceedings, and to reach independent conclusions on the merits of specific matters relating to LES's liquidation.

## C.    Court Hearings

28. Akin Gump attorneys attended, either in-person or telephonically, substantially all of the hearings held before this Court affecting the LES estate during the Compensation Period. In preparing for Court hearings, Akin Gump reviewed all applicable motions and applications filed with this Court, including any responses thereto, and then presented, as needed, the LES Committee's position at such hearings.

**D.      Retention of Professionals**

29.      During the Compensation Period, Akin Gump prepared its own retention application and reviewed and commented on the retention applications and related documents of the LES Committee's other professionals.

30.      Akin Gump also reviewed and analyzed all of the applications filed by the Debtors, the LFG Committee and the Commingled Type A Test Case plaintiff (collectively, the "Retaining Parties") during the Compensation Period to retain legal and financial advisors and other case specific consultants (the "Retention Applications").   As appropriate, Akin Gump discussed the Retention Applications with the Retaining Parties and their proposed professionals to ensure that (i) all professionals employed by the Retaining Parties were necessary to the administration of the Debtors' estates and (ii) the compensation proposed for each such professional was appropriate in light of the financial circumstances and value of the services to be performed by each professional.   Further, as necessary, Akin Gump prepared detailed memoranda summarizing the key terms of each such professional's retention to assist the LES Committee with its analysis regarding the Retention Applications.

31.      Finally, Akin Gump reviewed all supplemental affidavits and/or declarations filed by parties in interest in these cases during the Compensation Period and prepared and filed its own supplemental declaration to ensure compliance with Akin Gump's disclosure obligations under Bankruptcy Rule 2014.

**E.      Preparation of Monthly Billing Statements / Other Professionals' Monthly Billing Statements**

32.      During the Compensation Period, Akin Gump prepared its Monthly Fee Statements and its Interim Fee Applications.   Akin Gump also reviewed the monthly billing statements and interim fee applications received from the Debtors' professionals and other

professionals retained in these cases to identify any issues regarding such fees and to ensure compliance with the Local Rules for the Eastern District of Virginia.

**F.      Analysis of Financial Reports**

33.      Akin Gump reviewed the Debtors' financial reports during the Compensation Period and assisted Protiviti in summarizing such reports for the LES Committee. Additionally, Akin Gump attorneys participated in numerous conference calls and electronic communications with the Debtors and their professionals, the LES Committee's other professionals, and individual members of the LES Committee to discuss the administration of the Debtors' estates and the Debtors' liquidity.

**G.      Claims Issues**

34.      During the Compensation Period, Akin Gump spent considerable time reviewing and analyzing the Schedules of Assets and Liabilities and Statements of Financial Affairs filed by LES (the "LES Schedules") to properly understand the magnitude of claims against the LES estate and to ensure that all assets of the LES estate were properly scheduled. Akin Gump also reviewed and analyzed the LES Schedules to ensure that all claims of exchange customers whose exchange transaction included a note or similar instrument as some or all of the consideration (the "Note Claims") were properly scheduled. Akin Gump also prepared a detailed memorandum for the LES Committee that summarized the LES Schedules and provided the LES Committee with a thorough understanding of LES's potential claims liability.

35.      Also during the Compensation Period, Akin Gump reviewed and analyzed the Schedules of Assets and Liabilities and Statements of Financial Affairs of LFG (the "LFG Schedules") to properly understand the magnitude and character of potential intercompany claims by and between the LFG estate and the LES estate. In connection therewith, Akin Gump

prepared a detailed memorandum for the LES Committee analyzing the validity of the potential intercompany claims, as well as defense that could be asserted against such intercompany claims.

**H.     Analysis of Assumption and/or Rejection of Pre-petition Agreements**

36.     Akin Gump reviewed and analyzed the numerous motions filed by the Debtors during the Compensation Period with respect to the assumption or rejection of executory contracts (the "Executory Contract Motions") and unexpired leases of non-residential real property (the "Unexpired Lease Motions"). In connection with such Executory Contract and Unexpired Lease Motions that potentially impacted the LES estate, Akin Gump, with the assistance of Protiviti, summarized applicable portions of the underlying agreements and the motions for the LES Committee, and discussed and made recommendations to the LES Committee with respect to each such motion. Akin Gump's analysis of such Executory Contract and Unexpired Lease Motions, with the assistance of the LES Committee's other professionals, enabled the LES Committee to make informed decisions regarding the relief requested based on, among other things, the effect assumption or rejection of an applicable contract or lease would have on the LES estate.

