Paul V. Shalhoub (Admitted *Pro Hac Vice*)
Rachel C. Strickland (Admitted *Pro Hac Vice*)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

     - and -

Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 41044)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

Attorneys for the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

---------------------------------------------------x
| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| LandAmerica Financial Group, Inc., <u>et al.</u>, | : | Case No. 08-35994 (KRH) |
| | : | |
| Debtors. | : | (Jointly Administered) |

---------------------------------------------------x

**FINAL APPLICATION OF WILLKIE FARR & GALLAGHER LLP
AS COUNSEL FOR DEBTORS FOR FINAL ALLOWANCE
OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF
<u>EXPENSES INCURRED FROM NOVEMBER 26, 2008 THROUGH DECEMBER 6, 2009</u>**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

       Willkie Farr & Gallagher LLP ("**<u>WF&G</u>**"), attorneys for LandAmerica Financial

Group, Inc. ("**<u>LFG</u>**"), LandAmerica 1031 Exchange Services, Inc. ("**<u>LES</u>**") and the other above-

captioned debtors and debtors in possession (collectively, the "**<u>Debtors</u>**"), in support of its

application (the "**<u>Final Application</u>**") for final allowance of compensation for professional

services rendered and reimbursement of expenses incurred from November 26, 2008 through

December 6, 2009 (the "**Final Application Period**"), respectfully represents:

**PRELIMINARY STATEMENT**

      1.      Pursuant to sections 330 and 331 of title 11 of the United States Code (the

"**Bankruptcy Code**"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), WF&G requests that this Court authorize allowance of compensation for

professional services rendered and reimbursement of expenses incurred during the above

captioned cases.  Among the fees and expenses described herein, this Court has already

authorized, on an interim basis, all but those which were incurred from September 1, 2009

through December 6, 2009 (the "**Fourth Application Period**").  Accordingly by this Final

Application, WF&G requests both interim and final approval of $2,762,410.45 (the "**Interim

Application Amount**") that relates to the last few months of these cases.  The Interim

Application Amount includes: (a) reimbursement of $82,712.75 in actual and necessary expenses

WF&G incurred in connection with its rendition of professional services during the Fourth

Application Period;[1] and (b) compensation of $2,681,010.50 in fees for services rendered during

the Fourth Application Period.[2]  As this is WF&G's final request, WF&G requests payment of

the entire Interim Application Amount, without the need for any further 15% holdback under the

Interim Compensation Order (as defined herein).

---

[1]    WF&G's standard practice is to treat certain expenses as having been incurred when such obligations are
recorded and reflected as payable in WF&G's accounting system. Accordingly, WF&G reserves its right to
seek at a later date compensation for expenses incurred during the Fourth Application Period that may not have
been posted as of yet and thus are not included herein.

[2]    The Interim Application Amount also includes approximately $10,451.50 in fees and $1,271.92 in actual and
necessary expenses, which were incurred during the Fourth Application Period but were not previously included
in WF&G's Fee Statements.

2

2.      In total, WF&G requests the final allowance of compensation for professional services rendered and reimbursement of expenses incurred during the Final Application Period in the amount of $13,149,495.21 (the "**Final Application Amount**").  The Final Application Amount includes: (a) reimbursement of $463,560.21 in actual and necessary expenses WF&G incurred in connection with its rendition of professional services; and (b) compensation of $12,685,935.00 in fees for services rendered to the Debtors.  To date, WF&G has been paid all of these amounts except $1,183,248.34, which is comprised of: (i) $400,583.85, representing the 15% which was held back relating to the Fourth Application Period; (ii) $708,486.90 in fees and $25,436.59 in actual and necessary expenses WF&G incurred in connection with its rendition of professional services for the period November 1, 2009 through December 6, 2009; (iii) $10,451.50 in fees and $1,271.92 in actual and necessary expenses, which were incurred during the Fourth Application Period but were not previously included in WF&G's Fee Statements; and (iv) amounts which have already been authorized to have been paid, including $34,895.38 in fees and $2,478.20 in actual and necessary expenses WF&G incurred in connection with its rendition of professional services for the period October 1, 2009 through October 31, 2009 to LES.[3]

3.      Though it is WF&G's standard practice to bill its clients for all hours devoted to a case, WF&G, in its discretion, has voluntarily written off approximately $163,100.00 in fees for services rendered to the Debtors in these cases.  Such amount was never billed and is already excluded from the Final Application Amount.

---

[3]  The Final Application Amount does not include fees for services rendered solely to OneStop (as defined below).  At this time, WF&G seeks only interim allowance of fees for services rendered to OneStop during the Fourth Application Period.  WF&G intends to submit a supplemental final fee application to seek final allowance of the fees and expenses incurred in connection with the representation of OneStop.

4.      By this Final Application, WF&G seeks final allowance and payment of compensation for all services rendered and expenses incurred during the Final Application Period.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction to consider the Final Application pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 330 and 331 of the Bankruptcy Code, and Bankruptcy Rule 2016.

## BACKGROUND

6.      On November 26, 2008 (the "**Initial Petition Date**") LFG and LES each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On March 6, 2009, March 27, 2009, March 31, 2009, July 17, 2009, October 12, 2009 and November 4, 2009, various other LFG affiliates (LandAmerica Assessment Corporation ("**LAC**"), LandAmerica Title Company ("**LandAm Title**"), Southland Title Corporation, Southland Title of Orange County and Southland Title of San Diego (collectively, the "**Southland Entities**"), LandAmerica Credit Services, Inc. ("**LandAm Credit**"), Capital Title Group, Inc. ("**CTG**") and LandAmerica OneStop, Inc. ("**OneStop**")) each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, respectively.  Pursuant to orders of this Court dated November 28, 2008, March 11, 2009, April 8, 2009, April 9, 2009, July 22, 2009, October 26, 2009 and November 13, 2009, the chapter 11 cases of the Debtors are being jointly administered under case number 08-35994.  No trustee or examiner has been appointed in any of the Debtors' chapter 11 cases.

7.      On December 3, 2008, the United States Trustee for the Eastern District of Virginia (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors in the

case of (a) LFG (the "**LFG Creditors Committee**"), and (b) LES (the "**LES Creditors**

**Committee**," and, together with the LFG Creditors Committee, the "**Creditors Committees**").

8.      On June 4, 2009, the U.S. Trustee filed his Amended Appointment of

Unsecured Creditors Committee, adding two (2) additional members to the LES Creditors

Committee.

9.      On September 9, 2009, the Debtors filed initial drafts of the Joint Chapter

11 Plan of LandAmerica Financial Group, Inc. and its Affiliated Debtors (as amended, the

"**Plan**") and Disclosure Statement with Respect to the Joint Chapter 11 Plan of LandAmerica

Financial Group, Inc. and its Affiliated Debtors (as amended, the "**Disclosure Statement**").

10.      By order dated October 14, 2009, this Court approved the Disclosure

Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code

and authorized the Debtors to solicit votes to accept or reject the Plan from certain creditors.

11.      On November 23, 2009, this Court entered an order confirming the Plan as

to all Debtors other than OneStop.  The effective date with respect to the Plan occurred on

December 7, 2009 (the "**Effective Date**").

## WF&G'S FEES AND EXPENSES

12.      WF&G's services in these cases have been substantial, necessary, and

beneficial to the Debtors, their estates, creditors and other parties in interest.  Throughout these

cases, the variety and complexity of the issues involved in these cases and the need to address

certain matters on an expedited basis has required WF&G, in the discharge of its professional

responsibilities, to devote substantial time by professionals from several legal disciplines on a

daily basis.

13.      Specifically, WF&G's requests reflect the requisite time, skill, and effort

WF&G expended towards, inter alia:  (a) obtaining approval to sell LFG's underwriting

subsidiaries, which made up a substantial portion of the Debtors' revenues; (b) working with

LFG to evaluate, market, sell, and/or wind-down, as applicable, the Debtors' and their non-

Debtor subsidiaries' remaining businesses; (c) implementing a protocol to resolve both inter-

estate and LES related disputes; (d) formulating, negotiating and drafting the Plan and the

Disclosure Statement; (e) litigating disputes in connection with the adversary proceedings that

have been initiated in the Debtors' chapter 11 cases; (f) disposing of over fifty of the Debtors'

leasehold interests in order to mitigate losses and maximize values for the Debtors' estates; (g)

reviewing and objecting to claims filed against the Debtors; (h) seeking and obtaining

confirmation of the Plan over numerous objections; and (i) otherwise moving the Debtors

through the chapter 11 process without undue delay.

      14.     In accordance with section II.B. of the United States Trustee Guidelines

for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. § 330, issued January 30, 1996 (the "**UST Guidelines**"), WF&G makes the following

disclosures:

> (a)     The Debtors have been given an opportunity to review WF&G's
> fees and expenses accrued during the Final Application Period.

> (b)     The Debtors filed initial versions of the Plan and the Disclosure
> Statement on September 9, 2009.  The Debtors filed amended
> versions of the Disclosure Statement on October 12, 2009 and
> October 13, 2009, and amended versions of the Plan on October 2,
> 2009, October 12, 2009, October 13, 2009, October 24, 2009 and
> November 16, 2009.  The Disclosure Statement was approved by
> the Court on October 14, 2009.  The Plan was confirmed by the
> Court on November 18, 2009, and an order confirming the Plan as
> to all Debtors other than OneStop was entered on November 23,
> 2009.[4]

---

[4]    An order approving the Disclosure Statement with respect to OneStop was entered by the Court on December
18, 2009, and a hearing to consider confirmation of the Plan with respect to OneStop is currently scheduled for
February 9, 2010.

(c)     To the best of WF&G's knowledge, all quarterly fees have been paid to the U.S. Trustee, and required monthly operating reports covering the period from the Initial Petition Date through December 6, 2009 have been filed.

(d)     WF&G is advised that as of November 30, 2009, the Debtors held the following cash on hand: LFG held approximately $100,867,000; LES held approximately $130,072,000; LAC held approximately $3,192,000; LandAm Title held approximately $941,000; the Southland Entities held approximately $4,277,000; LandAm Credit held approximately $3,196,000; CTG held approximately $500,000; and OneStop held approximately $18,497,000.

(e)     WF&G is advised that, prior to the Effective Date, the Debtors paid undisputed administrative expenses in the ordinary course of business.

15.     By order dated May 16, 2009, this Court approved on an interim basis the allowance of $4,062,498.00, representing 100% of the fees for professional services rendered by WF&G from November 26, 2008 through February 28, 2009 (the "**First Application Period**"), and $129,170.77, representing 100% of the actual and necessary expenses incurred in connection with the rendering of such professional services.  By order dated September 2, 2009, this Court approved on an interim basis the allowance of $3,467,779.00, representing 100% of the fees for professional services rendered by WF&G from March 1, 2009 through May 31, 2009 (the "**Second Application Period**), and $136,347.64, representing 100% of the actual and necessary expenses incurred in connection with the rendering of such professional services.  By order dated November 24, 2009, this Court approved on an interim basis the allowance of $2,478,163.50, representing 100% of the fees for professional services rendered by WF&G from June 1, 2009 through August 31, 2009 (the "**Third Application Period**"), and $115,329.05, representing 100% of the actual and necessary expenses incurred in connection with the rendering of such professional services.

## **MONTHLY FEE STATEMENTS**

16.     WF&G was retained as counsel to LFG and LES, effective as of the Initial

Petition Date, pursuant to an order of this Court dated December 22, 2008.  On December 22,

2008, this Court entered an Order Under Sections 105(a) and 331 of Bankruptcy Code

Establishing Procedures for Interim Compensation (the "**Interim Compensation Order**").  The

Interim Compensation Order provides, among other things, that retained professionals of the

Debtors are required to serve monthly itemized billing statements (each, a "**Fee Statement**") on

the U.S. Trustee, the Debtors, counsel to the Debtors, and counsel to the Creditors Committees.

Upon passage of a twenty (20) day objection period, if no objections have been received, the

Debtors are authorized to pay to the professionals 85% of the fees and 100% of the expenses

requested.

17.     In compliance with the Interim Compensation Order, WF&G has

submitted three (3) Fee Statements relating to the Fourth Application Period.  Payment on

account of these Fee Statements has been requested as follows:

> (a)  Pursuant to the Fee Statement for the period September 1,
> 2009 through September 30, 2009 (the "**September Fee
> Statement**"), WF&G has requested payment of $603,768.18
> representing 85% of the total fees requested for services
> rendered (i.e., $710,315.50), and $18,339.82 representing
> 100% of the expenses incurred during the period.
>
> (b)  Pursuant to the Fee Statement for the period October 1, 2009
> through October 31, 2009 (the "**October Fee Statement**"),
> WF&G has requested payment of $957,720.08 representing
> 85% of the total fees requested for services rendered (i.e.,
> $1,126,729.50), and $37,664.42 representing 100% of the
> expenses incurred during the period.
>
> (c)  Pursuant to the Fee Statement for the period November 1,
> 2009 through December 6, 2009 (the "**November Fee
> Statement**"), WF&G has requested payment of $708,486.90
> representing 85% of the total fees requested for services

rendered (i.e., $833,514.00), and $25,436.59, representing
100% of the expenses incurred during the period.

