Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 41044)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

Attorneys for the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

--------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| LandAmerica Financial Group, Inc., *et al.* | : | Case No. 08-35994 (KRH) |
| | : | |
| Debtors. | : | (Jointly Administered) |

--------------------------------------------------------x

**FOURTH AND FINAL APPLICATION OF MCGUIREWOODS LLP
AS COUNSEL FOR DEBTORS FOR FINAL ALLOWANCE
OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF
EXPENSES INCURRED FROM NOVEMBER 26, 2008 THROUGH DECEMBER 6, 2009**

McGuireWoods LLP ("**MW**"), in its capacity as former co-counsel to LandAmerica

Financial Group, Inc. ("**LFG**"), LandAmerica 1031 Exchange Services, Inc. ("**LES**"),

LandAmerica Assessment Corporation ("**LAC**"), LandAmerica Title Company ("**LandAm**

**Title**"), Southland Title Corporation, Southland Title of San Diego, and Southland Title of

Orange County (collectively, the "**Southland Entities**"), LandAmerica Credit Services, Inc.

("**LandAm Credit**"), Capital Title Group, Inc. ("**CTG**"), and LandAmerica OneStop

("**OneStop**," and collectively with LFG, LES, LAC, LandAm Title, the Southland Entities,

LandAm Credit, and CTG the "**Debtors**"), debtors and debtors in possession in the above-

captioned jointly administered cases, and Post-Effective Date LFG, submits the following as its

Fourth and Final Application as Counsel for Debtors for Final Allowance of Compensation for

Services Rendered and Reimbursement of Expenses Incurred from November 26, 2008 through

December 6, 2009 (the "**Final Application**") pursuant to 11 U.S.C. §§ 330, 331 and 503(b),

Federal Rule of Bankruptcy Procedure 2016, and Local Bankruptcy Rule 2016-1.  MW certifies

that the Trustees of Post Effective Date LFG, the LFG Liquidation Trust, the LES Liquidating

Trust, and the SD Trusts[1] (collectively, the "**LandAm Trustees**"), as well their respective

counsel, have received copies of this Final Application, but have not completed their review.  In

addition, MW certifies that a copy of this Final Application has been served on the Office of the

United States Trustee and a notice of the Final Application has been served on all parties entitled

to receive notice under this Court's December 21, 2008 Order Under Sections 105(a) and 331 of

the Bankruptcy Code Establishing Interim Compensation Procedures [Docket No. 411] (the

"**Interim Compensation Order**").  MW requests that this Court authorize allowance of

compensation for professional services rendered and reimbursement of expenses incurred during

the above captioned cases.  Among the fees and expenses described herein, this Court has

already authorized, on an interim basis, all but those which were incurred from September 1,

2009 through December 6, 2009 (the "**Interim Application Period**").  For its Final Application,

MW seeks the entry of an order, substantially in the form attached hereto as <u>Exhibit A</u>, granting

(a) both interim and final approval of compensation in the amount of $2,440,884.00 and

reimbursement of expenses in the amount of $43,142.74 for services rendered by MW during the

Interim Application Period[2] and (b) final approval of total compensation in the amount of

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and its Affiliated Debtors (the "**Plan**").

[2]    MW incurred fees of $26,155.50 and expenses of $17.44 for work performed on behalf of OneStop during the Interim Application Period (the "**OneStop Fees**" and "**OneStop Expenses**," respectively).  MW is requesting interim approval only of the OneStop Fees and OneStop Expenses.  A final hearing to approve fees and expenses incurred by MW and other OneStop professionals will be held once OneStop's chapter 11 plan is confirmed and becomes effective.

$11,009,497.75 and reimbursement of total expenses in the amount of $208,094.22 for the

services rendered by MW from November 26, 2008 through December 6, 2009 (the "**Final**

**Application Period**").  In support of the Application, MW respectfully represents as follows:

## JURISDICTION

1.　　This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157

and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this

Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.　　The bases for the relief requested herein are sections 330, 331 and 503(b) of title

11 of the United States Code (the "**Bankruptcy Code**"), Federal Rule of Bankruptcy Procedure

(the "**Bankruptcy Rules**") 2016 and Local Bankruptcy Rule 2016-1.

## BACKGROUND

3.　　On November 26, 2008 (the "**Petition Date**"), LFG and LES filed voluntary

petitions in this Court for relief under chapter 11 of the Bankruptcy Code. On March 6, 2009,

March 27, 2009, March 31, 2009, July 17, 2009, October 12, 2009, and November 4, 2009

various other LFG affiliates (LAC, LandAm Title, the Southland Entities, LandAmCredit, CTG

and OneStop) filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

Pursuant to orders of this Court dated November 28, 2008, March 11, 2009, April 8, 2009, April

9, 2009, July 22, 2009, October 26, 2009, and November 13, 2009, the chapter 11 cases of the

Debtors are being jointly administered under case number 08-35994 (KRH).

4.　　On December 3, 2008, the United States Trustee for the Eastern District of

Virginia (the "**U.S. Trustee**") appointed (a) an Official Committee of Unsecured Creditors in the

case of LES (the "**LES Committee**") and (b) an Official Committee of Unsecured Creditors in

the case of LFG (the "**LFG Committee**," and, together with the LES Committee, the

"**Creditors' Committees**"). On June 4, 2009, the U.S. Trustee filed his Amended Appointment of Unsecured Creditors Committee, adding two (2) additional members to the LES Committee.

5.      The events leading up to the Petition Date are set forth in the Affidavit of G. William Evans, Chief Financial Officer of LandAmerica Financial Group, Inc. and Vice President of LandAmerica 1031 Exchange Services, Inc., in Support of Chapter 11 Petitions and First Day Pleadings, dated November 26, 2008 [Docket No. 12].

6.      On November 18, 2009, the Court held a confirmation hearing and confirmed the Plan.[3]

7.      On November 23, 2009, the Court entered its Order Confirming Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and its Affiliated Debtors.

8.      On December 7, 2009, the Plan became effective and the Creditors' Committees were disbanded.

## MCGUIREWOODS LLP'S EMPLOYMENT

9.      On December 5, 2008, LFG and LES filed an Application to Employ McGuireWoods LLP as Co-Counsel for the Debtors Pursuant to 11 U.S.C. §§ 327(a) and 329 [Docket No. 116] (the "**Employment Application**").

10.      On December 23, 2008, the Court entered its Order Granting Application to Employ McGuireWoods LLP as Co-Counsel to Debtors [Docket No. 437] (the "**Employment Order**").

11.      On December 21, 2008, the Court entered its Interim Compensation Order.

---

[3]      OneStop is not part of the Plan and is currently proceeding with its own plan solicitation process. An order approving OneStop's disclosure statement was entered on December 20, 2009, and a confirmation hearing is scheduled for February 9, 2010. OneStop continues to manage its property as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in OneStop's chapter 11 case.

12.     Pursuant to the terms of the Interim Compensation Order, if no objection is filed

to a monthly fee statement within twenty (20) days of the service of that statement, then the

Debtors may pay their respective professionals eighty-five percent (85%) of the fees and one

hundred percent (100%) of the expenses set forth in the applicable monthly fee statement.  The

Interim Compensation Order provides for the payment of the remaining fifteen percent (15%) of

fees upon Court approval of a professional's interim fee application.

13.     Pursuant to section 3.2 of the Plan, any Professional Person seeking allowance of

a Fee Claim must file its final application for compensation and reimbursement of expenses

incurred prior to the Effective Date no later than forty (40) days after the Effective Date.

