IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:          LANDAMERICA FINANCIAL                    Case No. 08-35994-KRH
                GROUP, INC., *et al*                      Chapter 11
                                                          Jointly Administered
                    Debtors.

## MEMORANDUM OPINION

These Chapter 11 cases are proceeding under a confirmed Joint Chapter 11 plan of liquidation. Before the Court is the LFG Trustee's[1] Forty-fourth Omnibus Objection to the Allowance of Certain Claims [Docket No. 4197] (the "Objection"). The LFG Trustee objects to the allowance of certain severance claims filed by former employees of the Debtors whose employment had been terminated in late December 2008 and early January 2009 (the "Claimants"). The Court finds that the employment of the Claimants was terminated in each instance after the date on which the Severance Benefits Plan For LandAmerica Financial Group, Inc. (the "Severance Plan") was terminated. Therefore, the LFG Trustee's objection will be sustained and the claims filed by the Claimants will be disallowed.

### Jurisdiction

The Court has subject-matter jurisdiction of this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O). Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] Pursuant to the Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and its Affiliated Debtors, dated November 16, 2009, two liquating trustees have been appointed: a LandAmerica 1031 Exchange Services, Inc. Trustee ("LES Trustee") to administer the LES estate, and a LandAmerica Financial Group, Inc. Trustee ("LFG Trustee") to administer the LFG estate.

**Factual and Procedural Background**

On November 26, 2008 (the "Petition Date"), LandAmerica Financial Group, Inc. ("LFG"), filed a petition for relief under Chapter 11 of the United States Bankruptcy Code in this Court, along with its wholly owned subsidiary, LandAmerica 1031 Exchange Services, Inc. ("LES"). On March 6, 2009, March 27, 2009, March 31, 2009, July 17, 2009, October 12, 2009, and November 4, 2009, various LFG affiliates (LandAmerica Assessment Corporation ("LAC"), LandAmerica Title Company ("LandAm Title"), Southland Title Corporation, Southland Title of Orange County, Southland Title of San Diego (the "Southland Entities"), LandAmerica Credit Services, Inc. ("LandAm Credit"), Capital Title Group, Inc. ("CTG"), and LandAmerica OneStop, Inc.("OneStop") (collectively, "LFG Affiliates")) also commenced voluntary Chapter 11 cases in this Court. Pursuant to orders of this Court dated November 28, 2008, March 11, 2009, April 8, 2009, April 9, 2009, July 22, 2009, October 26, 2009, and November 13, 2009, the Chapter 11 cases of LFG, LES, and the LFG Affiliates (collectively, the "Debtors") are being jointly administered under case number 08-35994.

By order dated February 27, 2009 (the "Bar Date Order"), and pursuant to Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), this Court established April 6, 2009, at 4:00 p.m. (prevailing Eastern Time) as the deadline by which all persons and entities had to file proofs of claim against the estates of LFG and LES (the "General Bar Date"). In accordance with the Bar Date Order, written notice of the General Bar Date was mailed to all known claimants of LFG and LES. Subsequent bar dates were set for the LFG Affiliates.[2]

---

[2]  On April 22, 2009, this Court entered an order establishing May 18, 2009 as the deadline by which all non-governmental persons and entities must file proofs of claim against the estate of LAC. On June 23, 2009, this Court entered an order establishing July 20, 2009 as the deadline by which all non-governmental persons and entities must file proofs of claim against the estates of LandAm Title and the Southland Entities. On September 2, 2009, this

On November 23, 2009, the Court entered an order confirming the Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and its Affiliated Debtors, dated November 16, 2009 (the "Plan") as to all Debtors other than OneStop. The effective date with respect to the Plan was December 7, 2009. Pursuant to Section 10.1 of the Plan, only the Post-Effective Date Entities and the Trustees, including the LFG Trustee, are entitled to object to claims or interests after the effective date. To date, over 3,400 proofs of claim have been filed in the Debtors' cases. The LFG Trustee and LES Trustee are currently in the process of reviewing and reconciling these claims.

