UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| IN RE:       LandAmerica Financial Group, Inc., *et al.*, | Chapter 11 |
|  | Case No. 08-35994-KRH |
| Debtors. | Jointly Administered |

## **MEMORANDUM OPINION**

Before the Court is the motion of Bruce Matson ("Matson") in his capacity as Trustee of the LandAmerica Credit Services Inc. Liquidation Trust ("LACS") for entry of an order enforcing the injunction set forth in the Joint Chapter 11 Plan of LandAmerica Financial Group, Inc. and its Affiliated Debtors (the "Plan") in accordance with 11 U.S.C. §§ 1141(a), 1142(b), and 105(a), and Federal Rules of Bankruptcy Procedure 9014 and 9020. The Motion seeks to enjoin Experian Information Solutions, Inc. ("Experian") from pursuing an action (the "Illinois Action") it filed against Matson in the United States District Court for the Northern District of Illinois in violation of both the terms of the Plan and the common law doctrine arising from *Barton v. Barbour*, 104 U.S. 126 (1881).

On November 26, 2008, LandAmerica Financial Group ("LFG") and LandAmerica 1031 Exchange Services, Inc. ("LES") filed voluntary petitions under Chapter 11 of the Bankruptcy Code in this Court. A number of LFG affiliates, including LACS, subsequently commenced their own Chapter 11 cases in this Court.[1] LACS provided consolidated consumer mortgage credit reports to a diverse customer base in the mortgage industry, which customer base included banks, thrifts, credit unions, mortgage companies, mortgage brokers, mortgage services, and

---

[1] Those affiliates are: LandAmerica Assessment Corp.; LandAmerica Title Co.; Southland Title Corp.; Southland Title of Orange County; Southland Title of San Diego; LandAmerica Credit Services, Inc.; and Capital Title Group, Inc. (the "LFG Subsidiary Debtors").

commercial lenders. LACS filed its Chapter 11 petition on July 17, 2009.[2] The Chapter 11 bankruptcy cases of LFG and the LFG Subsidiary Debtors are jointly administered under Case Number 08-35994.[3]

Shortly after LACS filed for protection under the Bankruptcy Code, Experian, by and through counsel Joseph D. Frank of Frank/Gecker LLP, filed a Notice of Appearance and Request for Service of Notices and Documents [Docket No. 1895]. On October 23, 2009, Experian filed a proof of claim against LACS in the amount of $95,017.87 based on various pre-petition market and credit reporting services Experian had provided to LACS.[4]

LFG filed the joint Plan for itself and for the LFG Subsidiary Debtors on November 16, 2009 [Docket No. 2576]. The Plan was the culmination of a year's worth of intense and often adversarial negotiation among multiple parties. Key elements of the Plan included the resolution and settlement of intercompany claims and the transfer of the Debtors' assets into liquidating trusts. By Order entered November 23, 2009, the Court confirmed the Plan (the "Confirmation Order") [Docket No. 2666]. The Plan became effective as to LFG and the LFG Subsidiary Debtors, including LACS, on December 7, 2009. The Plan provided for the appointment of trustees for each of the liquidating trusts. The trustees' duties and responsibilities under the Plan are set forth in and governed by the operative liquidating trust agreements. The Confirmation Order appointed Matson to act as both the LACS Trustee and the LFG Trustee.

---

[2] Case Number 09-34607.

[3] The bankruptcy case of LACS was procedurally consolidated with Case Number 08-35994 on July 22, 2009.

[4] By filing a proof of claim and a notice of appearance, Experian consented to personal jurisdiction in this Court. *McLean v. First Nat'l Bank of Grayson, Ky.* (*In re Neese*), 12 B.R. 968, 971 (Bankr. W.D. Va. 1981) ("In this proceeding, defendants voluntarily availed themselves of the jurisdiction of this Court when they filed, by counsel, proofs of claim in the underlying title 11 bankruptcy case."); *see also* 4 *Collier on Bankruptcy* ¶ 501.01[2][d] (Alan N. Resnick & Harry J. Sommer eds., 16th ed.) ("By filing a proof of claim or interest, the parties submit themselves to the substantive jurisdiction of the bankruptcy court.").

