Bruce H. Matson
117 Thomashire Court
Richmond, VA 23229
brucehmatson@gmail.com
804-771-7326



August 26, 2019

<u>By Hand</u>
Honorable Kevin R. Huennekens
U.S. Bankruptcy Court
701 E. Broad Street
Richmond, VA 23219

Re: LandAmerica Financial Group, Inc., et al.

Dear Judge Huennekens:

As you know the referenced cases date to 2008. I was appointed liquidation trustee in December 2009 and the case was closed (and I was discharged) at the end of 2015. As you also know, there were post-closing wind-down tasks and obligations that were approved as part of the closing of the cases.

Although the wind-down budget and the wind-down period runs through 2021, it now appears likely that we will be left with substantially more than originally thought and budgeted. (Perhaps we have been visited with the same good fortune in the wind-down process as in the case itself where we recovered over 80% for creditors even though the disclosure statement projected a recovery of approximately 31 cents on the dollar.) Although over two years remains in the original plan, there is over $2.8 million still in escrow as a result of cost savings and unexpected recoveries. It is difficult to see a scenario where much more of that fund will be used (although there will be inevitably some expenses, such as those I'm currently incurring in transferring LFG client files from LeClairRyan).

Just in case the Court might need an overview of how we got here, I have asked Rob Smith[1], who you will recall was the lead financial advisor for me as trustee during the case, to provide an overview of the wind-down budget process and some of the financial highlights over the past three plus years. His analysis is contained in a separate letter enclosed with this letter.

---

[1] Mr. Smith has stayed involved assisting me through the wind-down. As a security and contingency plan, he has even served as is a "temporary" or substitute fiduciary (during some absence and international travel) and has contractually agreed would complete the wind-down process if something was to happen to me. In fact, he holds $1.5 million of the wind-down funds at the present time for the same reasons.

It would be my intention to continue to proceed as originally approved in the wind-down budget, including additional payments to charities and professionals, however, I wanted to provide this report and if the Court believes that some other approach is more appropriate, I will proceed accordingly.

Very Truly Yours,

Bruce H. Matson