Robert B. Smith
RS Financial Consulting, LLC
492 Hope Springs Lane
Manakin-Sabot, Virginia 23103
804.467.8998
rbsiv@comcast.net

RICHMOND DIVISION
FILED
AUG 26 2019
CLERK
U.S. BANKRUPTCY COURT

August 26, 2019

Honorable Kevin R. Huennekens
U.S. Bankruptcy Court
701 E. Broad Street
Richmond, VA 23219

Re: LFG and SD Liquidation Trusts Winddown Review

Dear Judge Huennekens,

At Bruce Matson's request, I am writing this letter to update the Court and give a brief accounting of the winddown of the former LFG Liquidation Trust (the "LFG Trust") and SD Liquidation Trusts ("SD Trusts" and together with the LFG Trust, the "Trusts"). I understand it will accompany a letter from him on the same topic, a letter which I have reviewed and approve.

As I'm sure you recall, in 2009 Mr. Matson, the LFG Liquidation Trustee ("Mr. Matson" or "Trustee") retained Protiviti and LeClairRyan (the "Professionals") to assist in the liquidation of the LFG and SD assets after confirmation of the Plan. The original Trusts were to remain in effect for five years, through 2014, though the Trusts were extended through December 31, 2015, at which time they were dissolved.

As part of the Trusts' dissolution, the Trustee and his Professionals worked diligently to prepare an appropriate 6-year winddown budget totaling $3.1 million.[1] This winddown budget's two primary expenses included continued storage costs ($1.4 million) and payment of professionals ($1.4 million). Protiviti staff diligently researched storage and destruction costs at the various facilities still housing the approximately forty thousand boxes of documents. Similarly, the Professionals prepared an estimate of six years' professional fees, based in part on the Trusts' declining needs. This winddown budget was presented to and accepted by this Court in conjunction with the final dissolution of the Trusts.

In the year following the dissolution, Mr. Matson and Protiviti undertook a review of all remaining documents, servers, microfilm, and other information to determine the efficacy of continued storage for a six-year period. We visited multiple California storage facilities, going through thousands of boxes. We also negotiated with EnTrust, a Richmond-based storage facility, to retain relevant boxes of

---

[1] Earlier versions of the winddown budget contemplated a retention of significantly more capital, as much as $6 million, but at Mr. Matson's and my urging and with additional research and analyses it was determined that Mr. Matson would likely need no more than $3.1 million.

documents and destroy others. As a result of several orders issued by the Court in 2016, and despite its up-front cost, the storage cost savings continues to this day.

In the past 3+ years, there has also been a cost savings in the form of professional fees, which have been less than budgeted. Although there have been some material exercises involving professionals (like the 401k litigation), we've been surprised there have not been more unexpected needs to address miscellaneous matters arising post-dissolution.

Further, there have also been some unexpected increases to the remaining proceeds being held. First, primarily as a result of the document retention review, the SD Trusts winddown expenses were reduced. This resulted in an increase of approximately $357,000 from STC-SD, STC, OneStop, and CTG. Second, in the year following the dissolution order, there were LFG claims reserves and / or proceeds paid and returned in the approximate amount of $352,000. Third, as referenced in the attachments to the wind-down budget, the LAC Trust had a reserve of $809,000 based on a multi-million dollar real estate lawsuit that had been ongoing for years. (Though the exposure was significantly higher than the reserve, plaintiff's counsel agreed to reduce the reserve for inclusion in the winddown budget after significant negotiation with LeClairRyan.) Unexpectedly, that matter resolved with no liability to LAC. Since all creditors had previously received 100% in the LAC Trust, those proceeds were transferred to LFG.[2] Finally, there were outstanding payments of approximately $161,000 that had not cleared as of the dissolution date. The aggregate of these excess proceeds totals $1.66 million.

As of the date of this letter, the winddown estate retains a total of slightly more than $2.84 million (excess proceeds of $1.66 million plus remaining proceeds of $1.18 million). Excluding the unexpected proceeds listed above, the winddown estate has a positive budget variance of approximately $360,000 through its first 3 ½ years (budgeted remaining proceeds of $820,000, actual remaining proceeds of $1.18 million).

In April 2018, I left Protiviti to start my own consulting firm while also working for a start-up patent analytics company here in Richmond. The Trustee retained my consulting firm to continue to assist with the winddown. Early in 2019, shortly after returning from an extended sabbatical, Mr. Matson determined that the remaining proceeds of about $2.8 million should be divided and held in escrow pending the conclusion of the winddown period in order to decrease the concentration risk in any one bank or any one person.[3] I am currently retaining $1.5 million, and await further instruction as to the disposition of the proceeds.

Very truly yours,

*Robert Smith*

Rob Smith
RS Financial Consulting, LLC

---

[2] LFG owned 100% of the equity in LAC. After bank fees, $789,000 was transferred to LFG.
[3] Trustee had previously deemed it important to create a succession plan and appointed me as substitute trustee in the unlikely event of Trustee's demise.