**I.     Lift Stay Litigation**

37.     During the Compensation Period, Akin Gump reviewed and analyzed the various motions for relief from the automatic stay imposed by Bankruptcy Code section 362 that were filed by creditors of the LES estate. In connection therewith, Akin Gump analyzed the relief requested in each motion, reviewed all pleadings and underlying documentation, and communicated telephonically and electronically with the Debtors' professionals to ascertain and understand the Debtors' position on such motions. In addition, Akin Gump prepared memoranda for the LES Committee on the subject matter of each lift stay motion that potentially impacted the LES estate and recommended a course of action for the LES Committee. Akin Gump's

analysis of these motions, with the assistance of the LES Committee's other professionals, enabled the LES Committee to make informed decisions in supporting or opposing the relief requested based on, among other things, the effect the modification of the automatic stay would have on the LES estate.

## J.    Analysis of Pre-petition Transactions

38.    During the Compensation Period, Akin Gump reviewed and analyzed pleadings filed in connection with two purported class action lawsuits filed against SunTrust Banks, Inc. ("SunTrust") and various directors and officers of the Debtors, which were consolidated in a single action and are currently pending in the District of South Carolina (the "MDL Litigation"). Akin Gump participated in numerous discussions with counsel for the Debtors, the LFG Committee and the plaintiffs in the MDL Litigation in an attempt to consensually resolve the prosecution of the MDL Litigation as it related to the Debtors' directors and officers.  In connection therewith, Akin Gump prepared a comprehensive memorandum for the LES Committee regarding the effect of the MDL Litigation on the LES estate.  Also during the Compensation Period, the Debtors filed an adversary complaint and a motion seeking a preliminary injunction staying the prosecution of the MDL Litigation until after the Effective Date of the Debtors' Plan.  Akin Gump reviewed and prepared a memorandum for the LES Committee regarding the Debtors' motion and discussed the same with the LES Committee.

39.    Also during the Compensation Period, Akin Gump researched and analyzed potential causes of action that could be brought by the LES estate against various third parties, as well as claims that could be brought against the Debtors by third parties. In connection with such analysis, Akin Gump prepared a comprehensive legal memorandum and engaged in numerous discussions with the LES Committee and its professionals regarding the possible

pursuit and likelihood of success of such potential lawsuits, enabling the LES Committee to make informed decisions regarding particular courses of action.

40.     During the Compensation Period, Akin Gump, along with Protiviti, reviewed and analyzed the Debtors' directors' and officers' liability insurance policies to ensure that the Debtors' coverage was preserved. In connection with such analysis, Akin Gump prepared and distributed a comprehensive legal memorandum advising the LES Committee and its professionals of the details of such policies and the potential impact of such policies on the LES estate, as well as an updated memorandum reflecting additional insurance policies subsequently produced by the Debtors. Akin Gump also worked with counsel for the LFG Committee during the Compensation Period to prepare a letter to Debtors' counsel identifying certain causes of action against current and former directors and officers of the Debtors that the Committees believed constituted valuable assets of the Debtors' estates, and thus could be a valuable source of recovery for the Debtors' creditors. The Committees' communication also demanded that the Debtors bring such causes of action against the directors and officers and tender notice of such claims and the relevant underlying facts to all of the Debtors' insurance carriers who had potential coverage obligations based on the identified causes of action.

41.     During the Compensation Period, Akin Gump and Protiviti also reviewed and analyzed various issues regarding the auction-rate securities held by LES. Pre-petition, LES invested a portion of its funds in investment grade securities, including certain auction-rate securities ("ARS") backed by government-guaranteed student loans. During the Compensation Period, Akin Gump, along with Protiviti, reviewed the ARS held by LES, analyzed settlements made by other parties regarding ARS, analyzed potential actions against third parties regarding the ARS, and analyzed various offers to purchase the ARS held by LES. Further, Akin Gump

engaged in extensive discussions with counsel for the Debtors and the LFG Committee regarding pursuit of actions regarding the ARS held by LES, as well as the Debtors' proposed retention of special litigation counsel to pursue the litigation regarding the ARS. Akin Gump's analysis of these issues, with the assistance of the LES Committee's other professionals, enabled the LES Committee to make informed decisions regarding the impact of particular courses of action on the LES estate.