18.     No objections to the September Fee Statement, the October Fee Statement
or the November Fee Statement were submitted.  In accordance with the Interim Compensation
Order, WF&G has received payment of $622,108.00 relating to the September Fee Statement
and $958,010.82 relating to the October Fee Statement.[5]  As of the date of this Final Application,
however, WF&G has not received payment for the November Fee Statement.

## FINAL FEE APPLICATION

19.     Prior to the Initial Petition Date, WF&G received retainers aggregating
$700,000.00.  Certain of these retainers were applied to fees for services rendered and
reimbursement for expenses incurred prior to the Initial Petition Date.  Currently, WF&G holds a
retainer in the amount of $486,244.000.  No agreement or understanding exists between WF&G
and any other entity for the sharing of compensation to be received for services rendered in or in
connection with these cases.

20.     By this Final Application, WF&G seeks final allowance and payment of
compensation for all services rendered and expenses incurred during the Final Application
Period (i.e., $13,149,494.71), which consists of the fees and expenses for the First Application
Period through the Fourth Application Period.[6]  During the Final Application Period, WF&G
expended a total of 23,332.70 hours on matters relating to the Debtors' cases, which resulted in a
blended hourly rate of $543.70.

---

[5]   Although approved to be paid, WF&G has yet to receive $34,895.38 in fees and $2,478.20 in actual and
necessary expenses WF&G incurred in connection with its rendition of professional services to LES for the
period October 1, 2009 through October 31, 2009.

[6]   This amount does not include certain fees incurred in connection with WF&G's representation of OneStop.

21.    WF&G maintains written records of the time expended by attorneys and paraprofessionals in the rendition of professional services to the Debtors.  Such time records are made contemporaneously with the rendition of services by the person rendering such services.  Copies of the time records for the Final Application Period, broken down by matter, are annexed hereto as part of Exhibits B-1, B-2, B-3 and B-4.[7]  Additionally, annexed hereto as part of Exhibit B is a list of all of the matters for which services were rendered and the aggregate amount of hours and fees expended for each of those matters.

22.    For the convenience of the Court and parties in interest, annexed hereto as Exhibits C-1, C-2, C-3 and C-4 is a list of the attorneys and paraprofessionals who have worked on these cases during the Final Application Period, his or her hourly billing rate, and the amount of WF&G's fees attributable to each individual.

23.    WF&G also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of professional services.  Schedules setting forth the categories of expenses and amounts for which reimbursement is requested are annexed hereto as Exhibits D-1, D-2, D-3 and D-4.

24.    Pursuant to the Interim Compensation Order and UST Guidelines, WF&G recorded its services rendered and disbursements incurred on different matters reasonably expected by the Debtors to continue over a period of at least three months and to constitute a substantial portion of the fees sought during an application period.

---

[7]    Copies of the daily time records are being provided to the Court and the U.S. Trustee.  Parties in interest required to be served with WF&G's Fee Statements pursuant to the Interim Compensation Order have previously been furnished with such daily time records.  Copies of the time records will be made available to other parties in interest upon reasonable request.

## SUMMARY OF SERVICES RENDERED

25.    Recitation of each and every item of professional services that WF&G
performed would unduly burden the Court.  Hence, the following summary highlights the major
areas to which WF&G devoted substantial time and attention during the Final Application
Period.  The full breadth of WF&G's services is reflected in WF&G's time records.

A.    **General Chapter 11 and Case Administration of LFG's Case**

26.    WF&G has contributed significantly to the efficient administration of
LFG's bankruptcy case.  Where possible, WF&G has attempted to resolve disputes consensually,
without seeking judicial intervention.  WF&G has actively sought to maintain an efficient
working relationship with Court personnel, the U.S. Trustee, counsel to the Creditors
Committees and other parties in interest, and to guide LFG, LES and the other Debtors to the
culmination of their chapter 11 cases.

27.    Prior to the Initial Petition Date, LFG was a holding company that
operated through its various subsidiaries (collectively, the "**Company**").  Throughout the
bankruptcy process, LFG maximized value for its creditors and its estate through sales of the
Company's remaining businesses and/or the prompt and orderly wind-down and liquidation of
such businesses.

28.    The size and complexity of the Company's business operations as well as
the numerous legal and business issues arising in LFG's case, necessitated a significant amount
of communication among LFG's management and other professionals employed by LFG.  As a
means of coordinating and assessing the progress made in LFG's case, and to address the
extensive legal issues faced by LFG, conference calls were routinely held throughout the Final
Application Period among LFG's personnel, WF&G, its co-counsel, McGuireWoods LLP
("**MGW**"), LFG's financial advisors, Zolfo Cooper ("**Zolfo**"), and other professionals retained

11

by the Debtors.  The purpose of these calls and meetings was to discuss both short-term and

long-term strategies of the case, identify and address various issues affecting LFG, and provide

necessary updates of information designed to assist all parties in providing their professional

services efficiently.  Accordingly, such calls and meetings served the important function of,

among other things, assigning tasks to specific parties to avoid the duplication of efforts among

the professionals and management.

       29.     In addition, LFG and WF&G worked closely with the LFG Creditors

Committee and its professionals to keep all parties fully informed of the legal, operational,

financial and other issues affecting LFG's estate including, but not limited to: (a) the evaluation,

marketing, sale, and/or wind-down, as applicable, of the Company's businesses; (b) the analysis

and review of proofs of claims filed against LFG; (c) the evaluation of pending and threatened

litigation against the LFG estate; (d) the negotiation of various settlements, including those with

the Pension Benefit Guaranty Corporation (the "**PBGC**") and Fidelity National Financial, Inc.

("**FNF**"); and (e) the negotiation, drafting, solicitation and confirmation of the Plan.  Also,

throughout the Final Application Period, WF&G attorneys assisted LFG and Zolfo in preparing

timely and informative responses to inquiries from the LFG Creditors Committee and numerous

individual stakeholders, and participated in meetings with both Creditors Committees to

consensually resolve various issues relating to LFG's and other Debtors' estates.

       30.     Throughout the Final Application Period, various LFG subsidiaries

identified the need to file for chapter 11 bankruptcy protection in order to help with the orderly

sale or wind-down of their businesses.  During the Fourth Application Period, WF&G attorneys

prepared and filed voluntary petitions and other first day pleadings on behalf of CTG and

OneStop to ensure smooth transitions into chapter 11 for both subsidiaries.  Further, WF&G

assisted CTG and OneStop in compiling and filing schedules of assets and liabilities and

statements of financial affairs, which were timely filed on October 12, 2009 and November 4,

2009, respectively.  WF&G also assisted CTG and OneStop in obtaining approval of a motion to

establish a deadline to file proofs of claim against their estates.  By order dated November 13,

2009, this Court established December 14, 2009 as the general claims bar date for both CTG and

OneStop, April 12, 2010 as the governmental unit bar date for CTG, and May 4, 2010 as the

governmental unit bar date for OneStop.

      B.      **The Fidelity Transaction and Settlement**

      31.      Prior to the Initial Petition Date, approximately 85 to 90% of the

Company's revenues were derived from LFG's primary title insurance underwriting subsidiaries

– Commonwealth Land Title Insurance Company, Lawyers Title Insurance Corporation, and

United Capital Title Insurance Company, and their respective subsidiaries (collectively, the

"**Underwriters**").  During the First Application Period and the Second Application Period,

WF&G attorneys spent significant time negotiating and working to ensure that the sale of the

Underwriters to Fidelity (as defined below) was approved by the Court and timely consummated.

      32.      WF&G attorneys encountered many hurdles in the process of procuring

approval of the sale of the Underwriters to FNF, Fidelity National Title Insurance Company

("**FNTIC**") and Chicago Title Insurance Company ("**CTIC**," and collectively with FNF and

FNTIC, "**Fidelity**").  Specifically, shortly after the Initial Petition Date, WF&G assisted the

Debtors in obtaining court approval for the sale over vociferous objections from strategic parties,

among others, who sought to block the Fidelity transaction by invoking FTC concerns.

Thereafter, WF&G attorneys assisted LFG in seeking specific performance after Fidelity tried to

withdraw from the deal.  Ultimately, the sale of the Underwriters to Fidelity closed on December

22, 2008, yielding significant value to LFG's estate.  As part of the sale, the Court approved a

transition services agreement that required LFG and Fidelity to provide substantial transition-related services to one another (the "**Transition Services Agreement**").  Thus, even after the Fidelity sale closed, numerous disputes under the Transition Services Agreement persisted between the parties.

33.    In an effort to consensually resolve all claims asserted by and between LFG, LES, the Southland Entities, the Underwriters and Fidelity, in August 2009, the Debtors, with the assistance of WF&G attorneys, the LFG Creditors Committee and representatives of Fidelity began negotiations of a global settlement between the parties.  After weeks of extensive arm's length negotiations, the parties reached an agreement that resolved significant claims between the Debtors and Fidelity and provided a cash payment to the LFG estate in the amount of $5.225 million (the "**Fidelity Settlement**").  In the absence of the Fidelity Settlement, the Debtors and Fidelity would likely have been mired in lengthy and costly litigation to resolve all claims among each other.  On September 10, 2009, the Debtors filed a motion to approve the Fidelity Settlement, and on September 14, 2009, this Court entered an order approving the Fidelity Settlement.

C.    **Asset Sales**

34.    Following the sale of the Underwriters, WF&G worked with Zolfo and LFG to evaluate the Company's remaining businesses to determine the manner in which to best maximize value, including through one or more sales of such remaining businesses and/or the prompt and orderly wind-down and liquidation of such businesses.  As of the Initial Petition Date, LFG wholly-owned approximately 28 direct subsidiaries and approximately 219 active and inactive indirect subsidiaries (certain of which are joint ventures), and it owned an interest in approximately 14 non-title joint ventures.  During the Final Application Period, LFG, together with Zolfo and the assistance of WF&G attorneys, marketed, negotiated and pursued more than a

dozen different transactions.  WF&G attorneys devoted significant time to drafting and

negotiating asset purchase agreements and stock purchase agreements for such transactions.

35.    During the Fourth Application Period, WF&G attorneys negotiated and

sought Court approval of a sale of OneStop's Tax and Flood Services division to T&F

Acquisitions Group, LLC.  By order of this Court dated September 18, 2009, the sale was

approved, which resulted in a purchase price of approximately $6 million to OneStop's estate

before any working capital adjustments or transaction costs.

D.    **General Chapter 11 and Case Administration of LES's Case**

36.    Throughout the Final Application Period, WF&G contributed significantly

to the efficient administration of LES's case.  Prior to the Initial Petition Date, LES entered into

agreements with customers (the "**Exchange Agreements**") whereby it acquired the net proceeds

of the sales of relinquished properties (the "**Exchange Funds**") in order to facilitate like kind

exchanges in accordance with the requirements of the Internal Revenue Code.  WF&G attorneys

worked with LES's customers, the LES Creditors Committee and the U.S. Trustee to ensure that

the Exchange Funds were held in accordance with appropriate cash management procedures,

which were approved by this Court and amended as circumstances required.  On a daily basis,

WF&G attorneys responded to numerous communications from LES customers inquiring as to

the status of the Exchange Funds and LES's case.

37.    In addition to the litigation and mediation referenced below, throughout

the course of LES's case, WF&G assisted LES in negotiating settlements and obtaining Court

approval of settlement agreements with several of LES's customers, including HealthCare REIT,

RP One-DDD, IQC Properties, Inc., and Arboleda Corporation.  The negotiations conducted by

WF&G attorneys were key to reaching such settlement agreements.

38.     In an effort to maximize the value of its estate, LES, with the assistance of WF&G and Zolfo, also focused its efforts on marketing and selling its investments in subordinate student loan auction rate securities (the "**Auction Rate Securities**").  Due to the illiquid nature of these assets, the potential sale of the Auction Rate Securities required prolonged discussions between the Debtors, the LES Creditors Committee, and prospective purchasers.  During the Fourth Application Period, the Debtors entered into an agreement to retain SecondMarket, Inc., a licensed broker-dealer, to market and sell the Auction Rate Securities, which agreement was approved by the Court on November 17, 2009.