14.     By this Final Application, MW is seeking, inter alia, final approval of its

compensation and reimbursement of expenses pursuant to the Employment Order, the Plan, the

Interim Compensation Order, and pursuant to sections 330, 331 and 503(b) of the Bankruptcy

Code, for the period of November 26, 2008 through December 6, 2009, and interim approval of

the OneStop Fees and OneStop Expenses.

15.     MW charges legal fees on an hourly basis at its attorneys' and paraprofessionals'

hourly rates, which rates are set in accordance with the attorney's or paraprofessional's seniority

and experience and are adjusted from time to time.  MW also charges the Debtors for its actual

out-of-pocket expenses incurred including, but not limited to, photocopying, long distance

telephone calls, messenger services, computer research, travel expenses, overnight mail and

court fees.  MW's fee structure and expense reimbursement policies were disclosed in MW's

Employment Application, to which no party objected and this Court approved.

16.     The names of all MW attorneys and paraprofessionals who have worked on this

matter and their respective hourly rates are set forth on Exhibit B hereto.

17.    MW currently holds a retainer from the Debtors in the approximate amount of

$159,805.84 (the "**Retainer**").  MW continues to hold the Retainer and will apply the Retainer to

any unpaid fees and expenses in the event an order approving the Final Application is entered by

the Court.

18.    To the best of MW's knowledge, and upon information and belief, the Debtors

and applicable Post-Effective Date Entities have paid or will pay undisputed postpetition

operating expenses in the ordinary course.

19.    To the best of MW's knowledge, and upon information and belief, the Debtors

and applicable Post-Effective Date Entities have filed with the Court all monthly operating

reports presently due, and have paid all quarterly fees to the United States Trustee that are

presently due.

## FEE PROCEDURES AND MONTHLY FEE STATEMENTS

20.    The Interim Compensation Order approved a set of interim compensation

procedures attached thereto (the "**Interim Compensation Procedures**").  Pursuant to paragraph

(c) of the Interim Compensation Procedures, Interim Fee Applications (as defined therein) must

be filed at three month intervals (the "**Interim Fee Period**") after the three month period ending

February 28, 2009.  In accordance with paragraphs (a) and (d) of the Interim Compensation

Procedures, MW will serve a copy of this Final Application upon the Notice Parties (as defined

therein).  Moreover, notice of the Final Application will be served on the parties entitled to

receive notice under the Court's Amended Order Pursuant to Bankruptcy Code Sections 102 and

105, Bankruptcy Rules 2002 and 9007, and Local Bankruptcy Rules 2002-1 and 9013-1

Establishing Certain Notice, Case Management, and Administrative Procedures (the "**Amended**

**Case Management Order**") [Docket No. 435], as well as the LandAm Trustees and counsel to

the LandAm Trustees.

21.    Pursuant to the Interim Compensation Procedures, approximately on or after the

tenth (10th) day of each month following the month for which compensation was sought, MW

submitted a monthly statement to the Notice Parties.  Parties entitled to receive notice of the

monthly statement had twenty (20) days to review and object to any such statement.  If there

were no objections at the expiration of the twenty (20) day period, the Debtors were required to

promptly pay eighty-five percent (85%) of the fees and one hundred percent (100%) of the

expenses identified in each monthly statement.  MW submitted monthly statements for each

month during the Interim Application Period and no objections were received for the statements

for September 1, 2009 – September 30, 2009, October 1 – October 31, 2009, and November 1,

2009 – December 6, 2009.[4]  MW has been paid approximately 85% of its total requested fees

and approximately 100% of its expenses for the period September 1, 2009 – September 30, 2009.

MW has not received payment for those portions of the fee statements allocable to LES for the

periods October 1, 2009 – October 31, 2009 and the Final Fee Statement, but has received

payment for those periods allocable to LFG.  A chart summarizing these payments and the

monthly statements is attached hereto as Exhibit C.[5]

**REQUESTED FEES AND REIMBURSEMENT OF EXPENSES**

22.    MW has played an important role in advising the Debtors and handling the day-

to-day administration of the Debtors' chapter 11 cases.  As a result of its efforts during the

---

[4]    The Trustee of the LES Liquidating Trust requested and received from MW an extension until January 21, 2010 to object to MW's fee statement for the period November 1, 2009 through December 6, 2009 (the "**Final Fee Statement**"), solely as to charges pertaining to LES.

[5]    MW submitted its Final Fee Statement on December 17, 2009.  Due to the fact that certain time entries and expenses incurred for pre-Effective Date work were entered into MW's billing system after December 17, 2009, MW has amended its Final Fee Statement.  The amended Final Fee Statement is attached hereto as part of Exhibit E and includes $4,238.00 in fees and $6,565.81 in expenses that were not included in the original Final Fee Statement.

7

Interim Application Period, MW now seeks final allowance of $2,440,884.00 in fees calculated

at the applicable guideline hourly billing rates of the firm's personnel who have performed

services on behalf of the Debtors, and $43,142.74 in expenses actually and necessarily incurred

by MW while providing services to the Debtors during the Interim Application Period, with the

OneStop Fees and OneStop Expenses incurred during the Interim Application Period approved

on an interim basis.  In addition, MW seeks final approval of the $11,009,497.75 in fees and

$208,094.22 in expenses for the Final Application Period, including the $8,568,613.75 in fees

and $164,951.48 in expenses that were previously approved by this Court on an interim basis.

     23.     In staffing this case, in budgeting and incurring charges and disbursements, and in

preparing and submitting this Application, MW has been mindful of the need to be efficient

while providing full and vigorous representation to the Debtors.  MW also has been especially

cognizant of the standards established by this Court for compensation of professionals and

reimbursement of charges and disbursements.  As described in detail herein, MW believes that

the requests made in this Application comply with this Court's standards in the context of the

unique circumstances surrounding these large and complex chapter 11 cases.

**SUMMARY OF SERVICES PROVIDED DURING THE INTERIM
APPLICATION PERIOD**

**A.**     **General Case Administration.**

     24.     <u>Description</u>.  MW assisted with, <u>inter alia</u>, the review, analysis and preparation of

correspondence, documents, pleadings and notices; handled the daily administration of the

Debtors' chapter 11 cases; prepared and maintained a case calendar, hearing planners and

omnibus hearing agendas used by the Debtors and their professionals in these chapter 11 cases;

prepared for and participated in all court hearings in these chapter 11 cases; regularly

8

participated in meetings and telephone conferences with officers and employees of the Debtors

and the Debtors' financial and other advisors regarding the foregoing as well as other

operational, organizational and strategic issues arising in the cases; regularly participated in

meetings and telephone conferences with professionals for the Creditors' Committees, creditors

and other parties in interest regarding the foregoing and various other issues arising in these

cases; assisted the Debtors with the service of relevant documents on appropriate parties and the

organization of information and document requests from various parties; handled issues relating

to electronic case filing; regularly communicated with the Clerk's office, Chambers and the U.S.

Trustee's office regarding various case administration issues; handled the internal coordination

of motions, responses, objections and other related matters; and assisted in coordinating the

establishment and maintenance of Epiq Bankruptcy Solutions, LLC's telephone hotline to assist

in responding to the numerous inquiries from creditors and other parties in interest that these

cases have generated.

      25.   <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the

Debtors in the administration and prosecution of these complex chapter 11 cases.

      26.   <u>Status</u>.  These matters are completed.