Prior to the Petition Date, LFG provided for the payment of severance pay to employees who were participants under its Severance Plan.[3]  The Severance Plan provided that it was intended to be a "welfare plan" and not a "pension plan," as defined in the Employee Retirement Income Security Act, §§ 3(1) and 3(2), respectively. The Plan also clearly provided in § 4.02 that "by action of its Board, the company may terminate the Plan. . . ." Finally the Plan provided that it was to be construed and enforced in accordance with the laws of the Commonwealth of Virginia. On November 23, 2008, the Officers of LFG elected to terminate the Severance Plan. The LFG Board of Directors ratified that decision on December 10, 2008.

Each of the Claimants had worked for either Commonwealth Land Title Insurance Company, United Capital Title Insurance Company or Employers Title Insurance Company (the "Underwriter Companies"), which were wholly owned subsidiaries of LFG as of the Petition

---

Court entered an order establishing September 30, 2009 as the deadline by which all nongovernmental persons and entities must file proofs of claim against the estate of LandAm Credit. On November 13, 2009 this Court entered an order establishing December 14, 2009 as the deadline by which all non-governmental persons and entities must file proofs of claim against the estates of CTG and OneStop. Written notices of the applicable bar dates were mailed to all known creditors of LAC, LandAm Title, the Southland Entities, LandAm Credit, CTG and OneStop.

[3]  After LFG began to experience financial difficulties, the LFG Board amended the company's Severance Plan, effective August 1, 2008. The amended version of the Severance Plan established a one-year eligibility waiting period for coverage to commence. It also reduced the number of weeks' pay to which terminated employees were entitled. It is the 2008 amended version of the Severance Plan that is at issue in this case.

Date.    By Order entered December 17, 2008, LFG sold its stock in the three Underwriter

Companies to Fidelity National Financial ("Fidelity") pursuant to § 363 of the Bankruptcy Code.

The Claimants continued to be employed by the Underwriter Companies even after closing of

the stock purchase agreement.    The Claimants' employment was terminated by Fidelity in late

December of 2008 or early January of 2009.[4]    Following the termination of their employment,

the Claimants filed proofs of claim in this case against LFG claiming an entitlement to severance

pay under LFG's Severance Plan.    The LFG Trustee objected to the proofs of claim on the

grounds that the Claimants had been terminated after the date on which the Severance Plan was

terminated and, therefore, they were not entitled to benefits under the Severance Plan.

Five Claimants residing in various states[5] filed *pro se* responses to the LFG Trustee's

objection (the "Responding Claimants").    The Court conducted a hearing on January 27, 2011, at

which it sustained the objection as to all of the Claimants' proofs of claim[6] other than those of

the Responding Claimants.    The objections to the claims of the Responding Claimants were

continued to a hearing on February 22, 2011, so that those Responding Claimants could attend

via telephone.[7]    At the February 22, 2011, hearing, the Court *sui sponte* raised the question

whether Federal Law or the laws of the states of Virginia, Texas, California or Oregon placed

any restriction on the Severance Plan provision that permitted LFG to unilaterally terminate the

Severance Plan.    The Court requested the parties to submit memoranda addressing the issue.

---

[4]  The Claimants' employment was never actually terminated by LFG.

[5]  The five Claimants who responded were:  Yvonne N. Chao (California), Hollye A. Bright (Texas), Terrie L. Brooks (Texas), Linda M. Hamlin (Texas) and Cynthia E. Adams (Oregon).

[6]  LRBP 3007-1(D) requires a creditor served with an objection to its proof of claim to file a response thereto within 30 days of service.  If no response is filed, the court may treat the objection as conceded, and may enter an order disallowing the claim as set forth in the objection to claim.

[7]  At the Court's request, the LFG Trustee served a special notice of hearing on the Responding Claimants indicating their right to attend the February 22, 2011 hearing by telephone.  Cindy Adams, Terrie Brooks, Yvonne Chao and Hollye Bright did attend the February hearing via telephone.

**Analysis**

The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq., is a "comprehensive" and "closely integrated regulatory system" that is "designed to promote the interests of employees and their beneficiaries in employee benefit plans."  *Gresham v. Lumbermen's Mutual Casualty Company,* 404 F.3d 253, 258 (4th Cir. 2005) (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990)).  ERISA accomplishes this objective through its preemption clause, 29 U.S.C.A. § 1144(a), which provides that ERISA "shall supersede any and all State laws insofar as they . . . relate to any employee benefit plan."  ERISA preemption is generally triggered whenever state law serves as an alternative means of recovering benefits under a welfare benefit plan.  *Gresham*, 404 F.3d at 258.