On April 18, 2012, Matson, in his capacity as LFG Trustee, filed an avoidance action in this Court against Experian, seeking to avoid and recover certain preferential and fraudulent transfers.[5] On May 23, 2012, Experian filed its answer to the complaint in the Avoidance Action. On October 18, 2012, Matson and Experian participated in a mediation session, which ultimately proved to be unsuccessful.

On April 2, 2013, Experian filed the Illinois Action against Matson.[6] The Illinois Action sets forth four counts[7] wherein Experian alleges that Matson's appointment as both the LACS Trustee and the LFG Trustee created a conflict of interest, and that Matson breached his fiduciary duties to beneficiaries of the LACS Trust by (1) agreeing to serve as trustee for more than one trust and (2) failing to move to equitably subordinate an intercompany receivable due from LACS to LFG. Experian further alleges that Matson improperly used "confidential, privileged information" in an attempt to manipulate the mediation between the parties and "negotiate a settlement that was disadvantageous to beneficiaries of the LACS Trust, including Experian." Complaint ¶ 74, *Experian Info. Solutions, Inc. v. Matson*, No. 13-cv-02474 (N.D. Ill. Apr. 2, 2013), ECF No. 1.

On April 14, 2013, Matson, as the LACS Trustee, filed his Motion for Order (A) Enforcing Injunction Provisions or, in the Alternative, the Exclusive Jurisdiction Provisions of

---

[5] The adversary proceeding, captioned *Matson v. Experian Information Solutions, Inc.*, is Case Number 12-03082 (the "Avoidance Action").

[6] Experian also filed suit against LeClairRyan, the law firm representing Matson in his official capacity as Trustee, asserting claims for breach of fiduciary duty, and aiding and abetting breach of fiduciary duty. However, Experian elected to voluntarily dismiss the Illinois Action as to LeClairRyan.

[7] The four counts are: (1) Breach of Fiduciary Duty – All Defendants; (2) Negligence – Matson as Trustee of the LACS Trust; (3) Aiding and Abetting Breach of Fiduciary Duty – LeClairRyan; and (4) Punitive Damages – All Defendants. *See* Complaint, *Experian Info. Solutions, Inc. v. Matson*, No. 13-cv-02474 (N.D. Ill. Apr. 2, 2013), ECF No. 1.

3

Plan and Confirmation Order and (B) Holding Experian Information Solutions, Inc. in Contempt and Imposing Sanctions for Willful Violation of Confirmation Order and Plan Injunction and Jurisdiction Provisions (the "Motion"). Experian filed an Objection to the Motion on April 24, 2013 (the "Objection"). The Court held an expedited hearing on the Motion on April 25, 2013.

This memorandum opinion sets forth the Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.[8] The Court has subject-matter jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 16, 1984. This is a core proceeding, *id.* § 157(b)(2)(A) and (O), in which final orders or judgments may be entered by a bankruptcy court, *id.* § 157(b)(1). Venue is appropriate in this Court. *Id.* § 1409(a).

In its Objection, Experian argues that this Court lacks jurisdiction to decide this issue. The Court disagrees. Pursuant to 28 U.S.C. § 1334(a), "the district court [has] original and exclusive jurisdiction of all cases under title 11." Further, the district court has "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). District courts are authorized to refer all cases under Title 11 and all proceedings arising under Title 11 or arising in or related to a case under Title 11 to the bankruptcy judges for the district. *Id.* § 157(a). By order of reference entered August 16, 1984, the United States District Court for the Eastern District of Virginia has referred all such bankruptcy cases and proceedings to this Court.

---

[8] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

Cases under Title 11, proceedings arising under Title 11, and proceedings arising in a case under Title 11 are all core proceedings. *Id.* § 157(b)(1). Non-core proceedings are matters related to a case under Title 11. *Id.* § 157(c)(1); *see also Williams v. McGreevey* (*Touch Am. Holdings, Inc.*), 401 B.R. 107, 117 (Bankr. D. Del. 2009). The Court may render final decisions subject to appellate review in core proceedings. 28 U.S.C. § 157(b)(1). For non-core matters, the Court must make proposed findings of fact and conclusions of law, which are subject to de novo review by the district court, unless the parties consent to an adjudication by the bankruptcy court. *Id.* § 157(c)(1); *see also Koken v. Reliance Grp. Holdings, Inc.* (*In re Reliance Grp. Holdings, Inc.*), 273 B.R. 374, 392 (Bankr. E.D. Pa. 2002).