## K.    Asset Sales

42.    During the Compensation Period, Akin Gump reviewed and analyzed several motions filed by the Debtors with respect to the sale of the Debtors' stock and/or assets in various entities. In connection with each such motion that potentially impacted the LES estate, Akin Gump analyzed the underlying agreements and the proposed purchase price for the assets or stock, summarized applicable portions of the underlying agreements and motions for the LES Committee, discussed the potential effect of each motion on the LES estate and made recommendations to the LES Committee with respect to each such motion.

43.    In particular, on the first day of the Debtors' cases, LFG filed a motion to sell its stock in Commonwealth Land Title Insurance Company, Lawyers Title Insurance Corporation, and United Capital Title Insurance Company (collectively, the "Underwriters") to Fidelity National Financial, Inc., Fidelity National Title Insurance Company and Chicago Title Insurance Company (collectively, "Fidelity"). In connection therewith, immediately upon retention, Akin Gump worked feverishly to conduct appropriate diligence to determine the impact, if any, on the LES estate of the sale of the Underwriters to Fidelity and advised the LES Committee regarding the potential effect of the sale on the unsecured creditors of LES.

44.    Also during the Compensation Period, Akin Gump, along with Protiviti, participated in numerous discussions with the Debtors' professionals and Jenner & Block

("Jenner"), special counsel to the Debtors regarding litigation related to the ARS, regarding LES's proposed retention of a brokerage services firm to market and ultimately sell the ARS and the negotiation of a brokerage services agreement with SecondMarket, Inc. ("SecondMarket"), a broker-dealer that provides a trading platform to bring together buyers and sellers in a market for illiquid assets, including ARS. In connection therewith, Akin Gump and Protiviti reviewed and analyzed LES's motion (the "ARS Sale Motion") to sell two (2) tranches of the ARS (the "Tranche A Notes") to the issuer of the Tranche A Notes and to enter into a brokerage services agreement with SecondMarket, whereby SecondMarket would list the remaining eighteen (18) tranches of ARS held by LES for sale through its trading platform at par value. Akin Gump and Protiviti discussed and made recommendations to the LES Committee regarding the implications of the ARS Sale Motion on the LES estate, which allowed the LES Committee to make an informed decision to support the relief requested in the ARS Sale Motion. On October 28, 2009, this Court entered an order approving the sale of the Tranche A Notes and authorizing LES to enter into the proposed brokerage services agreement with SecondMarket.

## L. Analysis of Tax Claims

45. During the Compensation Period, Akin Gump began analyzing various tax issues related to the Debtors' chapter 11 filings. In particular, Akin Gump reviewed and analyzed the Debtors' tax sharing agreement and consolidated tax returns and researched the liability of members of a consolidated tax group. In connection with its analysis, Akin Gump prepared a comprehensive legal memorandum outlining these issues and advising the LES Committee of the tax consequences of potential courses of action.

46. Akin Gump also participated in discussions with tax counsel and other professionals for the Debtors and the LFG Committee concerning tax claims asserted against the Debtors. Akin Gump also researched the tax implications of the Debtors' proposed plan and the

trust agreements to be executed in connection with the plan. Akin Gump's ongoing analysis of these issues, with the assistance of the LES Committee's other professionals, enabled the LES Committee to make informed decisions regarding the favorable or unfavorable consequences of particular courses of action on the LES estate.

47.     Also during the Compensation Period, Akin Gump analyzed the impact on exchange customers of the failure of an exchange transaction due to the bankruptcy of the qualified intermediary. In connection therewith, Akin Gump participated in several telephonic conferences and one in-person meeting with representatives of the Internal Revenue Service and Treasury representatives regarding relief for taxpayers in connection with the failure of a qualified intermediary and discussed such potential relief with the LES Committee and other unsecured creditors of LES.

## M.     Analysis of Employee Benefits and Issues

48.     During the Compensation Period, Akin Gump reviewed and analyzed the Debtors' pension plan and the Debtors' motion to enter into three (3) agreements relating to the administration of LFG's pension plan, the potential claims of the Pension Benefit Guaranty Corporation (the "PBGC") against the Debtors' estates, and the eventual Bankruptcy Rule 9019 settlement agreement entered into by and among the Debtors, the LFG Committee, and the PBGC. Akin Gump also participated in numerous telephone conferences and one in-person meeting with representatives of the Debtors, the LFG Committee, and the PBGC regarding issues relating to confirmation of the Debtors' Plan.