E.      **1031 Litigation**

39.     During the course of the Final Application Period, more than one hundred (100) adversary proceedings were filed in this Court by LES customers in connection with the Exchange Agreements and the Exchange Funds, and several related actions have been filed in various state courts.

40.     Due to the great number of adversary proceedings and the need for the Court to deal with these actions in an orderly and efficient manner, shortly after the Initial Petition Date, LES sought to establish procedures to settle disputes relating to the ownership of the Exchange Funds through the designation of four test cases (the "**Lead Cases**").  The litigation of the Lead Cases concluded with the entry, on April 15, 2009 and May 7, 2009, of two summary judgment opinions and orders, each in favor of LES finding that the Exchange Funds constituted property of LES's estate.  WF&G attorneys led the charge on these endeavors.

F.      **The Inter-Estate and LES Mediations**

41.     During the course of the Debtors' cases, numerous global issues were efficiently handled through a comprehensive mediation.  On May 21, 2009, this Court approved a protocol requested jointly by the Debtors and the Creditors Committees (the "**Mediation**

16

**Protocol**") providing for a two-step mediation of (a) certain inter-estate transactions between

LFG and LES (the "**Inter-Estate Mediation**"), and (b) issues relating to a compromise plan of

liquidation involving a global resolution of, among other things, the Lead Cases, which shared

common legal and factual issues with other adversary proceedings then pending against LES (the

"**LES Mediation**").

42.     WF&G played a critical role in the creation and implementation of the

Mediation Protocol and in the Inter-Estate and LES Mediations.  In order to facilitate the Inter-

Estate Mediation, WF&G prepared a mediation statement and actively participated in sessions

with representatives of the Creditors Committees and the Honorable Frank Santoro.  The Inter-

Estate Mediation successfully concluded on July 2, 2009.  Subsequently, WF&G prepared and

submitted a second mediation statement, which set forth the Debtors' goals with respect to the

LES Mediation, as well as an analysis of certain complex legal issues.  Like the Inter-Estate

Mediation, WF&G actively participated in the LES Mediation to reach a consensual resolution

with respect to the allocation of LES's assets.  The LES Mediation concluded on July 14, 2009,

and the terms agreed upon in the Inter-Estate and LES Mediations formed the basis of the Plan

that was ultimately confirmed.

G.      **Plan of Liquidation and Disclosure Statement**

43.     Immediately after the conclusion of the Inter-Estate Mediation and the

LES Mediation, the Debtors and WF&G attorneys began formulating and drafting a plan of

liquidation with the input of the Creditors Committees.  WF&G attorneys devoted substantial

time and effort to negotiating, drafting and finalizing the terms of the Plan, the Disclosure

Statement and related documents.  The Debtors, WF&G attorneys and the Creditors Committees

exchanged over a dozen drafts of the Plan and the Disclosure Statement, and spent numerous

hours negotiating to resolve contentious issues related to the Plan.

17

44.     WF&G, on behalf of the Debtors, obtained Court approval of the

Disclosure Statement through a lengthy hearing conducted on October 14, 2009, and in

coordination with the Debtors' claims and balloting agent, assisted in the solicitation of the Plan.

45.     Numerous objections to confirmation of the Plan were submitted.  WF&G

prepared and submitted a brief in support of the Plan, which required WF&G attorneys to spend

considerable time researching complicated legal issues and coordinating responsive pleadings

with counsel to the Creditors Committees.  In addition to filing objections, many objectors,

including the Grunstead Family Limited Partnership, appeared at the hearing to contest

confirmation of the Plan.  WF&G attorneys successfully negotiated the resolution of certain Plan

objections and argued the remaining objections.  WF&G's efforts culminated in the Court's

speedy confirmation of the Plan on November 18, 2009, and the occurrence of the Effective Date

on December 7, 2009.

H.    **Creditor/Claims Issues**

46.     Throughout the Final Application Period, WF&G attorneys responded to

numerous communications from creditors received in these chapter 11 cases.  Since the Initial

Petition Date, WF&G, with Zolfo's assistance, worked diligently to review, reconcile and

resolve numerous claims filed against the Debtors' estates.  The Debtors settled certain

prepetition and postpetition claims in accordance with the settlement procedures that were

approved by this Court.  Specifically, the Debtors entered into consensual agreements

terminating or amending several of their unexpired non-residential real property leases.  In

addition, WF&G assisted the Debtors in negotiating the settlement of certain lawsuits that were

pending against their estates.  As a result, during the Fourth Application period, WF&G filed

fourteen (14) omnibus claim objections on behalf of the Debtors seeking to expunge or amend

numerous claims asserted against their estates.

I.       **PBGC Settlement**

47.       The PBGC asserted significant claims against the Debtors' estates in connection with the Company's Cash Balance Plan.  During the Second Application Period, WF&G played a critical role in brokering an agreement with the PBGC to resolve issues that had threatened the successful completion of certain asset sales.  During the Fourth Application Period, in order to consensually resolve all of the PBGC's claims asserted against the Debtors, representatives of the Debtors, the Creditors Committees and the PBGC entered into negotiations in September of 2009. After weeks of extensive arm's length negotiations, on October 23, 2009, the parties reached an agreement regarding a global settlement of the PBGC's claims (the "**PBGC Settlement**").  LFG agreed to pay the Cash Balance Plan fifteen million ($15,000,000) dollars in exchange for the PBGC's release and discharge of all claims.  Furthermore, the PBGC Settlement provided a means to effectuate a standard termination of the Company's Cash Balance Plan rather than a more costly distress or involuntary termination.  In the absence of the PBGC Settlement, the parties involved would have likely engaged in costly litigation to resolve the PBGC's claims, and if the Company failed to prevail in such litigation, the Company may have been liable for the PBGC's claims and could arguably have been subject to liens that would have likely exceeded the settlement amount.

J.       **General Litigation**

48.       Throughout the Final Application Period, WF&G represented the Debtors in connection with various litigations in courts other than this Court brought against certain of the Debtors' current and former officers and employees by various plaintiffs who deposited Exchange Funds with LES prior to the Initial Petition Date.  WF&G successfully negotiated agreements to stay these cases -- largely without the Court's intervention.  In particular, during the Fourth Application Period, WF&G assisted the Debtors in obtaining tolling agreements from

many of the Debtors' current and former officers and directors to preserve certain causes of action and thereby gaining support for the temporary injunction provided for in the Plan.

      K.    **Beau Street v. CTG Real Estate**

      49.    During the Final Application Period, WF&G represented OneStop and CTG in connection with a complaint filed on February 13, 2009, by landlords, Beau Street Associates, Inc. and JBP Holdings, LLC, in Pennsylvania state court.  During the Fourth Application Period, WF&G assisted with production of documents in connection with requests made by the plaintiffs, negotiated resolutions to various discovery disputes, and engaged in preliminary settlement discussions in connection with this action.

      L.    **Insurance Matters**

      50.    Throughout the Final Application Period, WF&G expended substantial time and effort addressing issues relating to the Debtors' insurance policies.  WF&G assisted the Debtors in evaluating their insurance coverage, including directors' and officers', errors and omissions, fiduciary, and employed lawyers liability insurance.  In particular, WF&G attorneys communicated with the Debtors' insurers regarding, among other things, settlement notifications and defense costs submissions to the insurers, and with the Creditors Committees regarding insurance proceeds.  WF&G coordinated with the Debtors' insurance brokers and provided notice to such insurers of the various claims both pending and threatened in these cases.

      M.    **Executory Contracts/Leases**

      51.    The Debtors have spent a significant amount of time disposing of their interests in their real property leases.  WF&G assisted the Debtors and Zolfo in evaluating and establishing stream-lined procedures whereby the Debtors disposed of many of their real property leasehold interests in order to mitigate losses and maximize value for their estates.

Further, with WF&G's assistance, the Debtors reached settlements with several vendors and

landlords in accordance with the settlement procedures that have been approved in these cases.

      N.     **Tax**

      52.     Throughout the Final Application Period, WF&G assisted MGW in

advising LFG with respect to various tax issues, including the preservation of net operating loss

carryforwards arising from the sale of the Underwriters to Fidelity.

      O.     **WF&G Fee Application**

      53.     Throughout the Final Application Period, WF&G prepared and served Fee

Statements in compliance with the Interim Compensation Order.  In addition, during the Fourth

Application Period, WF&G prepared, filed, and served its application for interim allowance of

compensation relating to the Third Application Period.

## EVALUATING WF&G'S SERVICES

      54.     The allowance of interim compensation for services rendered and

reimbursement of expenses incurred in bankruptcy cases is expressly provided for in section 331

of the Bankruptcy Code:

> [A] debtor's attorney, or any professional person . . . may apply
> to the court not more than once every 120 days after an order
> for relief in a case under this title, or more often if the court
> permits, for such compensation for services rendered . . . as is
> provided under section 330 of this title.

11 U.S.C. § 331.

      55.     Concerning the level of compensation, section 330(a)(l) of the Bankruptcy

Code provides, in pertinent part, that the court may award to a professional person, including the

debtor's attorney:

> "reasonable compensation for actual, necessary services
> rendered by the . . . professional person, or attorney and by any
> paraprofessional person employed by any such person . . . ."

11 U.S.C. § 330.  The Congressional intent and policy expressed in section 330 of the

Bankruptcy Code is to provide for adequate compensation to continue to attract qualified and

competent practitioners to bankruptcy cases.

56.    The "lodestar" method of fee calculation developed by the Third Circuit is

the method used to determine a "reasonable" attorney fee in all the federal courts, including the

bankruptcy courts.  Under the "lodestar" approach, the Court should consider the number of

hours of service reasonably devoted to the case multiplied by the attorney's reasonable rates.

Courts frequently consider the specific "lodestar" factors enumerated in Johnson v. Georgia

Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).  The lodestar factors were adopted by the

Fourth Circuit in Barber v. Kimbrells, Inc., 577 F.2d 216, 226 (4th Cir. 1978), cert. denied, 439

U.S. 934 (1978), and in Anderson v. Morris, 658 F.2d 246, 249 (4th Cir. 1981), where the Fourth

Circuit held that the district court should employ the lodestar approach, and then adjust the fee

on the basis of the remaining Johnson factors in the case.  The following are the Johnson factors:

(a)    the time and labor required;

(b)    the novelty and difficulty of the questions;

(c)    the skill requisite to perform the legal service properly;

(d)    the preclusion of other employment by the attorney due to
acceptance of the case;

(e)    the customary fee;

(f)    whether the fee is fixed or contingent;

(g)    time limitations imposed by the client or the circumstances;

(h)    the amount involved and the results obtained;

(i)    the experience, reputation and ability of the attorneys;

(j)    the "undesirability" of the case;

(k)     the nature and length of the professional relationship with the client; and

(l)     awards in similar cases.

<u>Johnson</u>, 488 F.2d at 717-719; <u>Barber</u>, 577 F.2d at 226, n.28; <u>Anderson</u>, 658 F.2d at 248, n.2.

## **WF&G'S REQUEST FOR FINAL COMPENSATION**

57.     WF&G submits that its request for final allowance of compensation is reasonable.  The services rendered by WF&G, as highlighted above, required substantial time and effort, resulting in the timely resolution of various issues presented in these cases.  Furthermore, the Plan was confirmed in a concise time frame given the complexity of these cases, which was due, in part, to the efforts of WF&G.

58.     The services rendered by WF&G during the Final Application Period were performed diligently and efficiently.  Accordingly, when possible, WF&G delegated tasks to lower cost junior attorneys or, for discrete matters, to attorneys with specialized expertise in the particular task at issue.  While that approach may have required intra-office conferences or involved individual attorneys who spent only a few hours on the matter at hand, the net result was enhanced cost efficiency.

59.     In many instances, WF&G has been able to successfully resolve disputes without the need to resort to the Court.  When necessary, however, WF&G actively represented the Debtors' interests before the Court and substantially furthered the Debtors' efforts to preserve the value of the Debtors' estates for their creditors.

60.     During the Final Application Period, WF&G encountered a variety of challenging legal issues, often requiring substantial research and negotiation.  WF&G brought to bear legal expertise in many areas, including bankruptcy, litigation, corporate and tax.  WF&G attorneys have rendered advice in all of these areas with skill and dispatch.

61.    The services rendered to the Debtors by WF&G during the Final Application Period required an aggregate expenditure of 23,332.70 recorded hours of the time of attorneys and paraprofessionals.  Exhibits C-1 through C-4 set forth a list of such individuals, the aggregate amount of time expended by each, and the current hourly billing rate for each.  The blended hourly rate for the services of attorneys who recorded time during the Final Application Period is $579.39.[8]

62.    WF&G's hourly rates and fees charged are consistent with the market rate for comparable services.  The hourly rates and fees charged by WF&G are the same as those generally charged to, and paid by, WF&G's other clients.  Indeed, unlike fees paid by most WF&G clients, due to the "holdback" of fees and the delays inherent in the fee application process, the present value of the fees paid to WF&G by the Debtors is less than fees paid monthly by other WF&G clients.