      27.   <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing

matters, MW's professionals expended 414.4 hours during the Interim Application Period for a

total of $103,302.50.  The complete narrative, time detail of the hours incurred and the value of

the matter by professional is attached hereto as <u>Exhibit E</u>.

**B.    Restructuring and General Strategy.**

      28.   <u>Description</u>.  MW assisted with, <u>inter</u> <u>alia</u>, the resolution of various issues and the

development of various strategies regarding the Debtors' chapter 11 cases; analyzed issues and

strategy regarding the Debtors' sale procedures, auctions and liquidations; reviewed, drafted and handled the filing of pleadings regarding the foregoing; handled inquiries regarding the sale of assets; handled the settlement of certain notes payable; and participated in meetings and telephone conferences with the Debtors and their professionals regarding the foregoing.

29.    <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors in the administration and prosecution of these complex chapter 11 cases.

30.    <u>Status</u>.  These matters are completed.

31.    <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 143.2 hours during the Interim Application Period for a total of $56,451.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**C.    Corporate Governance.**

32.    <u>Description</u>.  MW assisted with, <u>inter alia</u>, Board meetings; preparation of governance documents; preparation of Board minutes; and various corporate dissolution issues.

33.    <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors with corporate governance issues that arose as a result of the filing and prosecution of the chapter 11 cases.

34.    <u>Status</u>.  These matters are completed.

35.    <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 73.2 hours during the Interim Application Period for a total of $33,167.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**D.      Monthly Operating Reports.**

36.      _Description_.  MW assisted the Debtors and their professionals with, _inter alia_, the preparation of and filing of the Debtors' Monthly Operating Reports.

37.      _Necessity and Benefit to the Estates_.  These services were necessary to assist the Debtors with compliance with the Bankruptcy Code, Local Bankruptcy Rules and the United States Trustee's guidelines.

38.      _Status_.  These matters are completed.

39.      _Hours Spent and Compensation Requested_.  In connection with the foregoing matters, MW's professionals expended 4.5 hours during the Interim Application Period for a total of $1,567.50  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as _Exhibit E_.

**E.      Professional Retention/Fee Applications.**

40.      _Description_.  Pursuant to the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules and the requirements of the Interim Compensation Order, MW has prepared detailed monthly fee statements for distribution to the Notice Parties and handled inquires from all of the professionals regarding monthly fee statements.  Moreover, MW assisted with, _inter alia_, various issues pertaining to the retention and payment of various professionals employed by the Debtors and the Committees in connection with the Debtors' bankruptcy cases, including bankruptcy counsel, special counsel, accountants, tax professionals, brokers, financial advisors, and ordinary course professionals; reviewed, analyzed, drafted and filed various employment applications on behalf of the Debtors including, _inter alia_, SecondMarket; attended hearings relating to the same; drafted and filed MW's Third Interim Fee Application, and communicated with the Office of the United States Trustee regarding the foregoing.

41.    <u>Necessity and Benefit to the Estates</u>.  These services were necessary to comply with the Bankruptcy Code, the Interim Compensation Order and the United States Trustee's guidelines.  Additionally, access to qualified professionals was critical to the Debtors' chapter 11 cases.

42.    <u>Status</u>.  These matters are completed.

43.    <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 98.4 hours during the Interim Application Period for a total of $33,564.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**F.    Automatic Stay.**

44.    <u>Description</u>.  MW assisted with, <u>inter alia</u>, the review, analysis and preparation of correspondence, documents, pleadings and notices relating to motions for relief from the automatic stay; attended hearings related to same; drafted correspondence and participated in meetings and telephone conferences regarding violations of the automatic stay; and conducted research regarding various issues related to automatic stay matters.

45.    <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors in enforcing the automatic stay, reducing the administrative burden on the Debtors' management and reducing expenses incurred by the Debtors' bankruptcy estates by resolving potential automatic stay related matters.

46.    <u>Status</u>.  These matters are completed.

47.    <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 139.8 hours during the Interim Application Period for a

total of $46,381.00.  The complete narrative, time detail of the hours incurred and the value of

the matter by professional is attached hereto as Exhibit E.

**G.      Employment and Compensation.**

48.    Description.  MW assisted with, inter alia, the review and analysis of issues

regarding former employees, including verification of previous employment.

49.    Necessity and Benefit to the Estates.  These services were necessary to assist the

Debtors with issues pertaining to various employee related matters.

50.    Status.  These matters are completed.

51.    Hours Spent and Compensation Requested.  In connection with the foregoing

matters, MW's professionals expended .7 hours during the Interim Application Period for a total

of $314.50.  The complete narrative, time detail of the hours incurred and the value of the matter

by professional is attached hereto as Exhibit E.

**H.      Labor/Retiree Matters.**

52.    Description.  MW assisted with, inter alia, research and analysis relating to

severance claims and terminated employment agreements; and various meetings, research, and

analysis to resolve certain disputes with the Pension Benefit Guaranty Corporation.

53.    Necessity and Benefit to the Estates.  These services were necessary to assist the

Debtors with employee issues to ensure a cost effective wind down of the Debtors' business

operations.

54.    Status.  These matters are completed.

55.    Hours Spent and Compensation Requested.  In connection with the foregoing

matters, MW's professionals expended 1.6 hours during the Interim Application Period for a

total of $760.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

**I.    Executory Contracts.**

56.    Description.  MW assisted with, inter alia, the review and analysis of various executory contracts and the development of various strategies regarding the possible assumption or rejection of certain executory contracts; researched, drafted, and analyzed pleadings regarding the assumption and rejection of certain executory contracts; negotiated matters related to the assumption and rejection of certain executory contracts; drafted and filed numerous notices of rejection for certain executory contracts; and regularly participated in meetings and telephone conferences with the Debtors, their professionals and opposing counsel regarding the foregoing.

57.    Necessity and Benefit to the Estates.  These services were necessary to assist the Debtors in developing and implementing a strategy for assuming and rejecting various executory contracts consistent with the wind down of the Debtors' business operations.

58.    Status.  These matters are completed.

59.    Hours Spent and Compensation Requested.  In connection with the foregoing matters, MW's professionals expended 181.5 hours during the Interim Application Period for a total of $66,857.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as Exhibit E.

**J.    Litigation.**

60.    Description.  MW conducted numerous meetings with client and government officials regarding an internal investigation in response to inquiries from certain governmental agencies; prepared and implemented document collection procedures to facilitate the investigation; conducted extensive document review to facilitate the investigation and to respond

to Committee document requests; conducted investigation; conducted interviews of current and former employees in conjunction with the investigation; prepared privilege logs and addressed and analyzed various discovery issues; and conducted legal research associated with issues raised during investigation.

61.    <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors with various inquiries from government agencies and Creditors' Committees' document requests.

62.    <u>Status</u>.  These matters are ongoing.

63.    <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 7,897.1 hours during the Interim Application Period for a total of $977,286.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**K.    Real Estate.**

64.    <u>Description</u>.  MW assisted with, <u>inter alia</u>, the review, analysis and drafting of correspondence, documents and pleadings regarding real property leases and the rejection of certain leases; researched and analyzed various matters regarding real property leases; assisted in drafting and filing notices of lease rejections; researched and analyzed issues pertaining to the sale of certain real estate partnership interests of LFG and certain real estate held by LFG subsidiaries; and participated in meetings and telephone conferences with the Debtors and their professionals, landlords and their counsel, and other parties in interest regarding the foregoing.

65.    <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors in various real estate related matters and the wind down of Debtors' business operations.

66.    <u>Status</u>.  These matters are completed.