ERISA defines a welfare benefit plan to include any plan established and maintained by an employer that provides an unemployment benefit to its employees. 29 U.S.C. § 1002(1) (stating that a welfare benefit plan includes any plan "established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . benefits in the event of sickness, accident, disability, death or unemployment.").  LFG's Severance Plan was a qualified welfare benefit plan under this definition, as it specifically provided that it was established "in order to assist eligible employees upon termination of employment from the Company."  Therefore, ERISA governs claims arising under the plan and preempts any otherwise applicable state law that may conflict with its provisions.

ERISA does not prohibit employers from altering or terminating benefits provided under such a welfare benefit plan.  *See e.g., Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) ("ERISA does not create any substantive entitlement to employer-provided health benefits

5

or any other kind of welfare benefits.  Employers . . . are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans."); *Senior v. Nstar Electric & Gas Corp.*, 449 F.3d 206, 207 (1st Cir. 2005) ("'Welfare benefit plans'—plans that provide medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment—are not subject to the strict vesting requirements of ERISA pension benefit plans.  Employers are 'generally free for any reason at any time, to adopt, modify, or terminate welfare plans'") (*citations omitted*); *Olszewski v. SYMYX Tech. Inc,* 2011 U.S. App. Lexis 1222 (9th Cir. 2011) (employer's rescission of its severance benefit policy entirely, at any time, for whatever reason, without consent of or prior notice to employees does not give rise to a cognizable claim under ERISA).  As LFG expressly retained the right to terminate its Severance Plan at any time by action of its Board, and as ERISA permits LFG to terminate the Severance Plan at will and without prior notice to its employees, LFG had the right to unilaterally terminate its Severance Plan.  *See Curtiss-Wright Corp.*, 514 U.S. at 78.

Notwithstanding the fact that ERISA preempts any state law relating to the Severance Plan, the Court has been unable to find any state law provision that would provide the Responding Claimants an alternative basis for relief.  LFG's Severance Plan provides that it is to be governed (to the extent that applicable federal law such as ERISA does not control) under Virginia law.  Virginia courts will generally uphold choice of law provisions in contracts so long as there is a reasonable basis for the choice and the law chosen is not contrary to the public policy of the state with greater interest and whose law would otherwise govern.  *Union Cent. Life Ins. Co. v. Pollard*, 94 Va. 146, 151, 26 S.E. 421, 422 (1896); *Cent. Coal Co. v. Phibro Energy, Inc.*, 685 F. Supp. 595 (W.D. Va. 1988); Restatement of Conflicts of Law 2d, Contracts, § 187(2).  Here, LFG is a Virginia corporation with both its headquarters and principal place of business in

Virginia.  Furthermore, the Court has been unable to find any statutory prohibition under the laws

of Texas, California, or Oregon that as a matter of public policy would limit LFG's ability to

terminate the Severance Plan at will.   Virginia law therefore governs and would place no

restriction on LFG's ability to terminate severance plan benefits to its employees.

### Conclusion

The LFG Severance Plan, by its own terms and as defined by ERISA, is a welfare benefit

plan.  As such, ERISA exclusively governs how the Severance Plan is to be construed, enforced

and administered.  ERISA permits employers to terminate welfare benefit plans for any reason,

at any time, and without prior notice, and LFG expressly retained this right under the terms of

the Severance Plan.  Although state law affecting the Severance Plan is preempted by ERISA,

the otherwise governing law of Virginia would still place no restriction on LFG's right to

unilaterally terminate the Severance Plan.  LFG exercised its prerogative and legally terminated

the Severance Plan on November 23, 2008, prior to the termination of the employment of the

Responding Claimants.  No right or entitlement to any benefit under the Severance Plan could

arise thereafter.   Therefore, the Trustee's objection to the severance claims filed by the

responding Claimants will be sustained.

A separate Order shall be issued.

ENTERED: _____

_____/s/ Kevin R. Huennekens_____
UNITED STATES BANKRUPTCY JUDGE