This Court has core jurisdiction to interpret its Confirmation Order at issue here, and to enforce the terms of the confirmed Plan. "[A] bankruptcy court retains core jurisdiction to interpret and enforce its own prior orders, including and especially confirmation orders." *In re Lyondell Chem. Co.*, 445 B.R. 277, 287 (Bankr. S.D.N.Y. 2011); *see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("[T]he Bankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior orders."); *In re Jones*, No. 09-14499, 2011 Bankr. LEXIS 4083, at *1 (Bankr. E.D. Va. Oct. 21, 2011) ("Bankruptcy Courts plainly have jurisdiction to interpret and enforce their own prior orders.") (citing *Travelers Indem. Co.*, 557 U.S. 137).[9]

The Illinois Complaint names Matson as a party defendant "not individually, but as Trustee of the LandAmerica Credit Services Liquidation Trust." Complaint at 1, *Experian Info. Solutions, Inc. v. Matson*, No. 13-cv-02474 (N.D. Ill. Apr. 2, 2013), ECF No. 1. The *Barton*

---

[9] The Court rejects Experian's argument that it lacks the ability to hear and resolve this Motion under *Stern v. Marshall*, 131 S. Ct. 2594 (2011). The Motion does not require the Court to resolve any state law actions; rather the Motion requests the Court interpret and enforce the terms of the Plan and the procedural requirements entailed by the *Barton* doctrine. As such, *Stern* is not implicated.

5

doctrine bars a party from bringing suit against a court-appointed receiver without first obtaining leave of the appointing court. *Barton v. Barbour*, 104 U.S. 126, 128 (1881). Failure to obtain leave of the appointing court deprives the other forum of subject-matter jurisdiction. *Id.* at 131-33, 136. This long-standing doctrine has been expanded to include other types of court-appointed parties, such as bankruptcy trustees and counsel for trustees. *McDaniel v. Blust*, 668 F.3d 153, 157 (4th Cir. 2012) (citing *Lownbraun v. Canary* (*In re Lowenbraun*), 453 F.3d 314, 321 (6th Cir. 2006); *Beck v. Fort James Corp.* (*In re Crown Vantage, Inc.*), 421 F.3d 963, 971 (9th Cir. 2005)). The *Barton* doctrine applies with equal measure to liquidating trustees, such as Matson. *In re Crown Vantage, Inc.*, 421 F.3d at 973 ("[T]he fact that the bankruptcy assets are now being liquidated through the vehicle of a liquidating trust with an appointed liquidating trustee does not prevent the application of the *Barton* doctrine."). Where a party seeks to bring suit against a liquidating trustee in connection with a bankruptcy case for acts taken within the scope of that trustee's official duties, the party must first request and receive leave of the appointing bankruptcy court. *Id.*

Experian contends that the *Barton* challenge ought to have been brought in the first instance before the District Court for the Northern District of Illinois, where the Illinois Complaint is pending, rather than in this Court. There is no such requirement. *See id.* (upholding bankruptcy court's decision to enjoin state court action, applying the *Barton* doctrine); *Lebovits v. Scheffel* (*In re Lehal Realty Assocs.*), 101 F.3d 272 (2d Cir. 1996) (same). A trustee "is an officer of the court that appoints him." *McDaniel*, 668 F.3d at 157 (quoting *In re Lehal Realty Assocs.*, 101 F.3d. at 276). The *Barton* doctrine allows a court to "monitor the work of the trustees [the court has] appointed." *Id.* The rationale behind the doctrine demands that the appointing court be allowed to hear the *Barton* challenge. The *Barton* doctrine

recognizes that the appointing court has a "strong interest in protecting [the trustee] from unjustified personal liability for acts taken within the scope of his official duties." *In re Lehal Realty Assocs.*, 101 F.3d at 276-77 ("We have an equally vital institutional interest in protecting our trustee from being mulcted into another court on frivolous or trumped up charges.").