49.     Akin Gump also reviewed and analyzed the performance incentive plan sought to be implemented by the Debtors. In connection with its analysis of these issues, Akin Gump analyzed the motions and underlying agreements, summarized applicable portions of such agreements for the LES Committee, and discussed and made recommendations to the LES

Committee with respect to the potential effects of the motions on the LES estate, allowing the LES Committee to make informed decisions in supporting or opposing the relief requested.

## N.    Analysis of Intercompany Claims

50.    During the Compensation Period, Akin Gump prepared a legal memorandum analyzing the validity of certain claims between the LFG estate and the LES estate (collectively, the "Inter-estate Issues"), as well as defenses that could be asserted in connection with such claims.  Subsequently, the Debtors filed a motion seeking to establish a litigation protocol to resolve the Inter-estate Issues.  After various parties in interest objected to the proposed protocol, the Debtors proposed a protocol to resolve the Inter-estate Issues through mediation (the "Mediation Protocol"), which provided for a two-stage mediation, with the first stage being mediation of the Inter-estate Issues (the "Inter-estate Mediation").

51.    In connection with the Inter-estate Mediation, Akin Gump, on behalf of the LES Committee, prepared and served discovery requests on the Debtors and spent substantial time analyzing the documents produced by the Debtors in connection therewith.  Akin Gump also prepared for and participated in the depositions of three (3) representatives of the Debtors in connection with the Inter-estate Mediation and prepared and provided the mediator (the "Mediator") with a confidential mediation statement setting forth a summary of the case to date and an overview of the basic allegations and relevant facts regarding the Inter-estate Issues.

52.    Counsel and representatives of the Debtors and the Committees participated in the Inter-estate Mediation in early July 2009.    After extensive negotiations, the Inter-estate Mediation resulted in a negotiated resolution for the treatment of the Inter-estate Issues.  This agreement was memorialized in a term sheet signed by representatives of the Committees (the "Inter-estate Term Sheet") and served as a partial framework for the Plan.

**O. Adversary Proceedings / Test Case Litigation**

53.     During the Compensation Period, parties to various pre-petition 1031 exchange agreements with LES ("Exchange Customers") initiated adversary proceedings (the "Exchange Actions") seeking the release of funds in the possession of LES (the "Exchange Funds"). LES originally sought authority to establish a protocol that would allow LES to remit assets to certain Exchange Customers without further Court approval. The LES Committee strenuously objected and, as a result, negotiated a protocol (the "Test Case Protocol") with the Debtors, the LFG Committee, and the plaintiffs in several of the Exchange Actions for the expedited consideration and resolution of five test cases (the "Test Cases"). On January 16, 2009, this Court entered an order approving the Test Case Protocol. Akin Gump took the lead in preparing pleadings and taking depositions in connection with the litigation of the segregated and escrow Test Cases, while the Debtors took the lead with respect to the commingled Test Cases.

54.     During the Compensation Period, in connection with the expedited litigation of the Test Cases, Akin Gump participated in no fewer than thirty-six (36) depositions and reviewed no fewer than 250,000 pages of documents produced by the Debtors and other parties in interest regarding the Test Cases. Further, Akin Gump drafted no fewer than nineteen (19) substantive pleadings and no fewer than twenty-one (21) sets of discovery requests and responses during the Compensation Period in connection with the litigation of the Test Cases and reviewed the numerous motions and responses and responded to multiple sets of discovery requests filed by the Test Case plaintiffs, the Debtors, and the LFG Committee.

55.     Also during the Compensation Period, Akin Gump devoted substantial time to litigation of summary judgment motions in the Test Cases. On April 15, 2009 and May 7, 2009, this Court entered orders granting motions for partial summary judgment in favor of the

Committees in each of the Test Cases, finding that the Exchange Funds held by LES in segregated and commingled accounts were property of the LES estate.

56.     The Test Case plaintiffs each filed notices of appeal of this Court's partial summary rulings, and Akin Gump, along with counsel for each of the Debtors and the LFG Committee, filed a joint response objecting to each such appeal on behalf of the LES Committee. During the Compensation Period, at the completion of the mediation discussed in Section III.P., herein, each of the Test Case plaintiffs agreed to voluntarily dismiss their notices of appeal of the Test Case plaintiffs in favor of the Plan Mediation (as described below), although the Test Case plaintiffs each reserved the right to re-file their appeals.