**DISBURSEMENTS**

63.    WF&G incurred actual and necessary out-of-pocket expenses during the Final Application Period, in connection with the rendition of the professional services described above, in the amounts set forth in Exhibits D-1 through D-4.  By this Final Application, WF&G respectfully requests allowance of such reimbursement in full.

---

[8]    The blended hourly rate (excluding paraprofessional time) is calculated by dividing the total amount of fees earned by WF&G attorneys ($12,196,056.50) by the total number of hours billed (21,049.70) by such attorneys.  The blended hourly rate including paraprofessional time is $543.70 or $12,685,935.00 in fees billed by WF&G professionals (both attorneys and paraprofessionals) divided by 23,332.70 hours billed.

64.      The disbursements for which WF&G seeks reimbursement include the

following:

(a)      Duplicating – Charged at $0.10 per page, based upon the
cost of supplies.  The charge per page includes a charge for
maintaining the duplicating facilities;

(b)      Telecommunications – Long distance calls are billed at
actual cost.  There is no charge for outgoing or incoming
facsimiles, except for the cost of any long distance
transmissions;

(c)      Computer Research Charges – WF&G's practice is to bill
clients for LEXIS and Westlaw research at actual cost,
which does not include amortization for maintenance and
equipment;

(d)      Overtime Expenses – WF&G's practice is to allow any
attorney working later than 8:00 p.m. and any legal
assistant working later than 7:30 p.m. to charge a working
meal to the appropriate client;

(e)      Local Car Service – WF&G's practice is to allow attorneys,
legal assistants, and secretaries to charge car service to the
appropriate client after 9:00 p.m.; and

(f)      Delivery Services – WF&G's practice is to charge postal,
overnight delivery, and courier services at actual cost.

65.      Though WF&G's practice is to bill clients for secretarial overtime and

word processing at actual cost, WF&G, in its discretion, did not bill the Debtors for such

charges.

## NOTICE

66.      Pursuant to the Interim Compensation Order, WF&G will or has served

copies of the Final Application on the Notice Parties (as defined therein).  In addition, WF&G

will or has served notice of the Final Application and notice of the hearing on the Final

Application on the parties entitled to receive notice under the Amended Case Management Order

[Docket No. 435].  WF&G submits that no other or further notice need be given.

25

## **NO PRIOR REQUEST**

67.     No previous motion for the relief sought herein has been made to this or to

any other Court.

## <u>CONCLUSION</u>

WHEREFORE, WF&G respectfully requests that this Court enter an order,

substantially in the form annexed hereto as <u>Exhibit E</u>:

(a)     allowing interim compensation to WF&G for services rendered from September 1, 2009 through December 6, 2009, inclusive, in the amount of $2,681,010.50;

(b)     allowing interim reimbursement to WF&G of actual, necessary expenses incurred in connection with the rendition of such services from September 1, 2009 through December 6, 2009, inclusive, in the amount of $82,712.75;

(c)     allowing final compensation to WF&G for services rendered from November 26, 2008 through December 6, 2009, inclusive, in the amount of $12,685,935.00;

(d)     allowing final reimbursements to WF&G of actual, necessary expenses incurred in connection with the rendition of services from November 26, 2008 through December 6, 2009, inclusive, in the amount of $463,560.21;

(e)     allowing WF&G to apply its retainer in the amount of $486,244.00 to the payment of all fees and expenses incurred by WF&G that remain unpaid (<u>i.e.</u>, $1,183,248.34);

(f)     approving and directing the Debtors' payment of all fees and expenses incurred by WF&G that remain unpaid after application of the retainer, in the amount of $697,004.34; and

(g)        granting such other and further relief as may be just or proper.


Dated: Richmond, Virginia                    Respectfully submitted,
        January 15, 2010

                                             /s/ Rachel C. Strickland
                                             WILLKIE FARR & GALLAGHER LLP
                                             Paul V. Shalhoub, Esq.
                                             Rachel C. Strickland, Esq.
                                             787 Seventh Avenue
                                             New York, New York  10019
                                             (212) 728-8000

                                             -and-

                                             /s/ John H. Maddock III
                                             Dion W. Hayes (VSB No. 34304)
                                             John H. Maddock III (VSB No. 41044)
                                             McGUIREWOODS LLP
                                             One James Center
                                             901 East Cary Street
                                             Richmond, Virginia 23219-4030
                                             (804) 775-1000


                                             Attorneys for the Debtors and Debtors in
                                             Possession


\10435876.1

## EXHIBIT A-1

### SERVICES RENDERED BY CATEGORY
### NOVEMBER 26, 2008 THROUGH FEBRUARY 28, 2009

| Service Category | Hours | Fees Earned |
|---|---|---|
| General Chapter 11 | 448.40 | 236,511.50 |
| General Litigation | 393.30 | 189,771.00 |
| General Corporate | 393.40 | 269,857.50 |
| Executory Contracts and Leases | 27.00 | 15,311.50 |
| Employee/Pension/Labor | 9.20 | 6,014.00 |
| Tax Issues | 13.10 | 9,687.00 |
| Creditor/Claim Issues | 88.00 | 51,691.00 |
| WF&G Retention | 16.90 | 6,831.50 |
| Non-WF&G Retention | 41.20 | 22,918.00 |
| WF&G Fee Applications | 58.00 | 22,086.00 |
| Non-WF&G Fee Applications | 1.40 | 329.00 |
| Schedules/Statements/Monthly Reports | 83.00 | 42,956.00 |
| Cash Collateral | 7.20 | 5,628.00 |
| Plan of Reorganization/Disclosure Statement | 7.90 | 5,508.50 |
| Asset Sales | 344.40 | 212,644.00 |
| 1031 Litigation | 3,034.40 | 1,659,204.00 |
| Fidelity Transaction | 1,553.90 | 973,594.50 |
| SEC Matters | 158.20 | 90,628.50 |
| LandAmerica Assessment Corp. | 73.40 | 38,470.00 |
| LES General Chapter 11 | 314.20 | 165,905.50 |
| Beau Street v. CTG Real Estate | 65.40 | 36,951.00 |
| **TOTAL** | **7,131.90** | **$4,062,498.00** |

**EXHIBIT A-2**

**SERVICES RENDERED BY CATEGORY**
**MARCH 1, 2009 THROUGH MAY 31, 2009**

| Service Category | Hours | Fees Earned |
|---|---|---|
| General Chapter 11 | 398.20 | 220,566.00 |
| General Litigation | 324.30 | 158,609.50 |
| General Corporate | 390.60 | 264,405.00 |
| Executory Contracts and Leases | 150.10 | 75,805.00 |
| Automatic Stay | 25.00 | 14,584.50 |
| Employee/Pension/Labor | 108.80 | 65,449.50 |
| Tax Issues | 12.10 | 9,271.00 |
| Creditor/Claim Issues | 184.30 | 90,843.00 |
| WF&G Retention | 2.90 | 1,349.50 |
| Non-WF&G Retention | 74.40 | 42,619.00 |
| WF&G Fee Applications | 96.30 | 41,087.50 |
| Non-WF&G Fee Applications | 11.30 | 5,433.50 |
| Schedules/Statements/Monthly Reports | 3.90 | 2,595.50 |
| Plan of Reorganization/Disclosure Statement | 41.20 | 24,271.00 |
| Asset Sales | 1,007.80 | 564,623.00 |
| 1031 Litigation | 2,257.10 | 1,191,985.50 |
| Fidelity Transaction | 2.00 | 1,390.00 |
| SEC Matters | 359.40 | 202,584.50 |
| LandAmerica Assessment Corp. | 96.10 | 55,620.50 |
| LES General Chapter 11 | 39.90 | 22,291.50 |
| Beau Street v. CTG Real Estate | 627.50 | 262,481.00 |
| LandAmerica Title Company | 32.60 | 20,119.00 |
| Southland Entities | 39.60 | 19,847.00 |
| Inter-Estate Plan and Mediation | 169.30 | 105,576.00 |
| Regulatory Compliance | 7.00 | 4,371.50 |
| **TOTAL** | **6,461.70** | **$3,467,779.00** |

**EXHIBIT A-3**

**SERVICES RENDERED BY CATEGORY**
**JUNE 1, 2009 THROUGH AUGUST 31, 2009**

| Service Category | Hours | Fees Earned |
|---|---|---|
| General Chapter 11 | 237.50 | $122,242.50 |
| General Litigation | 163.60 | $86,555.00 |
| General Corporate | 84.60 | $57,750.50 |
| Executory Contracts and Leases | 123.20 | $58,358.50 |
| Automatic Stay | 50.70 | $34,200.00 |
| Employee/Pension/Labor | 11.80 | $6,472.00 |
| Tax Issues | 15.10 | $10,432.50 |
| Creditor/Claim Issues | 619.60 | $298,570.00 |
| Non-WF&G Retention | 50.80 | $29,367.50 |
| WF&G Fee Applications | 83.10 | $31,728.50 |
| Non-WF&G Fee Applications | 5.20 | $2,250.00 |
| Schedules/Statements/Monthly Reports | 0.90 | $440.00 |
| Plan of Reorganization/Disclosure Statement | 573.50 | $295,445.00 |
| Asset Sales | 298.70 | $147,684.50 |
| 1031 Litigation | 455.60 | $255,250.50 |
| Fidelity Transaction | 2.60 | $1,983.00 |
| SEC Matters | 323.90 | $156,798.50 |
| LandAmerica Assessment Corp. | 9.10 | $5,386.00 |
| LES General Chapter 11 | 59.20 | $32,993.00 |
| Beau Street v. CTG Real Estate | 82.80 | $43,190.00 |
| LandAmerica Title Company | 180.90 | $119,025.00 |
| LandAmerica Credit Services | 23.50 | $8,796.50 |
| Southland Entities | 4.10 | $2,957.50 |
| Inter-Estate Plan and Mediation | 703.60 | $421,191.50 |
| Regulatory Compliance | 65.10 | $36,262.50 |
| LES Plan Mediation | 365.90 | $212,832.50 |
| **TOTAL** | **4,594.60** | **$2,478,163.50** |

**EXHIBIT A-4**

**SERVICES RENDERED BY CATEGORY**
**SEPTEMBER 1, 2009 THROUGH DECEMBER 6, 2009**

| Service Category | Hours | Fees Earned |
|---|---|---|
| General Chapter 11 | 170.80 | 84,735.50 |
| General Litigation | 104.40 | 43,228.00 |
| General Corporate | 221.20 | 150,684.50 |
| Executory Contracts and Leases | 99.30 | 40,291.00 |
| Automatic Stay | 13.70 | 5,251.00 |
| Employee/Pension/Labor | 18.00 | 12,156.00 |
| Tax Issues | 4.50 | 3,159.00 |
| Creditor/Claim Issues | 2,067.40 | 1,059,563.00 |
| WF&G Retention | 1.40 | 532.00 |
| Non-WF&G Retention | 0.40 | 192.00 |
| WF&G Fee Applications | 59.20 | 20,261.00 |
| Non-WF&G Fee Applications | 9.50 | 2,944.00 |
| Schedules/Statements/Monthly Reports | 0.50 | 258.50 |
| Plan of Reorganization/Disclosure Statement | 1,555.20 | 766,526.50 |
| Asset Sales | 288.50 | 169,635.00 |
| 1031 Litigation | 282.00 | 177,345.50 |
| Fidelity Transaction | 49.90 | 32,322.00 |
| SEC Matters | 13.50 | 8,956.00 |
| LES General Chapter 11 | 70.80 | 41,728.50 |
| Beau Street v. CTG Real Estate | 20.30 | 10,050.00 |
| LandAmerica Title Company | 93.10 | 45,676.00 |
| LandAmerica Credit Services | 2.40 | 593.00 |
| LES Plan Mediation | 0.30 | 256.50 |
| Capital Title Group | 1.60 | 1,150.00 |
| LandAmerica OneStop | 8.60 | 3,516.00 |
| **TOTAL** | **5,156.50** | **$2,681,010.50[1]** |

---

[1]    The Interim Application Amount also includes approximately $10,451.50 in fees, which were incurred during the Fourth Application Period but were not previously included in WF&G's Fee Statements.