67.     <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing

matters, MW's professionals expended 51 hours during the Interim Application Period for a total

of $17,937.00.  The complete narrative, time detail of the hours incurred and the value of the

matter by professional is attached hereto as <u>Exhibit E</u>.

**L.      Insurance Matters.**

68.     <u>Description</u>.  MW assisted with, <u>inter alia</u>, the review and analysis of various

general liability, directors and officers and errors and omissions policy related issues; researched

issues regarding the foregoing; and assisted in the preparation of defense cost letters.

69.     <u>Necessity and Benefit to the Estates</u>.  These services were necessary to ensure that

the Debtors were in compliance with their insurance obligations and to assist the Debtors in

recouping legal expenses associated with certain governmental investigations.

70.     <u>Status</u>.  These matters are completed.

71.     <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing

matters, MW's professionals expended 54.1 hours during the Interim Application Period for a

total of $19,989.00.  The complete narrative, time detail of the hours incurred and the value of

the matter by professional is attached hereto as <u>Exhibit E</u>.

**M.      Tax Matters.**

72.     <u>Description</u>.  MW assisted the Debtors with, <u>inter alia</u>, research and analysis

regarding various corporate tax issues, strategy for resolving agent lag premium litigation and

corresponding IRS proofs of claim, and tax issues relating to the sale of the underwriters to

Fidelity National Financial, Inc.; provided analysis regarding the Debtors' tax sharing agreement

and tax allocation issues; provided analysis and formulate strategy regarding net operating

losses; analyzed and researched various tax implications of Debtors' Chapter 11 plan and related

disclosure statement issues; negotiated and settled a 2003 Tax Court case with IRS; responded to

IRS objection to confirmation of Plan; and participated in meetings and telephone conferences

with the Debtors, Creditors' Committee professionals, and various taxing authorities regarding

the foregoing.

73.    Necessity and Benefit to the Estates.  These services were necessary to assist the

Debtors in connection with resolving tax related issues.

74.    Status.  These matters are completed.

75.    Hours Spent and Compensation Requested.  In connection with the foregoing

matters, MW's professionals expended 544.2 hours during the Interim Application Period for a

total of $278,782.50.  The complete narrative, time detail of the hours incurred and the value of

the matter by professional is attached hereto as Exhibit E.

**N.    Claims Administration.**

76.    Description.  MW assisted with, inter alia, the review and analysis of and

responses to numerous claimants' communications; reviewed and analyzed potential claims

issues; assisted in the drafting and filing of various omnibus and individual claim objections;

attended hearings and prosecuted various claims objections; and participated in meetings and

telephone conferences with the Debtors and their professionals regarding the foregoing.

77.    Necessity and Benefit to the Estates.  These services were necessary to assist the

Debtors in developing and implementing a claims resolution strategy, responding to claimants

regarding claims related issues, and expunging or otherwise modifying improperly filed claims

against the Debtors.

78.    Status.  These matters are ongoing.

79.    <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing

matters, MW's professionals expended 128.5 hours during the Interim Application Period for a

total of $46,687.50.  The complete narrative, time detail of the hours incurred and the value of

the matter by professional is attached hereto as <u>Exhibit E</u>.

**O.    Disclosure Statement and Plan.**

80.    <u>Description</u>.  MW assisted the Debtors with, <u>inter alia</u>, analyzing and researching

procedural and substantive issues pertaining to the plan and disclosure statement process;

assisted in the formulation and drafting of the Debtors proposed Chapter 11 plan and disclosure

statement and related Chapter 11 plan documents; responded to various disclosure statement and

Chapter 11 plan objections; attended and participated in the Debtors disclosure statement and

confirmation hearings; and participated in meetings and telephone conferences with the Debtors

and their professionals and the Creditors' Committees regarding the foregoing.

81.    <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the

Debtors with various disclosure statement and plan confirmation matters.

82.    <u>Status</u>.  These matters are completed.

83.    <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing

matters, MW's professionals expended 577.8 hours during the Interim Application Period for a

total of $256,150.50.  The complete narrative, time detail of the hours incurred and the value of

the matter by professional is attached hereto as <u>Exhibit E</u>.

**P.    Employee Benefits/Pensions**

84.    <u>Description</u>.  MW assisted the Debtors with, <u>inter alia</u>, inquiries from the

Department of Labor; the review and analysis of compensation and benefit compliance;

researched issues and formulated strategies regarding the management and administration of the

18

Debtors' cash balance plan, including, but not limited to lump sum payment issues and issues regarding possible deficiencies and distress termination; negotiated and settled dispute with Pension Benefit Guarantee Corporation; analyzed and researched various pension implications of Debtors' Chapter 11 plan and related disclosure statement issues; analyzed and researched various issues pertaining to 401(k) plan; and participated in meetings and telephone conferences with the Debtors and their professionals regarding the foregoing.

85. <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors with various employee benefit and pension matters.

86. <u>Status</u>.  These matters are completed.

87. <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 229.7 hours during the Interim Application Period for a total of $127,253.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**Q.     Audit Opinion Letter.**

88. <u>Description</u>.  MW assisted LFG's auditors with their examination of the Cash Balance Plan by providing, <u>inter alia</u>, detailed information regarding pending or threatened litigation claims against the Cash Balance Plan, detailed information concerning Pension Benefit Guarantee Corporation claims impacting the Cash Balance Plan and it possible involuntary termination.

89. <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Cash Balance Plan with regulatory compliance and to benefit the Debtors' estates, which had control group liability for any Cash Balance Plan deficiencies and a fiduciary duty to supply the Cash Balance Plan auditors with proper information.

90.     <u>Status</u>.  These matters are completed.

91.     <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing

matters, MW's professionals expended 9.6 hours during the Interim Application Period for a

total of $2,421.00.  The complete narrative, time detail of the hours incurred and the value of the

matter by professional is attached hereto as <u>Exhibit E</u>.

**R.     Centennial Bank Sale.**

92.     <u>Description</u>.  MW assisted with, <u>inter alia</u>, developing a strategy for the possible

sale of LFG's interest in Orange County Bank Corp., including, but not limited to,

communications with Sandler O'Neill and Debtors regarding potential purchasers; researched

and analyzed various FDIC matters; negotiated and drafted confidentiality agreements with

potential purchasers; and investigated and analyzed other various dispositions of LFG's interest

in Orange County Bank Corp.

93.     <u>Necessity and Benefit to the Estates</u>.  These services were necessary to allow the

Debtors to maximize the value of the LFG's Orange County Bank Corp. stock for the benefit of

the Debtors' estates.

94.     <u>Status</u>.  These matters are completed.

95.     <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing

matters, MW's professionals expended 292.9 hours during the Interim Application Period for a

total of $146,681.00.  The complete narrative, time detail of the hours incurred and the value of

the matter by professional is attached hereto as <u>Exhibit E</u>.

**S.     LES.**

96.     <u>Description</u>.  MW assisted with, <u>inter alia</u>, various 1031 exchange issues,

including, but not limited to, assisting with the drafting and prosecution of motions related to

sale of auction rate securities; assisted with appeal issues in the Grunstead adversary proceeding; assisted with issues surrounding multi-district litigation plaintiffs; and amendment of LES' schedules.

97.     <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist LES in the defense of various 1031 tax litigation, and to maximize the value of its estate for its creditors.

98.     <u>Status</u>.  These matters are completed.