Experian next argues that the actions about which it complains are not subject to the *Barton* doctrine as the actions were taken outside of Matson's official capacity. The factual predicate for this argument is entirely lacking. A trustee's actions are presumed to be a part of the trustee's official duties unless the plaintiff "initially alleges at the outset facts demonstrating otherwise." *Kirk v. Hendon* (*In re Heinsohn*), 247 B.R. 237, 246 (E.D. Tenn. 2000). Experian sued Matson in his official capacity as the LACS Trustee. Experian's principal complaint is that Matson's appointment as both the LACS Trustee and the LFG Trustee created a conflict of interest. Experian alleges that Matson breached his fiduciary duty to beneficiaries of the LACS Trust by failing to move to equitably subordinate the intercompany receivable due from LACS to LFG. Matson's dual service as trustee of both the LFG Trust and the LACS Trust was expressly authorized by the Plan. Furthermore, the intercompany receivable due from LACS to LFG was definitively addressed in the Plan. The claim was specifically allowed and equitable subordination of the claim was foreclosed. Experian's complaint against Matson is for his strict adherence to the terms of the Plan. All of the actions about which Experian complains were official duties undertaken by Matson as contemplated by the Plan.

Furthermore, a "presumption in favor of the trustee, counsel, or other bankruptcy official that they were acting within the scope of their duties prevents a plaintiff . . . from making unsupported allegations in an attempt to defeat Congress's goal of providing exclusive federal jurisdiction over bankruptcy matters." *In re Lowenbraun*, 453 F.3d at 322. Experian has failed

to present any evidence to overcome the presumption. The Court finds that Matson was acting within the scope of his official duties, thereby triggering application of the *Barton* doctrine. Because Experian failed to obtain leave of this Court before bringing suit against Matson in the District Court for the Northern District of Illinois, that court lacks subject-matter jurisdiction over the case. *Barton*, 104 U.S. at 131-33, 136.

Not only did Experian make the decision to disregard the *Barton* doctrine when it commenced the Illinois Action, but also it chose to ignore the terms of the Plan and Confirmation Order, which give this Court exclusive jurisdiction to "hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of [the] Plan, the Confirmation Order . . . or any agreement, instrument, or other document governing or relating to any of the foregoing." Plan Art. 15(j); *see* Confirmation Order ¶ 47. The Plan also gives this court exclusive jurisdiction

> [t]o issue and enforce injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court.

Plan Art. 15(f); *see* Confirmation Order ¶ 47.

To the extent that the Illinois Action asserts allegations against the Trustee that are either directly contradicted or expressly barred by the Plan, the commencement of the Illinois Action interferes with Matson's ability to implement and consummate the Plan. The Plan provides

> [u]pon the entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest . . . shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

Plan § 14.3.[10]  Experian was a holder of a Claim and is bound by the Plan injunction provision.

There can be no doubt that the Illinois Action constitutes a collateral attack on the Plan that serves to interfere with its implementation and consummation.  The clearest example of this is seen in Experian's allegation that Matson had a conflict of interest caused by acting as both the LFG Trustee and the LACS Trustee.  Experian explains that:

> Mr. Matson breached his fiduciary duty to Experian by allowing an actual conflict of interest to interfere with his ability to investigate and prosecute a cause of action under 11 U.S.C. § 510(c) to equitably subordinate a $14 million intercompany receivable purportedly due from the Credit Services Trust to the Financial Group Trust.

Complaint ¶ 70, *Experian Info. Solutions, Inc. v. Matson*, No. 13-cv-02474 (N.D. Ill. Apr. 2, 2013), ECF No. 1.  The Plan expressly contemplates and directly addresses this issue.

Matson's dual role as both the LACS Trustee and the LFG Trustee was disclosed in the Plan[11] and was expressly authorized by section 6.1(a) of the LFG Liquidation Trust Agreement.[12]  That section provides that the "LFG Trustee shall also serve as the liquidation trustee for the LFG Subsidiary Debtors," which includes LACS.  This same section also provides that "[n]otwithstanding the different entities implicated . . . the LFG Trustee may exercise all such powers and pursue all such responsibilities because, inter alia, *the intercompany claims that may exist between any of these different entities have been allowed pursuant to the Confirmation Order*."  Trust Agreement § 6.1(a) (emphasis added).  The parties bound by the Plan, including

---

[10] Experian argues that the Illinois Action cannot interfere with the implementation or consummation of the Plan as the LACS Trust has been fully distributed.  However, section 14.3 of the Plan does not refer merely to the Plan as it relates to LACS, but rather to Plan implementation and consummation generally.