**P.     Plan and Disclosure Statement**

57.     A significant portion of Akin Gump's time during the Compensation Period was spent negotiating with the Debtors, the LFG Committee and other parties in interest regarding the terms of a chapter 11 plan for the Debtors that would maximize value for Exchange Customers and other unsecured creditors. The Plan, which became effective on December 7, 2009, achieves that goal.

58.     The second stage of mediation pursuant to the Mediation Protocol provided for the mediation of issues relating to an LES plan of liquidation, including a resolution of the pending Test Cases (the "Plan Mediation," and together with the Inter-estate Mediation, the "Mediations"). In connection with the Plan Mediation, Akin Gump, on behalf of the LES Committee, prepared a confidential mediation statement setting forth an overview of the basic allegations and relevant facts regarding the issues to be resolved at the Plan Mediation and a realistic assessment of the strengths and weaknesses of the LES Committee's position.

59.     Counsel and representatives of each of the Debtors, the Committees, and the Test Case plaintiffs participated in the Plan Mediation in mid-July 2009. After extensive

negotiations, the Plan Mediation resulted in proposed terms for a joint chapter 11 plan for the Debtors. This agreement was memorialized in a second term sheet (the "Plan Term Sheet," and together with the Inter-estate Term Sheet, the "Term Sheets").

60. After the conclusion of the Mediations, Akin Gump, on behalf of the LES Committee, spent considerable time reviewing and assisting Debtors' counsel in drafting a chapter 11 plan for the Debtors encompassing the terms agreed to during the Mediations and encompassed in the Term Sheets. Akin Gump reviewed and provided comments to numerous drafts to the Debtors' proposed plan and disclosure statement during the Compensation Period and engaged in extensive discussions with counsel for the Debtors and the LFG Committee regarding the proposed plan documents. Akin Gump's ongoing analysis of issues relating to the Debtors' proposed plan, with the assistance of the LES Committee's other professionals, has enabled the LES Committee to make informed decisions regarding the favorable or unfavorable consequences of particular plan provisions or courses of action on the LES estate.

61. As mentioned above, on September 9, 2009, the Debtors filed the Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and Its Affiliated Debtors (Docket No. 1992) and the accompanying Disclosure Statement with Respect to the Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and Its Affiliated Debtors (Docket No. 1991). Akin Gump also assisted the Debtors in resolving several objections that were filed to the Disclosure Statement. Following a hearing on October 13, 2009 (the "Disclosure Statement Hearing"), on October 14, 2009, this Court entered the Disclosure Statement Order approving the adequacy of the Disclosure Statement and authorizing the Debtors to solicit acceptances of the Plan.

62. Following approval of the Disclosure Statement, Akin Gump was actively involved in the negotiation and finalization of the terms of the Plan and related documents. Akin

Gump also reviewed and analyzed each of the objections to confirmation of the Plan (the "Plan Objections"). Following the filing of the Plan Objections, Akin Gump, along with the LES Committee's other professionals, participated in conference calls with the professionals for the Debtors and the LFG Committee to fully vet all Plan Objections and any other issues related thereto. Following a comprehensive Confirmation Hearing, the Plan, which was supported fully by the LES Committee and overwhelmingly supported by unsecured creditors, was confirmed by order of this Court on November 23, 2009.

63. Pursuant to the Plan, a liquidating trust was created for each of the Debtors' estates (the "LFG Trust" and the "LES Trust"). To facilitate the creation of the LES Trust, during the Compensation Period, Akin Gump drafted the governing documents for the LES Trust. Akin Gump also spent considerable time researching the qualifications of potential liquidation trustees to serve as trustee of the LES Trust (the "LES Trustee") and advising the LES Committee regarding such qualifications to allow the LES Committee to make an informed decision in selecting the LES Trustee. Also during the Compensation Period, Akin Gump took the lead on drafting a comprehensive inter-trust agreement (the "Inter-Trust Agreement") to govern the interaction between the LFG Trust and the LES Trust. In connection with the plan process, Akin Gump also reviewed and analyzed several options proposed by the Debtors regarding the preservation and transitioning of the Debtors' data to the liquidation trustees following the effective date of a confirmed chapter 11 plan for the Debtors' cases.