**EXHIBIT B-1**

**SERVICES RENDERED BY PROFESSIONALS**
**NOVEMBER 26, 2008 THROUGH FEBRUARY 28, 2009**

| Name | Department | Law School Graduation Date | Position | Hours | Hourly Rate | Fees Earned |
|------|------------|---------------------------|----------|-------|-------------|-------------|
| **PARTNERS** | | | | | | |
| Marc Abrams | Bankruptcy | 1978 | Partner (4/30/90) | 4.90 | 994 | 4,875.50 |
| Mitchell J. Auslander | Litigation | 1980 | Partner (1/1/89) | 13.50 | 995 | 13,432.50 |
| Gregory S. Bruch | Litigation | 1985 | Partner (5/12/08) | 11.30 | 995 | 11,243.50 |
| Mark A. Cognetti | Corporate | 1998 | Partner (1/1/07) | 42.00 | 695 | 29,190.00 |
| Henry M. Cohn | Tax | 1980 | Partner (1/1/90) | 4.50 | 950 | 4,275.00 |
| Hillel Jacobson | Tax | 1999 | Partner (1/1/08) | 0.70 | 695 | 486.50 |
| Lawrence O. Kamin | Litigation | 1976 | Partner (1/1/85) | 474.60 | 950 | 450,870.00 |
| Martin B. Klotz | Litigation | 1991 | Partner (1/1/97) | 7.40 | 855 | 6,327.00 |
| Stephen T. Lindo | Employee Benefits | 1974 | Partner (10/31/88) | 0.40 | 995 | 398.00 |
| Terence K. McLaughlin | Litigation | 1996 | Partner (1/1/05) | 228.20 | 695 | 158,599.00 |
| Bernard A. Nigro, Jr. | Litigation | 1986 | Partner (1/1/06) | 116.30 | 950 | 110,485.00 |
| David E. Rubinsky | Employee Benefits | 1996 | Partner (1/1/07) | 1.00 | 695 | 695.00 |
| Paul V. Shalhoub | Bankruptcy | 1991 | Partner (1/1/00) | 309.90 | 855 | 264,964.50 |
| Rachel C. Strickland | Bankruptcy | 1998 | Partner (1/1/07) | 433.10 | 695 | 301,004.50 |
| | **TOTAL PARTNERS:** | | | **1,647.80** | | **$1,356,846.00** |
| **COUNSEL** | | | | | | |
| Jonathan Konoff | Corporate | 1991 | Special Counsel | 1.00 | 690 | 690.00 |
| Russell L. Smith | Government Relations | 1972 | Special Counsel | 2.20 | 855 | 1,881.00 |
| | **TOTAL SPECIAL COUNSEL:** | | | **3.20** | | **$2,571.00** |
| **ASSOCIATES** | | | | | | |
| Barbara A. Block | Government Relations | 2003 | Associate | 0.40 | 625 | 250.00 |
| Elizabeth Bower | Litigation | 2001 | Associate | 604.30 | 680 | 410,924.00 |
| Kevin Brown | Litigation | 2008 | Associate | 15.80 | 290 | 4,582.00 |
| Tonisha Calbert | Corporate | 2007 | Associate | 3.90 | 465 | 1,813.50 |

| Name | Department | Law School Graduation Date | Position | Hours | Hourly Rate | Fees Earned |
|---|---|---|---|---|---|---|
| Jeffrey B. Clancy | Corporate | 2000 | Associate | 213.50 | 680 | 145,180.00 |
| Kristin M. Darr | Litigation | 2006 | Associate | 10.20 | 510 | 5,202.00 |
| Laurita M. Denny | Litigation | 2007 | Associate | 560.70 | 465 | 260,725.50 |
| Jennifer Dudanowicz | Bankruptcy | 2007 | Associate | 47.80 | 465 | 22,227.00 |
| Jeffrey Goldfarb | Corporate | 2001 | Associate | 2.10 | 680 | 1,428.00 |
| Matthew J. Guercio | Corporate | 2003 | Associate | 176.90 | 625 | 110,562.50 |
| Rebecca Gutner | Tax | 2006 | Associate | 3.10 | 510 | 1,581.00 |
| Sandra Hanna | Litigation | 2001 | Associate | 124.70 | 680 | 84,796.00 |
| Jennifer Hardy | Bankruptcy | 2007 | Associate | 12.80 | 465 | 5,952.00 |
| Thomas S. Hur | Litigation | 1999 | Associate | 2.20 | 685 | 1,507.00 |
| Amina Jafri | Litigation | 2005 | Associate | 487.40 | 530 | 258,322.00 |
| Emma James | Litigation | 2007 | Associate | 209.40 | 465 | 97,371.00 |
| Jamie Ketten | Bankruptcy | 2003 | Associate | 367.40 | 625 | 229,625.00 |
| Alison R. Levine | Litigation | 2008 | Associate | 8.80 | 290 | 2,552.00 |
| Jeremy A. Linden | Litigation | 2007 | Associate | 33.40 | 465 | 15,531.00 |
| Jordana Linder | Bankruptcy | 2007 | Associate | 383.20 | 465 | 178,188.00 |
| Nancy McCabe | Insurance | 1993 | Associate | 155.60 | 685 | 106,586.00 |
| Derek M. Schoenmann | Litigation | 2003 | Associate | 258.40 | 625 | 161,500.00 |
| Khiran Sidhu | Litigation | 2008 | Associate | 155.80 | 380 | 59,204.00 |
| Michael P. Trahar | Litigation | 2004 | Associate | 177.40 | 590 | 104,666.00 |
| Stephen B. Vogel | Litigation | 2003 | Associate | 69.70 | 625 | 43,562.50 |
| Nelson Wagner | Litigation | 2008 | Associate | 58.10 | 380 | 22,078.00 |
| Brian J. Weinberger | Real Estate | 2006 | Associate | 3.70 | 510 | 1,887.00 |
| Monica Welby | Litigation | 2005 | Associate | 72.60 | 530 | 38,478.00 |
| Jeffrey A. Williams | Litigation | 2007 | Associate | 36.80 | 465 | 17,112.00 |
| Christopher Williamson | Litigation | 2004 | Associate | 32.40 | 590 | 19,116.00 |
| Seth Zelnick | Corporate | 2005 | Associate | 2.30 | 530 | 1,219.00 |
| | **TOTAL ASSOCIATES:** | | | **4,290.80** | | **$2,413,728.00** |
| **LAW CLERKS** | | | | | | |
| Howard Block | Corporate | 2008 | Law Clerk | 17.70 | 290 | 5,133.00 |
| Chantalle Fish | Litigation | 2008 | Law Clerk | 1.00 | 290 | 290.00 |
| Gregory Reid | Litigation | 2008 | Law Clerk | 436.70 | 290 | 126,643.00 |
| D.J. Stauber | Tax | 2008 | Law Clerk | 10.50 | 290 | 3,045.00 |
| Marina I. Zelinsky | Bankruptcy | 2008 | Law Clerk | 5.70 | 290 | 1,653.00 |
| | **TOTAL LAW CLERKS:** | | | **471.60** | | **$136,764.00** |
| **LEGAL ASSISTANTS** | | | | | | |
| Andy Alcindor | Litigation | | Legal Asst. | 8.40 | 105 | 882.00 |
| Janice Amador | Litigation | | Legal Asst. | 0.20 | 235 | 47.00 |
| Alison R. Ambeault | Bankruptcy | | Legal Asst. | 199.50 | 235 | 46,882.50 |
| Michael Arakelyan | Litigation | | Legal Asst. | 0.40 | 125 | 50.00 |
| Elizabeth Bubriski | Bankruptcy | | Legal Asst. | 27.10 | 165 | 4,471.50 |
| Janine D'Aniello | Litigation | | Law Clerk | 7.20 | 260 | 1,872.00 |
| Arthur Daye, Jr. | Litigation | | Legal Asst. | 13.30 | 175 | 2,327.50 |
| Lance Esteibar | Litigation | | Legal Asst. | 4.60 | 185 | 851.00 |
| Kelly Fitzgerald | Bankruptcy | | Legal Asst. | 52.50 | 165 | 8,662.50 |
| Nathan Ford | Litigation | | Legal Asst. | 2.00 | 175 | 350.00 |

| Name | Department | Law School Graduation Date | Position | Hours | Hourly Rate | Fees Earned |
|---|---|---|---|---|---|---|
| Ashley D. Hardwick | Corporate | | Legal Asst. | 3.30 | 250 | 825.00 |
| Diane Hinrichs | Litigation | | Legal Asst. | 204.40 | 260 | 53,144.00 |
| Lauren Kessler | Litigation | | Legal Asst. | 62.00 | 175 | 10,850.00 |
| David King | Government Relations | | Legal Asst. | 2.10 | 175 | 367.50 |
| Susan Lacheman | Litigation | | Legal Asst. | 12.30 | 240 | 2,952.00 |
| Chris Lisciandro | Litigation | | Legal Asst. | 6.30 | 175 | 1,102.50 |
| Sal Mancuso | Litigation | | Legal Asst. | 0.70 | 240 | 168.00 |
| Andy McClure | Litigation | | Legal Asst. | 5.50 | 175 | 962.50 |
| Ashley Moore | Litigation | | Legal Asst. | 3.50 | 205 | 717.50 |
| Peter Mularczyk | Real Estate | | Legal Asst. | 8.00 | 175 | 1,400.00 |
| Ana Munoz | Litigation | | Legal Asst. | 81.60 | 135 | 11,016.00 |
| Joshua Rosenthal | Litigation | | Legal Asst. | 0.70 | 165 | 115.50 |
| Adam Scavone | Bankruptcy | | Legal Asst. | 0.90 | 175 | 157.50 |
| Haley Schaeffer | Litigation | | Legal Asst. | 1.50 | 175 | 262.50 |
| Ann Staron | Corporate | | Legal Asst. | 4.20 | 250 | 1,050 |
| Caitlin Wong | Litigation | | Legal Asst. | 6.30 | 175 | 1,102.50 |
| **TOTAL LEGAL ASSISTANTS:** | | | | **718.50** | | **$152,589.00** |
| | | | | | | |
| **GRAND TOTAL:** | | | | **7,131.90** | | **$4,062,498.00** |

## EXHIBIT B-2

## SERVICES RENDERED BY PROFESSIONALS
## MARCH 1, 2009 THROUGH MAY 31, 2009

| Name | Department | Law School Graduation Date | Position | Hours | Hourly Rate | Fees Earned |
|---|---|---|---|---|---|---|
| **PARTNERS** | | | | | | |
| Mitchell J. Auslander | Litigation | 1980 | Partner (1/1/89) | 13.00 | 995 | 12,935.00 |
| Gregory S. Bruch | Litigation | 1985 | Partner (5/12/08) | 33.20 | 995 | 33,034.00 |
| Mark A. Cognetti | Corporate | 1998 | Partner (1/1/07) | 68.60 | 695 | 47,677.00 |
| Kelly Hnatt | Litigation | 1989 | Partner (1/1/98) | 2.90 | 855 | 2,479.50 |
| Lawrence O. Kamin | Litigation | 1976 | Partner (1/1/85) | 259.9 | 950 | 246,905.00 |
| Michael J. Kelly | Bankruptcy | 1988 | Partner (1/1/97) | 0.10 | 855 | 85.50 |
| Martin B. Klotz | Litigation | 1991 | Partner (1/1/97) | 3.70 | 855 | 3,163.50 |
| Alan Lipkin | Bankruptcy | 1978 | Partner (1/1/89) | 0.10 | 950 | 95.00 |
| Terence K. McLaughlin | Litigation | 1996 | Partner (1/1/05) | 117.80 | 695 | 81,871.00 |
| Bernard A. Nigro, Jr. | Litigation | 1986 | Partner (1/1/06) | 1.20 | 950 | 1,140.00 |
| Christopher Peters | Tax | 1997 | Partner (1/1/07) | 4.80 | 695 | 3,336.00 |
| David E. Rubinsky | Employee Benefits | 1996 | Partner (1/1/07) | 3.40 | 695 | 2,363.00 |
| Paul V. Shalhoub | Bankruptcy | 1991 | Partner (1/1/00) | 145.30 | 855 | 124,231.50 |
| Rachel C. Strickland | Bankruptcy | 1998 | Partner (1/1/07) | 331.10 | 695 | 230,114.50 |
| | **TOTAL PARTNERS:** | | | **986.50** | | **$789,430.50** |
| **COUNSEL** | | | | | | |
| Peter Allman | Employee Benefits | 1980 | Special Counsel | 0.50 | 690 | 345.00 |
| Ian Hochman | Litigation | 1997 | Special Counsel | 6.50 | 690 | 4,485.00 |
| Kim A. Walker | Intellectual Property | 1991 | Special Counsel | 1.10 | 690 | 759.00 |
| | **TOTAL SPECIAL COUNSEL:** | | | **8.10** | | **$5,589.00** |
| **ASSOCIATES** | | | | | | |
| Elizabeth Bower | Litigation | 2001 | Associate | 455.70 | 680 | 309,876.00 |
| Katie Calabrese | Employee Benefits | 2006 | Associate | 1.60 | 510 | 816.00 |