99.     <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 70.1 hours during the Interim Application Period for a total of $24,753.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**T.     LandAmerica Financial Group Litigation.**

100.     <u>Description</u>.  In addition to conducting the internal investigation and defending the Section 1031 exchange litigation described above, MW assisted with, <u>inter</u> <u>alia</u>, various general litigation matters, including, but not limited to, drafting and filing notices of bankruptcy and status reports in various state court litigation, and defending the adversary proceeding filed by *Ram Quest Software*, as well as various claims asserted by the Texas Department of Insurance.

101.     <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the Debtors with responding to various bankruptcy and non-bankruptcy litigation matters.

102.     <u>Status</u>.  These matters are completed.

103.     <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 251.1 hours during the Interim Application Period for a

total of $105,491.  The complete narrative, time detail of the hours incurred and the value of the

matter by professional is attached hereto as <u>Exhibit E</u>.

**U.     LandAmerica Assessment Corporation.**

104.    <u>Description</u>.  MW assisted with, <u>inter</u> <u>alia</u>, the review, analysis and preparation of

correspondence, documents, pleadings and notices relating to the LAC chapter 11 case; handled

the day to day administration of LAC's chapter 11 case; prepared for and participated in all court

hearings; drafted and filed notices of bankruptcy and responses to motions for relief from stay

and for 2004 examination; attended hearings on motions for relief from the automatic stay;

regularly participated in meetings and telephone conferences with officers and employees of the

Debtor and the Debtor's financial and other advisors regarding the foregoing as well as other

operational, organizational and strategic issues arising in the case.

105.    <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist LAC

in the administration and prosecution of its chapter 11 case.

106.    <u>Status</u>.  Certain automatic stay issues are ongoing. All other matters are

completed.

107.    <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing

matters, MW's professionals expended 82.1 hours during the Interim Application Period for a

total of $30,785.00.  The complete narrative, time detail of the hours incurred and the value of

the matter by professional is attached hereto as <u>Exhibit E</u>.

**V.     LandAmerica Title Company.**

108.    <u>Description</u>.  MW assisted with, <u>inter</u> <u>alia</u>, the review, analysis and preparation of

correspondence, documents, pleadings and notices relating to the LandAm Title bankruptcy case;

handled the day to day administration of LandAm Title's chapter 11 case; prepared for and

participated in all court hearings; drafted and filed notices of bankruptcy and responses to

motions for relief from stay; attended hearings on motions for relief from the automatic stay;

assisted with defense of litigation brought by the Controller of the State of California; regularly

participated in meetings and telephone conferences with officers and employees of the Debtor

and the Debtor's financial and other advisors regarding the foregoing as well as other

operational, organizational and strategic issues arising in the case.

109.   <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist

LandAm Title in the administration and prosecution of its chapter 11 case.

110.   <u>Status</u>.  These matters are completed.

111.   <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing

matters, MW's professionals expended 12.7 hours during the Interim Application Period for a

total of $4,840.00.  The complete narrative, time detail of the hours incurred and the value of the

matter by professional is attached hereto as <u>Exhibit E</u>.

**W.     Southland Title Company.**

112.   <u>Description</u>.  MW assisted with, <u>inter alia</u>, the review, analysis and preparation of

correspondence, documents, pleadings and notices relating to the Southland Title bankruptcy

cases; handled the day to day administration of the Southland Entities' chapter 11 cases;

prepared for and participated in all court hearings; drafted and filed notices of bankruptcy;

regularly participated in meetings and telephone conferences with officers and employees of the

Debtors and the Debtors' financial and other advisors regarding the foregoing as well as other

operational, organizational and strategic issues arising in the cases.

113.   <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist the

Southland Entities' in the administration and prosecution of their chapter 11 cases.

114.    <u>Status</u>.  Certain administrative expense issues are ongoing.  All other matters are completed.

115.    <u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 33.4 hours during the Interim Application Period for a total of $14,345.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**X.    LandAmerica Credit Services.**

116.    <u>Description</u>.  MW assisted with, <u>inter alia</u>, the review, analysis and preparation of correspondence, documents, pleadings and notices relating to the LandAm Credit bankruptcy case; handled the day to day administration of LandAm Credit's chapter 11 case; prepared for and participated in all court hearings; drafted and filed notices of bankruptcy and stay violation letters; regularly participated in meetings and telephone conferences with officers and employees of the Debtors and the Debtors' financial and other advisors regarding the foregoing as well as other operational, organizational and strategic issues arising in the case.

117.    <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist LandAm Credit in the administration and prosecution of its chapter 11 case.

118.    <u>Status</u>.  These matters are completed.

<u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 8 hours during the Interim Application Period for a total of $3,401.00.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

**Y.      Capital Title Group, Inc.**

119.   <u>Description</u>.  MW assisted with, <u>inter alia</u>, the review, analysis and preparation of

correspondence, documents, pleadings and notices relating to the CTG bankruptcy case; handled

the day to day administration of CTG's chapter 11 case; attended CTG's 341 meeting; prepared

for and participated in all court hearings, including, but not limited to, the first day hearings;

drafted and filed the notice of commencement, and notices of bankruptcy; regularly participated

in meetings and telephone conferences with officers and employees of the Debtors and the

Debtors' financial and other advisors regarding the foregoing as well as other operational,

organizational and strategic issues arising in the case.

120.   <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist CTG

in the administration and prosecution of its chapter 11 case.

121.   <u>Status</u>.  These matters are completed.

<u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters,

MW's professionals expended 38.2 hours during the Interim Application Period for a total of

$15,560.00.  The complete narrative, time detail of the hours incurred and the value of the matter

by professional is attached hereto as <u>Exhibit E</u>.

**Z.      LandAmerica OneStop, Inc.**

122.   <u>Description</u>.  MW assisted with, <u>inter alia</u>, the review, analysis and preparation of

correspondence, documents, pleadings and notices relating to the OneStop bankruptcy case;

handled the day to day administration of OneStop's chapter 11 case; prepared for and

participated in all court hearings, including, but not limited to, the first day hearings; drafted and

filed the notice of commencement, notices of bankruptcy, and stay violation letters; regularly

participated in meetings and telephone conferences with officers and employees of the Debtors

and the Debtors' financial and other advisors regarding the foregoing as well as other operational, organizational and strategic issues arising in the case.

123.    <u>Necessity and Benefit to the Estates</u>.  These services were necessary to assist OneStop in the administration and prosecution of its chapter 11 case.

124.    <u>Status</u>.  These and other case administration matters will continue until OneStop's chapter 11 case is closed.  OneStop's confirmation hearing is currently scheduled for February 9, 2009.

<u>Hours Spent and Compensation Requested</u>.  In connection with the foregoing matters, MW's professionals expended 65.8 hours during the Interim Application Period for a total of $26,155.50.  The complete narrative, time detail of the hours incurred and the value of the matter by professional is attached hereto as <u>Exhibit E</u>.

## APPLICABLE LEGAL STANDARDS

125.    The Bankruptcy Code sets forth the legal standards for awarding compensation to professionals employed by the debtor.  The format for fee applications is set forth in the U.S. Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under section 330 of the Bankruptcy Code.

126.    Under section 330 of the Bankruptcy Code, the Court may award counsel to the Debtors reasonable compensation for actual, necessary services rendered by such attorneys and paraprofessionals employed by such attorneys based on the nature, extent and value of the services rendered, time spent on such services and the cost of comparable services other than in a bankruptcy case.  Furthermore, the Court may award reimbursement for actual, necessary expenses.