[11] *See* Plan, Art. 1.191 and Ex. K.  *See also* Confirmation Order ¶ G (finding that Matson's appointment was "consistent with the interests of holders of Claims and Interests . . . .").

[12] Similar language is contained in Art. 6.1(a) of the SD Trust Agreement.  The SD Trust Agreement pertains to the LFG Subsidiary Debtors, including LACS.

Experian, acknowledged that a net benefit would inure to all trust beneficiaries from such an arrangement.

Consistent therewith, the Plan considered and resolved all issues relating to the intercompany claims. Pursuant to section 2.2 of the Plan,

> [a]ll prepetition Intercompany Claims, as identified and in the amounts shown on Schedule 2.2 to this Plan, shall be treated as Allowed General Unsecured Claims against the applicable Debtor.

Schedule 2.2 attached to the Plan lists the $13,941,540 intercompany receivable owed by LACS to LFG. This is the same "$14 million intercompany receivable" at issue in the Illinois Action. The LACS-LFG intercompany receivable is an allowed and valid claim under the terms of the Plan.

The Plan permits only the LFG Trustee to pursue the equitable subordination of claims against LFG or the LFG Subsidiary Debtors.[13] However, the LFG Trustee is prohibited from seeking to equitably subordinate claims against LFG or the LFG Subsidiary Debtors to the extent that they have "*already been Allowed as of the Effective Date*." Plan § 8.3(d) (emphasis added). Accordingly, Matson (in his capacity as the LFG Trustee) could bring an action to equitably subordinate only those claims that had not already been allowed as of the effective date of the Plan. As the "$14 million intercompany receivable" was allowed as of the Plan's effective date, it could not be subordinated. Thus, Matson, in any capacity, was precluded from pursuing an equitable subordination action. Yet this is precisely what the Illinois Complaint alleges that he failed to do.

---

[13] Section 10.1 of the Plan provides, with the exception of certain carve-outs, "only the Post-Effective Date Entities or the Trustee are entitled to object to Claims or Interests after the Effective Date." LACS is not a post-effective date entity. "Trustee" is a defined term under the Plan, meaning only the LFG Trustee and the LES Trustee. Plan § 1.220. There is no mention of the LACS Trustee or other subsidiary trustees. Accordingly, the LACS Trustee lacked the ability to even object to claims, let alone bring an equitable subordination action on an intercompany receivable.

Similarly, Experian claims that Matson breached his fiduciary duties by failing to abide by his obligation to pursue claims under Chapter 5 of the Bankruptcy Code.[14] Again this breach is allegedly evidenced by Matson's failure to bring an action to equitably subordinate the LACS-LFG "$14 million intercompany receivable." The difference here is that Experian now points to the SD Liquidation Trust Agreement which provides that the SD Trustee, including LACS Trustee, is authorized to "prosecute, settle or otherwise compromise or abandon for the benefit of the SD Trust all claims and causes of action *transferred by the Debtors* to the SD Trust . . . ." SD Liquidation Trust Agreement § 6.1(b)(i) (emphasis added).[15] However, the Plan also provides that "each of the Debtors is prohibited from asserting, and hereby agrees to release, any Claim against the other, including a Claim arising under Chapter 5 of the Bankruptcy Code." Plan § 14.7. Because the Debtors released each other, the Debtors could not transfer such a right to pursue Chapter 5 claims to the LFG Trustee. Accordingly, Matson was under no obligation to bring a Chapter 5 action on an intercompany claim as there was no such claim to be brought.

The allegations raised by Experian in the Illinois Complaint lack any support in the Plan or any of the supporting Plan documents. The time for raising objections of the kind Experian is now trying to advance in the Illinois Action has long passed. In order to have been timely, Experian would have had to have objected to confirmation of the Plan. The Plan was the product of extensive and often tense negotiation on the part of multiple adverse parties over a protracted

---

[14] The Bankruptcy Code provisions governing subordination are contained in section 510 of Chapter 5 of Title 11 of the U.S. Code.

[15] The Plan defines the "SD Trust" as "a liquidating trust, comprised of the applicable SD Trust Assets, to be created on the Effective Date in accordance with the provisions of the applicable SD Trust Agreement, which liquidating trust will be responsible for, *inter alia*, the liquidation of and winding up of such Subsidiary Debtor and its non-Debtor subsidiaries." Plan § 1.184.