## Q. Exclusivity Issues

64. During the Compensation Period, the Debtors filed three motions (the "Exclusivity Motions") to extend the exclusive periods during which the Debtors may file a chapter 11 plan of reorganization and solicit acceptances thereto (the "Exclusive Periods"). Akin Gump reviewed and analyzed each of the Exclusivity Motions and discussed strategic

alternatives with the LES Committee. Akin Gump advised the LES Committee of the impact of the relief requested in each of the Exclusivity Motions on the LES estate and objected to two of the Exclusivity Motions[9] on the grounds that the Debtors had failed to establish the requisite cause for such extensions of the Exclusive Periods.

**R.     Creditor Inquiries**

65.     Akin Gump fielded numerous telephone inquiries and electronic communications during the Compensation Period from unsecured creditors to discuss the status of various pending matters and to respond to their many questions about the bankruptcy process and the status of their claims against the Debtors' estates. Further, during the Compensation Period, Akin Gump and the LES Committee sponsored no fewer than three (3) conference calls open to all unsecured creditors of LES to answer questions regarding the bankruptcy process and particularly the Debtors' Plan and Disclosure Statement.

**S.     Creditor Website**

66.     During the Compensation Period, Akin Gump, with the assistance of GCG, has maintained a website devoted to providing information to the unsecured creditors of LES. Akin Gump, with the assistance of GCG, regularly posts updates to the creditor website regarding the status of LES's chapter 11 case, the Test Case Protocol and the expedited litigation on the Test Cases, the Debtors' Plan and Disclosure Statement, and the pleadings filed by the LES Committee and other parties in interest in LES's case.

---

[9] Because the LES Committee believed that the Debtors should be afforded additional time following the completion of the Mediations to file a plan encompassing the terms agreed to during the Mediations, Akin Gump, on behalf of the LES Committee, did not object to the second Exclusivity Motion filed by the Debtors.

## VI. FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

67.     The Bankruptcy Code sets forth the legal standards for awarding compensation to professionals. The format for fee applications is set forth in the Compensation Guidelines for Professionals in the United States Bankruptcy Court for the Eastern District of Virginia.

68.     Under Bankruptcy Code section 330, this Court may award counsel to the LES Committee reasonable compensation for actual, necessary services rendered by such attorneys and paraprofessionals employed by such attorneys based on the nature, extent and value of the services rendered, time spent on such services and the cost of comparable services other than in a bankruptcy case. In addition, this Court may award reimbursement for actual, necessary expenses.

69.     Under the "lodestar" approach, the Court should consider the number of hours of service reasonably devoted to the case multiplied by the attorney's reasonable rates. Courts frequently consider the specific "lodestar" factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). These lodestar tests were adopted by the Fourth Circuit in *Barber v. Kimbrells, Inc.*, 577 F.2d 216, 226 (4th Cir.), *cert. denied*, 439 U.S. 934 (1978), and in *Anderson v. Morris*, 658 F.2d 246, 249 (4th Cir. 1981), where the Fourth Circuit held that the District Court should employ the lodestar approach, and then adjust the fee on the basis of the remaining *Johnson* factors in the case. Akin Gump respectfully submits that a consideration of these factors should result in this Court's allowance of the full compensation sought.

>           (A)     The Time and Labor Required. The professional services rendered by
>           Akin Gump on behalf of the LES Committee have required the continuous
>           expenditure of substantial time and effort under significant time pressures. The

services rendered required a high degree of professional competence and expertise in order to be administered with skill and dispatch.

(B)     The Novelty and Difficulty of the Questions. In this case, as in all others in which the firm is involved, Akin Gump's effective advocacy and creative approach have helped clarify and resolve a number of complex and novel issues.

(C)     The Skill Requisite to Perform the Legal Service Properly. Akin Gump believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Akin Gump's practice, and its creative approach to the resolution of issues has contributed to the maximization of distributions to LES's unsecured creditors.

(D)     The Preclusion of Other Employment by the Attorney Due to Acceptance of the Case. Due to the size of Akin Gump's financial restructuring department, Akin Gump's representation of the LES Committee has not precluded its acceptance of new clients.

(E)     The Customary Fee. The fee sought herein is based upon Akin Gump's normal hourly rates for services of this kind. Akin Gump respectfully submits that the fee sought herein is not unusual given the magnitude and complexity of these chapter 11 cases and the time expended in attending to the representation of the LES Committee and is commensurate with fees Akin Gump has been awarded in other cases, as well as with fees charged by other attorneys of comparable experience.