| Name | Department | Law School Graduation Date | Position | Hours | Hourly Rate | Fees Earned |
|---|---|---|---|---|---|---|
| Tonisha Calbert | Corporate | 2007 | Associate | 25.70 | 465 | 11,950.50 |
| Sindy Chen | Litigation | 2003 | Associate | 3.50 | 320 | 1,120.00 |
| Jeffrey B. Clancy | Corporate | 2000 | Associate | 162.40 | 680 | 110,432.00 |
| Laurita M. Denny | Litigation | 2007 | Associate | 389.90 | 465 | 181,303.50 |
| Jamie Eisen | Bankruptcy | 2003 | Associate | 459.10 | 625 | 286,937.50 |
| Chantalle Fish | Litigation | 2008 | Associate | 87.70 | 290/380 [1] | 1,428.00 |
| Christopher R. Freeland | Corporate | 2005 | Associate | 0.70 | 530 | 371.00 |
| Matthew J. Guercio | Corporate | 2003 | Associate | 305.10 | 625 | 190,687.50 |
| Steven R. Hamlin | Litigation | 2002 | Associate | 11.40 | 320 | 3,648.00 |
| Sandra Hanna | Litigation | 2001 | Associate | 246.60 | 680 | 167,688.00 |
| Jennifer Hardy | Bankruptcy | 2007 | Associate | 13.20 | 465 | 3,648.00 |
| Amina Jafri | Litigation | 2005 | Associate | 433.00 | 530 | 229,490.00 |
| Emma James | Litigation | 2007 | Associate | 236.00 | 465 | 109,740.00 |
| Dan Kozusko | Litigation | 2003 | Associate | 15.10 | 625 | 9,437.50 |
| Jeremy A. Linden | Litigation | 2007 | Associate | 205.10 | 465 | 95,371.00 |
| Jordana Linder | Bankruptcy | 2007 | Associate | 438.10 | 465 | 203,716.50 |
| Andrew Marinello | Corporation | 2005 | Associate | 0.70 | 530 | 371.00 |
| Nancy McCabe | Insurance | 1993 | Associate | 86.00 | 685 | 58,910.00 |
| Jordan Messinger | Employee Benefits | 2004 | Associate | 9.60 | 590 | 5,664.00 |
| Kevin J. O'Neil | Litigation | 2003 | Associate | 10.70 | 320 | 3,424.50 |
| Shalini Rajoo | Bankruptcy | 2003 | Associate | 132.90 | 625 | 83,062.0 |
| Derek M. Schoenmann | Litigation | 2003 | Associate | 146.40 | 625 | 91,500.00 |
| Khiran Sidhu | Litigation | 2008 | Associate | 238.90 | 380 | 90,782.00 |
| Andrew Sorkin | Bankruptcy | 2007 | Associate | 12.70 | 465 | 5,905.50 |
| Michael P. Trahar | Litigation | 2004 | Associate | 0.30 | 590 | 177.00 |
| Ruth Van Veldhuizen | Litigation | 2008 | Associate | 65.70 | 380 | 23,931.00 |
| Stephen B. Vogel | Litigation | 2003 | Associate | 99.20 | 625 | 62,000.00 |
| Brian J. Weinberger | Real Estate | 2006 | Associate | 38.10 | 510 | 19,431.00 |
| Monica Welby | Litigation | 2005 | Associate | 3.60 | 530 | 1,908.00 |
| Jeffrey A. Williams | Litigation | 2007 | Associate | 7.30 | 465 | 3,394.50 |
| Seth Zelnick | Corporate | 2005 | Associate | 1.70 | 530 | 901.00 |
|  | **TOTAL ASSOCIATES:** |  |  | **4,343.70** |  | **$2,369,022.50** |
| **LAW CLERKS** |  |  |  |  |  |  |
| Howard Block | Corporate | 2008 | Law Clerk | 142.10 | 290 | 41,209.00 |
| Geri Anne Chich | Employee Benefits | 2008 | Law Clerk | 0.20 | 290 | 58.00 |
| Joshua M. Nahum | Litigation | 2008 | Law Clerk | 55.20 | 290 | 16,008.00 |
| Gregory Reid | Litigation | 2008 | Law Clerk | 248.10 | 290 | 71,949.00 |
|  | **TOTAL LAW CLERKS:** |  |  | **445.60** |  | **$129,224.00** |

---

[1]    Ms. Fish was both a Law Clerk and Associate during this time period, causing her hourly rate to change during the Second Interim Period.

| Name | Department | Law School Graduation Date | Position | Hours | Hourly Rate | Fees Earned |
|------|-----------|---------------------------|----------|-------|-------------|-------------|
| **LEGAL ASSISTANTS** | | | | | | |
| Andy Alcindor | Litigation | | Legal Asst. | 8.60 | 105 | 903.00 |
| Mark Allen-Gifford | Litigation | | Legal Asst. | 4.40 | 175 | 770.00 |
| Janice Amador | Litigation | | Legal Asst. | 2.90 | 235 | 681.50 |
| Alison R. Ambeault | Bankruptcy | | Legal Asst. | 244.30 | 235 | 57,410.50 |
| Michael Arakelyan | Litigation | | Legal Asst. | 8.50 | 125 | 1,062.50 |
| Christian Arriola | Litigation | | Legal Asst. | 3.50 | 175 | 612.50 |
| Wayne Blackwell | Corporate | | Legal Asst. | 1.50 | 150 | 225.00 |
| Arthur Daye, Jr. | Litigation | | Legal Asst. | 3.60 | 175 | 630.00 |
| Kelly Fitzgerald | Bankruptcy | | Legal Asst. | 6.70 | 165 | 1,105.50 |
| Dan Gerstle | Litigation | | Legal Asst. | 28.60 | 165 | 4,719.00 |
| Diane Hinrichs | Litigation | | Legal Asst. | 129.50 | 260 | 33,670.00 |
| Jana A. Jones | Litigation | | Legal Asst. | 0.50 | 235 | 117.50 |
| Lauren Kessler | Litigation | | Legal Asst. | 81.00 | 175 | 14,175.00 |
| Susan Lacheman | Litigation | | Legal Asst. | 4.10 | 240 | 984.00 |
| Chris Lisciandro | Litigation | | Legal Asst. | 39.70 | 175 | 6,947.50 |
| Sal Mancuso | Litigation | | Legal Asst. | 1.80 | 240 | 432.00 |
| Andy McClure | Litigation | | Legal Asst. | 1.50 | 175 | 262.50 |
| Ana Munoz | Litigation | | Legal Asst. | 70.40 | 135 | 9,504.00 |
| Heriona Pepaj | Litigation | | Legal Asst. | 3.90 | 105 | 409.50 |
| Simon Raymundo | Litigation | | Legal Asst. | 8.30 | 125 | 1,037.50 |
| Joshua Rosenthal | Litigation | | Legal Asst. | 5.90 | 165 | 973.50 |
| Adam Scavone | Bankruptcy | | Legal Asst. | 1.70 | 175 | 297.50 |
| Ann Staron | Corporate | | Legal Asst. | 12.40 | 250 | 3,100.00 |
| Charles Tricomi | Bankruptcy | | Legal Asst. | 1.80 | 165 | 297.00 |
| Caitlin Wong | Litigation | | Legal Asst. | 2.70 | 175 | 472.50 |
| | | **TOTAL LEGAL ASSISTANTS:** | | **677.80** | | **$140,799.50** |
| | | | | | | |
| | | **GRAND TOTAL:** | | **6,461.70** | | **$3,467,779.00** |

**EXHIBIT B-3**

**SERVICES RENDERED BY PROFESSIONALS
JUNE 1, 2009 THROUGH AUGUST 31, 2009**

| Name | Department | Law School Graduation Date | Position | Hours | Hourly Rate | Fees Earned |
|------|-----------|----------------------------|----------|-------|-------------|-------------|
| **PARTNERS** | | | | | | |
| Mitchell J. Auslander | Litigation | 1980 | Partner (1/1/89) | 3.70 | 995 | 3,681.50 |
| Gregory S. Bruch | Litigation | 1985 | Partner (5/12/08) | 9.30 | 995 | 9,253.50 |
| Mark A. Cognetti | Corporate | 1998 | Partner (1/1/07) | 17.10 | 695 | 11,884.50 |
| Lawrence O. Kamin | Litigation | 1976 | Partner (1/1/85) | 247.00 | 950 | 234,650.00 |
| Mei Lin Kwan-Gett | Litigation | 1992 | Partner (1/1/08) | 0.20 | 695 | 139.00 |
| Stephen T. Lindo | Employee Benefits | 1974 | Partner (10/31/88) | 0.10 | 995 | 99.50 |
| Terence K. McLaughlin | Litigation | 1996 | Partner (1/1/05) | 206.30 | 695 | 143,378.50 |
| Christopher Peters | Tax | 1997 | Partner (1/1/07) | 10.30 | 695 | 7,158.50 |
| David E. Rubinsky | Employee Benefits | 1996 | Partner (1/1/07) | 0.90 | 695 | 625.50 |
| Paul V. Shalhoub | Bankruptcy | 1991 | Partner (1/1/00) | 91.40 | 855 | 78,147.00 |
| Rachel C. Strickland | Bankruptcy | 1998 | Partner (1/1/07) | 348.60 | 695 | 242,277.00 |
| | **TOTAL PARTNERS:** | | | **934.90** | | **$731,294.50** |
| **COUNSEL** | | | | | | |
| Ian Hochman | Litigation | 1997 | Special Counsel | 8.20 | 690 | 5,658.00 |
| Martin R. Miller | Corporate | 1982 | Special Counsel | 0.80 | 690 | 552.00 |
| Kim A. Walker | Intellectual Property | 1991 | Special Counsel | 2.20 | 690 | 1,518.00 |
| | **TOTAL SPECIAL COUNSEL:** | | | **11.20** | | **$7,728.00** |
| **ASSOCIATES** | | | | | | |
| Stephen Arbuthnot | Litigation | 1978 | Associate | 38.40 | 320 | 12,288.00 |
| Joseph Azam | Litigation | 2008 | Associate | 39.70 | 380 | 15,086.00 |
| Howard Block | Corporate | 2008 | Associate | 102.40 | 290 | 29,696.00 |
| Elizabeth Bower | Litigation | 2001 | Associate | 387.10 | 680 | 263,228.00 |
| Tequila Brooks | Litigation | 1997 | Associate | 44.80 | 320 | 14,336.00 |
| Katie Calabrese | Employee Benefits | 2006 | Associate | 4.60 | 510 | 2,346.00 |
| Jeffrey B. Clancy | Corporate | 2000 | Associate | 66.60 | 680 | 45,288.00 |
| Eliina Clark | Litigation | 2005 | Associate | 44.10 | 320 | 14,112.00 |