127.    The expenses incurred by MW, as set forth herein, are reasonable and necessary charges for items including, but not limited to, photocopying, long distance telephone calls, messenger services, computer research, travel expenses, overnight mail and court fees. Photocopy charges are assessed at ten cents ($.10) per page, which MW believes to be competitive for professional firms in this geographic area.  Some larger copy and mailing projects may have been performed at an outside copy center at a lower per page rate.  In all cases, MW has passed through the costs of the outsourced copy or mailing projects to the estate without markup.  MW incurred messenger service charges when such delivery was more economical or when prompt delivery was necessary in a given circumstance.

128.    Under the "lodestar" approach, the Court should consider the number of hours of service reasonably devoted to the case multiplied by the attorney's reasonable rates.  Courts frequently consider the specific "lodestar" factors enumerated in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974).  These lodestar factors were adopted by the Fourth Circuit in <u>Barber v. Kimbrells, Inc.</u>, 577 F.2d 216, 226 (4th Cir.), <u>cert</u>. <u>denied</u>, 439 U.S. 934 (1978), and in <u>Anderson v. Morris</u>, 658 F.2d 246, 249 (4th Cir. 1981), where the Fourth Circuit held that the district court should employ the lodestar approach, and then adjust the fee on the basis of the remaining <u>Johnson</u> factors in the case.  The following are the <u>Johnson</u> factors:

(a)    the time and labor required;

(b)    the novelty and difficulty of the questions;

(c)    the skill requisite to perform the legal service properly;

(d)    the preclusion of other employment by the attorney due to acceptance of the case;

(e)    the customary fee;

(f)    whether the fee is fixed or contingent;

(g)    time limitations imposed by the client or the circumstances;

(h)    the amount involved and the results obtained;

(i)    the experience, reputation and ability of the attorneys;

(j)    the "undesirability" of the case;

(k)    the nature and length of the professional
relationship with the client; and

(l)    awards in similar cases.

Johnson, 488 F.2d at 717-719; Barber, 577 F.2d at 226, n.28; Anderson, 658 F.2d at 248, n.2.

129.    MW believes that the services rendered to the Debtors and the out-of-pocket expenses incurred therewith were both necessary and reasonable in view of the Debtors' obligations in these cases, and the size and complexity of these cases.

130.    Moreover, MW has worked closely with the Debtors' other professionals to be very efficient and avoid the duplication of services in these chapter 11 cases.

131.    MW is the largest law firm in the Commonwealth of Virginia and among the largest law firms in the country, and has substantial expertise in bankruptcy, business law, commercial litigation and other substantive areas, which has allowed MW to address effectively and efficiently issues arising in a national bankruptcy case.  Further, the rates charged by MW are significantly less than rates charged by other law firms in comparable national chapter 11 cases, and MW's rates are consistent with rates charged to other clients in non bankruptcy matters.  MW has efficiently assisted the Debtors by employing a streamlined case management structure that generally consists of a core team with various other attorneys and paraprofessionals assigned to other discrete tasks to avoid the performance of duplicative or unnecessary work. MW believes the fees requested herein satisfy the Johnson factors as set forth above.

## <u>SUMMARY OF EXHIBITS</u>

132.    A proposed order approving the Application is attached hereto as <u>Exhibit A</u>.

133.    Attached hereto as <u>Exhibit B</u> is a list of all attorneys and paraprofessionals who have worked on these cases, by name, year of admission (where applicable), hourly rate, hours expended on these cases, and total fees incurred during the Interim Application Period.

134.    Pursuant to the Interim Compensation Order, MW has received approximately eighty-five percent (85%) of its monthly fees and approximately one hundred percent (100%) of its monthly disbursements for services rendered September 1, 2009 – September 30, 2009.  MW received approximately eighty-five percent (85%) of its monthly fees and approximately one hundred percent (100%) of its monthly disbursements for services rendered to LFG for the period October 1, 2009 – October 31, 2009, but has not received payment for services rendered or disbursements made on behalf of LES.  For the period November 1, 2009 – December 6, 2009, MW received approximately eighty-five percent (85%) of its monthly fees and approximately one hundred percent (100%) of its monthly disbursements for services rendered to LFG, but has not received payment for services rendered or disbursements made on  behalf of LES.  In total, MW has received $1,927,084.25 in fees and $35,991.41 in disbursements for services performed and expenses incurred during the Interim Application Period.  <u>See</u> <u>Exhibit C</u> attached hereto for a statement of those payments.  A total of $513,799.75 in fees and $7,151.33 in disbursements are due and owing to MW from the Debtors pending approval of this Application.

135.    A summary of all actual and necessary expense disbursements during the Interim Application Period is attached hereto as <u>Exhibit D</u>.

136.    A chronological itemization of time during the Interim Application Period categorized by task performed is attached hereto as <u>Exhibit E</u>.  MW has made every effort to place all time entries in the proper service category; however, it should be noted that in some circumstances an entry could have been properly placed in more than one of the service categories.  In such circumstances, MW has used its best efforts to place the time entry in the service category that represents the primary purpose of the services rendered.  Time entries do not appear in more than one service category.

## NOTICE

137.    Pursuant to the Interim Compensation Order, MW has served copies of the Final Application on the Notice Parties (as defined therein), as well as the LandAm Trustees and counsel to the LandAm Trustees.  In addition, MW has served notice of the Final Application and notice of the hearing on the Final Application on the parties entitled to receive notice under the Amended Case Management Order, as well as the LandAm Trustees and counsel to the LandAm Trustees.  MW submits that no other or further notice need be given.

## WAIVER OF MEMORANDUM OF LAW

138.    Pursuant to Local Bankruptcy Rule 9013-1(G), and because there are no novel issues of law presented in this Final Application, the MW requests that this Court waive the requirement that all motions be accompanied by a written memorandum of law.

## NO PRIOR REQUEST

139.    No prior request for the relief sought herein has been made to this Court in these bankruptcy cases.  This is MW's fourth and final application for compensation and reimbursement of expenses.

**WHEREFORE**, MW respectfully requests that this Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, (i) approving on a final basis the compensation and reimbursement of expenses requested in the Final Application Period and in the Interim Application Period, (ii) authorizing and directing OneStop and the Trustees of the LFG, LES, and Subsidiary Debtor Trusts to pay such amounts, and (iii) granting MW such other and further relief as is just and proper.

Dated: Richmond, Virginia
      January 15, 2010

                        /s/ John H. Maddock III
                        Dion W. Hayes (VSB No. 34304)
                        John H. Maddock III (VSB No. 41044)
                        McGUIREWOODS LLP
                        One James Center
                        901 East Cary Street
                        Richmond, Virginia 23219-4030
                        (804) 775-1000

                        Attorneys for the Debtors and
                        Debtors in Possession

**EXHIBIT A: PROPOSED ORDER**

Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 41044)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

Attorneys for the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

```
-------------------------------------------------------x
In re                               :   Chapter 11
                                    :
LandAmerica Financial Group, Inc., et al.   :   Case No. 08-35994 (KRH)
                                    :
              Debtors.              :   (Jointly Administered)
-------------------------------------------------------x
```

**ORDER GRANTING FOURTH AND FINAL APPLICATION OF
McGUIREWOODS LLP AS COUNSEL FOR DEBTORS FOR FINAL
ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED
FROM NOVEMBER 26, 2008 THROUGH DECEMBER 6, 2009**

Upon consideration of the Fourth and Final Application of McGuireWoods LLP as

Counsel for Debtors for Final Allowance of Compensation for Services Rendered and

Reimbursement of Expenses from November 26, 2008 through December 6, 2009 (the "**Final**

**Application**"); and the Court having reviewed the Final Application; and the Court having

determined that the relief requested in the Final Application is necessary and appropriate; and a

hearing having been held on the matter on February 9, 2010; and it appearing that proper and

adequate notice of the Final Application has been given and that no other or further notice is

necessary; and upon the record herein; and after due deliberation thereon; and good and

sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1.      The Final Application meets the requirements of the Bankruptcy Code and the

compensation and reimbursement of expenses sought in the Final Application is both fair and

reasonable.