The Plan also defines the "SD Trustee" to include "the LFG Trustee for SD Trusts which hold Assets of LFG Subsidiary Debtors." Plan § 1.191(b). LACS was an LFG Subsidiary Debtor.

period of time; the complicated, interconnected Plan provisions did not just fall from the sky. One objection to the allowance of an intercompany receivable did survive confirmation based on the objecting party's possible interest in the receivable. The objection was addressed at the confirmation hearing and the confirmed Plan provided for the particular intercompany claim at issue to be treated separately, and not as a claim deemed allowed under the Plan. Experian could have raised a similar objection and could have negotiated for a similar carve-out. But it did not. Despite having received adequate notice of the Plan and having been afforded the opportunity to object to the Plan, Experian now raises this collateral attack on the Plan for the first time more than three years after confirmation.[16]

"If a creditor fails to timely object to a plan or appeal a confirmation order, 'it cannot later complain about a certain provision contained in a confirmed plan.'" *Enewally v. Wash. Mut. Bank* (*In re Enewally*), 368 F.3d 1165, 1172 (9th Cir. 2004) (quoting *Greater Lakes Higher Educ. Corp. v. Pardee* (*In re Pardee*), 193 F.3d 1083, 1086 (9th Cir. 1999)). By failing to timely object, Experian is now bound by the terms of the Plan, including its provisions regarding injunctive relief and exclusive jurisdiction. *See* 11 U.S.C. § 1141(a) ("[T]he provisions of a confirmed plan bind . . . any creditor . . . .").

Experian is bound by the Plan. Experian is bound by the exclusive jurisdiction provisions contained in the Plan.[17] *See Dalkon Shield Claimants Trust v. Reiser (In re*

---

[16] The Court would note that Experian's decision to commence this collateral attack on the Plan by filing the Illinois Action came less than a month after Experian received a final distribution from the LACS Liquidation Trust (representing 60.6% of Experian's allowed claim). Not only is the actual amount at stake in the Illinois Action less than $40,000, but also Experian is well aware that the LACS Trust, having made final distribution, does not have funds sufficient to defend against Experian's litigation. The Court is left to wonder whether the Illinois Action is really nothing more than a litigation tactic the purpose of which is to obtain some kind of leverage over the Trustee in connection with the Avoidance Action pending against Experian in this Court.

[17] The Confirmation Order and the SD Trust Agreement also contain similar provisions. The Confirmation Order provides that "[n]otwithstanding the entry of this Order, from and after the Effective Date, the Court shall retain

*A.H.Robins Co., Inc.)*, 972 F.2d 77, 79 n.1 (4th Cir. 1992) (recognizing the validity of exclusive jurisdiction provisions). The Court retained exclusive jurisdiction to construe, enforce, implement, execute, and consummate the Plan, as well as to resolve any disputes concerning the Trusts or the Trust Agreements.[18] Experian is also bound by the Plan's injunction that prohibits it from interfering with the implementation or consummation of the Plan. As such, it was improper for Experian to bring suit against Matson in the United States District Court for the Northern District of Illinois. Accordingly, the Court will enjoin Experian from further pursuing the Illinois Action in violation of both the terms of the Plan and the common law doctrine arising from *Barton v. Barbour*, 104 U.S. 126 (1881).

     A separate Order shall issue.

ENTERED: _____            /s/Kevin R. Huennekens
                                                             UNITED STATES BANKRUPTCY JUDGE

---

such jurisdiction as is legally permissible, including exclusive jurisdiction over all matters arising in, arising under, or related to the Chapter 11 cases, as set forth in Article XV of the Plan." Confirmation Order ¶ 47. The SD Trust Agreement contains the following provision: "[T]he Bankruptcy Court shall have exclusive jurisdiction over the SD Trust and the SD Trustee, including, without limitation, the administration and activities of the SD Trust and SD Trustee . . . ." SD Trust Agreement Art. 9.3.

[18] Article 15 of the Plan states that the Court has exclusive jurisdiction, inter alia:

> To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transaction or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing.

*****

> To take any action and issue such orders, including any such action or orders as may be necessary after occurrence of the Effective Date and/or consummation of the Plan, as may be necessary to construe, enforce, implement, execute, and consummate this Plan . . .

*****

> To resolve any disputes concerning the Trusts or the Trust Agreements.

Plan Art. 15 (j), (*l*), (u).