(F)     Whether the Fee is Fixed or Contingent. Pursuant to Bankruptcy Code sections 330 and 331, all fees sought by professionals employed under

Bankruptcy Code section 1103 are contingent pending final approval by this Court and are subject to adjustment depending upon the services rendered and the results obtained. Thus far, however, the collective efforts of the various parties in interest and their respective professionals, including Akin Gump, have resulted in the consensual resolution of many significant issues in these cases in a relatively short period of time given the complexity of the Debtors' chapter 11 cases.

(G)     <u>Time Limitations Imposed by the Client or the Circumstances</u>. As already indicated, Akin Gump has been required to attend to certain issues arising in these chapter 11 cases in compressed and urgent time periods.

(H)     <u>The Amount Involved and the Results Obtained</u>. Through the efforts of Akin Gump, the LES Committee has been an active participant in these chapter 11 cases, and its constructive assistance, as well as criticism, has greatly contributed to enhancement of the recoveries available to the unsecured creditors of LES and to the efficient administration of these chapter 11 cases.

(I)     <u>The Experience, Reputation and Ability of the Attorneys</u>. Akin Gump has a large and sophisticated financial restructuring practice and is playing and has played a major role in numerous cases of national import including, for example, the reorganization proceedings of Adelphia Business Solutions, Inc., Aetna Industries, Inc., Allegiance Telecom, Inc., American Commercial Lines LLC, Anchor Glass Container Corporation, ATA Holdings Corp., Bally Total Fitness Holding Corporation, Calpine Corporation, Collins & Aikman Corporation, Dairy Mart Convenience Stores, Inc., Dan River Inc., Delta Air Lines Inc., Exide Technologies, FLAG Telecom Holdings Limited, Granite Broadcasting

Corporation, Hayes Lemmerz International, Inc., Haynes International, Inc., Kaiser Aluminum Corporation, The LTV Corporation, Loral Space & Communications Ltd., Pegasus Satellite Television, Inc., Polaroid Corporation, Propex, Inc., Quebecor World (USA) Inc., Scott Cable Communications, Inc., TOUSA, Inc., Tower Automotive, Inc., Venture Holdings Company, LLC, Verasun Energy Corporation, Worldcom, Inc., and XO Communications, Inc. Akin Gump's experience enables it to perform the services described herein competently and expeditiously. In addition to its expertise in the area of corporate reorganization, Akin Gump has called upon the expertise of its partners and associates in other practice areas to perform the wide-ranging scope of the legal work necessitated by these chapter 11 cases, including tax and litigation.

(J)    The "Undesirability" of the Case. These cases are not undesirable.

(K)    The Nature and Length of the Professional Relationship with the Client. Akin Gump was selected as counsel to the LES Committee on December 8, 2008. This Court entered an order on January 16, 2009, authorizing the LES Committee to employ Akin Gump, *nunc pro tunc* to December 8, 2008. Akin Gump has been rendering services continuously to the LES Committee since December 8, 2008 and continuing through the Compensation Period, as necessary and appropriate.

## VII.    ALLOWANCE OF COMPENSATION

70.    As this Court is aware, the LES chapter 11 case involved novel issues of law and practical, creative solutions to the issues unique to this case. Further, the professional services rendered by Akin Gump required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the LES Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial

time and effort. It is respectfully submitted that the services rendered to the LES Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited not only the members of the LES Committee, but also the unsecured creditor body of LES as a whole and the LES estate.

71.     With respect to the level of compensation, Bankruptcy Code section 330(a)(1) provides, in pertinent part, that the Court may award to a professional person:

> reasonable compensation for actual, necessary services rendered . . .

11 U.S.C. § 330(a)(1). Section 330(a)(3)(A), in turn, provides that

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
> (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A). The clear congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

72.     The total time spent by Akin Gump attorneys and paraprofessionals during the Compensation Period was 10,595.55 hours. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task. As shown by this Application and supporting documents, Applicant spent its time economically and without unnecessary duplication of time.

73.     Pursuant to the Interim Compensation Order, Akin Gump's monthly fees are subject to a 15% "holdback." The amount of Akin Gump's holdbacks for the periods covered by the Monthly Fee Statements is $125,328.97. Pursuant to this Application, Akin Gump respectfully requests final approval of all compensation earned during the Compensation Period, including all amounts subject to holdback.