| Name | Department | Law School Graduation Date | Position | Hours | Hourly Rate | Fees Earned |
|------|-----------|---------------------------|----------|-------|-------------|-------------|
| Peter Kohoon | Litigation | 1993 | Associate | 0.50 | 320 | 160.00 |
| Jeanna Composti | Litigation | 2008 | Associate | 15.20 | 380 | 5,776.00 |
| Laurita M. Denny | Litigation | 2007 | Associate | 368.50 | 465 | 171,352.50 |
| David Drewes | Real Estate | 2001 | Associate | 0.40 | 680 | 272.00 |
| Jamie Eisen | Bankruptcy | 2003 | Associate | 93.80 | 625 | 58,625.00 |
| Jeff Fang | Corporate | 2006 | Associate | 91.70 | 510 | 46,767.00 |
| Chantalle Fish | Litigation | 2008 | Associate | 0.80 | 380 | 304.00 |
| Rebecca Forter | Tax | 2006 | Associate | 15.40 | 510 | 7,854.00 |
| Gorka Garcia | Litigation | 2001 | Associate | 7.60 | 320 | 2,432.00 |
| Carly Glover | Real Estate | 2007 | Associate | 0.20 | 465 | 93.00 |
| Matthew J. Guercio | Corporate | 2003 | Associate | 85.40 | 625 | 53,375.00 |
| Sandra Hanna | Litigation | 2001 | Associate | 151.80 | 680 | 103,224.00 |
| Jennifer Hardy | Bankruptcy | 2007 | Associate | 260.00 | 465 | 120,900.00 |
| Shan He | Corporate | 2008 | Associate | 1.60 | 380 | 608.00 |
| Amina Jafri | Litigation | 2005 | Associate | 296.10 | 530 | 156,933.00 |
| Emma James | Litigation | 2007 | Associate | 6.50 | 465 | 3,022.50 |
| Dan Kozusko | Litigation | 2003 | Associate | 3.90 | 625 | 2,437.50 |
| Jeremy A. Linden | Litigation | 2007 | Associate | 41.30 | 465 | 19,204.50 |
| Jordana Linder | Bankruptcy | 2007 | Associate | 309.70 | 465 | 144,010.50 |
| Nancy McCabe | Insurance | 1993 | Associate | 13.70 | 685 | 9,384.50 |
| Norman Ostrov | Litigation | 2006 | Associate | 80.90 | 510 | 41,259.00 |
| Gregory Reid | Litigation | 2008 | Associate | 39.40 | 380 | 14,972.00 |
| Elissa Rossi | Litigation | 2002 | Associate | 20.50 | 665 | 13,632.50 |
| Frank Scaduto | Litigation | 2005 | Associate | 24.10 | 530 | 12,773.00 |
| Khiran Sidhu | Litigation | 2008 | Associate | 304.70 | 380 | 115,786.00 |
| Stephen B. Vogel | Litigation | 2003 | Associate | 100.10 | 625 | 62,562.50 |
| Brian J. Weinberger | Real Estate | 2006 | Associate | 89.40 | 510 | 45,594.00 |
| Monica Welby | Litigation | 2005 | Associate | 0.60 | 530 | 318.00 |
| Marina Zelinsky | Bankruptcy | 2008 | Associate | 108.00 | 380 | 41,040.00 |
| Seth Zelnick | Corporate | 2005 | Associate | 0.50 | 530 | 265.00 |
| | **TOTAL ASSOCIATES:** | | | **3,260.00** | | **$1,651,317.00** |
| **LEGAL ASSISTANTS** | | | | | | |
| Andy Alcindor | Litigation | | Legal Asst. | 0.20 | 105 | 21.00 |
| Alison R. Ambeault | Bankruptcy | | Legal Asst. | 211.20 | 235 | 49,632.00 |
| Michael Arakelyan | Litigation | | Legal Asst. | 1.20 | 125 | 150.00 |
| Elizabeth Bubriski | Bankruptcy | | Legal Asst. | 0.90 | 165 | 148.50 |
| Corey Casbarro | Bankruptcy | | Legal Asst. | 0.90 | 165 | 148.50 |
| Kelly Fitzgerald | Bankruptcy | | Legal Asst. | 0.70 | 165 | 115.50 |
| Dan Gerstle | Litigation | | Legal Asst. | 1.20 | 165 | 198.00 |
| Jill Hannon | Litigation | | Legal Asst. | 0.30 | 175 | 52.50 |
| Diane Hinrichs | Litigation | | Legal Asst. | 92.30 | 260 | 23,998.00 |
| George Ho | Corporate | | Legal Asst. | 10.40 | 175 | 1,820.00 |
| Rebecca Hutcheon | Litigation | | Legal Asst. | 3.70 | 235 | 869.50 |
| Lauren Kessler | Litigation | | Legal Asst. | 1.00 | 175 | 175.00 |
| Susan Lacheman | Litigation | | Legal Asst. | 0.80 | 240 | 192.00 |
| Chris Lisciandro | Litigation | | Legal Asst. | 2.50 | 175 | 437.50 |

| Name | Department | Law School Graduation Date | Position | Hours | Hourly Rate | Fees Earned |
|------|-----------|---------------------------|----------|-------|-------------|-------------|
| Sal Mancuso | Litigation | | Legal Asst. | 2.30 | 240 | 552.00 |
| Lara Miranda | Litigation | | Legal Asst. | 19.70 | 165 | 3,250.50 |
| Ana Munoz | Litigation | | Legal Asst. | 30.10 | 135 | 4,063.50 |
| Bonnie Schmidt | Corporate | | Legal Asst. | 1.00 | 235 | 235.00 |
| Matthew Sorenson | Litigation | | Legal Asst. | 4.00 | 185 | 740.00 |
| Ann Staron | Corporate | | Legal Asst. | 4.10 | 250 | 1,025.00 |
| **TOTAL LEGAL ASSISTANTS:** | | | | **388.50** | | **$87,824.00** |
| | | | | | | |
| **GRAND TOTAL:** | | | | **4,594.60** | | **$2,478,163.50** |

**EXHIBIT B-4**

**SERVICES RENDERED BY PROFESSIONALS
SEPTEMBER 1, 2009 THROUGH DECEMBER 6, 2009**

| Name | Department | Law School Graduation Date | Position | Hours | Hourly Rate[1] | Fees Earned |
|---|---|---|---|---|---|---|
| **PARTNERS** | | | | | | |
| Mitchell J. Auslander | Litigation | 1980 | Partner (1/1/89) | 5.50 | 995 | 5,472.50 |
| Gregory S. Bruch | Litigation | 1985 | Partner (5/12/08) | 2.70 | 995 | 2,686.50 |
| Mark A. Cognetti | Corporate | 1998 | Partner (1/1/07) | 11.50 | 695/730 | 8,262.00 |
| Christopher Greer | Corporate | 1995 | Partner (1/1/05) | 0.30 | 785 | 235.50 |
| Lawrence O. Kamin | Litigation | 1976 | Partner (1/1/85) | 187.40 | 950/980 | 182,287.00 |
| Alan J. Lipkin | Bankruptcy | 1979 | Partner (1/1/89) | 0.20 | 980 | 196.00 |
| Terence K. McLaughlin | Litigation | 1996 | Partner (1/1/05) | 336.70 | 695/730 | 242,735.50 |
| Margery K. Neale | Asset Management | 1983 | Partner (2/1/06) | 0.40 | 950 | 380.00 |
| Christopher Peters | Tax | 1997 | Partner (1/1/07) | 1.60 | 695 | 1,112.00 |
| David E. Rubinsky | Employee Benefits | 1996 | Partner (1/1/07) | 0.40 | 695 | 278.00 |
| Paul V. Shalhoub | Bankruptcy | 1991 | Partner (1/1/00) | 59.90 | 855/890 | 52,303.00 |
| Rachel C. Strickland | Bankruptcy | 1998 | Partner (1/1/07) | 412.60 | 695/730 | 296,749.50 |
| | **TOTAL PARTNERS:** | | | **1,019.20** | | **$792,697.50** |
| **COUNSEL** | | | | | | |
| Peter J. Allman | Employee Benefits | 1997 | Special Counsel | 0.20 | 690 | 138.00 |
| Martin R. Miller | Corporate | 1982 | Special Counsel | 0.40 | 690 | 276.00 |
| Kim A. Walker | Intellectual Property | 1991 | Special Counsel | 1.20 | 690 | 828.00 |
| | **TOTAL SPECIAL COUNSEL:** | | | **1.80** | | **$1,242.00** |
| **ASSOCIATES** | | | | | | |
| Joseph Azam | Litigation | 2008 | Associate | 221.00 | 380/480 | 95,650.00 |
| Howard Block | Corporate | 2008 | Associate | 120.40 | 290/480 | 44,169.00 |
| Elizabeth Bower | Litigation | 2001 | Associate | 177.30 | 680/685 | 121,279.00 |

---

[1]    WF&G adjusted its rates effective October 1, 2009.

| Name | Department | Law School Graduation Date | Position | Hours | Hourly Rate[1] | Fees Earned |
|---|---|---|---|---|---|---|
| Katie Calabrese | Employee Benefits | 2006 | Associate | 5.70 | 510/555 | 2,961.00 |
| Jeffrey B. Clancy | Corporate | 2000 | Associate | 138.20 | 680/685 | 94,518.00 |
| Jeanna Composti | Litigation | 2008 | Associate | 65.80 | 380/480 | 29,014.00 |
| Janine M. D'Aniello | Litigation | 2009 | Associate | 31.20 | 290 | 9,048.00 |
| Laurita M. Denny | Litigation | 2007 | Associate | 353.60 | 465/535 | 179,103.00 |
| David Drewes | Real Estate | 2001 | Associate | 0.40 | 685 | 274.00 |
| Rebecca Forter | Tax | 2006 | Associate | 3.20 | 510 | 1,632.00 |
| Matthew J. Guercio | Corporate | 2003 | Associate | 168.40 | 625/675 | 110,090.00 |
| Sandra Hanna | Litigation | 2001 | Associate | 21.10 | 680/685 | 14,403.50 |
| Jennifer Hardy | Bankruptcy | 2007 | Associate | 395.60 | 465/535 | 203,260.00 |
| Amina Jafri | Litigation | 2005 | Associate | 158.40 | 530/610 | 95,912.00 |
| Shaunna D. Jones | Bankruptcy | 2003 | Associate | 0.40 | 650 | 260.00 |
| Jeremy A. Linden | Litigation | 2007 | Associate | 2.50 | 465 | 1,162.50 |
| Nancy McCabe | Insurance | 1993 | Associate | 46.10 | 685/690 | 31,779.50 |
| Norman Ostrove | Litigation | 2006 | Associate | 279.10 | 510/555 | 149,572.50 |
| Gregory Reid | Litigation | 2008 | Associate | 139.60 | 380/480 | 62,418.00 |
| Elissa Rossi | Litigation | 2002 | Associate | 55.50 | 665/680 | 37,278.00 |
| Frank Scaduto | Litigation | 2005 | Associate | 109.80 | 530/610 | 63,290.00 |
| Michael Sherman | Real Estate | 2003 | Associate | 7.10 | 675 | 4,792.50 |
| Khiran Sidhu | Litigation | 2008 | Associate | 47.70 | 380/480 | 19,416.00 |
| Meghan Silhan | Litigation | 2005 | Associate | 63.70 | 610 | 38,857.00 |
| Stephen B. Vogel | Litigation | 2003 | Associate | 39.10 | 625/675 | 25,537.50 |
| Brian J. Weinberger | Real Estate | 2006 | Associate | 20.90 | 510/555 | 11,532.00 |
| Marina Zelinsky | Bankruptcy | 2008 | Associate | 328.90 | 380/480 | 150,062.00 |
| | **TOTAL ASSOCIATES:** | | | **3,000.70** | | **$1,597,271.00** |
| **LAW CLERKS** | | | | | | |
| Anna Burns | Bankruptcy | 2009 | Law Clerk | 4.40 | 290 | 1,276.00 |
| Erin L. Carroll | Litigation | 2009 | Law Clerk | 57.90 | 290 | 16,791.00 |
| Rebecca Clareman | Litigation | 2009 | Law Clerk | 21.20 | 290 | 6,148.00 |
| Daniel Forman | Bankruptcy | 2009 | Law Clerk | 465.40 | 290 | 134,966.00 |
| Melissa Yang | Litigation | 2009 | Law Clerk | 75.70 | 290 | 21,953.00 |
| | **TOTAL LAW CLERKS:** | | | **624.60** | | **$181,134.00** |
| **LEGAL ASSISTANTS** | | | | | | |
| Alison R. Ambeault | Bankruptcy | | Legal Asst. | 289.70 | 235/240 | 69,190.50 |
| Michael Arakelyan | Litigation | | Legal Asst. | 0.40 | 125 | 50.00 |
| Christian Arriola | Litigation | | Legal Asst. | 20.00 | | 3,585.00 |
| Elizabeth Bubriski | Bankruptcy | | Legal Asst. | 51.00 | 170 | 8,670.00 |
| Kelly Fitzgerald | Bankruptcy | | Legal Asst. | 36.10 | 170 | 6,137.00 |
| Diane Hinrichs | Litigation | | Legal Asst. | 18.50 | 260/265 | 4,852.50 |
| Chris Lisciandro | Litigation | | Legal Asst. | 0.90 | 180 | 162.00 |
| Lara Miranda | Litigation | | Legal Asst. | 3.80 | 170 | 646.00 |
| Ashley Moore | Litigation | | Legal Asst. | 5.00 | 210 | 1,050.00 |
| Ana Munoz | Litigation | | Legal Asst. | 33.60 | 135/140 | 4,680.50 |
| Bonnie Schmidt | Corporate | | Legal Asst. | 1.60 | 235/240 | 381.50 |
| Matthew Sorenson | Litigation | | Legal Asst. | 46.20 | 185 | 8,547.00 |

| Name | Department | Law School Graduation Date | Position | Hours | Hourly Rate[1] | Fees Earned |
|------|-----------|---------------------------|----------|-------|-----------|-------------|
| Ann Staron | Corporate | | Legal Asst. | 1.60 | 255 | 408.00 |
| Charles Tricomi | Bankruptcy | | Legal Asst. | 1.80 | 170 | 306.00 |
| | **TOTAL LEGAL ASSISTANTS:** | | | **510.20** | | **$108,666.00** |
| | | | | | | |
| | **GRAND TOTAL:** | | | **5,156.50** | | **$2,681,010.50[2]** |

---

[2]    The Interim Application Amount also includes approximately $10,451.50 in fees, which were incurred during the Fourth Application Period but were not previously included in WF&G's Fee Statements.