2.      Capitalized terms used but not defined herein shall have the meanings ascribed to

them in the Final Application.

3.      The Final Application is hereby approved in its entirety.  Compensation for the

Final Application Period in the total amount of $11,009,497.75 is hereby approved, and OneStop

and the LandAm Trustees are hereby authorized and directed to pay McGuireWoods LLP the

unpaid portion of such compensation.  Compensation for the OneStop Fees incurred during the

Interim Application Period is approved on an interim basis.

4.      The reimbursement of expenses for the Final Application Period in the total

amount of $208,094.22 is hereby approved, and OneStop and the LandAm Trustees are hereby

authorized and directed to pay McGuireWoods LLP any unpaid portion of such reimbursements.

Compensation for the OneStop Expenses incurred during the Interim Application Period is

approved on an interim basis.

5.      This Court will retain jurisdiction with respect to any dispute concerning the relief

granted hereunder.

Dated: Richmond, Virginia
      February _____, 2010

_____

KEVIN R. HUENNEKENS
UNITED STATES BANKRUPTCY JUDGE


WE ASK FOR THIS:


_____

Dion W. Hayes (VSB No. 34304)
John H. Maddock III (VSB No. 41044)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

Attorneys for the Debtors and
Debtors in Possession

### <u>CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)</u>

     Pursuant to Local Rule 9022-1(C), I hereby certify that the foregoing order has been

served upon all necessary parties.


_____

John H. Maddock III


\10407143.3

3

**EXHIBIT B**
**Summary of Timekeepers**

In re LandAmerica Financial Group, Inc., *et al* .

Case No. 08-35994 (KRH)(Jointly Administered)


Name of Applicant: McGuireWoods LLP

Role: Co-Counsel to the Debtors


Interim Application Period:

  Fees Requested:  **$2,440,884.00**

  Expenses Requested:  **$43,142.74**


| **Summary of Timekeepers** | Year | | **Application Period** | | |
|---|---|---|---|---|---|
| | **Admitted** | **2009 Rate** | **Hours** | | **Amount** |
| **Attorneys** | | | | | |
| | | | | | |
| Patrick L. Hayden | 1989 | $715.00 | 1 | $ | 715.00 |
| Richard Cullen | 1977 | $715.00 | 7.2 | $ | 5,148.00 |
| E. Duncan Getchell Jr. | 1974 | $650.00 | 0.8 | $ | 520.00 |
| Steven D. Kittrell | 1978 | $650.00 | 2.9 | $ | 1,885.00 |
| Joseph C. Carter III | 1976 | $640.00 | 73.1 | $ | 46,784.00 |
| James P. McElligott Jr. | 1974 | $635.00 | 154.4 | $ | 98,044.00 |
| Dion W. Hayes | 1992 | $600.00 | 426.4 | $ | 255,840.00 |
| Alexander H. Slaughter | 1964 | $595.00 | 8.3 | $ | 4,938.50 |
| Robert G. McElroy | 1978 | $590.00 | 164.1 | $ | 96,819.00 |
| Richard S. Grant | 1986 | $575.00 | 9.8 | $ | 5,635.00 |
| Charles E. Roberts | 1974 | $565.00 | 11.2 | $ | 6,328.00 |
| David N. Oakey | 1981 | $560.00 | 1.6 | $ | 896.00 |
| William D. James | 1989 | $535.00 | 17.7 | $ | 9,469.50 |
| Craig D. Bell | 1983 | $530.00 | 175.5 | $ | 93,015.00 |
| Robert M. Cipolla | 1998 | $525.00 | 1 | $ | 525.00 |
| Ronald W. Crouch | 1981 | $525.00 | 2.4 | $ | 1,260.00 |
| Thomas E. Taylor | 1972 | $525.00 | 26.7 | $ | 14,017.50 |
| Anne Bentley McCray | 1994 | $500.00 | 134.5 | $ | 67,250.00 |
| William G. Fendley IV | 1999 | $485.00 | 22.1 | $ | 10,718.50 |
| James M. Anderson, III | 1998 | $475.00 | 56.8 | $ | 26,980.00 |
| John H. Maddock III | 1996 | $475.00 | 492.6 | $ | 233,985.00 |
| Shawn R. Fox | 2002 | $475.00 | 0.5 | $ | 237.50 |
| James E. Van Horn | 2002 | $450.00 | 0.7 | $ | 315.00 |
| Joseph S. Sheerin | 2001 | $450.00 | 32.6 | $ | 14,670.00 |
| Sarah B. Boehm | 2000 | $450.00 | 1.3 | $ | 585.00 |
| Kristen M. Calleja | 1997 | $445.00 | 6.5 | $ | 2,892.50 |
| Bethany Gayle Lukitsch | 1998 | $425.00 | 13.8 | $ | 5,865.00 |
| Dana G. Fitzsimons Jr. | 2001 | $425.00 | 5.3 | $ | 2,252.50 |
| Kenneth M. Misken | 2000 | $400.00 | 20.7 | $ | 8,280.00 |
| Stephanie P. Karn | 1995 | $385.00 | 0.2 | $ | 77.00 |
| Aaron G. McCollough | 2005 | $375.00 | 77.8 | $ | 29,175.00 |
| Meredith W. Thrower | 2004 | $365.00 | 6.6 | $ | 2,409.00 |
| Sabrina A. Beldner | 2001 | $350.00 | 5.2 | $ | 1,820.00 |
| Regina Johnson Elbert | 2005 | $345.00 | 49.1 | $ | 16,939.50 |
| Jonathan G. Neal | 1998 | $335.00 | 90.5 | $ | 30,317.50 |

| | | | | | |
|---|---|---|---|---|---:|
| Richard F. Blair | 2008 | $325.00 | 580.5 | $ | 188,662.50 |
| Jacob H. Rooksby | 2007 | $315.00 | 22.4 | $ | 7,056.00 |
| Katherine K. DeLuca | 2006 | $315.00 | 4.2 | $ | 1,323.00 |
| Matthew P. Rash | 2004 | $315.00 | 19.8 | $ | 6,237.00 |
| Ryan D. Frei | 2005 | $315.00 | 6 | $ | 1,890.00 |
| Sara F Holladay-Tobias | 2006 | $315.00 | 0.1 | $ | 31.50 |
| Eric B. Martin | 2002 | $310.00 | 1.5 | $ | 465.00 |
| C.P. Bobick | 2007 | $300.00 | 161.6 | $ | 48,480.00 |
| James W. Pfeifer | 2007 | $300.00 | 0.7 | $ | 210.00 |
| Jeremy S. Byrum | 2005 | $300.00 | 3.1 | $ | 930.00 |
| Sandra B. Park | 2007 | $300.00 | 116.9 | $ | 35,070.00 |
| Shauna Leven | 2008 | $300.00 | 1 | $ | 300.00 |
| Bryan A. Stark | 2007 | $295.00 | 192.2 | $ | 56,699.00 |
| Lori Michelle Scott | 2003 | $295.00 | 352.7 | $ | 104,046.50 |
| Paul J. Catanese | 2008 | $295.00 | 3.4 | $ | 1,003.00 |
| Martha L. Steele | 1994 | $290.00 | 62.3 | $ | 18,067.00 |
| Martin C. Boyle | 2006 | $290.00 | 36.6 | $ | 10,614.00 |
| Jennifer A. Kosteva | 2007 | $275.00 | 4.6 | $ | 1,265.00 |
| Ronald D. Law | 2009 | $275.00 | 13 | $ | 3,575.00 |
| Vincent A. Dongarra | 2009 | $260.00 | 2 | $ | 550.00 |
| **ATTORNEY TOTALS:** | | | | **$** | **1,583,083.00** |