74.     Akin Gump incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the LES Committee during the Compensation Period in the amount of $363,500.79, for which Akin Gump respectfully requests reimbursement in full. The disbursements and expenses have been incurred in accordance with Akin Gump's normal practice of charging clients for expenses clearly related to and required by particular matters. Akin Gump has endeavored to minimize these expenses to the fullest extent possible.

75.     Akin Gump's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, secretarial overtime, postage and certain other office services because the needs of each client for such services differ. Akin Gump believes that it is fairest to charge each client only for the services actually used in performing services for it. In these proceedings, Akin Gump charges $.20 per page for internal duplicating and does not charge for outgoing or incoming facsimile transmissions. Akin Gump has agreed not to charge for travel time for hearings in connection with these chapter 11 proceedings.

76.     No prior application has been made in this Court or in any other court for the relief requested herein for the Compensation Period.

**WHEREFORE**, Akin Gump respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit D**:

(a)     approving the allowance of $4,639,413.25 for compensation for professional services rendered to the LES Committee during the period from December 8, 2008 through and including December 6, 2009;

(b)     approving the reimbursement of Akin Gump's out-of-pocket expenses incurred in connection with the rendering of such services during the period December 8, 2008 through and including December 6, 2009 in the amount of $363,500.79;

(c)     authorizing and directing LES to pay the fees and expenses awarded; and

(d)     granting such other and further relief as this Court may deem just and proper.

Dated: Richmond, Virginia

January 15, 2010

_____/s/ Catherine Creely_____
Charles R. Gibbs (admitted *pro hac vice*)
Keefe Bernstein (admitted *pro hac vice*)
Sarah Link Schultz (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: 214.969.2800
Facsimile: 214.969.4343

Catherine Creely (Virginia Bar No. 74796)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: 202.887.4000
Facsimile: 205.955.7827

-and-

Lynn Tavenner (Virginia Bar No. 30083)
Paula S. Beran (Virginia Bar No. 34679)
TAVENNER & BERAN, PLC
20 North Eighth Street, Second Floor
Richmond, VA 23219
Telephone: 804.783.8300
Facsimile: 804.783.0178

*Attorneys for The Official Committee of Unsecured Creditors of LandAmerica 1031 Exchange Services, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 15th day of January, 2010 a true and correct copy of the foregoing *Final Application of Akin Gump Strauss Hauer & Feld LLP for Allowance of Compensation and Expense Reimbursement as Counsel to the Official Committee of Unsecured Creditors of LandAmerica 1031 Exchange Services, Inc.* has been served via first class mail, postage pre-paid and/or electronic delivery to:

Robert B. Van Arsdale – Via Email:
Office of the United States Trustee
701 East Broad St. Suite 4304
Richmond, Virginia 23219
Robert.B.Van.Arsdale@usdoj.gov

Dion W. Hayes, Esq. – Via Email:
John H. Maddock, III, Esq. – Via Email:
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219
dhayes@mcguirewoods.com
jmaddock@mcguirewoods.com

Paul V. Shalhoub, Esq. – Via Email:
Rachel C. Strickland, Esq. – Via Email:
WILLKIE FARR & GALLAGHER, LLP
787 Seventh Avenue
New York, New York 10019
pshalhoub@willkie.com
rstrickland@willkie.com

Gerard A. McHale, Jr.
Trustee, LandAmerica 1031 Exchange
Services, Inc. Liquidating Trust
1601 Jackson Street, Suite 200
Fort Myers, Florida 33901
jerrym@thereceiver.net

Bruce H. Matson – Via Email:
Christopher L. Perkins – Via Email:
LeClair Ryan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, Eighth Floor
Richmond, Virginia 23219
bruce.matson@leclairryan.com
christopher.perkins@leclairryan.com

Jeffrey S. Sabin – Via Email:
Mark M. Elliott – Via Email:
Justin G. Imperato – Via Email:
Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022
jeffrey.sabin@bingham.com
mark.elliott@bingham.com
justin.imperato@bingham.com

Chad Perrine - Via Regular Mail
LandAmerica Financial Group, Inc.
5600 Cox Road
Glen Allen, VA 23060
cperrine@landam.com

_____/s/ Sarah Link Schultz_____
Sarah Link Schultz