**EXHIBIT C-1**

**DISBURSEMENTS FOR PERIOD**
**NOVEMBER 26, 2008 THROUGH FEBRUARY 28, 2009**

| Disbursement | Amount |
|---|---|
| Postage/Messenger/Overnight Delivery | 277.36 |
| Local Transportation | 11,270.93 |
| Long Distance Telephone | 2,738.73 |
| Local Meals | 3,809.54 |
| Other Out of Town Travel | 5,669.50 |
| Lodging | 12,272.19 |
| Airfare/Train | 17,603.83 |
| Reproduction | 17,476.74 |
| Air Freight | 1,443.02 |
| Data Acquisition | 40,352.74 |
| Court Reporter/Other Fees | 15,884.33 |
| Filing Fees/Corp Trust | 69.00 |
| Other Disbursements | 302.86 |
| **TOTAL:** | **$129,170.77** |

**<u>EXHIBIT C-2</u>**

**DISBURSEMENTS FOR PERIOD
MARCH 1, 2009 THROUGH MAY 31, 2009**

| Disbursement | Amount |
|---|---|
| Postage/Messenger/Overnight Delivery | 450.70 |
| Local Transportation | 6,816.15 |
| Long Distance Telephone | 2,530.71 |
| Local Meals | 4,407.18 |
| Other Out of Town Travel | 1,865.28 |
| Lodging | 4,368.73 |
| Airfare/Train | 8,167.00 |
| Reproduction | 20,624.16 |
| Air Freight | 1,432.68 |
| Data Acquisition | 70,326.58 |
| Court Reporter/Other Fees | 13,545.06 |
| Filing Fees/Corp Trust | 52.60 |
| Other Disbursements | 1,760.81 |
| **TOTAL:** | **$136,347.64** |

**<u>EXHIBIT C-3</u>**

**DISBURSEMENTS FOR PERIOD**
**JUNE 1, 2009 THROUGH AUGUST 31, 2009**

| Disbursement | Amount |
|---|---:|
| Postage/Messenger/Overnight Delivery | 279.26 |
| Local Transportation | 4,485.24 |
| Long Distance Telephone | 4,226.36 |
| Local Meals | 4,993.28 |
| Other Out of Town Travel | 1,963.95 |
| Lodging | 7,974.72 |
| Airfare/Train | 10,244.70 |
| Reproduction | 32,333.48 |
| Air Freight | 1,547.74 |
| Data Acquisition | 41,483.46 |
| Court Reporter/Other Fees | 3,175.26 |
| Outside Consultants | 2,546.00 |
| Filing Fees/Corp Trust | 45.00 |
| Other Disbursements | 30.60 |
| **TOTAL:** | **$115,329.05** |

## **EXHIBIT C-4**

### **DISBURSEMENTS FOR PERIOD**
### **SEPTEMBER 1, 2009 THROUGH DECEMBER 6, 2009**

| Disbursement | Amount |
|---|---:|
| Postage/Messenger/Overnight Delivery | 47.93 |
| Local Transportation | 5,224.95 |
| Long Distance Telephone | 3,117.83 |
| Local Meals | 3,061.86 |
| Other Out of Town Travel | 1,226.32 |
| Lodging | 4,734.12 |
| Airfare/Train | 6,564.81 |
| Reproduction | 6,071.38 |
| Air Freight | 986.07 |
| Special Supplies | 80.42 |
| Data Acquisition | 50,729.01 |
| Court Reporter/Other Fees | 868.05 |
| **TOTAL:** | **$82,712.75**[13] |

---

[13] The Interim Application Amount also includes approximately $1,271.92 in actual and necessary expenses, which were incurred during the Fourth Application Period but were not previously included in WF&G's Fee Statements.

**EXHIBIT D**

Paul V. Shalhoub (Admitted Pro Hac Vice)
Rachel C. Strickland (Admitted Pro Hac Vice)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

     - and -

Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 410444)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

Attorneys for the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

------------------------------------------------------x
In re                         :    Chapter 11
                              :
LandAmerica Financial Group, Inc., et al.,   :    Case No. 08-35994 (KRH)
                              :
          Debtors.        :    (Jointly Administered)
------------------------------------------------------x

**SUMMARY SHEET PURSUANT TO
UNITED STATES TRUSTEE GUIDELINES FOR
REVIEWING APPLICATIONS FOR COMPENSATION
AND REIMBURSEMENT OF EXPENSES FILED
UNDER SECTION 330 OF THE BANKRUPTCY CODE**

     1.    <u>Total Compensation and Expenses Requested</u>.  Willkie Farr & Gallagher

LLP ("**WF&G**"), in connection with its application (the "**Final Application**") for interim and

final allowance of compensation for professional services rendered and reimbursement of

expenses incurred in the above-captioned cases, has requested that the Court enter an order:

(a)     allowing interim compensation to WF&G for services rendered
        from September 1, 2009 through December 6, 2009, inclusive, in
        the amount of $2,681,010.50;

(b)     allowing interim reimbursement to WF&G of actual, necessary
        expenses incurred in connection with the rendition of such services
        from September 1, 2009 through December 6, 2009, inclusive, in
        the amount of $82,712.75;

(c)     allowing final compensation to WF&G for services rendered from
        November 26, 2008 through December 6, 2009, inclusive, in the
        amount of $12,685,935.00;

(d)     allowing final reimbursements to WF&G of actual, necessary
        expenses incurred in connection with the rendition of services from
        November 26, 2008 through December 6, 2009, inclusive, in the
        amount of 4463,560.21;

(e)     allowing WF&G to apply its retainer in the amount of $486,244.00
        to the payment of all fees and expenses incurred by WF&G that
        remain unpaid (i.e., $1,183,248.34);

(f)     approving and directing the Debtors' payment of all fees and
        expenses incurred by WF&G that remain unpaid after application
        of the retainer, in the amount of $697,004.34; and

(g)     granting such other and further relief as may be just or proper.

2.     <u>Total Compensation and Expenses Previously Awarded</u>.  WF&G has

previously been awarded on an interim basis the allowance of $4,062,498.00, representing 100%

of the fees for professional services rendered by WF&G from November 26, 2008 through

February 28, 2009, and $129,170.77, representing 100% of the actual and necessary expenses

incurred in connection with the rendering of such professional services.  This Court also

approved on an interim basis the allowance of $3,467,779.00, representing 100% of the fees for

professional services rendered by WF&G from March 1, 2009 through May 31, 2009, and

$136,347.64, representing 100% of the actual and necessary expenses incurred in connection

-2-

with the rendering of such professional services.  This Court also approved on an interim basis

the allowance of $2,478,163.50, representing 100% of the fees for professional services rendered

by WF&G from June 1, 2009 through August 31, 2009, and $115,329.05, representing 100% of

the actual and necessary expenses incurred in connection with the rendering of such professional

services.

    3.  <u>Name, Billing Rate, Bar Admission Date, Total Hours Billed, and Total</u>

<u>Billings for Each Professional</u>.  Please refer to <u>Exhibit B</u> to the Final Application for: (a) the

names and applicable billing rates for each professional and paraprofessional who billed time

during the period for which compensation for services rendered and reimbursement of expenses

incurred is sought (the "**<u>Final Application Period</u>**"); (b) the date of law school graduation for

each attorney; (c) the total hours and total amounts billed for each attorney and paraprofessional

listed; and (d) the blended hourly rate for all attorneys and paraprofessionals who billed time

during the Final Application Period.

**EXHIBIT E**

Paul V. Shalhoub (Admitted Pro Hac Vice)
Rachel C. Strickland (Admitted Pro Hac Vice)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

        - and -

Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 410444)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

Attorneys for the Debtors and
Debtors in Possession


IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

---------------------------------------------------x
In re                                          :    Chapter 11
                                               :
LandAmerica Financial Group, Inc., et al.,     :    Case No. 08-35994 (KRH)
                                               :
                    Debtors.                   :    (Jointly Administered)
---------------------------------------------------x

**ORDER APPROVING FINAL APPLICATION OF WILLKIE
FARR & GALLAGHER LLP AS COUNSEL FOR DEBTORS FOR
FINAL ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
FROM NOVEMBER 26, 2008 THROUGH DECEMBER 6, 2009**

Upon the application, dated January 15, 2010 (the "**Final Application**"), of

Willkie Farr & Gallagher LLP ("**WF&G**"), attorneys for LandAmerica Financial Group, Inc.

("**LFG**"), LandAmerica 1031 Exchange Services, Inc. ("**LES**") and the other above-captioned

debtors and debtors in possession (collectively, the "**Debtors**"), for final allowance of

compensation for professional services rendered and reimbursement of expenses incurred from

November 26, 2008 through December 6, 2009 pursuant to sections 330(a) and 331 of title 11 of

the United States Code (the "**Bankruptcy Code**"), and Rule 2016 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"); and a hearing (the "**Hearing**") having been

held before this Court on February [9], 2010 to consider the Final Application; and it appearing

that sufficient notice has been given, and no other notice being necessary; and upon the full

record of the Hearing and all prior proceedings in these cases; and after due deliberation and

sufficient cause appearing therefore, it is hereby

ORDERED, ADJUDGED AND DECREED that:

1.      The Final Application is granted to the extent set forth herein.

2.      All capitalized terms used but not defined herein shall have the same

meaning ascribed to them in the Final Application.

3.      The fees and expenses of WF&G requested for services rendered and

expenses incurred during the Fourth Application Period are approved on an interim basis, in the

amounts and to the extent provided in Schedule A-1 annexed hereto.

4.      The fees and expenses of WF&G requested for services rendered and

expenses incurred during the Final Application Period are approved on a final basis, in the

amounts and to the extent provided in Schedule A-2 annexed hereto.[1]

5.      WF&G is authorized to apply its retainer in the amount of $486,244.000 to

the payment of all fees and expenses allowed on a final basis that remain unpaid.

---

[1]   The Final Application Amount does not include certain fees incurred in connection with WF&G's
representation of OneStop.

- 2 -

6.      The Debtors are authorized and directed to pay as soon as practicable all

fees and expenses approved by this Order (including the 15% which was held back relating to the

Fourth Application Period) that remain unpaid.

7.      This Court shall retain jurisdiction over all matters arising from or related

to the interpretation and implementation of this Order.

Dated: Richmond, Virginia
       February ___, 2010


                        _____
                        UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

_____
WILLKIE FARR & GALLAGHER LLP
Paul V. Shalhoub, Esq.
Rachel C. Strickland, Esq.
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

-and-

_____
Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 41044)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000


Attorneys for the Debtors and Debtors in Possession


## **LOCAL BANKRUPTCY RULE 9022-1 (C) CERTIFICATION**

Pursuant to Rule 9022-1(C) of the Local Rules of the United States Bankruptcy Court for

the Eastern District of Virginia, I hereby certify that the foregoing order has been endorsed by or

served upon all necessary parties.


_____
Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 41044)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

CASE NAME: LandAmerica Financial Group, Inc.
CASE NUMBER:  08-35994 (KRH) (Jointly Administered)

## SCHEDULE A-1

## FEES AND EXPENSES APPROVED ON AN INTERIM BASIS

| Applicant | Capacity | Interim Compensation Approved[1] | Interim Reimbursement of Expenses Approved | Hold-Back Approved |
|---|---|---|---|---|
| Willkie Farr & Gallagher LLP | Attorneys for the Debtors | $2,681,010.50[2] | $82,712.50[3] | $400,583.85 |

---

[1]    This amount includes amounts held-back.

[2]    Of the total Interim Compensation approved by the Court, $2,461,680.00 is allocable to LFG and $219,330.50 is allocable to LES.

[3]    Of the total Interim Reimbursement of Expenses approved by the Court, $74,771.78 is allocable to LFG and $7,940.97 is allocable to LES.

CASE NAME: LandAmerica Financial Group, Inc.
CASE NUMBER:  08-35994 (KRH) (Jointly Administered)

## SCHEDULE A-2

## FEES AND EXPENSES APPROVED ON A FINAL BASIS

| Applicant | Capacity | Final Compensation Approved[4] | Final Reimbursement of Expenses Approved |
|---|---|---|---|
| Willkie Farr & Gallagher LLP | Attorneys for the Debtors | $12,685,935.00[5] | $463,560.21[6] |

---

[4]    This amount includes amounts held-back for the Fourth Interim Period.

[5]    Of the total Final Compensation approved by the Court, $8,662,758.25 is allocable to LFG and $4,023,176.75 is allocable to LES.

[6]    Of the total Final Reimbursement of Expenses approved by the Court, $272,959.13 is allocable to LFG and $190,582.08 is allocable to LES.

- 2 -