**<u>Paraprofessionals and Contract Attorneys</u>**

| | | | | |
|---|---|---|---|---:|
| J. Christian Tennant | $285.00 | 4 | $ | 1,140.00 |
| Janis A. Paiva | $255.00 | 16 | $ | 4,080.00 |
| Tijuana L. B. Cuthbertson | $250.00 | 6.6 | $ | 1,650.00 |
| Kathi Jo Harris-Temple | $245.00 | 0.3 | $ | 73.50 |
| Daniel R. Kitchen | $225.00 | 30.8 | $ | 6,930.00 |
| Gloria K. Dagrosa | $225.00 | 551.9 | $ | 124,177.50 |
| James J. Simonelli | $225.00 | 0.7 | $ | 157.50 |
| Thomas W. Sakats | $225.00 | 443.6 | $ | 99,810.00 |
| Frances C. Smith | $215.00 | 458.8 | $ | 98,642.00 |
| Jan P. Harrison | $215.00 | 2.6 | $ | 559.00 |
| Hazel L. Johnson | $200.00 | 0.2 | $ | 40.00 |
| Diane E. Morrison | $195.00 | 183.9 | $ | 35,860.50 |
| Karen B. Cain | $195.00 | 67.7 | $ | 13,201.50 |
| Margaret E. Dylak | $165.00 | 14.8 | $ | 2,442.00 |
| Doris L. Morgan | $150.00 | 6.5 | $ | 975.00 |
| Ellen Brook Dimond | $150.00 | 306.7 | $ | 46,005.00 |
| Heather M. Enderle | $150.00 | 2.9 | $ | 435.00 |
| Patricia C. Anderson | $125.00 | 2.3 | $ | 287.50 |
| Ashley Shreve | $75.00 | 509 | $ | 38,175.00 |
| Audrey Turner | $75.00 | 224.4 | $ | 16,830.00 |
| Barbara J. Chapman | $75.00 | 28.3 | $ | 2,122.50 |
| Boyd Wiggam | $75.00 | 507.7 | $ | 38,077.50 |
| Brian C. Dent | $75.00 | 402.1 | $ | 30,157.50 |
| Charles Oates | $75.00 | 177.1 | $ | 13,282.50 |
| Crystal Smith | $75.00 | 552.6 | $ | 41,445.00 |
| Cuong Luong | $75.00 | 1.1 | $ | 82.50 |
| Giles Smith | $75.00 | 180.5 | $ | 13,537.50 |
| Gina M. Burgin | $75.00 | 384.8 | $ | 28,860.00 |
| Janet Moran | $75.00 | 7 | $ | 525.00 |
| Kathryn C. Morrison | $75.00 | 431.9 | $ | 32,392.50 |
| Kathryn M. Christie | $75.00 | 8 | $ | 600.00 |
| Keith McKinnel | $75.00 | 8.3 | $ | 622.50 |
| Kimberly Bolton | $75.00 | 128.8 | $ | 9,660.00 |
| Lee L. Nelms | $75.00 | 397.5 | $ | 29,812.50 |

| | | | |
|---|---|---|---|
| Lexi Walker | $75.00 | 499.8 | $ 37,485.00 |
| Marcy Huster | $75.00 | 201.1 | $ 15,082.50 |
| Nancy Warren | $75.00 | 139.4 | $ 10,455.00 |
| Ottie C Akers | $75.00 | 435.9 | $ 32,692.50 |
| Robert Duke | $75.00 | 392.5 | $ 29,437.50 |
| **PARAPROFESSIONAL TOTALS:** | | | **$ 857,801.00** |
| | | | |
| **TOTAL:** | | | **$ 2,440,884.00** |

**EXHIBIT C**

Summary of Monthly Fee Statements

| Period Covered | Total Fees Incurred | Total Fees Requested Pursuant to Interim Compensation Order | Fees Paid | Holdback | Total Expenses Incurred | Total Expenses Requested Pursuant to Interim Compensation Order | Expenses Paid | Holdback |
|---|---|---|---|---|---|---|---|---|
| September 1, 2009 to September 30, 2009 | $827,623.00 | $703,479.55 | $703,479.55 | $124,143.45 | $9,652.05 | $9,652.05 | $9,652.05 | $0.00 |
| October 1, 2009 to October 31, 2009 | $832,830.00 | $707,905.50 | $633,677.78 | $199,152.22* | $15,649.43 | $15,649.43 | $15,519.12 | $130.31* |
| November 1, 2009 to December 6, 2009 | $780,431.00** | $659,764.05 | $589,926.92 | $190.504.08*** | $17,841.26** | $11,275.45 | $10,820.24 | $7,021.02*** |
| TOTALS: | $2,440,884.00 | $2,071,149.10 | $1,927,084.25 | $513,799.75 | $43,142.74 | $36,576.93 | $35,991.41 | $7,151.33 |

* In addition to the 15% holdback, there is an additional $74,358.03 for work performed and expenses incurred on behalf of LES which is payable under the Interim Compensation Order but which remains outstanding.

** As set forth in footnote 6 in the Final Application, MW submitted its Final Fee Statement on December 17, 2009.  Due to the fact that certain time entries and expenses incurred for pre-Effective Date work were entered into MW's billing system after December 17, 2009, MW has amended its Final Fee Statement.  The amended Final Fee Statement is attached hereto as part of Exhibit E and includes $4,238.00 in fees and $6,565.81 in expenses that were not included in the original Final Fee Statement.

*** In addition to the 15% holdback, there is $70,842.38 in charges allocable to LES (fees and expenses for matter 0320 and 25% of fees and expenses for matter 0150) which have not been paid to date.

10422579_2.XLS

**<u>EXHIBIT D</u>**

**Summary Of Expenses**

| <u>Disbursement</u> | <u>Amount</u> |
|---|---|
| Copy Charges | $ 5,339.90 |
| Postal Service Charges | $ 1.39 |
| Long Distance Telephone Charges | $ 454.98 |
| Genesys Conferencing | $ 3,089.63 |
| Computer Research | $ 16,423.76 |
| Overnight Delivery | $ 955.74 |
| Working Meals | $ 3,650.27 |
| Travel and Transportation | $ 6,913.81 |
| Court Costs | $ 2,365.00 |
| Messenger Services (delivery) | $ 278.82 |
| CSC | $ 106.20 |
| SCC | $ 112.50 |
| Capitol Services | $ 126.50 |
| Blue Marble Logistics | $ 116.00 |
| OCLC | $ 18.00 |
| US Legal Management Services | $ 818.39 |
| Janey & Janey | $ 2,371.85 |
| Duplicate Payment Credit | $ - |
| **TOTAL:** | **$ 43,142.74** |

10430028_1.XLS